UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

SABRINA E. MORRISSEY, acting in her
capacity as Guardian of W.W.H.,

                Plaintiff,

        - against -

A&E TELEVISION NETWORKS, LLC;
ENTERTAINMENT ONE REALITY
PRODUCTIONS, LLC; LIFETIME
ENTERTAINMENT SERVICES, LLC;
CREATURE FILMS, INC.; and MARK FORD,

                Defendants.

------------------------------------------------------------

Case No.: 1:24-cv-07856

## DEFENDANTS A&E TELEVISION NETWORKS, LLC
## AND LIFETIME ENTERTAINMENT SERVICES, LLC'S
## VERIFIED ANSWER AND AFFIRMATIVE DEFENSES
## TO PLAINTIFF'S AMENDED COMPLAINT AND COUNTERCLAIM

Defendants A&E Television Networks, LLC and Lifetime Entertainment Services, LLC

(collectively "AETN")[1], by and through their undersigned counsel, hereby file their Answer and

Affirmative Defenses to the Verified Amended Complaint  (the "Amended Complaint") filed by

Plaintiff Sabrina E. Morrissey ("Plaintiff").  Purely for purposes of clarity and without admitting

any factual allegations therein, AETN use the same headings and paragraph numbers employed by

Plaintiff.

      1.      AETN denies the allegations in Paragraph 1 characterizing its purported actions and

the basis for this lawsuit.  Indeed, AETN affirmatively alleges that this case arises from the

---

[1] Lifetime Entertainment Services, LLC ("LES"), a wholly owned subsidiary of A&E Television Networks, LLC, has been incorrectly named as a defendant in this action. As Plaintiff had been advised, LES has no employees, LES does not manage or operate the Lifetime® network (on which the Documentary aired), the Lifetime® network is a brand of A&E Television Networks, LLC (not a separate entity), and all employees who provide services to the Lifetime® network are A&E Television Networks, LLC employees.  LES joins in this Answer with A&E Television Networks, LLC without waiver of these and all other defenses, and explicitly preserves its objection that it is not a properly named party in this action.

misguided and unjustified efforts by Plaintiff to exceed the scope of her judicial authority over her ward W.W.H., attempt to excuse her own failure to protect her ward, supplant W.W.H.'s wishes with her own, and deny W.W.H. perhaps one of her last chances to exercise her autonomy and honestly reach her fans in exactly the frank and unfiltered manner that was the hallmark of her career—all in an effort to prioritize Plaintiff's own reputation, and deflect scrutiny of her own inaction and indifference. AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 1 pertaining to the status of and judicial determinations in the guardianship over W.W.H. (the "Guardianship Proceeding") and on that basis denies, generally and specifically, the allegations in Paragraph 1.

2.     AETN admits that it distributed a four-part documentary entitled *Where Is Wendy Williams?* (the "Documentary") that was produced by defendants Entertainment One Reality Productions, LLC ("eOne"), as well as Creature Films, Inc. and Mark Ford (the "Creature Films Defendants"). AETN denies that the Documentary was filmed without a valid contract and without the Guardian's consent. Instead, AETN affirmatively alleges that the Documentary was created with W.W.H.'s permission and involvement, pursuant to W.W.H.'s On-Camera Talent Agreement executed on January 25, 2023 (the "Talent Agreement"). AETN denies knowledge and information sufficient to form a belief as to what payment W.W.H. received for the Documentary, and on that basis denies that W.W.H. only received $82,000 for her participation in the Documentary. AETN admits that two days before the Documentary was scheduled to premiere, when it had become clear that the Documentary would raise questions about W.W.H.'s care and treatment under the guardianship, making Plaintiff's own conduct the subject of scrutiny, Plaintiff served eOne and AETN with an *ex parte* temporary restraining order ("TRO"), which was vacated as unconstitutional within 24 hours by Justice Peter Moulton of the New York Appellate Division, First Department. AETN denies Plaintiff's characterization of the Documentary, respectfully refers

the Court to the Documentary for its content and meaning, and affirmatively alleges that the Documentary captures a raw, honest and unfiltered window into W.W.H.'s life after she was placed under guardianship, showing how her authenticity still shined even as she struggled with her loss of autonomy, and how the guardianship system purportedly put in place to guard her interests instead had isolated her from her family, left her largely alone and unattended in her apartment, exacerbated her self-destructive behavior and mental decline, and failed to prevent W.W.H's use and/or abuse of alcohol.  Except as so admitted, AETN denies each and every allegation in Paragraph 2.

**A. Response to "W.W.H. Tragic and Widely Publicized Cognitive and Physical Decline"**

3.    AETN admits that W.W.H is a prominent and accomplished broadcaster with a long-standing career as described in Paragraph 3.  AETN respectfully refers this Court to the full text of the August 18, 2022, *Vice* article "The Misrepresentations of Wendy Williams' Undeniable Legacy" cited by Plaintiff in footnote 1 for its full content and meaning.

4.    AETN lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 4 and on that basis, denies each and every allegation in Paragraph 4.

5.    AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 5, including specifically on whether any alleged "difficulties" "captured on camera" were the result of a decline in cognitive functioning or other factors and on that basis, denies each and every allegation in Paragraph 5.

6.    AETN admits that W.W.H. has been a frequent subject of entertainment and gossip news items speculating on her personal life and health, often citing unnamed sources.  AETN respectfully refers this Court to the full text of the November 23, 2021, iHeart article titled "Wendy Williams Reportedly Restricted to a Wheelchair" (the "iHeart Article") cited by Plaintiff in footnote 3 and the November 23, 2021, Hot97 article titled "Wendy Williams Is Allegedly Confined To A

Wheelchair And Showing Early Signs Of Dementia,;" the November 22, 2021, Ricky Smiley Morning Show article titled "Wendy Williams Allegedly Is Confined To A Wheelchair & Is Showing Early Signs Of Dementia;" and the November 23, 2021, article from The Hollywood Gossip titled "Wendy Williams Unable to Walk, In Early Stages of Dementia" cited by Plaintiff in footnote 4 for their full content and meaning. AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations stemming from these articles and on that basis, except as expressly admitted, AETN denies each and every allegation in Paragraph 6.

7.     AETN admits that in February of 2022, it was announced that W.W.H.'s talk show would end. AETN respectfully refers this Court to the full text of the August 17, 2022, Hollywood Reporter article titled "Inside the Final Days of 'The Wendy Williams Show'" (the "August 17, 2022 Hollywood Reporter Article") cited by Plaintiff in footnote 5 for its full content and meaning. AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations stemming from this article and on that basis, AETN denies each and every remaining allegation based on the article in Paragraph 7. AETN denies each and every remaining allegation in Paragraph 7.

8.     AETN denies each and every allegation in Paragraph 8.

9.     AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 9 and on that basis, denies each and every allegation in Paragraph 9.

10.     AETN admits that W.W.H. is 60 years old. AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 10 and on that basis, denies each and every allegation in Paragraph 10.

**B. Response to "The W.W.H. Guardianship Proceeding"**

11. Paragraph 11 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H. AETN respectfully refers the Court to this proceeding for the full context thereof. Moreover, to the extent that the allegations in Paragraph 11 relate to materials under seal in the Guardianship Proceeding, AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 11 and on that basis, denies each and every allegation in Paragraph 11.

12. Paragraph 12 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H. AETN respectfully refers the Court to this proceeding for the full context thereof. To the extent that the allegations in Paragraph 12 relate to materials under seal in the Guardianship Proceeding, AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 12 and on that basis, denies each and every allegation in Paragraph 12.

13. Paragraph 13 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H. AETN respectfully refers the Court to this proceeding for the full context thereof. To the extent that the allegations in Paragraph 13 relate to materials under seal in the Guardianship Proceeding, AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 13 and on that basis, denies each and every allegation in Paragraph 13.

14. Paragraph 14 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H. AETN respectfully refers the Court to this proceeding for the full context thereof. To the extent that the allegations in Paragraph 14 relate to materials under seal in the Guardianship Proceeding, AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 14 and on that basis, denies each and every allegation in Paragraph 14.

15. Paragraph 15 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H. AETN respectfully refers the Court to this proceeding for the full context thereof. To the extent that the allegations in Paragraph 15 relate to materials under seal in the Guardianship Proceeding, AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 15 and on that basis, denies each and every allegation in Paragraph 15.

16. Paragraph 16 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H. AETN respectfully refers the Court to this proceeding for the full context thereof. To the extent that the allegations in Paragraph 16 relate to materials under seal in the Guardianship Proceeding, AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 16 and on that basis, denies each and every allegation in Paragraph 16. AETN admits that the Guardianship Proceeding was publicized in May of 2022 and that at that time, W.W.H. claimed that Wells Fargo was engaged in misconduct for initiating the Guardianship Proceeding. AETN denies each and every remaining allegation in Paragraph 16.

## C. Response to "Will Selby, The Wendy Experience, Inc., and the August 2022 Development Shoot"

17. AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 17 and on that basis, denies each and every remaining allegation in Paragraph 17.

18. AETN admits that it understood that Will Selby ("Selby") was W.W.H.'s manager. AETN further admits, as is seen in the Documentary, that it was its understanding that W.W.H. wanted to create a podcast and that Selby was helping her to do so. AETN lacks knowledge or

information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 18 and on that basis denies them.

19.    AETN admits that it owns LES, denies that that the Lifetime® network is part of LES, and affirmatively alleges that Lifetime® is a brand of AETN and all employees who provide services to the Lifetime® network are AETN employees.  AETN admits that the Documentary was pitched to AETN and picked by AETN for airing on Lifetime®.  AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 19 concerning the development of the Documentary prior to AETN picking it up, and what Mr. Selby did or did not tell Plaintiff regarding the Documentary and on that basis, denies each and every remaining allegation in Paragraph 19.

20.    AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 20 and on that basis, denies each and every remaining allegation in Paragraph 20.

21.    AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 21 and on that basis, denies each and every remaining allegation in Paragraph 21.

22.    AETN respectfully refers this Court to the full text of the August 17, 2022, Hollywood Reporter Article cited by Plaintiff in footnote 7 for its full content and meaning but note that the August 17, 2022, Hollywood Reporter Article also reports that there had been no diagnosis of dementia or mental incapacity, and includes statements from W.W.H.'s publicist that "It has been no secret that Wendy has battled with addiction over the years but at this time Wendy is on the road to recovery and healing herself from her chronic illnesses and her grievances of the past," and "What we do know is that Wendy has a history of chronic illness that she has publicly spoken about."  AETN lacks knowledge or information sufficient to form a belief as to the truth or

falsity of the allegations stemming from this article and on that basis, AETN denies each and every corresponding allegation in Paragraph 22.  AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations that the Creature Films Defendants were aware of this article and on that basis, AETN denies each and every corresponding allegation in Paragraph 22.

23.    AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 23 and on that basis, denies each and every allegation in Paragraph 23.

24.    AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 24 and on that basis, denies each and every allegation in Paragraph 24.

**D. Response to "The Contract Between The Wendy Experience, Inc. and EOne"**

25.    AETN admits that the Talent Agreement indicates it is effective as of November 30, 2022, but denies it was involved in drafting the Talent Agreement.  AETN lacks knowledge or information sufficient to form a belief regarding the truth or falsity of allegations regarding the circumstances of the Talent Agreement's drafting, and on that basis denies these allegations. Except as so admitted, AETN denies the allegations in Paragraph 25.

26.    AETN lacks knowledge or information sufficient to form a belief regarding the truth or falsity of allegations regarding the circumstances under which the Talent Agreement was submitted to W.W.H., and on that basis denies each and every allegation in Paragraph 26.

27.    AETN admits that the Talent Agreement indicates an execution date of January 25, 2023, and that The Wendy Experience, Inc. is a listed party to the Talent Agreement.  AETN denies that the signature on the Talent Agreement "looks nothing like W.W.H.'s signature" and affirmatively alleges that ████████████████████████████████████



Signature from the Talent Agreement



AETN lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 27, and on that basis denies them.

28.     AETN denies each and every allegation in Paragraph 28.

29.     Paragraph 29 purports to characterize the Talent Agreement.  AETN respectfully refers the Court to the Talent Agreement for its content and meaning.  AETN denies the remaining allegations in Paragraph 29.

30.     AETN lacks knowledge or information sufficient to form a belief as to the content of orders issued in the sealed Guardianship Proceedings or the content of conversations between Plaintiff and Mr. Selby and on that basis denies these allegations.  AETN otherwise denies each and every allegation in Paragraph 30.

**E. Response to "The Guardian's Discovery of the Contract and EOne's False Representations Regarding the Program"**

31.     AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 31 and on that basis, denies each and every allegation in Paragraph 31.

32.     AETN lacks knowledge or information sufficient to form a belief regarding the truth or falsity of the allegations in Paragraph 32 and on that basis denies them.  AETN affirmatively alleges that the images above reflect footage that appears in the Documentary.

33.     AETN lacks knowledge or information sufficient to form a belief as to what Selby represented to Plaintiff or her reaction thereto and for that reason, denies each and every allegation in Paragraph 33.  AETN denies each and every allegation in Paragraph 33.

34.     AETN lacks knowledge or information sufficient to form a belief as to the truth of falsity of the allegations in Paragraph 34 and on that basis denies them.

35.     AETN admits, upon information and belief, that a scene from the Documentary was filmed with W.W.H. and her father in Florida.  AETN lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 35 and on that basis, denies them.

36.     AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 36 and on that basis, denies each and every allegation in Paragraph 36.

37.     AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 37 and on that basis, denies each and every allegation in Paragraph 37.

**F. Response to "The Release of the Trailer"**

38.     AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 38 and on that basis, denies each and every allegation in Paragraph 38.

39.     AETN denies that the Talent Agreement was not finalized and denies that it had any obligation to provide notice to Plaintiff regarding the status of the Documentary.  AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in

Paragraph 39 about Plaintiff's subjective beliefs and on that basis, denies them.  AETN admits that on February 2, 2024, a trailer was released for the Documentary (the "Trailer"), and it was announced that the Documentary would air in two parts on February 24 and 25, 2024.  AETN otherwise denies Paragraph 39's characterization of the Trailer and respectfully refers the Court to the Trailer for its content and meaning.  Except as so admitted, AETN denies each and every allegation in Paragraph 39.

40.    Paragraph 40 purports to characterize the Trailer.  AETN respectfully refers the Court to the Trailer for its content and meaning.

41.    Paragraph 41 purports to characterize the Trailer.  AETN respectfully refers the Court to the Trailer for its content and meaning.  AETN further denies the allegations in Paragraph 41 regarding the alleged purpose of the Trailer.

42.    AETN admits that in an interview filmed for the Documentary, W.W.H.'s son disclosed that W.W.H. had received a preliminary diagnosis of alcohol-induced dementia. Paragraph 42 purports to characterize the Trailer and the Documentary and the public reaction to the Trailer and the Documentary.  AETN respectfully refers the Court to the Trailer and the Documentary for its content and meaning.  Except as so referred, AETN denies Plaintiff's characterization of the Trailer and Documentary and the public reaction to the Trailer and the Documentary.  AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations concerning Plaintiff's reaction to the Trailer and on that basis denies them.

43.    Paragraph 43 purports to characterize the Trailer and the Documentary.  AETN respectfully refers the Court to the Trailer and the Documentary for its content and meaning. Except as so referred, AETN denies Plaintiff's characterization of the Trailer and Documentary.  AETN affirmatively alleges that it was its understanding that the Documentary's producers were not able to contact or meet with W.W.H. after April 12, 2023 and were unable to communicate with her

about the Trailer or final Documentary as a consequence of the Guardianship.  AETN denies each and every remaining allegation in Paragraph 43.

44.     Paragraph 44 purports to characterize the Trailer.  AETN respectfully refers the Court to the Trailer for its content and meaning.  Except as so referred, AETN denies Plaintiff's characterization of the Trailer.  AETN further lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 44 about Plaintiff's subjective feelings and on that basis, denies them.  AETN further denies it provided any assurances to Plaintiff regarding how W.W.H. would be depicted in the Documentary.  AETN admits that on February 22, 2024, Plaintiff sought an *ex parte* TRO from the Commercial Division of the New York State Supreme Court, New York County in connection with this action.  AETN respectfully refers the Court to the TRO papers for the full context thereof.  To the extent that the allegations in Paragraph 44 relate to materials under seal in the Guardianship Proceeding, AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 44 and on that basis, denies the allegations about the Guardianship Proceeding orders in Paragraph 44. AETN lacks knowledge or information sufficient to form a belief about the allegations about the TRO motion papers being leaked and on that basis, deny the corresponding allegations in Paragraph 44.  AETN denies each and every remaining allegation in Paragraph 44.

45.     AETN admits that on February 22, 2024, a press release was issued on behalf of W.W.H. publicly announcing her formal diagnosis of FTD and PPA.  AETN respectfully refers the Court to this press release, which can be accessed through the following hyperlink: https://prn.to/3TBi1WT, for its content and meaning.

46.     AETN admits that Defendants moved to vacate the TRO as unconstitutional at the Appellate Division, First Department, and that on February 23, 2024, Justice Moulton of the First Department issued an order granting Defendants' motion to vacate the temporary restraining order

on the grounds that it constituted an impermissible prior restraint on speech.  AETN respectfully refers the Court to the order issued by Justice Moulton for its content and meaning.

### G. Response to "The Release of the Program"

47.    AETN denies that it was aware of any dementia diagnosis until near completion of the Documentary, and respectfully refers the Court to the full text of the February 27, 2024, Fox News article titled "Wendy Williams Documentary Producers Wouldn't Have Filmed Her if They'd Known She Had Dementia," (the "February 27 Fox News Article") cited by Plaintiff in footnote 11 for its full content and meaning.  AETN further affirmatively alleges that in the February 27 Fox News Article, Ford is quoted as saying, truthfully, "of course, if we had known that Wendy had dementia going into it, no one would've rolled a camera."  AETN further denies the Complaint's characterization of Bryant's statement in the February 27 Fox News Article and further affirmatively alleges that it is entirely clear from this report that Bryant's quotation referred to the "first two hours" of the Documentary itself, not of filming for the Documentary.  AETN denies the February Fox News Article's statement that Bryant was a "Lifetime executive" and affirmatively alleges that she is an executive at AETN responsible in part for unscripted programming at Lifetime®.  AETN denies each and every remaining allegation in Paragraph 47.

48.    AETN admits that the Documentary was released on February 24 and 25, 2024, on Lifetime®.  Paragraph 48 purports to characterize the Documentary.  AETN respectfully refers the Court to the Documentary for its content and meaning.  AETN otherwise denies Plaintiff's characterization of the Documentary.

49.    Paragraph 49 purports to characterize the Documentary, in particular by pulling single-frame screenshots out of context.  AETN respectfully refers the Court to the Documentary for its content and meaning.  Except as so referred, AETN denies Plaintiff's characterization of the Documentary.

50.     AETN admits that a "Join *Lifetime* in celebrating Black History Month every day" bug appeared on the screen when the Documentary initially aired.   AETN denies Plaintiff's remaining allegations in Paragraph 50.

51.     AETN denies that it was present during filming, and denies each and every other allegation in Paragraph 51.

52.     AETN respectfully refers the Court to the full text of the February 24, 2024, Variety article titled "Where is Wendy Williams?' Docuseries Is Unsettling and Exploitative: TV Review" cited by Plaintiff in footnote 13, the February 26, 2024, Collider article titled "The Wendy Williams Docuseries Is an Invasion of Health Privacy" cited by Plaintiff in footnote 14,  the February 26, 2024 Collider article titled "The Wendy Williams Docuseries Is an Invasion of Health Privacy" cited by Plaintiff in footnote 15, the February 29, 2024, Black Entertainment Television article titled "Lifetime's 'Where is Wendy Williams' Documentary Should Raise Concerns Over Ethics and Accountability" cited by Plaintiff in footnote 16, the March 1, 2024, article from The Guardian titled "Is the Wendy Williams Docuseries Saving a Vulnerable Person, or Exploiting Her?" cited by Plaintiff in footnote 17, and the March 1, 2024, article from The Cut titled "What Do We Owe Wendy Williams?" cited by Plaintiff in footnote 18 for their full content and meaning. AETN further affirmatively alleges that Paragraph 52 includes a non-representative sample of press regarding the Documentary.  For example, on February 26, 2024, Rolling Stone published an article titled "'Where Is Wendy Williams?' Ends With More Unnerving Questions Left Unanswered," which stated "The series is a devastating watch.  Seeing the vibrant, hilarious, and iconic figure no longer be herself is a tough pill to swallow.  And while stories like Williams' are important to bear witness to, no matter how uncomfortable they make us, it's hard to shake that sinking feeling that she has fewer people who are actually in her corner than she deserves."  The article can be accessed

14

through the following hyperlink: https://bit.ly/4f1v8sL.  AETN denies each and every remaining allegation in Paragraph 52.

53.    AETN admits that the Guardian attempted to prevent the Documentary from being released despite having been aware of and having assented to its production.  AETN otherwise denies each and every allegation in Paragraph 53.

54.    AETN admits that Ford described the Documentary to *The Hollywood Reporter* as capturing W.W.H.'s family's "point of view and illustrating what can happen when one of your family members is put into a guardianship outside of your control" and that "it got to a point where we were more worried about what would happen to Wendy if we stopped filming then if we continued. Because we ultimately knew that we have the control and we can just not air this if it can't be moved into a positive, redeeming direction for her where we can help W.W.H. and hopefully other people."  AETN further affirmatively alleges that the Documentary showed W.W.H. struggling with both apparent alcohol addiction *and* symptoms consistent with what was later diagnosed as FTD and PPA.  Except as so admitted, AETN denies each and every allegation in Paragraph 54.

55.    AETN admits that the Documentary did not include a "disclaimer informing viewers that W.W.H. is suffering from FTD and PPA," admits that this diagnosis was announced after the Documentary was completed and the Trailer had aired, denies that any cited "disclaimer" was required, and denies that "the focus of the Program is alcohol use."  AETN further affirmatively alleges that W.W.H.'s medical condition and the quality of her care are central themes of the Documentary.  AETN otherwise denies Paragraph 55's characterizations of the Documentary and respectfully refers the Court to the Documentary for its content and meaning.  AETN also respectfully refers this Court to the full text of the May 2, 2024, ET Online article titled "'Where Is

Wendy Williams?' Producers Say Wendy's Story Is 'Not Over,'" cited by Plaintiff in footnote 22 for its full content and meaning. AETN denies each and every remaining allegation in Paragraph 55.

56.    AETN admits that Ford stated in the February 26, 2024, Hollywood Reporter Article titled "If We'd Known She Had Dementia, No One Would've Rolled a Camera, Hollywood Reporter" (the "February 26, 2024 Hollywood Reporter Article") that "[the Documentary] was all signed off on. She [the guardian] was communicating with Will Selby, Wendy's manager. Will was the point of contact with the guardian throughout the process and he would have to go to her to get documents signed, to get location agreements, to book her travel out of state. All of these things were things that had to be signed off on by the guardian throughout. So, it's our understanding that she was very aware of everything throughout the process." AETN respectfully refers this Court to the full text of the February 26, 2024, Hollywood Reporter Article cited by Plaintiff in footnote 21 and the May 2, 2024, ET Online article titled "'Where Is Wendy Williams?' Producers Say Wendy's Story Is 'Not Over,'" cited by Plaintiff in footnote 22 for their full content and meaning. AETN lacks knowledge or information sufficient to form a belief as to Mark Ford's subjective knowledge or Plaintiff's subjective knowledge, and on that basis denies the allegations relating thereto. AETN denies each and every remaining allegation in Paragraph 56.

57.    AETN denies each and every allegation in Paragraph 57.

58.    AETN admits that the Documentary is available on various streaming platforms, including Amazon and Apple TV, and that according to Nielsen, the Documentary's linear premieres averaged approximately 1.2 million total viewers in the Live+3 category and that the Documentary's premieres and repeats on liner and some digital during the timeframe February 24–28, 2024 had a reach of approximately 6.2 million viewers, but denies these numbers are a record high. AETN denies that the Documentary is currently available to purchase and download from

various streaming platforms, including Amazon Prime Video and Apple TV.  AETN denies each and every remaining allegation in Paragraph 58.

59.    AETN denies that it engaged in or profited from any "exploitation of W.W.H.," and denies the characterizations of the Documentary in Paragraph 59.  AETN admits that W.W.H. participated in filming sessions on numerous occasions.  Except as so denied and admitted, AETN denies each and every remaining allegation in Paragraph 59.

60.    AETN admits that W.W.H. was known as the "Queen of All Media" and that as an African-American woman in an industry dominated at the top by white men, her accomplishments were hard-fought against significant odds and institutional hurdles.  To the extent the remaining allegations of Paragraph 60 contain legal conclusions, these require no response.  To the extent that such allegations are deemed to be allegations of fact, AETN denies each and every allegation in Paragraph 60.

61.    Paragraph 61 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, AETN denies each and every allegation in Paragraph 61.

## PARTIES

62.    AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 62 of the Amended Complaint and on that basis, denies each and every allegation in Paragraph 62.

63.    AETN admits that Defendant A&E Television Networks, LLC is a Delaware limited liability company headquartered in New York, New York, and that it contains five members: (1) Hearst Communications, Inc., (2) Hearst Holdings, Inc., (3) Hearst LT, Inc., (4) Disney/ABC International Television, Inc., and (5) Cable LT Holdings, Inc.

17

64.     AETN admits that Defendant Lifetime Entertainment Services, LLC is a Delaware limited liability company headquartered in New York, New York, and that its sole member is Defendant A&E Television Networks, LLC.

65.     AETN lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 65, and on that basis denies them.

66.     AETN lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 66, and on that basis denies them.

67.     AETN lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 67, and on that basis denies them.

## JURISDICTION

68.     Paragraph 68 contains legal conclusions that require no response.  To the extent a response is required, A&E Television Networks, LLC does not—at this time and for purposes of this case only—contest that this Court has personal jurisdiction over it.

69.     Paragraph 69 contains legal conclusions that require no response.  To the extent a response is required, Lifetime Entertainment Services, LLC denies that it had any relevant role in the Documentary, but does not—at this time and for purposes of this case only—contest that this Court has personal jurisdiction over it.

70.     Paragraph 70 contains legal conclusions that require no response.  To the extent a response is required, AETN lacks knowledge or information sufficient to form a belief as to whether this Court has personal jurisdiction over eOne and on that basis, denies the allegations of personal jurisdiction in Paragraph 70.

71.     Paragraph 71 contains legal conclusions that require no response.  To the extent a response is required, AETN lacks knowledge or information sufficient to form a belief as to

whether this Court has personal jurisdiction over Creature Films Inc. and on that basis, denies the allegations of personal jurisdiction in Paragraph 71.

72.    Paragraph 72 contains legal conclusions that require no response.  To the extent a response is required, AETN lacks knowledge or information sufficient to form a belief as to whether this Court has personal jurisdiction over Mark Ford and on that basis, denies the allegations of personal jurisdiction in Paragraph 72.

73.    AETN admits that the Talent Agreement provides that the parties thereto agree to consent to personal jurisdiction in courts of New York State, New York County.  Ex. C to Amended Complaint at 8.  AETN denies that the Talent Agreement is invalid. AETN further affirmatively alleges that the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), and jurisdiction over state-law claims is appropriate because the claims arise out of the same operative facts as the federal claims such that they form part of the same case and controversy and fall within the scope of this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

## VENUE

74.    Paragraph 74 contains legal conclusions that require no response.  To the extent a response is required, AETN affirmatively alleges that—at this time and for purposes of this case only—venue is proper in the Federal District Court for the Southern District of New York since a substantial part of the events or omissions giving rise to the claim occurred in this District.

75.    Paragraph 75 contains legal conclusions that require no response.  To the extent a response is required, AETN admits that the Talent Agreement provides that the parties thereto agree to consent to personal jurisdiction in courts of New York State, New York County, and affirmatively alleges that—at this time and for purposes of this case only—venue is proper in the Federal District Court for the Southern District of New York.

76.    Paragraph 76 contains legal conclusions that require no response.  To the extent a response is required, AETN admits that Plaintiff's Complaint seeks damages in excess of $500,000, in addition to equitable and declaratory relief, and contains allegations of misrepresentation, fraud, and business dealings between the parties.  AETN denies Plaintiff is entitled to any relief. To the extent a response is otherwise required, AETN denies each and every remaining allegation in Paragraph 76.

## BACKGROUND

### H. Response to "W.W.H."

77.    AETN admits the allegations of Paragraph 77.

78.    AETN admits that W.W.H appeared on her highly-popular daily talk show in multiple films, numerous television shows, and a Broadway musical.  AETN admits that W.W.H. has published several books and partnered with the home shopping channel HSN (formerly known as the Home Shopping Network) to sell an eponymous line of clothing.  AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 78 and on that basis, denies each and every remaining allegation in Paragraph 78.

79.    AETN respectfully refers this Court to the full text of the August 18, 2022, Vice article titled "The Misrepresentations of Wendy Williams' Undeniable Legacy" cited by Plaintiff in footnote 23 for its full content and meaning.

### I. Response to "W.W.H.'s Tragic and Widely Publicized Cognitive and Physical Decline"

80.    AETN admits that W.W.H. received significant media attention after apparently fainting live on her show in 2017 and affirmatively allege that at the time this was explained to the press as having been the result of overheating and low electrolytes.  AETN further affirmatively alleges that in 2018, W.W.H. revealed that she had been struggling with Graves' disease, and in

20

2019, she revealed on her show that she had been struggling with addiction, had a 24-hour sober coach, and was living in a sober house.[2]  Except as so admitted, AETN denies each and every remaining allegation in Paragraph 80.

81.     AETN admits the allegations of Paragraph 81.

82.     AETN admits that in February of 2018, W.W.H. had announced that she would take a three-week break from her show to focus on health struggles caused by Graves' disease and hyperthyroidism, but denies that W.W.H. announced her lymphedema diagnosis before 2019.

83.     AETN admits that in January 2019 W.W.H. announced that she would be taking an extended break from her show.  AETN admits that the February 23, 2024, OK Magazine Article cited by Plaintiff in footnote 27 reports that W.W.H. was suffering from alcohol-related brain damage in 2019 when she was at a rehabilitation center in Florida.  AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the reporting in these cited articles and on that basis denies it.  AETN respectfully refers this Court to the full text of the January 18, 2019, Hollywood Reporter article titled "Wendy Williams Taking an 'Extended Break' From Talk Show to Focus on Health" cited by Plaintiff in footnote 26 and the February 23, 2024, OK Magazine Article cited by Plaintiff in footnote 27 for their full content and meaning.  AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 83 and on that basis, denies each and every remaining allegation in Paragraph 83.

84.     AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 84 and on that basis, denies each and every allegation in Paragraph 84.

85.     AETN admits the allegations of Paragraph 85.

---

[2] https://www.youtube.com/watch?v=7jSthVD-Aeg; https://www.nytimes.com/2019/03/19/us/wendy-williams-rehab.html

86.    AETN admits that W.W.H. has been the frequent subject of unverifiable rumors and gossip and entertainment reporting based upon anonymous sources.  AETN further affirmatively alleges that as of November 23, 2021, W.W.H.'s brother, Thomas Williams, made a public statement to the press that there was nothing that led him to believe that W.W.H. suffered from dementia and, specifically, that W.W.H. had not been "displaying that type of behavior to the family. . . . We haven't had any alerts like that and I haven't seen anything like that or have had conversations with her that would lead me to believe that."[3]  AETN respectfully refers this Court to the full text of the September 16, 2021, *Page Six* article titled "Wendy Williams Reportedly Taken to Hospital for Mental Health Check" cited by Plaintiff in footnote 29, the *iHeart* Article cited by Plaintiff in footnote 30, and the *Hot97* Article cited by Plaintiff in footnote 31 for their full content and meaning.  AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the reporting in these cited articles and on that basis denies it.

87.    AETN denies the allegations in Paragraph 87.

88.    AETN admits that in September 2021, it was announced that W.W.H. would cancel certain public appearances and that the premiere of the thirteenth season of W.W.H.'s show would be pushed back two weeks.

89.    AETN admits that The Hollywood Reporter published an article on August 17, 2022, which reported on a brief zoom call W.W.H. had participated in with staff for her show, and respectfully refers this Court to the full text of the August 17, 2022, Hollywood Reporter Article cited by Plaintiff in footnotes 32, 33, and 34 for its full content and meaning.  AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the reporting in the cited Article and on that basis, denies it.

---

[3] https://www.the-sun.com/tv/4122668/wendy-williams-dementia-show-hiatus-brother-tommy/

90.     AETN admits that it was reported in October 2021 that W.W.H. would not return for the season premiere of her show and guest hosts would fill in for her.   AETN further affirmatively alleges that the Wendy Williams Show's production company issued a statement at the time that W.W.H. was "making progress, but is experiencing serious complications as a direct result of Graves' Disease and her thyroid condition."[4]

**J. Response to "Guardianship Proceedings in New York"**

91.     Paragraph 91 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, AETN respectfully refers this Court to the full text of Article 81 of the New York Mental Hygiene Law ("Article 81") and its legislative history for an accurate description of the contents thereof.

92.     Paragraph 92 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, AETN respectfully refers this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

93.     Paragraph 93 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, AETN respectfully refers this Court to the full text of the Article 81 and its legislative history for an accurate description of the contents thereof.

94.     Paragraph 94 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, AETN respectfully refers this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

---

[4] https://pagesix.com/2021/10/12/wendy-williams-will-not-return-to-talk-show-next-week/

95.     Paragraph 95 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, AETN respectfully refers this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

96.     Paragraph 96 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, AETN respectfully refers this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

97.     Paragraph 97 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, AETN respectfully refers this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

98.     Paragraph 98 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, AETN respectfully refers this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

99.     Paragraph 99 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, AETN respectfully refers this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

100.    Paragraph 100 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, AETN respectfully refers this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

101.    Paragraph 101 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, AETN respectfully refers this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

24

102.    Paragraph 102 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, AETN respectfully refers this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

103.    Paragraph 103 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, AETN respectfully refers this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

104.    Paragraph 104 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, AETN respectfully refers this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

105.    Paragraph 105 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, AETN respectfully refers this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

106.    Paragraph 106 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, AETN respectfully refers this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

**K. Response to "The W.W.H. Guardianship Proceeding for W.W.H."**

107.    Paragraph 107 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  AETN respectfully refers the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 107 relate to materials under seal in the

Guardianship Proceeding, AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 107 and on that basis, denies each and every allegation in Paragraph 107.

108.    Paragraph 108 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  AETN respectfully refers the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 108 relate to materials under seal in the Guardianship Proceeding, AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 108 and on that basis, denies each and every allegation in Paragraph 108.

109.    Paragraph 109 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  AETN respectfully refers the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 109 relate to materials under seal in the Guardianship Proceeding, AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 109 and on that basis, denies each and every allegation in Paragraph 109.  AETN admits that W.W.H.'s attorney L'Shawn Thomas reportedly gave statements to the press regarding the Guardianship Proceeding, including that W.W.H. "doesn't agree with a financial guardian being appointed," and had filed an affidavit stating that Wells Fargo had improperly denied her access to her money.  AETN otherwise respectfully refers the court to the *Hollywood Reporter* story cited in footnote 40 for the full content thereof.

110.    Paragraph 110 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  AETN respectfully refers the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 110 relate to materials under seal in the Guardianship Proceeding, AETN lacks knowledge or information sufficient to form a belief as to

the truth or falsity of the allegations in Paragraph 110 and on that basis, denies each and every allegation in Paragraph 110.

111.    Paragraph 111 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  AETN respectfully refers the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 111 relate to materials under seal in the Guardianship Proceeding, AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 111 and on that basis, denies each and every allegation in Paragraph 111.

112.    Paragraph 112 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  AETN respectfully refers the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 112 relate to materials under seal in the Guardianship Proceeding, AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 112 and on that basis, denies each and every allegation in Paragraph 112.

113.    Paragraph 113 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  AETN respectfully refers the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 113 relate to materials under seal in the Guardianship Proceeding, AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 113 and on that basis, denies each and every allegation in Paragraph 113.

114.    Paragraph 114 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  AETN respectfully refers the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 114 relate to materials under seal in the Guardianship Proceeding, AETN lacks knowledge or information sufficient to form a belief as to

the truth or falsity of the allegations in Paragraph 114 and on that basis, denies each and every allegation in Paragraph 114.

115.    Paragraph 115 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  AETN respectfully refers the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 115 relate to materials under seal in the Guardianship Proceeding, AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 115 and on that basis, denies each and every allegation in Paragraph 115.

116.    Paragraph 116 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  AETN respectfully refers the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 116 relate to materials under seal in the Guardianship Proceeding, AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 116 and on that basis, denies each and every allegation in Paragraph 116.

117.    AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 117 and on that basis, denies each and every allegation in Paragraph 117.

118.    Paragraph 118 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  AETN respectfully refers the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 118 relate to materials under seal in the Guardianship Proceeding, AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 118 and on that basis, denies each and every allegation in Paragraph 118.

119.    Paragraph 119 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  AETN respectfully refers the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 119 relate to materials under seal in the Guardianship Proceeding, AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 119 and on that basis, denies each and every allegation in Paragraph 119.

120.    Paragraph 120 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  AETN respectfully refers the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 120 relate to materials under seal in the Guardianship Proceeding, AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 120 and on that basis, denies each and every allegation in Paragraph 120.

121.    Paragraph 121 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  AETN respectfully refers the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 121 relate to materials under seal in the Guardianship Proceeding, AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 121 and on that basis, denies each and every allegation in Paragraph 121.

122.    Paragraph 122 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  AETN respectfully refers the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 122 relate to materials under seal in the Guardianship Proceeding, AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 122 and on that basis, denies each and every allegation in Paragraph 122.

123.    AETN admits that ███████████████████████████████████

██████████████████████████████ Paragraph 123 otherwise purports to characterize

the pending Guardianship Proceeding pertaining to W.W.H.  AETN respectfully refers the Court

to this proceeding for the full context thereof.

124.    Paragraph 124 purports to characterize the pending Guardianship Proceeding

pertaining to W.W.H.  AETN respectfully refers the Court to this proceeding for the full context

thereof.  To the extent that the allegations in Paragraph 124 relate to materials under seal in the

Guardianship Proceeding, AETN lacks knowledge or information sufficient to form a belief as to

the truth or falsity of the allegations in Paragraph 124 and on that basis, denies each and every

allegation in Paragraph 124.

125.    AETN affirmatively alleges that ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████

126.    AETN lacks knowledge or information sufficient to form a belief as to the truth or

falsity of the allegations in Paragraph 126 and on that basis, denies each and every allegation in

Paragraph 126.

127.    Paragraph 127 purports to characterize the pending Guardianship Proceeding

pertaining to W.W.H.  AETN respectfully refers the Court to this proceeding for the full context

thereof.  To the extent that the allegations in Paragraph 127 relate to materials under seal in the

Guardianship Proceeding, AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 127 and on that basis, denies each and every allegation in Paragraph 127.

128.    Paragraph 128 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  AETN respectfully refers the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 128 relate to materials under seal in the Guardianship Proceeding, AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 128 and on that basis, denies each and every allegation in Paragraph 128.

129.    Paragraph 129 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  AETN respectfully refers the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 129 relate to materials under seal in the Guardianship Proceeding, AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 129 and on that basis, denies each and every allegation in Paragraph 129.

130.    Paragraph 130 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  AETN respectfully refers the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 130 relate to materials under seal in the Guardianship Proceeding, AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 130 and on that basis, denies each and every allegation in Paragraph 130.

131.    Paragraph 131 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  AETN respectfully refers the Court to this proceeding for the full context thereof.

**L. Response to "W.W.H. Continues to Display Troubling Symptoms"**

132.    AETN admits that in February of 2022, it was announced that W.W.H.'s talk show would end.  AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 132 and on that basis, denies each and every remaining allegation in Paragraph 132.

133.    AETN respectfully refers this Court to the full text of the August 17, 2022, Entertainment Weekly article titled "Wendy Williams had to be told several times her show had been canceled, execs say" (the "Entertainment Weekly Article"), cited by Plaintiff in footnote 39 for its full content and meaning.  AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations stemming from this article but affirmatively alleges that the Entertainment Weekly Article reports on W.W.H.'s struggle with Graves' Disease and lymphedema and suggests that W.W.H.'s behavior was partially attributable to alcohol consumption as it reports that "staffers would 'find bottles [of alcohol] up in the ceiling tiles and other weird places in the office'" and that it was "alleged that staff members had sent texts questioning Williams' sobriety to higher-ups, who reportedly had to screen episodes of the show prior to air time to make sure the host was fit for air."  AETN affirmatively alleges that W.W.H.'s spokeswoman, Shawn Zanotti, is quoted in the Entertainment Weekly Article as stating "[i]t has been no secret that Wendy has battled with addiction over the years but at this time Wendy is on the road to recovery and healing herself from her chronic illnesses and her grievances of the past." AETN otherwise denies each and every allegation in Paragraph 133.

134.    AETN respectfully refers this Court to the full text of the August 17, 2022, Hollywood Reporter Article cited by Plaintiff in footnote 40 for its full content and meaning but affirmatively alleges that the August 17, 2022, Hollywood Reporter Article reports on W.W.H.'s struggle with Graves' Disease and lymphedema and suggests that W.W.H.'s behavior was partially

attributable to alcohol consumption as it reports that "staffers would 'find bottles [of alcohol] up in the ceiling tiles and other weird places in the office'" and that it was "alleged that staff members had sent texts questioning Williams' sobriety to higher-ups, who reportedly had to screen episodes of the show prior to air time to make sure the host was fit for air."  AETN affirmatively alleges that W.W.H.'s spokeswoman, Shawn Zanotti, is quoted in the August 17, 2022, Hollywood Reporter Article as stating "[i]t has been no secret that Wendy has battled with addiction over the years but at this time Wendy is on the road to recovery and healing herself from her chronic illnesses and her grievances of the past."  AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations stemming from this article and on that basis, AETN denies such allegations in Paragraph 134.  AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 134 and on that basis, denies each and every remaining allegation in Paragraph 134.

135.    AETN respectfully refers this Court to the full text of the August 3, 2022, OK Magazine article titled "Wendy Williams Appears to Nap Next to Filled-to-the-Brim Champaigne Glass at Upscale NYC Store," cited by Plaintiff in footnote 42 and the August 1, 2022, Sanda Rose article titled "Fan Video Shows Wendy Williams In Her Car 'Completely Out of It,'" cited by Plaintiff in footnote 43 for their full content and meaning.  AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations stemming from this article and on that basis, AETN denies such allegations in Paragraph 135.  AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph and on that basis, denies each and every remaining allegation in Paragraph 135.

**M. Response To "Will Selby, The Wendy Experience, Inc., and the August 2022 Development Shoot"**

136.    AETN admits that Selby is a jeweler and in 2022 was, to AETN's knowledge, acting in the role of W.W.H.'s manager.  AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 136 and on that basis, denies each and every remaining allegation in Paragraph 136.

137.    AETN admits that in 2022, W.W.H. professed her intent to create a podcast and that Selby indicated he was helping W.W.H. with this project.  Except as so admitted, AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding what Selby did or did not tell Plaintiff and on that basis, denies the allegations of Paragraph 137.

138.    AETN admits that as seen in the Documentary, W.W.H. professed her intent to create a podcast and indicated Selby was helping her with this project.  AETN lacks knowledge and information sufficient to form a belief as to the truth or falsity of allegations that the company The Wendy Experience, Inc. had been formed for purposes of this venture and on that basis, denies the corresponding allegations of Paragraph 138.  Except as so admitted, AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding Selby's actions and Plaintiff's knowledge thereof and on that basis, denies the allegations of Paragraph 138.

139.    AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 139, and on that basis denies them.

140.    AETN denies each and every allegation in Paragraph 140.

141.    AETN admits that during the Summer of 2022, the Creature Films Defendants and eOne began working on the development materials and sizzle reel for the Documentary, and affirmatively allege that this project ended up being a continuation of an earlier feature documentary entitled *Wendy Williams: What a Mess* and released on January 30, 2021.  AETN lacks knowledge or information sufficient to form a belief as to what Selby told the Plaintiff

regarding the Documentary but denies that AETN represented to anyone that the Documentary would "cast W.W.H. in a positive light" or that Selby "would have full creative control" over the Documentary.  AETN otherwise denies each and every allegation in Paragraph 141.

142.    AETN admits based upon information and belief that W.W.H. was filmed for a development shoot for the Documentary in the summer of 2022, and admits that the Talent Agreement attached to the Complaint is dated "As of November 30, 2022" and bears an execution date of January 25, 2023.  Except as so admitted, AETN lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 142 and on that basis denies them.

143.    AETN denies that W.W.H. was "in no condition to appear on camera" in August 2022 and denies that she "could not consent to the project."  Indeed, Plaintiff herself admits ███ ███████████████████████████████████████████████  *See* Paragraph 125.  AETN further denies that either of these alleged conditions were "readily apparent" from the Documentary or news reporting from that time.  AETN further affirmatively alleges that in November 23, 2021, W.W.H.'s brother Thomas Williams made a public statement to the press that there was nothing that led him to believe that W.W.H. suffered from dementia and, specifically, that W.W.H. had not been "displaying that type of behavior to the family. . . . We haven't had any alerts like that and I haven't seen anything like that or have had conversations with her that would lead me to believe that."[5] AETN respectfully refers this Court to the full text of the August 17, 2022, Hollywood Reporter Article for its full content and meaning.  AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations stemming from this article and on that basis, AETN denies each and every allegation related to the article in Paragraph 143.  AETN denies each and every remaining allegation in Paragraph 143.

---

[5] https://www.the-sun.com/tv/4122668/wendy-williams-dementia-show-hiatus-brother-tommy/

144.    AETN respectfully refers this Court to the full text of the February 26, 2024, Hollywood Reporter Article titled for its full content and meaning but affirmatively alleges that in the article, Ford addresses W.W.H.'s behavior at the development shoot and explains that "the story that was given to us after that day is that it was a bad day for [W.W.H.] and that alcohol had been involved, and now she was going away [to a treatment facility] and she was going to get that under control, but this should in no way inhibit us from moving forward. And when we did come back, she was better. She was sober and on a better trajectory."  AETN admits upon information and belief that the last time W.W.G. was filmed for the Documentary was April 12, 2023, and except as so admitted denies each and every remaining allegation in Paragraph 144.

145.    AETN respectfully refers this Court to the full text of the February 26, 2024, Hollywood Reporter Article for its full content and meaning and further affirmatively alleges that it is entirely clear from this report that Bryant's quotation referred to the "first two hours" of the Documentary itself, not of filming for the Documentary.  AETN denies each and every remaining allegation in Paragraph 145.

146.    Paragraph 146 purports to characterize the Documentary.  AETN respectfully refers the Court to the Documentary for its content and meaning.  Except as so referred, AETN denies Plaintiff's characterization of the Documentary and further denies that the specific footage referred to "shows that W.W.H. was incapable of providing consent for anything."  AETN denies each and every remaining allegation in Paragraph 146.

147.    AETN admits that it was its understanding that that after filming the development shoot for the Documentary in the summer of 2022, W.W.H. was treated at a residential wellness facility for substance abuse issues.  AETN otherwise lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 147 and on that basis, denies each and every allegation in Paragraph 147.

**N. Response to "The Contract Between The Wendy Experience, Inc. and EOne"**

148.    Paragraph 148 purports to characterize the Talent Agreement.  AETN admits that The Wendy Experience Inc. and eOne executed the Talent Agreement, and further affirmatively allege that W.W.H. also executed the Talent Agreement, and otherwise respectfully refer this Court to the Talent Agreement for its content and meaning.

149.    Paragraph 149 purports to characterize the Talent Agreement.  AETN respectfully refers this Court to the Talent Agreement for its content and meaning.

150.    Paragraph 150 purports to characterize the Talent Agreement and amendments thereto.  AETN respectfully refers this Court to these documents for their content and meaning. Except as so referred, AETN denies Plaintiff's characterization of the Talent Agreement.

151.    Paragraph 151 purports to characterize the Talent Agreement and amendments thereto.  AETN respectfully refers this Court to these documents for their content and meaning. Except as so referred, AETN denies Plaintiff's characterization of the Talent Agreement and amendments thereto.

152.    AETN affirmatively alleges that the guardianship had no authority over W.W.H.'s ability to enter into the Talent Agreement at the time it was signed on January 25, 2023, or the Addendum at the time it was signed on February 17, 2023.  AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 152 and on that basis, denies each and every remaining allegation in Paragraph 152.

153.    AETN admits that the Talent Agreement indicates it was executed on January 25, 2023, and that The Wendy Experience, Inc. was a listed party to the Talent Agreement.  To the extent the allegations of Paragraph 153 purport to characterize a signature on the Talent Agreement, AETN respectfully refers the Court to the Talent Agreement itself.

154. AETN admits that the Talent Agreement purports to bear W.W.H.'s signature. AETN denies that the signature on the Talent Agreement "looks nothing like W.W.H.'s signature," and affirmatively alleges that ████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████



Signature from the Talent Agreement

155. AETN denies each and every allegation in Paragraph 155.

## O. Response to "The Guardian's Discovery of the Contract and EOne's False Representations Regarding the Program"

156. AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 156 and on that basis, denies each and every allegation in Paragraph 156.

157. Paragraph 157 purports to characterize the Documentary. AETN admits that it was its understanding that the trip to California referenced in Paragraph 157 was planned by W.W.H. and her publicist Shawn Zanotti, and otherwise respectfully refers the Court to the Documentary for its content and meaning. Except as so admitted and referred, AETN denies Plaintiff's characterization of the Documentary.

158.    AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 158, and on that basis, denies each and every allegation in Paragraph 158.

159.    AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 159 and on that basis denies them, and denies specifically that it was on notice that W.W.H. was unable to consent or that additional approval would be required for the use or release of any footage of W.W.H. in the Documentary.

160.    AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 160 and on that basis, denies each and every remaining allegation in Paragraph 160.

161.    AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 161 and on that basis, denies each and every remaining allegation in Paragraph 161.

162.    AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 162 and on that basis, denies each and every remaining allegation in Paragraph 162.

163.    AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding any alleged representations made by eOne and on that basis denies the allegations in Paragraph 163.  AETN admits that additional filming for the Documentary took place in March and April of 2023.

164.    AETN lacks information sufficient to form a belief as to what Plaintiff did or did not contemplate and on that basis, denies these allegations.  To the extent Paragraph 164 purports to characterize the Documentary, AETN respectfully refers the Court to the Documentary for its

content and meaning.  Except as so referred, AETN denies Plaintiff's characterization of the Documentary.  AETN denies each and every remaining allegation in Paragraph 164.

165.    AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 165 and on that basis, denies each and every allegation in Paragraph 165.

166.    AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 166 and on that basis denies them.

167.    AETN denies knowledge or information sufficient to form a belief as to the full extent of alleged communications between Plaintiff and eOne, and on that basis denies each and every allegation in Paragraph 167 relating thereto.  AETN further denies that "there was no valid contract authorizing the release of the Program or any related footage of W.W.H., or the use of W.W.H.'s name, likeness, image, or voice," and denies that it was ever aware that the Talent Agreement was "void or voidable." AETN further affirmatively alleges that neither Plaintiff's nor W.W.H's authorization were required to release the Documentary or any footage of W.W.H. or to use W.W.H.'s name, likeness, image, or voice in the Documentary.

168.    AETN admits that Plaintiff never communicated directly with it.  AETN lacks knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 168 and on that basis denies them.

169.    AETN denies that W.W.H. lacked capacity to enter into the Talent Agreement or any other similar agreements regarding the Documentary when she entered into them.  Paragraph 169 otherwise purports to characterize the pending Guardianship Proceeding pertaining to W.W.H., and AETN respectfully refers the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 169 relate to materials under seal in the Guardianship Proceeding,

AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 169 and on that basis, denies such allegations in Paragraph 169.

170.    AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 170 regarding W.W.H.'s medical condition and on that basis, denies each and every corresponding allegation in Paragraph 170.  AETN denies each and every remaining allegation in Paragraph 170.

171.    AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 171 and on that basis, denies each and every allegation in Paragraph 171.

172.    AETN admits, upon information and belief, that requests were made to film W.W.H. after May 2023.  AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 172 and on that basis, denies each and every allegation in Paragraph 172.

## P. Response to "W.W.H.'s Diagnosis of Frontotemporal Dementia and Primary Progressive Aphasia"

173.    AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 173 and on that basis, denies each and every allegation in Paragraph 173.

174.    AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 174 and on that basis, denies each and every allegation in Paragraph 174.

175.    AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 175 and on that basis, denies each and every allegation in Paragraph 175.

176.    AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 176 and on that basis, denies each and every allegation in Paragraph 176.

177.    AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 177 and on that basis, denies each and every allegation in Paragraph 177.

178.    AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 178 and on that basis, denies each and every allegation in Paragraph 178.

**Q. Response to "The Release of the Trailer"**

179.    AETN admits that on February 2, 2024, the Trailer was released.  Paragraph 179 purports to characterize the Trailer.  AETN respectfully refers the Court to the Trailer for its content and meaning.

180.    AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 180 and on that basis, denies each and every allegation in Paragraph 180.

181.    Paragraph 181 purports to characterize the Trailer.  AETN respectfully refers the Court to the Trailer for its content and meaning.  Except as so referred, AETN denies Plaintiff's characterization of the Trailer.  AETN further respectfully refers this Court to the February 2, 2024, L.A. Times article titled "Wendy Williams resurfaces in trailer for her Lifetime documentary debuting this month," cited by Plaintiff in Paragraph 181 for its full content and meaning.  AETN otherwise denies each and every remaining allegation in Paragraph 181.

182.    AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 182 and on that basis, denies each and every allegation in Paragraph 182.

183.    AETN admits that the Guardianship Proceeding is sealed.  AETN further admits that an article was published in May 2022 reporting that W.W.H. had been "placed under a financial guardianship" and included statements by W.W.H.'s reported lawyer that the guardianship was unwarranted and improper.  AETN denies each and every remaining allegation in Paragraph 183.

184.    AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 184 and on that basis, denies each and every allegation in Paragraph 184. AETN further affirmatively alleges that the referenced photographs were taken in the context of scenes that were included in the Documentary.

185.    AETN admits that W.W.H. was capable of making successful public appearances during late 2022, further demonstrating that she was not incapacitated at this time.  AETN respectfully refers this Court to the November 23, 2022, L.A. Times Article titled "How's Wendy Williams Doin'?" cited by Plaintiff in footnote 38 for its full content and meaning.  AETN denies each and every remaining allegation in Paragraph 185.

186.    AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations that Plaintiff was not offered an opportunity to view the Documentary before it aired and on that basis, denies this allegation in Paragraph 186.  AETN denies each and every remaining allegation in Paragraph 186.

187.    Paragraph 187 purports to characterize the Trailer.  AETN respectfully refers the Court to the Trailer for its content and meaning.  Except as so referred, AETN denies Plaintiff's characterization of the Trailer.  AETN respectfully refers this Court to the November 23, 2022, L.A. Times article titled "How's Wendy Williams Doin'?" cited by Plaintiff in footnote 48 for its

full content and meaning.  AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 187 and on that basis, denies each and every remaining allegation in Paragraph 187.

188.    AETN admits that Plaintiff did not specifically authorize the release of the Trailer and affirmatively alleges that Plaintiff's authorization was not required to release the Trailer. AETN otherwise denies each and every allegation in Paragraph 188.

189.    Paragraph 189 purports to characterize the Trailer.  AETN respectfully refers the Court to the Trailer for its content and meaning.  Except as so referred, AETN denies Plaintiff's characterization of the Trailer.  AETN denies each and every remaining allegation in Paragraph 189.

190.    Paragraph 190 purports to characterize various news articles.  AETN respectfully refers the Court to these news articles for their content and meaning.  Except as so referred, AETN denies Plaintiff's characterization of the news articles.

191.    AETN admits that W.W.H. was credited as an executive producer on the Documentary, including in promotional materials for the Documentary.  Except as so admitted, AETN denies each and every allegation in Paragraph 191.

192.    AETN admits that on February 22, 2024, two days before the Documentary was to premiere, Plaintiff obtained an *ex parte* temporary restraining order ("TRO") from the Commercial Division of the New York State Supreme Court, New York County.  AETN respectfully refers the Court to the TRO and Plaintiff's affirmation in support of the TRO for its content and meaning.

193.    AETN admits that AETN and eOne filed a motion to vacate the unconstitutional TRO at the Appellate Division, First Department, and on February 23, 2024, less than 24 hours later, Justice Moulton of the First Department issued an order vacating the TRO as an unconstitutional prior restraint.  AETN respectfully refers the Court to the order issued by Justice

Moulton for its content and meaning. AETN denies each and every remaining allegation in Paragraph 193.

194. Paragraph 194 purports to characterize the Affirmation of Mark Ford (the "Ford Affirmation") filed in the Appellate Division, First Department, in support of Defendants' opposition to Plaintiff's TRO. AETN respectfully refers this Court to the Ford Affirmation for its content and meaning. Except as so referred, AETN denies Plaintiff's characterization of the Ford Affirmation. Paragraph 194 purports to characterize the Documentary. AETN respectfully refers the Court to the Documentary for its content and meaning. Except as so referred, AETN denies Plaintiff's characterization of the Documentary. AETN denies each and every remaining allegation in Paragraph 194 and denies specifically that it was made aware of any dementia diagnosis at the onset of filming.

195. AETN denies that there had been any reliable reporting prior to the Documentary being filmed that W.W.H. was suffering from dementia. AETN further denies each and every remaining allegation in Paragraph 195.

196. Paragraph 196 purports to characterize the Ford Affirmation. AETN respectfully refers this Court to the Ford Affirmation for its content and meaning. Except as so referred, AETN denies Plaintiff's characterization of the Ford Affirmation. AETN denies each and every remaining allegation in Paragraph 196.

197. Paragraph 197 purports to characterize Defendants' motion filed in the Appellate Division, First Department in support of Defendants' opposition to Plaintiff's TRO ("Defendants' First Department Motion"). AETN respectfully refers this Court to Defendants' First Department Motion for its content and meaning. Except as so referred and stated, AETN denies Plaintiff's characterization of Defendants' First Department Motion. Paragraph 197 also purports to characterize the pending Guardianship Proceeding pertaining to W.W.H. AETN respectfully refers

the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 197 relate to materials under seal in the Guardianship Proceeding, AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 197 and on that basis, denies each and every allegation in Paragraph 197.  AETN denies each and every remaining allegation in Paragraph 197 and denies specifically that it would be absurd to suggest that Plaintiff's pursuit of this baseless litigation is not in W.W.H.'s best interests.

198.    Paragraph 198 purports to characterize the Documentary.  AETN respectfully refers the Court to the Documentary for its content and meaning.  Except as so referred, AETN denies Plaintiff's characterization of the Documentary.  AETN denies each and every remaining allegation in Paragraph 198.

199.    AETN admits that on February 22, 2024, a press release was issued on behalf of W.W.H. publicly announcing her formal diagnosis of FTD and PPA.  AETN respectfully refers the Court to this press release, which can be accessed through the following hyperlink: https://prn.to/3TBi1WT, for its content and meaning.  Paragraph 199 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  AETN respectfully refers the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 199 relate to materials under seal in the Guardianship Proceeding, AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 199 and on that basis, denies each and every allegation in Paragraph 199.

**R. Response to "The Release of the Program"**

200.    AETN admits that W.W.H.'s FTD diagnosis was not announced until days before the Documentary was scheduled to premiere and that the premiere was not rescheduled after this. Except as so admitted, AETN denies each and every remaining allegation in Paragraph 200.

201.    AETN admits that the Documentary was originally released on Lifetime® on February 24 and 25, 2024, and was available on certain streaming platforms for a limited period of time beginning on February 25 and February 26, 2024.  AETN denies that the Program is currently available for purchase and download through platforms including Amazon Prime Video and Apple TV.  Except as so admitted, AETN denies each and every remaining allegation in Paragraph 201.

202.    AETN admits that the Documentary consisted of four episodes originally aired across two nights. AETN denies that the Documentary totaled four and a half hours without commercials, and affirmatively alleges that the four episodes totaled approximately four and a half hours with commercials. AETN admits that according to Nielsen, the Documentary's linear premieres had an average audience delivery of approximately 1.2 million total viewers per night in the Live+3 category and that the Documentary's premieres and repeats on linear and some digital during the timeframe February 24–28, 2024 had a reach of approximately 6.2 million viewers, but denies these numbers are a record high.  Except as so admitted, AETN denies each and every remaining allegation in Paragraph 202.

203.    Paragraph 203 purports to characterize the Documentary.  AETN respectfully refers the Court to the Documentary for its content and meaning.  Except as so referred, AETN denies Plaintiff's characterization of the Documentary.

204.    Paragraph 204 purports to characterize the Documentary.  AETN respectfully refers the Court to the Documentary for its content and meaning.  Except as so referred, AETN denies Plaintiff's characterization of the Documentary.

205.    Paragraph 205 purports to characterize the Documentary.  AETN respectfully refers the Court to the Documentary for its content and meaning.  Except as so referred, AETN denies Plaintiff's characterization of the Documentary.

206.     Paragraph 206 purports to characterize the Documentary.  AETN respectfully refers the Court to the Documentary for its content and meaning.  Except as so referred, AETN denies Plaintiff's characterization of the Documentary.  AETN respectfully refers this Court to the February 24, 2024, Variety article titled "'Where is Wendy Williams?' Docuseries Is Unsettling and Exploitative" cited by Plaintiff in footnote 50 for its full content and meaning.  AETN denies each and every remaining allegation in Paragraph 206.

207.     Paragraph 207 purports to characterize the Documentary.  AETN respectfully refers the Court to the Documentary for its content and meaning.  Except as so referred, AETN denies Plaintiff's characterization of the Documentary.  AETN denies each and every remaining allegation in Paragraph 207.

208.     AETN respectfully refers this Court to the March 1, 2024, article from The Guardian titled "Is the Wendy Williams Docuseries Saving a Vulnerable Person, or Exploiting Her?" cited by Plaintiff in footnote 51, the February 23, 2024, article from The Daily Mail titled "TV's Ghoulish New Low: Dementia-Hit Wendy Williams is Reduced to a Sideshow Freak as Relatives Crawl into her Fading Spotlight?" cited by Plaintiff in footnote 52, the February 26, 2024, Collider article titled "The Wendy Williams Docuseries Is an Invasion of Health Privacy" cited by Plaintiff in footnote 53, the February 29, 2024, Black Entertainment Television article titled "Lifetime's 'Where is Wendy Williams' Documentary Should Raise Concerns Over Ethics and Accountability?" cited by Plaintiff in footnote 54, the February 25, 2024, Today article titled "Fans React to 'Where is Wendy Williams' Lifetime Doc" cited by Plaintiff in footnote 55,; the February 28, 2024, New York Post article titled "None of Us Should Watch the Heartbreaking Wendy Williams Documentary" cited by Plaintiff in footnote 56 for their full content and meaning.  AETN otherwise denies the allegations of Paragraph 208, and affirmatively alleges that numerous press outlets described the Documentary in positive terms, including a February 26, 2024, *Rolling Stone*

article that stated "stories like Williams' are important to bear witness to, no matter how uncomfortable they make us." The article can be accessed through the following hyperlink: https://bit.ly/4f1v8sL. Except as so stated and referred, AETN denies the allegations of Paragraph 208.

209.    AETN denies each and every allegation in Paragraph 209.

210.    Paragraph 210 purports to characterize the Documentary. AETN respectfully refers the Court to the Documentary for its content and meaning. Except as so referred, AETN denies Plaintiff's characterization of the Documentary. AETN respectfully refers this Court to the cited February 26, 2024, article from The New York Times titled "'Where Is Wendy Williams?': 5 Takeaways From the Documentary" cited by Plaintiff in footnote 51 for its full content and meaning. AETN denies each and every remaining allegation in Paragraph 210.

211.    AETN denies each and every allegation in Paragraph 211.

212.    AETN admits that on February 22, 2024, a press release was issued on behalf of W.W.H. publicly announcing her formal diagnosis of FTD and PPA, and further affirmatively alleges that this announcement came long after the Documentary had been filmed. AETN respectfully refers the Court to the press release, which can be accessed through the following hyperlink: https://prn.to/3TBi1WT, for its content and meaning. AETN otherwise lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 212 about W.W.H.'s formal diagnosis of FTD and PPA and on that basis, denies allegations related to W.W.H.'s diagnosis in Paragraph 212. Paragraph 212 purports to characterize the Documentary. AETN respectfully refers the Court to the Documentary for its content and meaning. Except as so referred, AETN denies Plaintiff's characterization of the Documentary. AETN denies each and every remaining allegation in Paragraph 212.

213.     Paragraph 213 purports to characterize the Documentary.  AETN respectfully refers the Court to the Documentary for its content and meaning.  Except as so referred, AETN denies Plaintiff's characterization of the Documentary.  AETN denies each and every remaining allegation in Paragraph 213.

214.     Paragraph 214 purports to characterize the Documentary.  AETN respectfully refers the Court to the Documentary for its content and meaning.  Except as so referred, AETN denies Plaintiff's characterization of the Documentary.  AETN denies each and every remaining allegation in Paragraph 214.

215.     Paragraph 215 purports to characterize the Documentary.  AETN respectfully refers the Court to the Documentary for its content and meaning.  Except as so referred, AETN denies Plaintiff's characterization of the Documentary, and denies each and every remaining allegation in Paragraph 215.

216.     AETN denies each and every allegation in Paragraph 216.

217.     AETN denies each and every allegation in Paragraph 217.

218.     AETN admits upon information and belief that after their last filming session with W.W.H. on April 12, 2023, producers for the Documentary urged Selby to get W.W.H. further medical care, and that after this date the Creature Films Defendants and eOne were denied access to W.W.H.  AETN further admits upon information and belief that the Creature Films Defendants and eOne inquired about whether W.W.H., after receiving additional care in April and May 2023, had recovered and was healthy enough to film additional footage, and was told no.  AETN respectfully refers this Court to the full text of the February 26, 2024, Hollywood Reporter article for its full content and meaning.  AETN denies Plaintiff's characterization of Mark Ford's statements in the article.  AETN denies each and every remaining allegation in Paragraph 218.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
*Declaratory Judgment*
*(Against EOne and A&E)*

219.     AETN incorporates and repeats as if fully set forth herein its admissions, denials, averrals, and other answers to the allegations set forth in the above Paragraphs.

220.     AETN admits that the Guardianship Proceeding was publicized in May of 2022 and that at that time, it was reported that it was a "financial guardianship" and that W.W.H. claimed that Wells Fargo had engaged in misconduct by initiating it.  Paragraph 220 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  AETN respectfully refers the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 220 relate to materials under seal in the Guardianship Proceeding, AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 220 and on that basis, denies each and every allegation in Paragraph 220.  AETN denies each and every remaining allegation in Paragraph 220.

221.     Paragraph 221 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  AETN respectfully refers the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 221 relate to materials under seal in the Guardianship Proceeding, AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 221 and on that basis, denies each and every allegation in Paragraph 221.

222.     AETN admits that on February 22, 2024, a press release was issued on behalf of W.W.H. publicly announcing her formal diagnosis of FTD and PPA.  AETN respectfully refers the Court to this press release, which can be accessed through the following hyperlink: https://prn.to/3TBi1WT, for its content and meaning.  AETN otherwise lacks knowledge or

information sufficient to form a belief as to the truth or falsity of each and every allegation in Paragraph 222 about W.W.H.'s diagnosis of FTD and PPA and on that basis, denies allegations related to W.W.H.'s diagnosis in Paragraph 222.

223.    Paragraph 223 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  AETN respectfully refers the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 223 relate to materials under seal in the Guardianship Proceeding, AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 223 and on that basis, denies each and every allegation in Paragraph 223.

224.    Paragraph 224 purports to characterize the Talent Agreement.  AETN respectfully refers the Court to the Talent Agreement for its content and meaning.

225.    AETN admits that the Talent Agreement attached to the Complaint is dated November 2022 and bears W.W.H.'s signature dated January 25, 2023, W.W.H.  AETN admits that W.W.H.'s signature also appears on the amendment attached to the Complaint dated February 17, 2023.  AETN denies knowledge or information sufficient to form a belief as when the referenced "additional amendment" was prepared or whether Plaintiff was involved in the Talent Agreement or the creation of the entity The Wendy Experience, Inc., and on that basis denies these allegations.  AETN denies each and every remaining allegation in Paragraph 225.

226.    Paragraph 226 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  AETN respectfully refers the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 226 relate to materials under seal in the Guardianship Proceeding, AETN lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 226 and on that basis, denies each and every allegation in Paragraph 226.  AETN denies Plaintiff's characterization of public reporting when

the Contract was executed, as the relevant reporting at the time only discussed W.W.H.'s financial guardianship.  AETN denies each and every remaining allegation in Paragraph 226.

227.    AETN denies each and every allegation in Paragraph 227.

228.    AETN denies each and every allegation in Paragraph 228.

229.    Paragraph 229 purports to characterize the Talent Agreement.  AETN respectfully refers the Court to the Talent Agreement for its content and meaning.  Except as so referred, AETN denies Plaintiff's characterization of the Talent Agreement.  Paragraph 229 also purports to characterize the Trailer and Documentary.  AETN respectfully refers the Court to the Trailer and Documentary for their content and meaning.  Except as so referred, AETN denies Plaintiff's characterization of the Trailer and Documentary.

230.    AETN denies each and every allegation in Paragraph 230.

231.    AETN admits that the signatures on the February 17, 2023, amendments to the Contract purport to and do belong to W.W.H.  AETN denies each and every remaining allegation in Paragraph 231.

232.    AETN denies each and every allegation in Paragraph 232.

233.    Paragraph 233 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, AETN respectfully refers this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

234.    Paragraph 234 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, AETN denies each and every allegation in Paragraph 234.

235.    Paragraph 235 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, AETN denies each and every allegation in Paragraph 235.

## SECOND CAUSE OF ACTION
*Unjust Enrichment*
*(Against All Defendants)*

236.    AETN incorporates and repeats as if full set forth herein its admissions, denials, averrals, and other answers to the allegations set forth in the above Paragraphs.

237.    AETN admits that according to ratings figures several million people in the United States have viewed at least part of the Documentary, and admits that these figures surpass some of Lifetime®'s other programming.  Except as so admitted, AETN denies each and every allegation in Paragraph 237.

238.    Paragraph 238 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, AETN denies each and every allegation in Paragraph 238.

239.    Paragraph 239 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, AETN denies each and every allegation in Paragraph 239.

240.    Paragraph 240 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, AETN denies each and every allegation in Paragraph 240.

241.    AETN denies each and every allegation in Paragraph 241.

242.    Paragraph 242 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, AETN denies each and every allegation in Paragraph 242.

243.    AETN denies each and every allegation in Paragraph 243.

244.    Paragraph 244 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, AETN denies each and every allegation in Paragraph 244.

245.    Paragraph 245 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, AETN denies each and every allegation in Paragraph 245.

## THIRD CAUSE OF ACTION

*False Endorsement - Lanham Act, 15 U.S.C. § 1125(a)*
*(Against All Defendants)*

246.    AETN incorporates and repeats as if fully set forth herein its admissions, denials, averrals, and other answers to the allegations set forth in the above Paragraphs.

247.    Paragraph 247 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, AETN respectfully refers this Court to the full text of the Lanham Act for an accurate description of the contents thereof.

248.    AETN admits that W.W.H. is a widely recognizable celebrity.

249.    Paragraph 249 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, AETN denies each and every allegation in Paragraph 249.

250.    Paragraph 250 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, AETN denies each and every allegation in Paragraph 250.

251.    Paragraph 251 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, AETN denies each and every allegation in Paragraph 251.

252.    AETN denies each and every allegation in Paragraph 252.

253.    AETN denies each and every allegation in Paragraph 253.

254.    AETN denies each and every allegation in Paragraph 254.

255.    Paragraph 255 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, AETN denies each and every allegation in Paragraph 255.

256.    Paragraph 256 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, AETN denies each and every allegation in Paragraph 256.

257.    Paragraph 257 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, AETN denies each and every allegation in Paragraph 257.

## FOURTH CAUSE OF ACTION
*Fraud*
*(Against All Defendants)*

258.    AETN incorporates and repeats as if fully set forth herein its admissions, denials, averrals, and other answers to the allegations set forth in the above Paragraphs.

259.    AETN lacks knowledge of information regarding what other parties represented to Plaintiff and W.W.H.'s attorneys, and denies that it made any representation "that the Program would showcase W.W.H.'s 'comeback' and portray W.W.H. in a favorable and respectful light,

and would avoid any negative implications or scenes that cast W.W.H. in a damaging light."  On these bases, AETN denies each and every allegation in Paragraph 259.

260.    AETN lacks knowledge of information regarding what other parties represented to Plaintiff and W.W.H.'s attorneys, and denies that it made any representation "that no footage of W.W.H. would be used, publicized, or exploited until after the Guardian had approved amendments to the Contract."  On these bases, AETN denies each and every allegation in Paragraph 260.

261.    Paragraph 261 purports to characterize the Documentary.  AETN respectfully refers the Court to the Documentary for its content and meaning.  Except as so referred, AETN denies Plaintiff's characterization of the Documentary.  AETN denies each and every remaining allegation in Paragraph 261.

262.    AETN lacks knowledge of information regarding what other parties represented to Plaintiff and W.W.H.'s attorneys, and denies that it made any false representation.  On these bases, AETN denies each and every allegation in Paragraph 262.

263.    AETN lacks knowledge of information regarding what other parties represented to Plaintiff and W.W.H.'s attorneys, and denies that it made any false representation.  On these bases, AETN denies each and every allegation in Paragraph 263.

264.    AETN lacks knowledge of information regarding what other parties represented to Plaintiff and W.W.H.'s attorneys, and denies that it made any false representation.  On these bases, AETN denies each and every allegation in Paragraph 264.

265.    AETN lacks knowledge of information regarding what other parties represented to Plaintiff and W.W.H.'s attorneys, and denies that it made any false representation.  On these bases, AETN denies each and every allegation in Paragraph 265.

266.    Paragraph 266 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, AETN denies each and every allegation in Paragraph 266.

267.    Paragraph 267 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, AETN denies each and every allegation in Paragraph 267.

### RESPONSE TO PRAYER FOR RELIEF

With respect to the WHEREFORE clauses in the Amended Complaint, AETN denies that Plaintiff is entitled to any relief.

### GENERAL DENIAL

Each numbered paragraph in this Answer responds to the identically numbered paragraph in the Amended Complaint.  AETN denies all allegations, declarations, claims, or assertions in the Amended Complaint that are not specifically admitted in this Answer.  To the extent the headings contained in the Amended Complaint constitute allegations, such allegations are denied.

### AFFIRMATIVE DEFENSES

Further responding to the Amended Complaint, AETN asserts the following defenses. AETN does not admit to having the burden of proof and/or the burden of persuasion with respect to any of these defenses.  By designating the following as defenses, AETN does not in any way waive or limit any defenses that are or may be raised by their denials, allegations, and averments set forth herein.  The defenses are pleaded in the alternative, are raised to preserve AETN's right to assert such defenses, and are raised without prejudice to the AETN's ability to raise other and further defenses. AETN reserves the right to amend, supplement, and/or otherwise modify this Answer, including without limitation the right to assert additional defenses that become known to it through discovery or otherwise.

## FIRST DEFENSE

The Amended Complaint, and each of its claims for relief, is barred because it fails to state a claim upon which relief can be granted.

## SECOND DEFENSE

Each of Plaintiff's alleged claims fails in whole or in part because those claims are barred by the valid Talent Agreement signed by W.W.H., including all amendments thereto.

## THIRD DEFENSE

Plaintiff's unjust enrichment claim fails because AETN's conduct was reasonable, justified and in good faith.

## FOURTH DEFENSE

Plaintiff's unjust enrichment claim fails because any benefits conferred were by informed consent.

## FIFTH DEFENSE

Plaintiff's unjust enrichment claims fail because W.W.H. was adequately compensated for the Documentary.

## SIXTH DEFENSE

Plaintiff's false endorsement claim under the Lanham Act, 15 U.S.C. § 1125(a), fails because it is barred by the doctrine of fair use.

## SEVENTH DEFENSE

Plaintiff's fraud claim fails because there was no material misrepresentation or concealment by AETN.

## EIGHTH DEFENSE

Plaintiff's fraud claim fails because to the extent the claim is based upon conduct or representations by Selby or any other third party, such conduct or representations were not within the

scope of any agency relationship between Selby or that third party, on the one hand, and AETN, on the other hand.

## NINTH DEFENSE

Plaintiff's fraud claim fails because there was no justifiable reliance by Plaintiff on any alleged misrepresentation or concealment (and AETN denies any such misrepresentation or concealment occurred).

## TENTH DEFENSE

Plaintiff's fraud claim fails because AETN lacked scienter, or knowledge of falsity, as to any alleged misrepresentation or concealment (and AETN denies any such misrepresentation or concealment occurred).

## ELEVENTH DEFENSE

Plaintiff's fraud claim fails because AETN did not have the requisite intent to defraud.

## TWELFTH DEFENSE

Plaintiff's claims fail because they are barred by the First Amendment.

## THIRTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

## FOURTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel.

## FIFTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

## SIXTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of ratification.

## SEVENTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of acquiescence.

## EIGHTEENTH DEFENSE

Plaintiff's sought injunctive relief would violate the First Amendment.

## NINETEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because any alleged damages or injuries suffered were not legally or proximately caused by any act of omission on the part of AETN.

## TWENTIETH DEFENSE

Plaintiff's claims are barred, in whole or in part, because any alleged damages are too speculative and imprecise.

## COUNTERCLAIM

Defendants and Counterclaimants A&E Television Networks, LLC and Lifetime Entertainment Services, LLC (collectively, "AETN"),[6] by and through their undersigned attorneys, Davis Wright Tremaine, LLP, hereby join in asserting this anti-SLAPP counterclaim under New York Civil Rights Law §§ 70-a and 76-a against Plaintiff and Counter-Defendant Sabrina Morrissey ("Morrissey").

## INTRODUCTION TO THE COUNTERCLAIM

1.      AETN realleges and incorporates by reference its responses to Paragraphs 1 through 267 of the Amended Complaint in its Answer filed thereto.

2.      On February 20, 2024, Morrissey initiated this action *ex parte*, for the purpose of inhibiting and interfering with the exercise of free speech rights regarding an issue of public concern by AETN.  Specifically, Morrissey initially brought this action against AETN and eOne to unconstitutionally enjoin the publication of the four-part documentary *Where is Wendy Williams?* (the "Documentary"), which captures a raw, honest, and unfiltered window into the life of W.W.H., a well-known public figure, after she was placed under guardianship.  The Documentary reveals how the guardianship system that was purportedly put in place to guard W.W.H.'s interests had isolated her from her family, left her largely alone and unattended in her apartment, exacerbated her self-destructive behavior and mental decline, and failed to prevent her use and/or abuse of alcohol.

---

[6] As noted in its Answer above, Lifetime Entertainment Services, LLC ("LES"), a wholly owned subsidiary of A&E Television Networks, LLC, has been incorrectly named as a defendant in this action. As Plaintiff and Counter-Defendant Sabrina Morrissey had been advised, LES has no employees, LES does not manage or operate the Lifetime® network (on which the Documentary aired), the Lifetime® network is a brand of A&E Television Networks, LLC (not a separate entity), and all employees who provide services to the Lifetime® network are A&E Television Networks, LLC employees.  LES joins in this Counterclaim with A&E Television Networks, LLC without waiver of these and all other defenses, and does not in so doing admit to having been in any way involved in the events giving rise to Morrissey's claims.

3. Morrissey's original Complaint in this action sought a declaration that the On-Camera Talent Agreement executed by W.W.H. for purposes of the Documentary (the "Talent Agreement") is void, and a permanent injunction preventing AETN and eOne from releasing the Documentary or any associated footage. Morrissey obtained and then served eOne and AETN with an *ex parte* temporary restraining order ("TRO") enjoining publication of the Documentary, and an *ex parte* order temporarily sealing the entire action from public view.

4. Counsel for eOne and AETN explained to Morrissey's counsel that they were seeking an unconstitutional prior restraint, provided Morrissey's counsel with case law on point, and requested that Morrissey's counsel "confer with your client and voluntarily withdraw the TRO." Morrissey refused to do.

5. As expected, and within 24 hours of service, the TRO was vacated by Justice Peter Moulton of the New York Appellate Division First Department as an unconstitutional prior restraint.

6. Undeterred, six months later, Morrissey resumed her attempts to impose liability upon the producers and distributors of the Documentary. She filed her Amended Complaint asserting claims for false endorsement under the Lanham Act, 15 U.S.C. § 1125(a), as well as state law claims for a declaratory judgment, unjust enrichment, and fraud, adding Creature Films, Inc. and Mark Ford, as well as non-distributor Lifetime Entertainment Services, LLC, as defendants. Morrissey seeks declaratory and monetary relief, as well as an injunction, e.g., "permanently enjoining Defendants from any further airing, sales, or release of the [Documentary]."

7. Morrissey's claims are without a substantial basis in fact or law. Among other things, the claims are barred by the Talent Agreement W.W.H. executed voluntarily and when she had full legal authority to do so.

63

8.     Despite this, and despite also concededly having known of the Talent Agreement since March 2023,  Morrissey never to AETN's knowledge tried to stop W.W.H. from participating in the Documentary, but continued to approve W.W.H.'s participation in it until April 2023.  To AETN's knowledge, Morrissey also did not seek to cancel or rescind the Talent Agreement until instituting this action on the eve of the Documentary's release.

9.     In short, Morrissey has forced AETN to defend itself against meritless litigation arising from the creation and publication of the Documentary—a categorical exercise of First Amendment-protected speech on a matter of public concern.

10.     The First Amendment enshrines this nation's foundational commitment to the protection of a free press.  Many states have put in place additional protections to ensure that citizens' First Amendment freedoms have the breathing space needed to survive.  One of these safeguards that has developed over recent decades is the adoption of anti-SLAPP laws.  SLAPPs—Strategic Lawsuits Against Public Participation—are lawsuits used to inhibit the exercise of free speech and harass publishers by forcing them to spend money to defend against baseless suits.  These damaging suits chill free speech and the robust exchange of ideas and culture by targeting those who communicate about issues of public interest.  Multiple states—including New York—have passed anti-SLAPP laws to offer redress to targets of SLAPP suits.

11.     Specifically, on November 10, 2020, New York's Governor signed Assembly Bill 5991-A into law, substantially expanding New York's existing anti-SLAPP law to provide greater protection to publishers against frivolous litigation intended to silence their exercise of the rights of free speech and petition about matters of public interest (the "Anti-SLAPP Law").  Specifically, defendants in lawsuits "involving public petition and participation" (*i.e.*, SLAPP suits) may now file an action to recover damages, including costs and attorney's fees, from any person who

"commenced or continued" such an action "without a substantial basis in fact and law . . . ."  N.Y. Civil Rights Law § 70-a(1).

12.     This cause of action for damages provided for in the Anti-SLAPP law is not a procedural mechanism.  It operates independent of the law's procedure for filing an Anti-SLAPP motion.  *See* N.Y. CPLR 3211(g).  Thus, the Anti-SLAPP law established a new, *substantive* right under New York law to recover damages incurred in defending SLAPP suits.

13.     Critically, the Anti-SLAPP law applies to lawsuits targeting "[a]ny communication in a place open to the public or a public forum in connection with an issue of public interest" or "any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest . . . ," with the term "public interest" defined "broadly" to "mean any subject other than a purely private matter."  N.Y. Civil Rights Law § 76-a(1)(a) & (d).  The Anti-SLAPP law also provides for compensatory and punitive damages against plaintiffs who, like the ones in this litigation, commence or continue meritless legal claims for the purpose of "harassing . . . or otherwise maliciously inhibiting the free exercise of speech []."  N.Y. Civil Rights Law §§ 70-a(1(b) and (c).

14.     This is a classic SLAPP suit.  Indeed, Morrissey commenced this lawsuit by seeking an unconstitutional prior restraint that was immediately vacated.  Morrissey then continued her meritless claims against AETN with full knowledge that the claims lack any substantial basis in law or fact, for the sole purpose of maliciously inhibiting AETN and its co-parties' speech by preventing publication of the Documentary.  Indeed, Morrissey's actions only demonstrate the meritless of her suit:  By agreeing to W.W.H.'s participation in the Documentary, Morrissey made clear her position that W.W.H. was competent to do so.  It was only when Morrissey realized that the Documentary would question the quality of her own guardianship of W.W.H. that Morrissey suddenly decided to try to ensure the Documentary would never be released.  Thus, it appears that

Morrisey is misusing her position as a guardian of W.W.H. to silence criticism of her controversial and failed administration of W.W.H.'s guardianship.

15.    Morrissey has caused, and continues to cause, AETN to expend significant costs and fees to defend its First Amendment-protected rights.

16.    Unless Morrissey is held accountable for her tortious activity, the purpose of the Anti-SLAPP Law will be frustrated.

## PARTIES

17.    Counterclaimant A&E Television Networks, LLC is a Delaware limited liability company with its principal place of business in New York.

18.    Counterclaimant Lifetime Entertainment Services, LLC is a Delaware limited liability company with its principal place of business in New York.  LES was not involved in the creation or publication of the Documentary, and its joinder in this Counterclaim is without any admission to the contrary.  LES joins this Counterclaim purely because it was (improperly) named as a defendant in Morrissey's Amended Complaint.

19.    Counter-Defendant Sabrina Morrissey alleges that she is the court-appointed Guardian for W.W.H. pursuant to Article 81 of the Mental Hygiene Law and alleges that W.W.H. is a resident of New York and subject to guardianship in New York.

## JURISDICTION AND VENUE

20.    Insofar as the Court has supplemental subject matter jurisdiction over Morrissey's state law claims, this Court also has supplemental jurisdiction over this Counterclaim pursuant to 28 U.S.C. § 1367.  Both this Counterclaim and Morrissey's state law claims for a declaratory judgment, unjust enrichment, and fraud arise out of the same common nucleus of operative facts— namely the publication of the Documentary.  *See Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.,* 373 F.3d 296, 308 (2d Cir. 2004).  This Counterclaim further arises from the present litigation itself

and the attempts by Morrissey to inhibit the AETN's exercise of the constitutional right of free speech in connection with an issue of public interest, namely the Documentary.

21.    This Court has personal jurisdiction over the parties because they have each asserted claims in this action in courts of New York County, because the Talent Agreement at issue provides that the parties thereto consent to personal jurisdiction in New York, and because Morrissey transacts business within the state of New York in connection with the incidents giving rise to this action.

22.    Venue for this action properly lies in this district court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

23.    The laws of the State of New York apply to the subject matter of this action, because New York has the most significant relationship to this litigation:  Much of the Documentary was filmed in New York, the original action was removed from the Supreme Court of the State of New York and asserted claims under New York law, and New York law applies to the Talent Agreement at the root of this action.

## FACTUAL BACKGROUND

### The Documentary

24.    W.W.H.'s relationship with Creature Films and eOne precedes the Documentary, going back to the 2021 Lifetime® documentary *Wendy Williams: What a Mess* ("*What a Mess*"). *What a Mess* focused on how the longtime gossip maven had herself become the subject of tabloid press surrounding her health and marriage, and how she coped with the role reversal.  *What a Mess* is a "raw, no holds barred look with never-before heard truths about Wendy's notorious feuds with celebrities, her shocking divorce, her childhood and the private darkness she has endured," as well

as a story about "a self-made woman who finds herself at the start of a new life, uncertain of the future, but ready to reclaim her crown."[7]

25.    After *What a Mess*, W.W.H. continued to be the focus of tabloid gossip and entertainment news.  She was delayed returning to host her long-running talk show, with news reports and official statements citing health issues.  In February 2022, it was announced that her talk show would end.

26.    In the fall of 2022, AETN was approached by eOne about a second documentary, which ended up being a continuation of *What a Mess*.  In November 2022, AETN picked up the project for airing on its Lifetime® network.

27.    AETN is aware of an On-Air Talent Agreement between eOne and W.W.H. that bears a date of November 30, 2022 and an execution date by W.W.H. of January 25, 2023 (Ex. C. to the Amended Complaint) (the "Talent Agreement").  That Talent Agreement grants eOne the rights to use and authorize others to use W.W.H.'s likeness; it releases all claims arising from the Documentary as to eOne, AETN, and Creature Films; it explicitly provides that eOne and AETN would retain final creative control over its contents; and it waives any right to injunctive relief.

28.    In her Amended Complaint, Morrissey admits that she was aware of the Talent Agreement at least as of mid-March 2023.  To AETN's knowledge, neither W.W.H., Morrissey, or any other authorized representative of W.W.H. or Morrissey attempted to stop production of the Documentary.   To AETN's knowledge, until the institution of this action, neither W.W.H., Morrissey, or any other authorized representative of W.W.H. or Morrissey purported to rescind or otherwise terminate the Talent Agreement.  Nor, to AETN's knowledge, did W.W.H., Morrissey, or any other authorized representative of W.W.H. or Morrissey assert that W.W.H.'s signature on

---

[7] https://www.mylifetime.com/specials/wendy-williams-what-a-mess

the Talent Agreement was not authentic; question that the Talent Agreement was entered into by The Wendy Experience, Inc. or that payments would be made to that entity under the Talent Agreement; or seek to alter the Talent Agreement's grant of rights to use W.W.H.'s likeness, its release of claims arising from the Documentary, its multiple explicit provisions that eOne and AETN would retain final creative control over its contents, or its waiver of injunctive relief.

29.    To the contrary, and as confirmed in Morrissey's pleadings in this action, *after* seeing the Talent Agreement, she continued to approve W.W.H.'s participation in filming sessions for the Documentary in March and April of 2023.

30.    Because they had no way to contact W.W.H., the Documentary's producers were unable to show W.W.H. the Documentary or its trailer before they aired. Selby, however, was shown the trailer on December 19, 2023, and was enthusiastic about the trailer and offered no suggested changes. Selby was also shown the full Documentary on January 31, 2024, several weeks before it aired. He again expressed a strongly positive reaction and had no suggested changes. Indeed, upon information and belief, Selby found the Documentary to be an important and honest portrayal of W.W.H.'s struggle with alcohol and the guardianship proceeding and believed W.W.H. would want the public to be able to see the Documentary. W.W.H.'s family members also saw the Documentary before it aired, in early February 2024. They, too, approved its content and supported its release. Several of W.W.H.'s family members even participated in press interviews to promote the Documentary.

31.    On February 22, 2024, over ten months after W.W.H. had been last filmed for the Documentary, a press release was issued on behalf of W.W.H. publicly announcing her formal diagnosis of FTD and PPA. This was the first time AETN learned that W.W.H. had been formally diagnosed with this disease.

**Morrissey Seeks to Enjoin Publication of the Documentary on the Eve of Its Release**

32.     Also on February 22, 2024, four days before the Documentary was set to be released, Morrissey initiated this action against AETN and eOne, seeking declaratory relief and a permanent injunction preventing AETN and eOne from releasing the Documentary or any associated footage.

33.     Morrissey sought and obtained an *ex parte* temporary restraining order from the Commercial Division of the New York State Supreme Court, New York County.  Within 24 hours of service, the TRO was vacated by Justice Peter Moulton of the New York Appellate Division First Department as an unconstitutional prior restraint.

### Morrissey Continues Asserting Meritless Claims

34.     Morrissey did not serve the original Complaint filed in connection with this action until June 13, 2024, eight days before her time for service would run.

35.     The next day, Morrissey's attorneys sent a letter outlining supposed additional claims they would assert.  Counsel for AETN and its co-parties sent a response on July 3, 2024, explaining that the asserted claims were without merit.

36.     Morrissey then sought three separate extensions to file an Amended Complaint, to which Defendants consented in each instance.  Finally, on September 16, 2024, Morrissey filed her Amended Complaint, asserting claims for false endorsement under the Lanham Act, 15 U.S.C. § 1125(a), as well as state law claims for a declaratory judgment, unjust enrichment, and fraud.

37.     The Talent Agreement on its face bars each of the claims asserted in Morrissey's Amended Complaint.  Morrissey thus claims that Talent Agreement is void, either because W.W.H. was purportedly incapacitated at the time it was signed, or did not sign it at all.  On that basis, she seeks, among other things, an injunction against "any further airing, sales, or release of the [Documentary] and any associated footage depicting W.W.H.," and awards of compensatory and punitive damages against the Defendants.

38.    Morrissey's claims are meritless.  W.W.H. was not legally incapacitated at the time she executed the Talent Agreement, and, upon information and belief, she did sign it.

39.    Moreover, Morrissey waived any right to seek recission of the Talent Agreement by consistently assenting to it and W.W.H.'s participation in the Documentary.  Morrissey was admittedly aware of the Talent Agreement after it was executed, yet, to AETN's knowledge, never sought to rescind the Talent Agreement and by her own admission continued to approve W.W.H.'s participation in the Documentary notwithstanding.

40.    Further, at the time the Talent Agreement was executed, W.W.H. had authority to enter into contracts on her own.  Morrissey was only W.W.H.'s temporary financial guardian at that time.  ███████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████  Morrissey did not seek cancellation of the Talent Agreement.

41.    Next, while the Amended Complaint alleges that W.W.H.'s signature on the Talent Agreement "does not appear to be genuine," and includes an image of W.W.H.'s "visually distinct" purported "real" signature, it also includes ██████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████  Thus, Morrissey's own allegations indicate W.W.H.'s signature on the Talent Agreement is genuine.

42.    And finally, even assuming *arguendo* there was no Talent Agreement, the claims asserted in the Amended Complaint fail to state a claim or find support for their elements in the facts, and are subject to numerous dispositive defenses.  Among other things, there is no law prohibiting the creation, promotion, or publication of a documentary work about a person—even a person suffering from dementia—without written permission from that person (or her guardian), and any such law would violate the First Amendment.

43.     In sum, Morrissey's claims arise out of and target the creation and publication of a Documentary on a public figure, and are without any substantial basis of fact or law.

## COUNT 1

### (VIOLATION OF N.Y. CIVIL RIGHTS LAW §§ 70-a, 76-a)

44.     Pursuant to New York Civil Rights Law § 70-a, AETN is entitled to maintain a counterclaim to recover its costs, attorneys' fees, compensatory damages, and punitive damages in this action.

45.     This action commenced by Morrissey is an "action involving public petition and participation," as defined by N.Y. Civil Rights Law Section 76-a, because it is based upon a communication in a public forum in connection with an issue of public interest, as well as lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest.  N.Y. Civil Rights Law § 76-a(a)(1)-(2).

46.     The Documentary is a matter of public interest.

47.     Morrissey commenced this action against AETN even though her claims lacked any basis in fact and law and could not be supported by any argument for the extension, modification or reversal of existing law.

48.     The claims asserted in the Amended Complaint are without factual basis for the reasons set out above.

49.     The claims asserted in the Amended Complaint are without legal basis because, among other things, they are precluded as a matter of law by the Talent Agreement.  Even assuming *arguendo* that Morrissey had the right to cancel or modify the Talent Agreement during the period of W.W.H.'s participation in it, she did not exercise such a right, but assented to the agreement.

50.     Moreover, Morrissey's Lanham Act claim is barred by the First Amendment because the Documentary is an expressive work and promotional materials for the Documentary were relevant

to its content and not misleading.

51.     Morrissey has not attempted to offer any arguments for such changes to existing law that would render her claims meritorious.

52.     AETN advised Morrissey that her claims were baseless in a letter of July 3, 2024, but she nevertheless continued to assert them, including by filing the Amended Complaint.

53.     Morrissey was fully aware that her claims against AETN have no substantial basis in law or fact, yet she commenced and continued this action for the purpose of harassing, intimidating, punishing, or otherwise maliciously inhibiting AETN's free exercise of speech.

54.     Accordingly, pursuant to New York Civil Rights Law § 70-a, AETN is entitled to assert a counterclaim and to recover its costs, attorneys' fees, compensatory damages, and punitive damages in this action.

## PRAYER FOR RELIEF

WHEREFORE AETN prays for judgment as follows:

1.     That Morrissey be denied the requested relief she seeks in this action;

2.     That judgment on Morrissey's claims be entered in favor of AETN and against Morrissey; and

3.     That judgment on the Counterclaim be entered in favor of AETN and against Morrissey;

4.     That AETN be awarded its reasonable costs, attorneys' fees, and disbursements pursuant to New York Civil Rights Law Section 70-a or otherwise.

5.     That, pursuant to New York Civil Rights Law Section 70-a, AETN be awarded punitive damages; and

6.     For such other and further relief as the Court may deem just and proper.

Dated:    New York, New York
          November 15, 2024

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: /s/ Rachel F. Strom

Rachel F. Strom
Abigail B. Everdell
Alexandra M. Settelmayer
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone: (212) 489-8230
rachelstrom@dwt.com
abigaileverdell@dwt.com
alexandrasettelmayer@dwt.com

*Attorneys for Defendants A&E Television Networks, LLC*, *Entertainment One Reality Productions, LLC, Lifetime Entertainment Services, LLC, Creature Films, Inc., and Mark Ford*