

Kaplan Martin LLP
156 West 56th Street, Suite 207
New York, New York 10019

Christopher R. Le Coney
(212) 316-9500
cleconey@kaplanmartin.com

November 15, 2024

**VIA CM/ECF**

The Honorable Ronnie Abrams
United States District Judge
Southern District of New York
40 Foley Square, Room 2203
New York, New York 10007

    Re:    *Morrissey v. A&E Television Networks, LLC, et al.*, No. 24 Civ. 7856 (S.D.N.Y.)

Dear Judge Abrams:

    Pursuant to Your Honor's November 14, 2024 Order, ECF 23, we write on behalf of Plaintiff Sabrina E. Morrissey, acting in her capacity as Guardian of W.W.H. (the "Guardian"), to provide additional information in support of Plaintiff's proposed redactions to Defendants' section of the parties' November 13, 2024 joint status letter, ECF 18. The Guardian appreciates the opportunity to provide this supplemental submission regarding the New York Supreme Court's orders in the ongoing state court guardianship proceeding—orders that prohibit the Guardian from publicly disclosing the redacted information concerning that proceeding and W.W.H.'s personal affairs—and to explain how the redacted information implicates compelling privacy interests that justify sealing under *Lugosch v. Pyramid Company of Onondaga*, 435 F.3d 110 (2d Cir. 2006).

    **I.**    **The Supreme Court's Orders Prohibit the Guardian from Publicly Disclosing the Redacted Information**

    In early 2022, W.W.H.'s financial advisors at Wells Fargo documented a number of disturbing incidents that indicated W.W.H. was being exploited. At the time, it had previously been reported in the press that W.W.H., a prominent former talk show host, was suffering from early onset dementia. ECF 1-10 ¶ 6. Against this backdrop, Wells Fargo took the extraordinary step of initiating a guardianship proceeding on its own initiative pursuant to Article 81 of the New York Mental Hygiene Law in Supreme Court, New York County (the "Guardianship Proceeding"), to seek the court appointment of an independent guardian for W.W.H.'s financial affairs. *Id.* ¶ 107. Article 81 of New York's Mental Hygiene Law authorizes New York courts to appoint a guardian to manage

an individual's personal and financial affairs upon clear and convincing evidence that the individual is incapacitated.  *See* N.Y. Ment. Hyg. L. § 81.02(b).

The Guardianship Proceeding concerning W.W.H. has involved an extremely intimate examination of W.W.H.'s mental and physical health, her relationships with her family members, and numerous other private matters, including her finances and her ability to manage her personal affairs.  *Cf. In re Eggleston*, 1 Misc. 3d 910(A) (N.Y. Sup. Ct. 2004) ("Guardianship proceedings under Article 81 of the Mental Hygiene Law are personal and sensitive in nature.").  In order to preserve W.W.H.'s privacy and dignity in this tragic and highly vulnerable stage of her life, the Supreme Court overseeing the Guardianship Proceeding (the "Guardianship Court") ordered on March 25, 2022, that the entire record of the proceeding be sealed and closed to the public. The Supreme Court entered an additional order on April 8, 2022, enjoining all parties to the Guardianship Proceeding, including the Guardian, from disclosing any information concerning the proceeding in any unauthorized context.[1]

We respectfully submit that the Guardianship Court's sealing orders are appropriate and consistent with New York law.[2]  Article 81 of New York's Mental Hygiene Law authorizes the court in a guardianship proceeding to seal the entire record upon a finding of good cause, reflecting the state legislature's judgment that the interest of the public must be balanced against "the nature of the proceedings" and "the privacy of the person alleged to be incapacitated."  N.Y. Ment. Hyg. Law § 81.14(b).  New York courts have repeatedly held that it is appropriate to seal the entire record of a guardianship proceeding where good cause has been shown.  *See, e.g.*, *In re Alexander B.P.*, 165 A.D.3d 801, 802 (2nd Dep't 2018) (affirming order sealing entire record in light of incapacitated person's "privacy interests and the nature of the incapacity involved"); *Matter of Armanno*, 69 Misc. 3d 1212(A) (N.Y. Sup. Ct. 2020) (record of proceeding was sealed); *In re Linda E.*, 55 Misc. 3d 700, 702 (N.Y. Sup. Ct. 2017) (same); *In re K.R.C.*, 4 Misc. 3d 1004(A) (N.Y. Sup. Ct. 2004) (same).

Given the Guardianship Court's sealing orders, the Guardian is legally obligated to make every effort to maintain under seal all information concerning the Guardianship Proceeding.  *See, e.g.*, *Trump v. Engoron*, 222 A.D.3d 505, 505 (1st Dep't 2023) (denying appeal from trial court order holding party in contempt for violating court gag order); *B.W. v. J.W.*, 77 Misc. 3d 1210(A) (N.Y. Sup. Ct. 2022) (holding party in contempt for violating court order prohibiting certain public communications concerning the proceeding).

---

[1] Notwithstanding the Guardianahip Court's sealing orders, the existence of the Guardianship Proceeding was somehow leaked to the media, and as early as May 2022, it was a widely-publicized fact that the court had established a temporary guardianship for W.W.H.

[2] Given the Guardian's legal obligations, the relevant orders from the Guardianship Proceeding have not been attached as exhibits to this filing, but the Guardian is of course happy to submit them to the Court for *in camera* review or according to any other procedure that the Court orders.

### II. The Weak Presumption of Public Access Here is Overcome by W.W.H.'s Strong Privacy Interest in the Redacted Information

Even if the Guardian were not bound by the Guardianship Court's sealing orders (which she is), the proposed redactions are proper because the redacted language reveals sensitive information concerning W.W.H.'s health and the status of the Guardianship Proceeding that meets the standard for sealing under *Lugosch* in the context of a joint status letter. 435 F.3d at 119-120. Courts in this Circuit follow a three-step process in determining whether sealing is appropriate that was most recently summarized by the Second Circuit in *Mirlis v. Greer*. 952 F.3d 51, 59 (2d Cir. 2020). First, the court determines whether the document at issue is a "judicial document," namely, one "that has been placed before the court by the parties and that is relevant to the performance of the judicial function and useful in the judicial process." *Id.* (citation and internal quotation marks omitted). The Guardian does not dispute that the parties' joint status letter is a judicial document, and that determining whether the redactions should be maintained requires proceeding to the next steps in the *Mirlis* analysis.

The second step in the analysis requires "determin[ing] the weight of the presumption of access to that document." *Id.* (citation and internal quotation marks omitted). Here, the weight of the presumption of access is "weak because the [joint letter] bears only a marginal relationship to the performance of Article III functions." *United States v. Amodeo*, 71 F.3d 1044, 1052 (2d Cir. 1995) (reversing in part order unsealing report by court officer). Unlike documents submitted in connection with a dispositive motion, for which the presumption of public access is at its "highest," the parties' joint status letter is at "the low[er] end of the continuum" because it does not "directly affect an adjudication" made pursuant to the Court's Article III power. *See Lugosch*, 435 F.3d at 121-123; *see also Citgo Petroleum Corp. v. Starstone Ins. SE*, No. 21 Civ. 389, 2023 WL 7497858, at *2 (S.D.N.Y. Nov. 9, 2023) (granting only "minimal" weight to presumption of access for joint pretrial order and motion *in limine* brief). The weight of the presumption of access in the instant case is especially weak because the narrowly drawn redactions proposed by the Guardian do not shield from public view information that is essential to understanding the parties' various submissions in the joint letter. *See, e.g.*, *Church & Dwight Co. v. SPD Swiss Precision Diagnostics GmbH*, No. 14 Civ. 585, 2018 WL 4253181, at *2 n.1 (S.D.N.Y. Sept. 5, 2018) (permitting "narrowly tailored" redactions to post-trial submissions); *see also Citgo Petroleum Corp.*, 2023 WL 7497858, at *2 (permitting "limited, targeted" redactions where the public would still "be able to read and understand each document").

Once the Court has determined the weight of the presumption of access afforded to a particular document—or in this case, the information protected by targeted redactions—the Court "must identify all of the factors that counsel against disclosure of the judicial document, and balance those factors against the weight properly accorded the presumption of access." *Mirlis*, 952 F.3d at 61. Here, W.W.H.'s privacy interest in the redacted information that concerns her personal capacity and her affairs "weigh[s] heavily" in favor of sealing. *Id.* It is well established that privacy interests are "[f]oremost among the competing concerns" that will overcome the presumption of access. *Id.*;

*see also* Fed. R. Civ. P. 5.2. While the redacted information could be read as anodyne recitations of certain contractual matters and the timing of the Supreme Court's judicial findings, unredacting the information would in fact reveal highly sensitive, personal information regarding W.W.H. and her condition. The second redaction on page four describes a formal, sensitive, and significant finding made by the Guardianship Court that has not been publicly reported. The remaining redactions are of information that, if exposed to the public, would, by negative inference, disclose the Guardianship Court's assessment of the various mental and physical challenges facing W.W.H. *See* N.Y. Ment. Hyg. L. § 81.02(a)(2) (court may grant a guardian "only those powers which are necessary … [and] constitute the least restrictive form of intervention").[3]

Accordingly, the redacted information goes to the heart of the Guardianship Proceeding and concerns private, sensitive, personal information that the Guardianship Court's sealing orders were designed to protect and that warrant sealing under the law of this Circuit. *See Brown v. Maxwell,* 929 F.3d 41, 48 n.22 (2d Cir. 2019) (permitting limited redactions of summary judgment record despite the strong presumption of public access in that context, including redactions on "deposition responses concerning intimate matters" that were subject to "a strong expectation of continued confidentiality"); *see also Amodeo*, 71 F.3d at 1051 (privacy concerns are a "venerable common law exception to the presumption of access"). Given the sensitivities that attend guardianship proceedings and the type of private, personal information that is often at risk of being directly or indirectly revealed—as would happen with the redactions at issue here—courts in this Circuit have regularly made sealing determinations that accord with those made by the judges overseeing those proceedings. *See, e.g.*, *Wood v. Mut. Redevelopment Houses, Inc.*, No. 14 Civ. 7535, 2021 WL 3036910, at *3 (S.D.N.Y. July 19, 2021) (granting motion to seal documents concerning guardianship proceeding); *A.B.-L. ex rel. Weiss v. N. Shore Cent. Sch. Dist.*, No. 17 Civ. 1586, 2018 WL 1773496, at *3, 4 n.8 (E.D.N.Y. Jan. 26, 2018) (ordering that documents from guardianship proceeding be placed under seal "in light of" the guardianship court's order sealing the entire record of the guardianship proceeding). We submit that on the record before the Court, at this stage of the litigation, maintaining the tailored redactions under seal is justified under *Lugosch*.

For these reasons, we respectfully ask the Court to permit the limited redactions to page four of the parties' joint status letter. As noted in our prior correspondence, Defendants do not oppose Plaintiff's motion for sealing for purposes of the joint letter.

\* \* \*

---

[3] Notwithstanding the intensely personal nature of this information—or perhaps because of it—certain members of the media have relentlessly sought access to the Guardianship Proceeding's records, often causing irreparable harm to W.W.H. and others. W.W.H. former financial adviser, for instance, has received death threats and was forced to hire private security after media reports publicized her association with the Guardianship Proceeding. *See* Francesca Bacardi, *Wendy Williams' financial adviser hires armed security amid death threats*, Page 6, (Nov. 4, 2022) https://pagesix.com/2022/11/04/wendy-williams-adviser-hires-armedsecurity-amid-death-threats/. The fact that certain elements of the media wish to generate sensational coverage over W.W.H.'s tragic circumstances does not alter the privacy interest analysis. *See Mirlis*, 952 F.3d at 63 (courts "have long declined to allow public access simply to cater to a morbid craving for that which is sensational").

Finally, the Guardian notes that Defendants earlier today filed their answers (ECF 27, 29, 31) and the Guardian's original Summons and Verified Complaint (ECF 25-1) and Amended Verified Complaint and supporting exhibits (ECF 25-2, 25-3, 25-4) to this Court's docket under seal without taking a position as to whether the unredacted versions of the documents should remain under seal, *see* ECF 24, 26. Redacted copies of each of these documents are available on the Court's public docket. Pursuant to Rule 5 of Your Honor's Individual Rules and Practices in Civil Cases, the Guardian's letter explaining the basis for sealing the unredacted versions of Defendants' filings is due on Monday, November 18, 2024.

The Guardian takes seriously the guidance provided by the Court in its November 14 Order, particularly with respect to the need to provide sufficient information to permit the Court to "conduct an individualized review" with respect to all sealing requests. *Maxwell*, 929 F.3d at 51. With that instruction in mind, the Guardian respectfully requests that the Court grant two additional days and an additional two pages to the Court's five-page limit for letter motions in order to allow the Guardian to provide the necessary information in support of the proposed redactions to the voluminous materials that were filed today. If this application is granted, the Guardian would be required to file by November 20, 2024, a letter not to exceed seven pages justifying the proposed redactions.

Respectfully submitted,

Christopher R. Le Coney