# EXHIBIT A

Plaintiff Morrissey's February 20, 2024 Summons and Verified
Complaint for Injunctive Relief

# EXHIBIT 1

**FILED UNDER SEAL**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

SABRINA MORRISSEY, acting in her capacity as
Temporary Guardian of W.W.H.,

          *Plaintiff*,

    vs.

A&E TELEVISION NETWORKS, LLC and
ENTERTAINMENT ONE REALITY PRODUCTIONS,
LLC,

          *Defendants*.

---

Index No. 650893/2024

Date Purchased: February 21, 2024

**<u>SUMMONS</u>**

TO THE ABOVE-NAMED DEFENDANT:

  YOU ARE HEREBY SUMMONED to answer the Verified Complaint in this action and to serve a copy of your answer, or, if the Verified Complaint is not served with this summons, to serve a notice of appearance, on plaintiff's attorney within 20 days after service of this summons, exclusive of the date of service (or within 30 days after service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Verified Complaint.

Dated:      New York, New York
            February 21, 2024

                              By: /s/ *Ellen V. Holloman*
                              Ellen V. Holloman
                              Cadwalader, Wickersham & Taft LLP
                              200 Liberty Street
                              New York, New York 10281
                              Telephone: (212) 504-6200
                              Ellen.Holloman@cwt.com

                              *Attorney for Plaintiff Sabrina Morrissey, acting in*
                              *her capacity as Temporary Guardian of W.W.H.*


Defendants' designated address for service of process:

**Entertainment One Reality Productions, LLC**
ATTN: General Counsel
2700 Pennsylvania Avenue, Suite 1000
Santa Monica, CA 90404

**Entertainment One Reality Productions, LLC**
720 14th Street
Sacramento, CA 95814

**A&E Television Networks, LLC**
ATTN: General Counsel
235 East 45th Street
New York, NY 10017

**A&E Television Networks, LLC**
1209 Orange Street
Wilmington, DE 19801

-2-

**FILED UNDER SEAL**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| SABRINA E. MORRISSEY, ESQ., acting in her capacity as Temporary Guardian of W.W.H., <br><br>            Plaintiff, <br><br>       -against- <br><br> A&E TELEVISION NETWORKS, LLC and ENTERTAINMENT ONE REALITY PRODUCTIONS, LLC <br><br>            Defendants. | Index No. 650893/2024 <br><br> **VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF** |

Sabrina Morrissey, Esq., acting in her capacity as Temporary Guardian of W.W.H., files this Complaint for injunctive relief against Defendants A&E Television Networks, LLC ("**A&E Networks**") and Entertainment One Reality Productions, LLC ("**Entertainment One**"), and, upon personal knowledge as to her own conduct and upon information and belief with respect to the conduct of others, alleges the following:

## NATURE OF THE ACTION

1. W.W.H. is a prominent and accomplished individual who has earned her status as an icon in the African American community and beyond through her highly successful multimedia career over the past three decades. Unfortunately, in recent years, serious medical issues have severely diminished W.W.H.'s capacity to maintain her personal and business affairs, necessitating guardianship proceedings.

2. Since March 15, 2022, Sabrina Morrissey, Esq. (the "**Guardian**") has served as W.W.H.'s court-appointed Temporary Guardian of the Personal Needs and Property Management of W.W.H. ██████████████████████████████████████████

**FILED UNDER SEAL**

███████████████████████████████████████████████████

████████████████████████████████

3.    In May 2023, W.W.H. was finally diagnosed by doctors at Weill Cornell Medical Center with frontotemporal lobe dementia and progressive aphasia.

4.    On February 2, 2024, Defendants A&E Television Networks, LLC ("**A&E Networks**") and Entertainment One Reality Productions, LLC ("**Entertainment One**") released a trailer of a purported documentary entitled "Where is Wendy Williams?" on its website (the "**Trailer**"),[1] and announced that the full documentary will be aired by Lifetime Networks (which is owned by Defendant A&E Networks) in two parts on February 24-25, 2024. The Trailer, which appears to contain privately-shot footage of W.W.H. in an obviously disabled state, shamelessly exploits W.W.H. and portrays her in an extremely demeaning and undignified manner, incorrectly states that W.W.H. is "broke," and cruelly implies that W.W.H's disoriented demeanor is due to substance abuse and intoxication.   The Trailer has been disseminated and discussed on YouTube and other social media platforms by multiple gossip vloggers and other users, where it has been watched and commented on by hundreds of thousands if not millions of people.  The Trailer has been viewed on Lifetime Networks' official YouTube channel over 725,000 times.[2]

5.    It is readily apparent that the complete promised documentary would even further portray W.W.H. in a humiliating and demeaning manner, unconscionably exploiting W.W.H.'s condition, and perhaps even disclosing her personal and private medical diagnosis, for perceived

---

[1]    *See Re: Lifetime Announces A Two-Night Documentary Event "Where is Wendy Williams?"*, A+E Networks, https://www.aenetworks.com/article/re-lifetime-announces-a-two-night-documentary-event-where-is-wendy-williams (last visited Feb. 20, 2024). **Error! Hyperlink reference not valid.**
[2]    *See* Lifetime, *Where is Wendy Williams? Official Trailer,* YouTube (Feb. 2, 2024), https://www.youtube.com/watch?v=OjJDhf5ll70  (last visited Feb. 20, 2024)..

**FILED UNDER SEAL**

"entertainment value" and the prurient interest of television viewers.  This blatant exploitation of a vulnerable woman with a serious medical condition who is beloved by millions within and outside of the African American community is disgusting, and it cannot be allowed.

6.      The documentary footage involving W.W.H. was filmed pursuant to a purported contract (as amended, the "**Contract**") between Entertainment One, The Wendy Experience, Inc., and W.W.H., dated as of November 30, 2022, and signed on January 25, 2023, and amended on February 17, 2023 and March 1, 2023.

7.      As a result of her medical condition, W.W.H. lacked capacity when the Contract was purportedly executed, and she remains in that condition.  W.W.H. was not, and is not, capable of consenting to the terms of the Contract.  Although the documentary lists W.W.H. as its "Executive Producer," W.W.H. was, at all relevant times, incapable of managing her own business and personal affairs, and indeed, was placed into a guardianship and under the supervision of this court.  W.W.H. did not, and could not, approve the manner in which she was filmed and portrayed in the Trailer and documentary.

8.      Pursuant to the terms of W.W.H.'s guardianship, the Guardian and the court presiding over W.W.H.'s guardianship would need to approve the documentary and any related contracts before a documentary involving, and containing privately-shot footage of, W.W.H. could be released.  No such approval was sought or provided.

9.      The Guardian, ██████████████████████████████████████ ████████, did not authorize the terms of the Contract.

10.      The Guardian did not authorize the release of the Trailer or the release of the documentary, which the Guardian has not viewed.

3

**FILED UNDER SEAL**

11.    Prior to the release of the Trailer, the planned documentary was described to the Guardian as a project that would be positive and beneficial for W.W.H.'s image.  William Selby, acting as W.W.H.'s manager for the project, made representations to the Guardian that he would have final creative control over the finished product and that the documentary would portray W.W.H. in a positive manner, "like a phoenix rising from the ashes" after her television show, which had been on air for more than a decade, was cancelled due to her medical condition.  Based on these assurances and representations, the Guardian allowed the project to go forward, with the understanding that nothing would be released without review and final approval of the Guardian and the court, who are responsible for W.W.H.'s well-being.

12.    Instead, without prior warning and without seeking or obtaining prior approval from the Guardian or the court, on February 2, 2024, Defendants released the trailer on February 2, 2024, and announced that a full documentary will be released on February 24-25, 2024.  The Guardian was horrified by the release of the trailer and its contents, which falsely depict W.W.H.'s behavior and demeanor as being the result of intoxication rather than the result of her medical condition, which has been diagnosed by doctors at Weill Cornell.  Selby informed the Guardian that he, too, was surprised by the February 2, 2024 release, and that he had not reviewed or approved either the trailer or the documentary prior to the Trailer's release.

13.    The release of the documentary will cause severe and irreparable harm to W.W.H. For decades, W.W.H. had a groundbreaking career in media.  She became well-known for her hard work, energetic persona, and quick wit.  Based on the trailer, it is clear that the documentary exploits W.W.H.'s medical condition to portray her in a humiliating, degrading manner and in a false light.  The release of the documentary would unjustly and severely harm W.W.H.'s hard-won reputation, ruin her legacy, and eviscerate her remaining future earning potential, by portraying

4

**FILED UNDER SEAL**

her as a drunkard and laughingstock.  The release of the documentary would also subject W.W.H. to an onslaught of negative and unwarranted media attention, posing further damage to her health.

14.    Additionally, to the extent that the documentary would disclose W.W.H.'s medical diagnosis or related information concerning her condition and medical care, that information remains private and highly confidential and cannot be disclosed publicly without the prior approval of the judge overseeing the guardianship proceeding.

15.    W.W.H. is contending with very serious medical issues that have rendered her effectively incapacitated.  She currently is under 24-hour medical care and supervision.  She should be allowed to carry out her life and receive required care with peace and dignity, and to work, to the extent she is capable, in a nurturing, supportive and dignified environment.  She was not, and is not, capable of consenting to the terms of the documentary Contract, and no one acting in W.W.H.'s best interest would allow her to be portrayed in the demeaning manner in which she is portrayed in the Trailer for the documentary.

16.    Accordingly, Petitioner respectfully and urgently asks this court for a temporary restraining order, and for preliminary and permanent injunctive relief prohibiting the release of the documentary, and for a declaration that the Contract is void.

17.    The temporary restraining order should be issued *ex parte* because significant prejudice to W.W.H. would result if notice were provided, and further portions of the documentary made public, before injunctive relief can be granted.  Given the content of the Trailer, which portrays W.W.H. in an extraordinarily humiliating and negative manner and falsely suggests that W.W.H.'s declining condition has been caused or exacerbated by the guardianship, it is readily apparent that the documentary's producers had no intentions of seeking the approval of the

**<u>FILED UNDER SEAL</u>**

Guardian and the court, as they were required to do.  Only injunctive relief issued forthwith, without advance notice, will be sufficient to prevent irreparable harm to W.W.H.

**FILED UNDER SEAL**

## PARTIES

18.     Plaintiff is the court-appointed Temporary Guardian for W.W.H. pursuant to Article 81 of the Mental Hygiene Law.  W.W.H. is a resident of New York and subject to guardianship in New York.

19.     Defendant A&E Networks is a Delaware limited liability company headquartered in New York, New York.  A&E Networks is owned 50-50 by Hearst Communications and The Walt Disney Company.

20.     Defendant Entertainment One is a California limited liability company based in Los Angeles, California.  Entertainment One is owned by Entertainment One Holdings, USA, Inc.

## JURISDICTION

21.     The Court has personal jurisdiction over A&E Networks because it is headquartered in New York, New York.

22.     The Court has personal jurisdiction over Entertainment One pursuant to CPLR § 302(1) because it has transacted business within the state of New York in connection with the disputed Contract and documentary at issue in this proceeding.

23.     The Court also has personal jurisdiction over Entertainment One pursuant to CPLR §§ 302(2) and (3) because absent injunctive relief, they will commit torts harming W.W.H., who is a resident of New York and subject to a guardianship in New York.

24.     Additionally, in the disputed Contract, A&E Networks and Entertainment One have agreed to consent to personal jurisdiction in New York.

## VENUE

25.     Venue is proper under CPLR § 503 because Defendant A&E Network is headquartered in New York, New York and W.W.H. is a resident of New York, New York, and

because a substantial part of the events or omissions giving rise to the claim occurred in New York, New York.

26.    Venue is also proper pursuant to CPLR § 501 because the disputed contract provides that A&E Network and Entertainment One agree to be subject to the personal jurisdiction and venue of courts in New York, New York.

27.    Assignment to the Commercial Division is proper pursuant to 22 NYCRR § 202.70(b)(1) because equitable and declaratory relief are requested and because this proceeding concerns claims arising out of business dealings.

## BACKGROUND

### A.  W.W.H.

28.    W.W.H. is a 59-year-old woman and icon in the African American community who is best-known for her groundbreaking career in media.  In the 1990s, W.W.H. rose to prominence as a popular radio host in New York City who was integral in popularizing and promoting the music of dozens of rap, hip hop and R&B artists to a wide audience.  In 2008, W.W.H. pivoted to television and hosted an extremely popular weekday local and then national talk show for over a decade.  As a Black woman who created, executive-produced, and solo-hosted her own long-running, nationally syndicated talk show, W.W.H. shines as a trailblazer and an inspiration. W.W.H. has long been known for her work ethic, her energetic and enthusiastic personality, her unique talent, and her quick-wittedness, which were on display for decades as she hosted shows and playfully roasted celebrities on air on a daily basis.

29.    A 2022 article aptly summed up W.W.H.'s legacy and significant cultural impact as follows:

> ***A genuine trailblazer in multiple media formats*** and the New Jersey stepchild of Howard Stern, Oprah Winfrey, and Joan Rivers,

FILED UNDER SEAL

> 58-year-old Williams' *imprint is found everywhere in pop culture. She is referenced in dozens of rap and R&B songs,* including the seminal Mariah Carey line in 'Touch My Body,' in which Carey croons, ''Cause they be all up in my business like a Wendy interview.' *One of her wigs and a pink bedazzled Ask Wendy microphone,* among other artifacts, *are on view in the Smithsonian's National Museum of American History* television collection, positioning her alongside icons of American television such as *Seinfeld, All In the Family,* and Susan Lucci. *In 2019, she received a star on the Hollywood Walk of Fame.*[3]

30.     In late 2021, sadly due to serious medical issues which have since been diagnosed and are now under treatment, W.W.H. was unable to return to host what would have been the thirteenth season of her daily talk show.  After filling in with guest hosts during the 2021-2022 season, the show was cancelled in 2022.

**B.  The Guardianship**

31.     On February 14, 2022, Wells Fargo Clearing Services, LLC ("**Wells Fargo**") initiated a guardianship proceeding in Supreme Court in New York County. In the guardianship proceeding, Wells Fargo alleged that W.W.H. is an incapacitated person in need of a guardian pursuant to Article 81 of the Mental Hygiene Law.  Following certain interactions with W.W.H. concerning her financial accounts, Wells Fargo became concerned that W.W.H. was being exploited, subject to undue influence, or experiencing dementia.

32.     On March 15, 2022, the court appointed Sabrina Morrissey, Esq. as Temporary Guardian for W.W.H.'s personal needs and financial affairs.

---

[3]     Shamira Ibrahim, *The Misrepresentations of Wendy Williams' Undeniable Legacy*, Vice (Aug. 18, 2022), https://www.vice.com/en/article/pkga98/what-happened-to-wendy-williams-conservatorship-financial-guardianship (emphasis added).

**FILED UNDER SEAL**

33.    ████████████████████████████████████

████████████████████████████████████████████

████████████████████

34.    In May 2023, W.W.H. was evaluated and finally diagnosed with Frontotemporal Lobe Dementia and Progressive Aphasia.  These conditions are progressive and incapacitating. There are currently no known treatments that would cure the progression of these conditions, although a calm, orderly environment and regular routine potentially may be efficacious in slowing a patient's decline.

35.    In the two years since the guardianship commenced, W.W.H.'s medical conditions have continued to progress and her ability to care for herself and look after her business affairs has continued to deteriorate.  W.W.H. now requires professional care to ensure that her daily needs are met, to ensure her safety, well-being, and comfort, and to preserve her dignity.

36.    ████████████████████████████████████

████████████████████████████████████████████

On May 17, 2023, W.W.H. moved to that location, where she is currently receiving care.

37.    ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████  However, when the guardianship orders were issued, W.W.H.'s medical diagnosis had not yet been determined.  Given her diagnosis, it is entirely possible that the court will determine that W.W.H. is "incapacitated" within the meaning of Article 81 of the Mental Hygiene Law at the next hearing in the guardianship proceeding, which is scheduled for June 2024.

**FILED UNDER SEAL**

38.    The guardianship remains in place, and all proceedings and filings with the guardianship proceeding remain under seal.

39.    Although the guardianship proceeding remains fully sealed, it has become public knowledge that Wells Fargo initiated a guardianship proceeding concerning W.W.H. and that the Guardian was appointed.  This information appears to have been leaked to the media by family members of W.W.H. who oppose the guardianship.

40.    W.W.H.'s medical diagnosis of Frontotemporal Lobe Dementia and Progressive Aphasia have not been disclosed publicly and remain confidential, although her condition and mental state remain the subject of significant media speculation, in part fueled by the release of the Trailer.  Public disclosure of her diagnosis or related confidential medical information would require the prior approval and supervision of the judge overseeing the guardianship proceeding.

### C.  The Contract

41.    The Contract pursuant to which the Trailer and documentary were purportedly filmed is titled "Re: UNTITLED WENDY WILLIAMS PROJECT (WT) – ON-CAMERA TALENT AGREEMENT" (as amended, the "**Contract**") and dated November 30, 2022.  The Contract, with amendments and addendum, is annexed hereto as "**Exhibit A**."

42.    The parties to the Contract are Entertainment One and The Wendy Experience, Inc.

43.    The Wendy Experience, Inc. is a New York corporation formed in June 2022 and headquartered in New York, New York.  The registered address for The Wendy Experience, Inc. is The Baldonado Group, P.C., a law firm based in New York, New York.  It is presently unclear who purported to authorize the creation of The Wendy Experience, Inc. or the retention of The Baldonado Group, P.C.  Although the Wendy Experience, Inc. was formed after the appointment of the Guardian, the Guardian did not authorize, and was not involved in its creation and did not

**FILED UNDER SEAL**

learn of the Contract until many months later.  Similarly, The Baldonado Group, P.C. is not among the law firms that have been appointed or approved by the court in the guardianship proceeding, and the Guardian has not authorized the retention of the firm.

44.    The Contract appears to have been signed on January  25, 2023 by the "CEO" of The Wendy Experience, Inc.  The name in the signature is not clearly legible; however, it is highly distinguishable from W.W.H.'s signature.

45.    The Contract provides, *inter alia*, that The Wendy Experience, Inc. will "lend" W.W.H. for filming of a nonfiction project.  The Contract further provides that Entertainment One will produce a nonfiction project for A&E Networks and provides W.W.H. with no ability to exercise any control whatsoever over the final product.

46.    The Contract further included an "Addendum" in which W.W.H. purportedly waives all physician-patient privilege in connection with the filming of the project.  The "Addendum" bears an illegible signature of the "CEO" of The Wendy Experience, Inc., as well as W.W.H.'s signature, dated February 17, 2023.  The Contract also includes a side letter concerning hair and makeup service, purportedly signed by W.W.H. on February 17, 2023.

47.    Finally, the Contract includes an amendment, dated March 1, 2023, with signature lines for W.W.H. and Entertainment One.  It is unclear whether the amendment was executed, as the Guardian was only provided with an unsigned copy.

48.    At all relevant times, W.W.H. lacked, and lacks, the capacity to enter into the Contract or any similar agreements.  ███████████████████████████

████████████████████████████

49.    At all relevant times, W.W.H., due to her medical conditions, is unable to carry out the demands of filming, participating in, or promoting the project as purportedly required by the

<u>**FILED UNDER SEAL**</u>

Contract.  Moreover, W.W.H.'s condition has continued to decline over the past year, and since May 2023, she has been unable to participate in any filming or interviews.

50.    Neither the Guardian nor the court have approved the terms of the Contract.

51.    Given W.W.H.'s medical condition, no reasonable person would consider it in W.W.H.'s best interest to agree to the terms of the Contract.  In particular, the terms of the Contract which purport to wrest W.W.H. of any control over the final product are unacceptable.

**D.  The Trailer and Documentary**

52.    On February 2, 2024, A&E Networks released the Trailer for a documentary entitled "Where is Wendy Williams?" and announced that the documentary will be aired on Lifetime Networks in two segments on February 24-25, 2024.

53.    The Trailer depicts W.W.H. in a humiliating and degrading manner.  A February 2, 2024 *Los Angeles Times* article reporting on the Trailer states:  "***Williams is shown inebriated, struggling to stand, tearful and seemingly suffering memory loss – all while insisting to friends and family she is of sound mind.***"  (Emphasis added.)

54.    It is apparent from the Trailer that the documentary contains further embarrassing, unflattering footage filmed privately while W.W.H. was patently and obviously disabled.

55.    W.W.H.'s Guardian had previously made clear that no such release would be authorized without approval of any finished product by the Guardian and the court.

56.    Additionally, it was abundantly clear to all parties involved that at all relevant times W.W.H. is the subject of guardian proceedings and that approval of the Guardian and the court is required for any contractual or commercial dealings involving W.W.H., including the documentary at issue.  Although the guardianship proceeding is sealed, the fact that W.W.H. is subject to a guardianship had become public knowledge—and has received widespread media coverage.

**FILED UNDER SEAL**

57.     When Selby informed the Guardian that Defendants wished to attend and film W.W.H.'s medical appointments, the Guardian informed Selby that attending or filming of W.W.H.'s medical appointments by outsiders was absolutely inappropriate and not permitted. ███

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████

58.     In June 2023, WWH's doctors advised that due to her medical conditions, she should no longer participate in filming or interviews because the activity would be overstimulating and harmful to her.  Since that time, the Guardian has not permitted any filming or interviews of WWH.

59.     In the months that followed, Selby repeatedly asked whether W.W.H. could participate in additional filming, stating that A&E Networks wanted to film additional episodes. The Guardian made clear that W.W.H.'s medical condition precluded any further filming or interviews.

60.     On February 2, 2024, the Trailer was released without the prior knowledge or consent of W.W.H.'s Guardian.  The Guardian never saw the Trailer before it was released publicly, and the Guardian has not viewed the documentary which A&E Network plans to release on February 24-25, 2024.

61.     Promotional materials for the documentary list W.W.H. as "Executive Producer" of the documentary and William Selby and Kevin Hunter, Jr. (W.W.H.'s son) as producers.

62.     Prior to the release of the Trailer, the Guardian had made clear to Selby that the Guardian's authorization was required before any film project involving W.W.H. could be released.  Instead, to the Guardian's complete shock and surprise, the Trailer was released and the

**FILED UNDER SEAL**

documentary's release date was announced on February 2, 2024, without the Guardian or viewing or approving the product.  Selby asserted that he, too, was unaware that the trailer would be released on February 2, 2024.

63.    Selby had made representations to the Guardian that the planned project would be a positive tribute to WWH and her legacy.  However, the Trailer makes clear that the documentary is anything but positive.  Instead, it cruelly portrays WWH as deeply confused and erratic, all while she is patently disabled due to her medical conditions.  WWH was not, and is not, capable of giving her consent to her portrayal in the demeaning documentary, and the Guardian has not authorized, and would not authorize, the release of the documentary.

64.    Absent immediate injunctive relief preventing the release of the documentary on February 24-25, 2024, WWH will suffer irreparable injury, loss, and damage due to the embarrassing, harmful, degrading, and untruthful nature of the documentary and its use of footage of WWH while patently disabled and incompetent.  WWH will suffer irreparable harm to her reputation, legacy, and her remaining future earning potential.  WWH will also suffer irreparable harm in the form of damaging, intrusive, and unwarranted publicity, which will only impact her negatively and jeopardize her privacy, health and safety.

**FILED UNDER SEAL**

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
*Declaratory Judgment*
*(Against All Defendants)*

65.    Plaintiff repeats and realleges the foregoing paragraphs.

66.    On March 15, 2022, W.W.H. was assigned a Temporary Guardian for her personal needs and financial affairs by a court in the proceeding captioned ████████████████ ████████ and pending in Part 19, New York Supreme Court, New York County.

67.    ████████████████████████████████ ████████████████████████████████████ ██████

68.    In May 2023, W.W.H. was finally diagnosed with Frontotemporal Lobe Dementia and Progressive Aphasia.  These conditions are progressive and incurable.

69.    Given W.W.H.'s diagnosis, it is likely that W.W.H. will be deemed "incapacitated" within the meaning of Article 81 of the Mental Hygiene Law at the next hearing in the guardianship proceeding, which is scheduled for June 2024.

70.    Given W.W.H.'s diagnosis and the symptoms that led to her guardianship proceedings and the diagnosis, it is apparent that W.W.H. has been, at all relevant times, in no condition to consent to the Contract.

71.    The Contract purports to bind W.W.H. to an agreement regarding a nonfiction film project concerning her life to be produced by Defendant Entertainment One for Defendant A&E Networks.

16

**FILED UNDER SEAL**

72.     The Contract is dated November 2022 and was purportedly executed on January 25, 2023, with amendments signed on February 17, 2023 and an additional amendment prepared in March 2023.

73.     When the Contract was purportedly executed, nearly a year had passed since a guardian had been appointed for W.W.H.'s personal needs and financial affairs, making it clear that W.W.H. was in no condition to enter into the Contract. ████████████████████

████████████████████████████████████████████████████

████████████████████████

74.     At all relevant times, W.W.H. was, and remains, incapacitated and incapable of consenting to the terms of the Contract.

75.     Neither the Guardian nor the court in the guardianship proceeding approved the Contract or its terms.

76.     The Contract, which provides that W.W.H. shall have no control over how she is portrayed in Defendants' finished film project, is not in W.W.H.'s best interest—as has been demonstrated by Defendants' release of the Trailer, which shows W.W.H. in an incapacitated state and seeks to humiliate and make a spectacle of her for "entertainment" value.

77.     Pursuant to Article 81.29(d) of the Mental Hygiene Law, "[i]f the court determines that [a] person is incapacitated and appoints a guardian, the court may modify, amend, or revoke . . . any contract, conveyance, or disposition during lifetime or to take effect upon death, made by the incapacitated person prior to the appointment of the guardian if the court finds that the previously executed . . . contract, conveyance, or disposition during lifetime or to take effect upon death, was made while the person was incapacitated . . . ."

**FILED UNDER SEAL**

78.     As a result of Defendants' release of the Trailer on February 2, 2024 and Defendants' threatened release of the documentary on February 24-25, 2024, there exists an actual and justiciable controversy.

79.     Because W.W.H. was, at all relevant times, incapable of consenting to the terms of the Contract, and because neither the Guardian nor the court in the guardianship proceeding approved the Contract, the Contract should be declared null, void, and of no effect.

18

FILED UNDER SEAL

## SECOND CAUSE OF ACTION
*Permanent Injunctive Relief*
*(Against All Defendants)*

80.    Plaintiff repeats and realleges the foregoing paragraphs.

81.    Due to her medical conditions, at all relevant times, W.W.H. has been incapable of consenting to the terms of the Contract.

82.    Neither the Guardian nor the court overseeing the guardianship proceeding approved the Contract, its terms, or the commercial use of any of the footage of W.W.H. filmed during the pendency of the guardianship.

83.    The Contract, which was created long after W.W.H. had been assigned a Guardian for her personal needs and financial affairs, and which provides that W.W.H. shall have no control over the Defendants' finished project, is not in W.W.H.'s best interest.

84.    On February 2, 2024, Defendants caused the Trailer to be released without the prior knowledge or consent of the Guardian or the Court and announced that the documentary will air on Lifetime Networks on February 24-25, 2024.

85.    The Trailer for the documentary, which relies on footage filmed of W.W.H while she was in no condition to provide consent, depicts W.W.H. in a negative, demeaning, and untruthful manner, and has generated significant negative publicity and media interest in W.W.H.

86.    The release of the documentary would unjustly and severely harm W.W.H.'s hard-won reputation, ruin her legacy, and eviscerate her remaining future earning potential by inaccurately portraying her as a drunkard and by cruelly making her an object of ridicule and scorn.

87.    The release of the documentary would also subject W.W.H. to an onslaught of negative and unwarranted media attention, further damaging her fragile health. W.W.H.'s health has already been negatively affected by the impact of the release of the Trailer. The impact of the

**FILED UNDER SEAL**

release of the documentary and the resulting publicity would likely be extremely detrimental to W.W.H's health.

88.    Additionally, to the extent that the documentary would disclose W.W.H.'s medical diagnosis or related information concerning her condition and medical care, that information remains private and highly confidential and cannot be disclosed publicly without the prior approval of the judge overseeing the guardianship proceeding.

89.    No remedy at law and no amount of money damages would adequately compensate the substantial and irreparable harm that will be caused to W.W.H. if Defendants' documentary is released.

90.    The remedy of an injunction is warranted upon consideration of the balance of hardships between W.W.H. and the Defendants.

91.    The injunctive relief sought would not harm the public interest.  There is no legitimate public interest in satisfying the prurient interest of television viewers or in humiliating and ridiculing a woman whose life has been tragically altered by serious medical conditions. Rather, it is in the public interest to safeguard and protect vulnerable individuals, including W.W.H., from exploitation.

92.    Accordingly, Plaintiff is entitled to an injunction permanently—and, pending this court's determination, preliminarily—enjoining Defendants from releasing the documentary or any associated footage.

93.    Plaintiff is further entitled to an *ex parte* injunction temporarily restraining Defendants from releasing the documentary and any associated footage while Plaintiff's request for preliminary and permanent injunctive relief is pending before the Court.  *Ex parte* relief is warranted here given the significant prejudice that would result to W.W.H. if Defendants learn of

**FILED UNDER SEAL**

this action and if the existence of this action and the underlying facts are placed onto a public docket. There already is a tremendous amount of media attention surrounding the Trailer and the media would certainly cover the Guardian's efforts to stop the release of the documentary or any additional footage, as well as the efforts of Defendants to oppose such efforts. The media is likely to seek out W.W.H., attempt to photograph her and elicit reactions and statements from her, further jeopardizing her condition. The Defendants also are likely to attempt to release the documentary and/or additional before the court can issue injunctive relief on notice, mooting the Guardian's efforts to protect W.W.H. Defendants have already released the Trailer without the prior knowledge or authorization of the Guardian or the court and absent an injunction, it is likely that they will rush to release the full documentary or additional portions of it in order to profit off of the perceived "entertainment" value of W.W.H.'s condition.

## PRAYER FOR RELIEF

Plaintiff Sabrina Morrissey, Esq., acting in her capacity as Temporary Guardian for W.W.H., respectfully requests the following relief:

(a) a declaration that the Contract is null, void, and of no affect;

(b) an *ex parte* Order temporarily restraining Defendants from releasing the documentary and any associated footage pending this court's determination of Plaintiff's request for preliminary and permanent injunctive relief;

(c) an injunction preliminarily enjoining Defendants from releasing the documentary and any associated footage pending this court's determination of Defendants' request for permanent injunctive relief;

(d) an injunction permanently enjoining Defendants from releasing the documentary and any associated footage;

**FILED UNDER SEAL**

(e) attorneys' fees and costs; and

(f) such other and further relief as the court deems just and proper.

Dated: February 20, 2024
       New York, New York

CADWALADER, WICKERSHAM & TAFT LLP

By:    /s/ *Ellen V. Holloman*      

Ellen V. Holloman
Amanda L. Devereux
200 Liberty Street
New York, New York 10281
Tel.: (212) 504-6000
Fax: (212) 504-6666
Email: ellen.holloman@cwt.com
Email: amanda.devereux@cwt.com

*Counsel for Plaintiff Sabrina Morrissey*

**FILED UNDER SEAL**

## VERIFICATION

STATE OF NEW YORK    )
                        ) ss.:
COUNTY OF NEW YORK )

Sabrina E. Morrissey, being duly sworn, deposes and says:

Deponent is the Plaintiff in the within action; the contents thereof are true to deponent's

own knowledge, except as to the matters therein stated to be alleged on information and belief,

and that as to these matters, deponent believes it to be true.


                                       Sabrina E. Morrissey


Sworn to before me this 20th
day of February, 2024

Notary Public

> Maria Teresa Raigosa
> NOTARY PUBLIC, STATE OF NEW YORK
> Registration No. 01RA64?2906
> Qualified in Queens County
> Commission Expires 01/31/2026

23