# EXHIBIT D

Defendant Entertainment One Reality Productions, LLC's
November 15, 2024 Verified Answer and Affirmative Defenses
to Plaintiff's Amended Complaint and Counterclaim

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ...........................................................................  x | |
| SABRINA E. MORRISSEY, acting in her capacity as Guardian of W.W.H., | : : : |
| Plaintiff, | : : Case No.: 1:24-cv-07856 |
| - against - | : : |
| A&E TELEVISION NETWORKS, LLC; ENTERTAINMENT ONE REALITY PRODUCTIONS, LLC; LIFETIME ENTERTAINMENT SERVICES, LLC; CREATURE FILMS, INC.; and MARK FORD, | : : : : : : |
| Defendants. | : : |
| ...........................................................................  x | |

### ENTERTAINMENT ONE REALITY PRODUCTIONS, LLC'S VERIFIED ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S AMENDED COMPLAINT AND COUNTERCLAIM

Defendant Entertainment One Reality Productions, LLC ("eOne"), by and through its undersigned counsel, hereby files its Answer and Affirmative Defenses to the Verified Amended Complaint  (the "Amended Complaint") filed by Plaintiff Sabrina E. Morrissey ("Plaintiff"). Purely for purposes of clarity and without admitting any factual allegations therein, eOne uses the same headings and paragraph numbers employed by Plaintiff.

1.      eOne denies the allegations in Paragraph 1 characterizing its purported actions or the basis for this lawsuit.  Indeed, eOne affirmatively alleges that this case arises from the misguided and unjustified efforts by Plaintiff to exceed the scope of her judicial authority over her ward W.W.H., attempt to excuse her own failure to protect her ward, supplant W.W.H.'s wishes with her own, and deny W.W.H. perhaps one of her last chances to exercise her autonomy and honestly reach her fans in exactly the frank and unfiltered manner that was the hallmark of her career—all in an effort to prioritize Plaintiff's own reputation, and deflect scrutiny of her own inaction and indifference.  eOne lacks knowledge or information sufficient to form a belief as to

1

the truth or falsity of the allegations set forth in Paragraph 1 pertaining to the status of and judicial determinations in the guardianship over W.W.H. (the "Guardianship Proceeding") and on that basis denies, generally and specifically, the allegations in Paragraph 1.

2.     eOne admits that it produced a four-part documentary entitled *Where Is Wendy Williams?* (the "Documentary") and the Documentary was distributed by defendant A&E Television Networks, LLC ("AETN").  eOne denies that the Documentary was filmed without a valid contract and without the Guardian's consent.  Instead, eOne affirmatively alleges that the Documentary was created with W.W.H.'s permission and involvement, pursuant to a long-standing relationship with W.W.H. going back over five years and W.W.H.'s On-Camera Talent Agreement that W.W.H. executed voluntarily on January 25, 2023 (the "Talent Agreement"), that it was W.W.H.'s intention that the Documentary be an honest and unfiltered account consistent with prior documentaries eOne produced about her life, and that Plaintiff was aware of the creation of the Documentary and assented to it.  eOne denies W.W.H. only received $82,000 for her participation in the Documentary and, instead, affirmatively alleges that W.W.H., through her company The Wendy Experience, Inc., was paid approximately $400,000 for her participation pursuant to the Talent Agreement.  eOne admits that two days before the Documentary was scheduled to premiere, when it had become clear that the Documentary would raise questions about W.W.H.'s care and treatment under the guardianship, making Plaintiff's own conduct the subject of scrutiny, Plaintiff served eOne and AETN with an *ex parte* temporary restraining order ("TRO"), which was vacated as unconstitutional within 24 hours by Justice Peter Moulton of the New York Appellate Division, First Department. eOne denies Plaintiff's characterization of the Documentary and respectfully refers the Court to the Documentary for its content and meaning and affirmatively alleges that the Documentary captures a raw, honest and unfiltered window into W.W.H.'s life after she was placed under guardianship, showing how her authenticity still shined even as she struggled with her loss

of autonomy, and how the guardianship system purportedly put in place to guard her interests instead had isolated her from her family, left her largely alone and unattended in her apartment, exacerbated her self-destructive behavior and mental decline, and failed to prevent W.W.H's use and/or abuse of alcohol.  eOne denies that Plaintiff was not aware of Defendants' true intention, and instead affirmatively alleges that Plaintiff was fully aware and on notice of the Documentary and the Talent Agreement at least as of April 2023, if not earlier, and never sought to amend or rescind the Talent Agreement or stop the production of the Documentary.  Except as so admitted, eOne denies each and every allegation in Paragraph 2.

### A. Response to "W.W.H. Tragic and Widely Publicized Cognitive and Physical Decline"

3.  eOne admits that W.W.H is a prominent and accomplished broadcaster with a long-standing career as described in Paragraph 3.  eOne respectfully refers this Court to the full text of the August 18, 2022, *Vice* article "The Misrepresentations of Wendy Williams' Undeniable Legacy" cited by Plaintiff in footnote 1 for its full content and meaning.

4.  eOne lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 4 and on that basis, denies each and every allegation in Paragraph 4.

5.  eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 5, including specifically on whether any alleged "difficulties" "captured on camera" were the result of a decline in cognitive functioning or other factors and on that basis, denies each and every allegation in Paragraph 5.

6.  eOne admits that W.W.H. has been a frequent subject of entertainment and gossip news items speculating on her personal life and health, often citing unnamed sources. eOne respectfully refers this Court to the full text of the November 23, 2021, iHeart article titled "Wendy Williams Reportedly Restricted to a Wheelchair" (the "iHeart Article") cited by Plaintiff in footnote 3 and the November 23, 2021, Hot97 article titled "Wendy Williams Is Allegedly Confined To A

Wheelchair And Showing Early Signs Of Dementia,;" the November 22, 2021, Ricky Smiley Morning Show article titled "Wendy Williams Allegedly Is Confined To A Wheelchair & Is Showing Early Signs Of Dementia;" and the November 23, 2021, article from The Hollywood Gossip titled "Wendy Williams Unable to Walk, In Early Stages of Dementia" cited by Plaintiff in footnote 4 for their full content and meaning.  eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations stemming from these articles and on that basis, except as expressly admitted, eOne denies each and every allegation in Paragraph 6.

7.      eOne admits that in February of 2022, it was announced that W.W.H.'s talk show would end.  eOne respectfully refers this Court to the full text of the August 17, 2022, Hollywood Reporter article titled "Inside the Final Days of 'The Wendy Williams Show'" (the "August 17, 2022 Hollywood Reporter Article") cited by Plaintiff in footnote 5 for its full content and meaning. eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations stemming from this article and on that basis, eOne denies each and every remaining allegation based on the article in Paragraph 7.  eOne denies each and every remaining allegation in Paragraph 7.

8.      eOne denies each and every allegation in Paragraph 8.

9.      eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 9 and on that basis, denies each and every allegation in Paragraph 9.

10.     eOne admits that W.W.H. is 60 years old. eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 10 and on that basis, denies each and every allegation in Paragraph 10.  eOne further alleges that if Plaintiff was aware of W.W.H.'s diagnosis, she never shared that diagnosis with the Defendants, and she continued to allow the production of the Documentary to go forward despite that diagnosis.

4

**B. Response to "The W.W.H. Guardianship Proceeding"**

11.     Paragraph 11 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  eOne respectfully refers the Court to this proceeding for the full context thereof. Moreover, to the extent that the allegations in Paragraph 11 relate to materials under seal in the Guardianship Proceeding, eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 11 and on that basis, denies each and every allegation in Paragraph 11.

12.     Paragraph 12 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  eOne respectfully refers the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 12 relate to materials under seal in the Guardianship Proceeding, eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 12 and on that basis, denies each and every allegation in Paragraph 12.

13.     Paragraph 13 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  eOne respectfully refers the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 13 relate to materials under seal in the Guardianship Proceeding, eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 13 and on that basis, denies each and every allegation in Paragraph 13.

14.     Paragraph 14 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  eOne respectfully refers the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 14 relate to materials under seal in the Guardianship Proceeding, eOne lacks knowledge or information sufficient to form a belief as to

the truth or falsity of the allegations in Paragraph 14 and on that basis, denies each and every allegation in Paragraph 14.

15.     Paragraph 15 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  eOne respectfully refers the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 15 relate to materials under seal in the Guardianship Proceeding, eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 15 and on that basis, denies each and every allegation in Paragraph 15.

16.     Paragraph 16 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  eOne respectfully refers the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 16 relate to materials under seal in the Guardianship Proceeding, eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 16 and on that basis, denies each and every allegation in Paragraph 16.  eOne admits that the Guardianship Proceeding was publicized in May of 2022 and that at that time, W.W.H. claimed that Wells Fargo was engaged in misconduct for initiating the Guardianship Proceeding.  eOne denies each and every remaining allegation in Paragraph 16.

## C. Response to "Will Selby, The Wendy Experience, Inc., and the August 2022 Development Shoot"

17.     eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 17 and on that basis, denies each and every remaining allegation in Paragraph 17.

18.     eOne admits that it understood that Will Selby ("Selby") was W.W.H.'s manager. eOne further admits, as is seen on the Documentary, that its understanding was W.W.H. wanted to

create a podcast and Selby was helping her to do so. eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 18 and on that basis, denies each and every remaining allegation in Paragraph 18.

19.     eOne admits it began working on the Documentary during the summer of 2022 and initially filmed a development shoot to create a "sizzle" reel in August 2022 that was shopped to several networks and ultimately picked up by AETN for its Lifetime Network. eOne affirmatively alleges W.W.H. executed a shopping agreement dated July 7, 2022 with eOne (the "Shopping Agreement") on October 17, 2022. eOne affirmatively alleges that the Shopping Agreement provided that W.W.H. would have "mutual approval of all key creative elements concerning the Presentation Materials," and pursuant to this provision, upon information and belief, W.W.H. and Selby reviewed and approved of the sizzle reel and the creative deck for the Documentary on November 2, 2022. eOne admits it worked to produce the Documentary. eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 19 concerning what Selby did or did not tell Plaintiff regarding the development shoot and/or Documentary or whether the Lifetime Networks is part of Lifetime Entertainment Services, LLC and on that basis, denies each and every remaining allegation in Paragraph 19. eOne further affirmatively alleges that the Talent Agreement provides that eOne shall have the "right to edit, cut, rearrange, adapt, dub, revise, modify or otherwise alter the [material created for the Documentary] or any part thereof in its sole discretion" and that "the decision of eOne shall be final in any and all creative, financial, and business matters related to the [Documentary]."

20.     eOne, upon information and belief, denies the allegations of Paragraph 20.

21.     eOne admits that as W.W.H.'s manager, Selby facilitated access to W.W.H. for filming the Documentary.

22.     eOne lacks knowledge or information sufficient to form a belief as to whether any of its employees on the Documentary were aware of the August 17, 2022, Hollywood Reporter Article.  eOne respectfully refers this Court to the full text of the August 17, 2022, Hollywood Reporter Article cited by Plaintiff in footnote 7 for its full content and meaning but note that the August 17, 2022, Hollywood Reporter Article also reports that there had been no diagnosis of dementia or mental incapacity, and includes statements from W.W.H.'s publicist that "It has been no secret that Wendy has battled with addiction over the years but at this time Wendy is on the road to recovery and healing herself from her chronic illnesses and her grievances of the past," and "What we do know is that Wendy has a history of chronic illness that she has publicly spoken about."  eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations stemming from this article and on that basis, eOne denies each and every allegation in Paragraph 22.

23.     eOne admits that W.W.H. had physical impairments at the start of filming the Documentary attributable to her well-publicized struggles with Graves' disease and lymphedema and that W.W.H. also exhibited intermittent signs of what appeared to be alcohol impairment.  eOne denies that it was apparent W.W.H. was suffering from any severe and incapacitating cognitive and physical impairments when it began filming the Documentary.

24.     eOne admits, upon information and belief, that after filming the development shoot for the Documentary, W.W.H. was treated at a residential wellness facility for substance abuse issues.  Except as so admitted, eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 24 and on that basis, denies each and every allegation in Paragraph 24.

**D. Response to "The Contract Between The Wendy Experience, Inc. and EOne"**

25.    eOne admits that it presented W.W.H. with a draft Talent Agreement in late 2022, and further affirmatively alleges that this agreement was reviewed by at least two attorneys for W.W.H., as well as W.W.H.'s manager, Selby, and that they understood it had received Plaintiff's approval, before it was executed. Except as so admitted, eOne denies the allegations in Paragraph 25.

26.    eOne admits that the Talent Agreement was presented to W.W.H.'s representatives and thoroughly reviewed by them after filming the development shoot. Except as so admitted, eOne denies each and every allegation in Paragraph 26.

27.    eOne admits that the Talent Agreement was executed on January 25, 2023, and that The Wendy Experience, Inc. was a party to the Talent Agreement. eOne further affirmatively alleges upon information and belief that the Talent Agreement was signed by W.W.H. and bears her signature. eOne denies that the signature on the Talent Agreement "looks nothing like W.W.H.'s signature" and affirmatively alleges that Exhibit B to Plaintiff's First Amended Complaint shows a court filing that Plaintiff claims was signed                    by W.W.H. two months *after* the Talent Agreement was executed with what appears to be the same signature as the one on the Talent Agreement, as shown below:



Signature from the Talent Agreement



Signature from Exhibit B

eOne lacks knowledge or information sufficient to form a belief as to what individuals or entities control The Wendy Experience, Inc., but admits that its understanding is that The Wendy Williams

Experience, Inc. was controlled by Selby and W.W.H.  Except as so admitted, eOne denies the allegations in Paragraph 27.

28.     eOne denies each and every allegation in Paragraph 28 and notes that Plaintiff claims that W.W.H. had capacity to ██████ a court order two months after she executed the Talent Agreement. *See* Paragraph 125.

29.     Paragraph 29 purports to characterize the Talent Agreement.  eOne respectfully refers the Court to the Talent Agreement for its content and meaning.  eOne denies the remaining allegations in Paragraph 29 and affirmatively allege that they understood based on communications with W.W.H.'s manager and attorneys that Plaintiff had been shown a copy of the Talent Agreement before it was executed.

30.     eOne lacks knowledge or information sufficient to form a belief as to the content of orders issued in the sealed Guardianship Proceedings or the content of conversations between Plaintiff and Mr. Selby and on that basis denies these allegations.  eOne otherwise denies each and every allegation in Paragraph 30.

### E. Response to "The Guardian's Discovery of the Contract and EOne's False Representations Regarding the Program"

31.     eOne denies upon information and belief that any promises were made that the Documentary would not proceed or that it would portray W.W.H. in any specific light, but lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 31 regarding the exact content of the referenced phone calls.  On these bases, eOne denies each and every allegation in Paragraph 31.

32.     eOne admits Plaintiff was aware the Documentary was being created and, upon information and belief, received frequent updates regarding the same.  eOne further affirmatively

alleges that the images above reflect footage that appears in the Documentary. eOne otherwise denies each and every allegation in Paragraph 32.

33.    eOne lacks knowledge or information sufficient to form a belief as to what Selby represented to Plaintiff or her reaction thereto and for that reason, denies each and every allegation in Paragraph 33. eOne denies each and every allegation in Paragraph 33.

34.    eOne denies each and every allegation in Paragraph 34.

35.    eOne admits that the Documentary's crew filmed a scene with W.W.H. and her father in Florida. eOne lacks knowledge or information sufficient to form a belief as to what Selby did or did not discuss with Plaintiff and for that reason denies each and every allegation in Paragraph 35.

36.    eOne denies each and every allegation in Paragraph 36 and denies specifically that Plaintiff had any authority over whether eOne could interview family members of W.W.H. for the Documentary.

37.    eOne denies that W.W.H. traveled to California "for filming." eOne lacks knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph 37 and therefore denies them.

**F. Response to "The Release of the Trailer"**

38.    eOne lacks knowledge or information sufficient to form a belief as to the allegations in Paragraph 38 and on that basis denies them.

39.    eOne denies that the Talent Agreement was not finalized and denies that it had any obligation to provide notice to Plaintiff regarding the status of the Documentary. eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 39 about Plaintiff's subjective beliefs and on that basis, denies them. eOne admits that on February 2, 2024, a trailer was released for the Documentary (the "Trailer"), and it was

announced that the Documentary would air in two parts on February 24 and 25 2024.  eOne otherwise denies Paragraph 39's characterization of the Trailer and respectfully refers the Court to the Trailer for its content and meaning.  Except as so admitted, eOne denies each and every allegation in Paragraph 39.

40.    Paragraph 40 purports to characterize the Trailer.  eOne respectfully refers the Court to the Trailer for its content and meaning.

41.    Paragraph 41 purports to characterize the Trailer.  eOne respectfully refers the Court to the Trailer for its content and meaning.  eOne further denies the allegations in Paragraph 41 regarding the alleged purpose of the Trailer.

42.    eOne admits that on April 7, 2023, well into filming the Documentary, and as the Documentary shows, it was told by W.W.H.'s son that W.W.H. had received a preliminary diagnosis of alcohol-induced dementia.  Paragraph 42 purports to characterize the Trailer and the Documentary and the public reaction to the Trailer and the Documentary.  eOne respectfully refers the Court to the Trailer and the Documentary for its content and meaning.  Except as so referred, eOne denies Plaintiff's characterization of the Trailer and Documentary and the public reaction to the Trailer and the Documentary.  eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 42 concerning Plaintiff's reaction to the Trailer and on that basis denies them.

43.    Paragraph 43 purports to characterize the Trailer and the Documentary. eOne respectfully refers the Court to the Trailer and the Documentary for its content and meaning. Except as so referred, eOne denies Plaintiff's characterization of the Trailer and Documentary. eOne denies each and every remaining allegation in Paragraph 43.

44.    Paragraph 44 purports to characterize the Trailer.  eOne respectfully refers the Court to the Trailer for its content and meaning.  Except as so referred, eOne denies Plaintiff's

characterization of the Trailer.  eOne further lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 44 about Plaintiff's subjective feelings and on that basis, denies them.  eOne further affirmatively alleges that the Talent Agreement specifically states eOne shall have the "right to edit, cut, rearrange, adapt, dub, revise, modify or otherwise alter the [material created for the Documentary] or any part thereof in its sole discretion" and that "the decision of eOne shall be final in any and all creative, financial, and business matters related to the [Documentary]."  eOne admits that on February 22, 2024, Plaintiff sought an *ex parte* TRO from the Commercial Division of the New York State Supreme Court, New York County in connection with this action.  eOne respectfully refers the Court to the TRO papers for the full context thereof.  To the extent that the allegations in Paragraph 44 relate to materials under seal in the Guardianship Proceeding, eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 44 and on that basis, denies the allegations about the Guardianship Proceeding orders in Paragraph 44.  eOne lacks knowledge or information sufficient to form a belief about the allegations about the TRO motion papers being leaked and on that basis, denies the corresponding allegations in Paragraph 44.  eOne denies each and every remaining allegation in Paragraph 44.

45.    eOne admits that on February 22, 2024, a press release was issued on behalf of W.W.H. publicly announcing her formal diagnosis of FTD and PPA.  eOne respectfully refers the Court to this press release, which can be accessed through the following hyperlink: https://prn.to/3TBi1WT, for its content and meaning.

46.    eOne admits that Defendants moved to vacate the TRO as unconstitutional at the Appellate Division, First Department, and that on February 23, 2024, Justice Moulton of the First Department issued an order granting eOne's motion to vacate the temporary restraining order on

the grounds that it constituted an impermissible prior restraint on speech.  eOne respectfully refers the Court to the order issued by Justice Moulton for its content and meaning.

### G. Response to "The Release of the Program"

47.    eOne denies that it was aware of any dementia diagnosis until near completion of the Documentary, and respectfully refers the Court to the full text of the February 27, 2024, Fox News article titled "Wendy Williams Documentary Producers Wouldn't Have Filmed Her if They'd Known She Had Dementia," (the "February 27 Fox News Article") cited by Plaintiff in footnote 11 for its full content and meaning.  eOne further affirmatively alleges that in the February 27 Fox News Article, Ford is quoted as saying, truthfully, "of course, if we had known that Wendy had dementia going into it, no one would've rolled a camera."  eOne further denies the Complaint's characterization of Bryant's statement in the February 27 Fox News Article and further affirmatively alleges that it is entirely clear from this report that Bryant's quotation referred to the "first two hours" of the Documentary itself, not of filming for the Documentary.  eOne denies each and every remaining allegation in Paragraph 47.

48.    eOne admits that the Documentary was released on February 24 and 25, 2024, on the Lifetime Network.  Paragraph 48 purports to characterize the Documentary.  eOne respectfully refers the Court to the Documentary for its content and meaning.  eOne otherwise denies Plaintiff's characterization of the Documentary.

49.    Paragraph 49 purports to characterize the Documentary, in particular by pulling single-frame screenshots out of context.  eOne respectfully refers the Court to the Documentary for its content and meaning.  Except as so referred, eOne denies Plaintiff's characterization of the Documentary.

14

50.     eOne admits that the image in Paragraph 50 appears to show a "Join *Lifetime* in celebrating Black History Month every day" bug appearing on the screen when the Documentary aired. eOne denies Plaintiff's remaining allegations in Paragraph 50.

51.     eOne denies each and every allegation in Paragraph 51.

*52.*     eOne respectfully refers the Court to the full text of the February 24, 2024, Variety article titled "Where is Wendy Williams?' Docuseries Is Unsettling and Exploitative: TV Review" cited by Plaintiff in footnote 13, the February 26, 2024, Collider article titled "The Wendy Williams Docuseries Is an Invasion of Health Privacy" cited by Plaintiff in footnote 14,  the February 26, 2024 Collider article titled "The Wendy Williams Docuseries Is an Invasion of Health Privacy" cited by Plaintiff in footnote 15, the February 29, 2024, Black Entertainment Television article titled "Lifetime's 'Where is Wendy Williams' Documentary Should Raise Concerns Over Ethics and Accountability" cited by Plaintiff in footnote 16, the March 1, 2024, article from The Guardian titled "Is the Wendy Williams Docuseries Saving a Vulnerable Person, or Exploiting Her?" cited by Plaintiff in footnote 17, and the March 1, 2024, article from The Cut titled "What Do We Owe Wendy Williams?" cited by Plaintiff in footnote 18 for their full content and meaning. eOne further affirmatively alleges that Paragraph 52 includes a non-representative sample of press regarding the Documentary.  For example, on February 26, 2024, Rolling Stone published an article titled "'Where Is Wendy Williams?' Ends With More Unnerving Questions Left Unanswered," which stated "The series is a devastating watch.  Seeing the vibrant, hilarious, and iconic figure no longer be herself is a tough pill to swallow.  And while stories like Williams' are important to bear witness to, no matter how uncomfortable they make us, it's hard to shake that sinking feeling that she has fewer people who are actually in her corner than she deserves."  The article can be accessed through the following hyperlink: https://bit.ly/4f1v8sL.  eOne denies each and every remaining allegation in Paragraph 52.

53.     eOne admits that the Guardian attempted to prevent the Documentary from being released despite having been aware of and having assented to its production.  eOne otherwise denies each and every allegation in Paragraph 53.

54.     eOne admits that Ford described the Documentary to *The Hollywood Reporter* as capturing W.W.H.'s family's "point of view and illustrating what can happen when one of your family members is put into a guardianship outside of your control" and that "it got to a point where we were more worried about what would happen to Wendy if we stopped filming then if we continued. Because we ultimately knew that we have the control and we can just not air this if it can't be moved into a positive, redeeming direction for her where we can help W.W.H. and hopefully other people."  eOne further affirmatively alleges that the Documentary showed W.W.H. struggling with both apparent alcohol addiction *and* symptoms consistent with what was later diagnosed as FTD and PPA.  Except as so admitted, eOne denies each and every allegation in Paragraph 54.

55.     eOne admits that the Documentary did not include a "disclaimer informing viewers that W.W.H. is suffering from FTD and PPA," admits that this diagnosis was announced after the Documentary was completed and the Trailer had aired, denies that any cited "disclaimer" was required, and denies that "the focus of the Program is alcohol use."  eOne further affirmatively alleges that W.W.H.'s medical condition and the quality of her care are central themes of the Documentary.  eOne otherwise denies Paragraph 55's characterizations of the Documentary and respectfully refers the Court to the Documentary for its content and meaning.  eOne also respectfully refers this Court to the full text of the May 2, 2024, ET Online article titled "'Where Is Wendy Williams?' Producers Say Wendy's Story Is 'Not Over,'" cited by Plaintiff in footnote 22 for its full content and meaning.  eOne denies each and every remaining allegation in Paragraph 55.

56.     eOne admits that Ford stated in the February 26, 2024, Hollywood Reporter Article titled "If We'd Known She Had Dementia, No One Would've Rolled a Camera, Hollywood Reporter" (the "February 26, 2024 Hollywood Reporter Article") that "[the Documentary] was all signed off on. She [the guardian] was communicating with Will Selby, Wendy's manager. Will was the point of contact with the guardian throughout the process and he would have to go to her to get documents signed, to get location agreements, to book her travel out of state. All of these things were things that had to be signed off on by the guardian throughout. So, it's our understanding that she was very aware of everything throughout the process."  eOne denies this statement was a lie and affirmatively alleges it understood that Plaintiff was aware that the Documentary was being created and received frequent updates regarding the same.  eOne respectfully refers this Court to the full text of the February 26, 2024, Hollywood Reporter Article cited by Plaintiff in footnote 21 and the May 2, 2024, ET Online article titled "'Where Is Wendy Williams?' Producers Say Wendy's Story Is 'Not Over,'" cited by Plaintiff in footnote 22 for their full content and meaning.  eOne lacks knowledge or information sufficient to form a belief as to when Plaintiff learned of W.W.H.'s referenced trip to California, and on that basis denies this allegation. eOne denies each and every remaining allegation in Paragraph 56.

57.     eOne denies each and every allegation in Paragraph 57.

58.     eOne admits the Documentary was made available on various streaming platforms, including Amazon and Apple TV, but denies it is still available on either of these platforms.  eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 58 and on that basis, denies each and every remaining allegation in Paragraph 58.

59.     eOne denies that it engaged in or profited from any "exploitation of W.W.H.," and denies the characterizations of the Documentary in Paragraph 59.  eOne admits W.W.H.

participated in filming sessions on numerous occasions. eOne denies W.W.H. only received around $82,000 and, instead, affirmatively alleges that W.W.H., through her company The Wendy Experience, Inc., was compensated $400,000 for her participation. Except as so denied and admitted, eOne denies each and every remaining allegation in Paragraph 59, and denies specifically that it earned anywhere near "millions" of dollars from the Documentary.

60. eOne admits that W.W.H. was known as the "Queen of All Media" and that as an African-American woman in an industry dominated at the top by white men, her accomplishments were hard-fought against significant odds and institutional hurdles. To the extent the remaining allegations of Paragraph 60 contain legal conclusions, these require no response. To the extent such allegations are deemed to be allegations of fact, eOne denies each and every allegation in Paragraph 60.

61. Paragraph 61 contains legal conclusions that require no response. To the extent such allegations are deemed to be allegations of fact, eOne denies each and every allegation in Paragraph 61.

## PARTIES

62. eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 62 of the Amended Complaint and on that basis, denies each and every allegation in Paragraph 62.

63. eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 63 of the Amended Complaint and on that basis, denies each and every allegation in Paragraph 63.

64.     eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 64 of the Amended Complaint and on that basis, denies each and every allegation in Paragraph 64.

65.     eOne admits that it is a California corporation based in Los Angeles, California.

66.     eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 62 of the Amended Complaint and on that basis, denies each and every allegation in Paragraph 62.

67.     eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 62 of the Amended Complaint and on that basis, denies each and every allegation in Paragraph 62.

## JURISDICTION

68.     Paragraph 68 contains legal conclusions that require no response.  To the extent a response is required, eOne lacks knowledge or information sufficient to form a belief as to whether this Court has personal jurisdiction over AETN and on that basis, denies the allegations of personal jurisdiction in Paragraph 68.

69.     Paragraph 69 contains legal conclusions that require no response.  To the extent a response is required, eOne lacks knowledge or information sufficient to form a belief as to whether this Court has personal jurisdiction over LES and on that basis, denies the allegations of personal jurisdiction in Paragraph 69.

70.     Paragraph 70 contains legal conclusions that require no response.  To the extent a response is required, eOne does not—at this time and for purposes of this case only—contest that this Court has personal jurisdiction over it.

71.     Paragraph 71 contains legal conclusions that require no response.  To the extent a response is required, eOne lacks knowledge or information sufficient to form a belief as to whether

this Court has personal jurisdiction over Creature Films, Inc. and on that basis, denies the allegations of personal jurisdiction in Paragraph 71.

72.     Paragraph 72 contains legal conclusions that require no response.  To the extent a response is required, eOne lacks knowledge or information sufficient to form a belief as to whether this Court has personal jurisdiction over Mark Ford and on that basis, denies the allegations of personal jurisdiction in Paragraph 72.

73.     eOne admits the Talent Agreement provides that the parties thereto agree to consent to personal jurisdiction in courts of New York State, New York County.  Ex. C to Amended Complaint at 8.  eOne denies the Talent Agreement is invalid.  eOne further affirmatively alleges that the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), and jurisdiction over state-law claims is appropriate because the claims arise out of the same operative facts as the federal claims such that they form part of the same case and controversy and fall within the scope of this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

## VENUE

74.     Paragraph 74 contains legal conclusions that require no response.  To the extent a response is required, eOne affirmatively alleges that—at this time and for purposes of this case only—venue is proper in the Federal District Court for the Southern District of New York since a substantial part of the events or omissions giving rise to the claim occurred in this District.

75.     eOne admits the Talent Agreement provides that the parties thereto agree to consent to personal jurisdiction in courts of New York State, New York County, and that venue in the Federal District Court for the Southern District of New York is therefore proper.

76.     Paragraph 76 contains legal conclusions that require no response.  To the extent a response is required, eOne admits that Plaintiff's Complaint seeks damages in excess of $500,000,

in addition to equitable and declaratory relief, and contains allegations of misrepresentation, fraud, and business dealings between the parties. eOne denies Plaintiff is entitled to any relief. To the extent a response is otherwise required, eOne denies each and every remaining allegation in Paragraph 76.

**BACKGROUND**

**H. Response to "W.W.H."**

77.    eOne admits the allegations of Paragraph 77.

78.    eOne admits that W.W.H appeared on her highly-popular daily talk show in multiple films, numerous television shows, and a Broadway musical. eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 78 and on that basis, denies each and every remaining allegation in Paragraph 78.

79.    eOne respectfully refers this Court to the full text of the August 18, 2022, Vice article titled "The Misrepresentations of Wendy Williams' Undeniable Legacy" cited by Plaintiff in footnote 23 for its full content and meaning.

**I. Response to "W.W.H.'s Tragic and Widely Publicized Cognitive and Physical Decline"**

80.    eOne admits that W.W.H. received significant media attention after apparently fainting live on her show in 2017 and affirmatively alleges that at the time this was explained to the press as having been the result of overheating and low electrolytes. eOne further affirmatively alleges that in 2018, W.W.H. revealed she had been struggling with Graves' disease, and in 2019, she revealed on her show that she had been struggling with addiction, had a 24-hour sober coach,

and was living in a sober house.[1]  Except as so admitted, eOne denies each and every remaining allegation in Paragraph 80.

81.    eOne admits the allegations of Paragraph 81.

82.    eOne admits in February of 2018, W.W.H. had announced she would take a three-week break from her show to focus on health struggles caused by Graves' disease and hyperthyroidism, but denies that W.W.H. announced her lymphedema diagnosis before 2019.

83.    eOne admits in January 2019 W.W.H. announced she would be taking an extended break from her show.  eOne admits the February 23, 2024, OK Magazine Article cited by Plaintiff in footnote 27 reports that W.W.H. was suffering from alcohol-related brain damage in 2019 when she was at a rehabilitation center in Florida.  eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the reporting in these cited articles and on that basis denies it.  eOne respectfully refers this Court to the full text of the January 18, 2019, Hollywood Reporter article titled "Wendy Williams Taking an 'Extended Break' From Talk Show to Focus on Health" cited by Plaintiff in footnote 26 and the February 23, 2024, OK Magazine Article cited by Plaintiff in footnote 27 for their full content and meaning.  eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 83 and on that basis, denies each and every remaining allegation in Paragraph 83.

84.    eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 84 and on that basis, denies each and every allegation in Paragraph 84.

85.    eOne admits the allegations of Paragraph 85.

---

[1] https://www.youtube.com/watch?v=7jSthVD-Aeg; https://www.nytimes.com/2019/03/19/us/wendy-williams-rehab.html

86.    eOne admits that W.W.H. has been the frequent subject of unverifiable rumors and gossip and entertainment reporting based upon anonymous sources.  eOne further affirmatively alleges as of November 23, 2021, W.W.H.'s brother, Thomas Williams, made a public statement to the press that there was nothing that led him to believe that W.W.H. suffered from dementia and, specifically, that W.W.H. had not been "displaying that type of behavior to the family. . . . We haven't had any alerts like that and I haven't seen anything like that or have had conversations with her that would lead me to believe that."[2]  eOne respectfully refers this Court to the full text of the September 16, 2021, *Page Six* article titled "Wendy Williams Reportedly Taken to Hospital for Mental Health Check" cited by Plaintiff in footnote 29, the *iHeart* Article cited by Plaintiff in footnote 30, and the *Hot97* Article cited by Plaintiff in footnote 31 for their full content and meaning.  eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the reporting in these cited articles and on that basis denies it.

87.    eOne denies the allegations in Paragraph 87.

88.    eOne admits in September 2021, it was announced that W.W.H. would cancel certain public appearances and that the premiere of the thirteenth season of W.W.H.'s show would be pushed back two weeks.

89.    eOne admits The Hollywood Reporter published an article on August 17, 2022, which reported on a brief zoom call W.W.H. had participated in with staff for her show, and respectfully refers this Court to the full text of the August 17, 2022, Hollywood Reporter Article cited by Plaintiff in footnotes 32, 33, and 34 for its full content and meaning.  eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the reporting in the cited Article and on that basis, denies it.

---

[2] https://www.the-sun.com/tv/4122668/wendy-williams-dementia-show-hiatus-brother-tommy/

90.    eOne admits it was reported in October 2021 that W.W.H. would not return for the season premiere of her show and guest hosts would fill in for her.  eOne further affirmatively alleges the Wendy Williams Show's production company issued a statement at the time that W.W.H. was "making progress, but is experiencing serious complications as a direct result of Graves' Disease and her thyroid condition."[3]

**J. Response to "Guardianship Proceedings in New York"**

91.    Paragraph 91 contains legal conclusions that require no response.  To the extent such allegations are deemed to be allegations of fact, eOne respectfully refers this Court to the full text of Article 81 of the New York Mental Hygiene Law ("Article 81") and its legislative history for an accurate description of the contents thereof.

92.    Paragraph 92 contains legal conclusions that require no response.  To the extent such allegations are deemed to be allegations of fact, eOne respectfully refers this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

93.    Paragraph 93 contains legal conclusions that require no response.  To the extent such allegations are deemed to be allegations of fact, eOne respectfully refers this Court to the full text of the Article 81 and its legislative history for an accurate description of the contents thereof.

94.    Paragraph 94 contains legal conclusions that require no response.  To the extent such allegations are deemed to be allegations of fact, eOne respectfully refers this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

95.    Paragraph 95 contains legal conclusions that require no response.  To the extent such allegations are deemed to be allegations of fact, eOne respectfully refers this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

---

[3] https://pagesix.com/2021/10/12/wendy-williams-will-not-return-to-talk-show-next-week/

96.     Paragraph 96 contains legal conclusions that require no response.  To the extent such allegations are deemed to be allegations of fact, eOne respectfully refers this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

97.     Paragraph 97 contains legal conclusions that require no response.  To the extent such allegations are deemed to be allegations of fact, eOne respectfully refers this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

98.     Paragraph 98 contains legal conclusions that require no response.  To the extent such allegations are deemed to be allegations of fact, eOne respectfully refers this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

99.     Paragraph 99 contains legal conclusions that require no response.  To the extent such allegations are deemed to be allegations of fact, eOne respectfully refers this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

100.     Paragraph 100 contains legal conclusions that require no response.  To the extent such allegations are deemed to be allegations of fact, eOne respectfully refers this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

101.     Paragraph 101 contains legal conclusions that require no response.  To the extent such allegations are deemed to be allegations of fact, eOne respectfully refers this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

102.     Paragraph 102 contains legal conclusions that require no response.  To the extent such allegations are deemed to be allegations of fact, eOne respectfully refers this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

103.     Paragraph 103 contains legal conclusions that require no response.  To the extent such allegations are deemed to be allegations of fact, eOne respectfully refers this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

104.    Paragraph 104 contains legal conclusions that require no response.  To the extent such allegations are deemed to be allegations of fact, eOne respectfully refers this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

105.    Paragraph 105 contains legal conclusions that require no response.  To the extent such allegations are deemed to be allegations of fact, eOne respectfully refers this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

106.    Paragraph 106 contains legal conclusions that require no response.  To the extent such allegations are deemed to be allegations of fact, eOne respectfully refers this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

**K. Response to "The W.W.H. Guardianship Proceeding for W.W.H."**

107.    Paragraph 107 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  eOne respectfully refers the Court to this proceeding for the full context thereof.  To the extent the allegations in Paragraph 107 relate to materials under seal in the Guardianship Proceeding, eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 107 and on that basis, denies each and every allegation in Paragraph 107.

108.    Paragraph 108 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  eOne respectfully refers the Court to this proceeding for the full context thereof.  To the extent the allegations in Paragraph 108 relate to materials under seal in the Guardianship Proceeding, eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 108 and on that basis, denies each and every allegation in Paragraph 108.

109.    Paragraph 109 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  eOne respectfully refers the Court to this proceeding for the full context

thereof.  To the extent the allegations in Paragraph 109 relate to materials under seal in the Guardianship Proceeding, eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 109 and on that basis, denies each and every allegation in Paragraph 109.  eOne admits that W.W.H.'s attorney L'Shawn Thomas reportedly gave statements to the press regarding the Guardianship Proceeding, including that W.W.H. "doesn't agree with a financial guardian being appointed," and had filed an affidavit stating that Wells Fargo had improperly denied her access to her money.  eOne otherwise respectfully refers the court to the *Hollywood Reporter* story cited in footnote 40 for the full content thereof.

110.    Paragraph 110 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  eOne respectfully refers the Court to this proceeding for the full context thereof.  To the extent the allegations in Paragraph 110 relate to materials under seal in the Guardianship Proceeding, eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 110 and on that basis, denies each and every allegation in Paragraph 110.

111.    Paragraph 111 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  eOne respectfully refers the Court to this proceeding for the full context thereof.  To the extent the allegations in Paragraph 111 relate to materials under seal in the Guardianship Proceeding, eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 111 and on that basis, denies each and every allegation in Paragraph 111.

112.    Paragraph 112 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  eOne respectfully refers the Court to this proceeding for the full context thereof.  To the extent the allegations in Paragraph 112 relate to materials under seal in the Guardianship Proceeding, eOne lacks knowledge or information sufficient to form a belief as to

27

the truth or falsity of the allegations in Paragraph 112 and on that basis, denies each and every allegation in Paragraph 112.

113.    Paragraph 113 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  eOne respectfully refers the Court to this proceeding for the full context thereof.  To the extent the allegations in Paragraph 113 relate to materials under seal in the Guardianship Proceeding, eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 113 and on that basis, denies each and every allegation in Paragraph 113.

114.    Paragraph 114 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  eOne respectfully refers the Court to this proceeding for the full context thereof.  To the extent the allegations in Paragraph 114 relate to materials under seal in the Guardianship Proceeding, eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 114 and on that basis, denies each and every allegation in Paragraph 114.

115.    Paragraph 115 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  eOne respectfully refers the Court to this proceeding for the full context thereof.  To the extent the allegations in Paragraph 115 relate to materials under seal in the Guardianship Proceeding, eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 115 and on that basis, denies each and every allegation in Paragraph 115.

116.    Paragraph 116 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  eOne respectfully refers the Court to this proceeding for the full context thereof.  To the extent the allegations in Paragraph 116 relate to materials under seal in the Guardianship Proceeding, eOne lacks knowledge or information sufficient to form a belief as to

the truth or falsity of the allegations in Paragraph 116 and on that basis, denies each and every allegation in Paragraph 116.

117.    eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 117 and on that basis, denies each and every allegation in Paragraph 117.

118.    Paragraph 118 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  eOne respectfully refers the Court to this proceeding for the full context thereof.  To the extent the allegations in Paragraph 118 relate to materials under seal in the Guardianship Proceeding, eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 118 and on that basis, denies each and every allegation in Paragraph 118.

119.    Paragraph 119 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  eOne respectfully refers the Court to this proceeding for the full context thereof.  To the extent the allegations in Paragraph 119 relate to materials under seal in the Guardianship Proceeding, eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 119 and on that basis, denies each and every allegation in Paragraph 119.

120.    Paragraph 120 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  eOne respectfully refers the Court to this proceeding for the full context thereof.  To the extent the allegations in Paragraph 120 relate to materials under seal in the Guardianship Proceeding, eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 120 and on that basis, denies each and every allegation in Paragraph 120.

121.    Paragraph 121 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  eOne respectfully refers the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 121 relate to materials under seal in the Guardianship Proceeding, eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 121 and on that basis, denies each and every allegation in Paragraph 121.

122.    Paragraph 122 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  eOne respectfully refers the Court to this proceeding for the full context thereof.  To the extent the allegations in Paragraph 122 relate to materials under seal in the Guardianship Proceeding, eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 122 and on that basis, denies each and every allegation in Paragraph 122.

123.    eOne admits that Exhibit A to the Complaint appears to be an order from the Guardianship Proceeding dated March 15, 2022.  Paragraph 123 otherwise purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  eOne respectfully refers the Court to this proceeding for the full context thereof.

124.    Paragraph 124 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  eOne respectfully refers the Court to this proceeding for the full context thereof.  To the extent the allegations in Paragraph 124 relate to materials under seal in the Guardianship Proceeding, eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 124 and on that basis, denies each and every allegation in Paragraph 124.

125.    eOne affirmatively alleges that in April of 2023, W.W.H. had capacity

███████     though affirmatively alleges that the order is undated and that it lacks knowledge or information sufficient to form a belief as to whether or when this order was issued in the Guardianship Proceeding, which is sealed.  eOne admits the order attached as Exhibit B to the Amended Complaint bears W.W.H.'s signature ███████████████████████    To the extent Paragraph 125 otherwise purports to characterize this order, eOne respectfully refers the Court to Exhibit B for the full context thereof.

126.    eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 126 and on that basis, denies each and every allegation in Paragraph 126.

127.    Paragraph 127 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  eOne respectfully refers the Court to this proceeding for the full context thereof.  To the extent the allegations in Paragraph 127 relate to materials under seal in the Guardianship Proceeding, eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 127 and on that basis, denies each and every allegation in Paragraph 127.

128.    Paragraph 128 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  eOne respectfully refers the Court to this proceeding for the full context thereof.  To the extent the allegations in Paragraph 128 relate to materials under seal in the Guardianship Proceeding, eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 128 and on that basis, denies each and every allegation in Paragraph 128.

129.    Paragraph 129 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  eOne respectfully refers the Court to this proceeding for the full context thereof.  To the extent the allegations in Paragraph 129 relate to materials under seal in the

Guardianship Proceeding, eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 129 and on that basis, denies each and every allegation in Paragraph 129.

130.    Paragraph 130 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  eOne respectfully refers the Court to this proceeding for the full context thereof.  To the extent the allegations in Paragraph 130 relate to materials under seal in the Guardianship Proceeding, eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 130 and on that basis, denies each and every allegation in Paragraph 130.

131.    Paragraph 131 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  eOne respectfully refers the Court to this proceeding for the full context thereof.

**L. Response to "W.W.H. Continues to Display Troubling Symptoms"**

132.    eOne admits in February of 2022, it was announced that W.W.H.'s talk show would end.  eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 132 and on that basis, denies each and every remaining allegation in Paragraph 132.

133.    eOne respectfully refers this Court to the full text of the August 17, 2022, Entertainment Weekly article titled "Wendy Williams had to be told several times her show had been canceled, execs say" (the "Entertainment Weekly Article"), cited by Plaintiff in footnote 39 for its full content and meaning.  eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations stemming from this article but affirmatively alleges the Entertainment Weekly Article reports on W.W.H.'s struggle with Graves' Disease and lymphedema and suggests that W.W.H.'s behavior was partially attributable to alcohol

consumption as it reports that "staffers would 'find bottles [of alcohol] up in the ceiling tiles and other weird places in the office'" and that it was "alleged that staff members had sent texts questioning Williams' sobriety to higher-ups, who reportedly had to screen episodes of the show prior to air time to make sure the host was fit for air." eOne affirmatively alleges W.W.H.'s spokeswoman, Shawn Zanotti, is quoted in the Entertainment Weekly Article as stating "[i]t has been no secret that Wendy has battled with addiction over the years but at this time Wendy is on the road to recovery and healing herself from her chronic illnesses and her grievances of the past." eOne otherwise denies each and every allegation in Paragraph 133.

134.    eOne respectfully refers this Court to the full text of the August 17, 2022, Hollywood Reporter Article cited by Plaintiff in footnote 40 for its full content and meaning but affirmatively alleges that August 17, 2022, Hollywood Reporter Article reports on W.W.H.'s struggle with Graves' Disease and lymphedema and suggests that W.W.H.'s behavior was partially attributable to alcohol consumption as it reports that "staffers would 'find bottles [of alcohol] up in the ceiling tiles and other weird places in the office'" and that it was "alleged that staff members had sent texts questioning Williams' sobriety to higher-ups, who reportedly had to screen episodes of the show prior to air time to make sure the host was fit for air." eOne affirmatively alleges W.W.H.'s spokeswoman, Shawn Zanotti, is quoted in the August 17, 2022, Hollywood Reporter Article as stating "[i]t has been no secret that Wendy has battled with addiction over the years but at this time Wendy is on the road to recovery and healing herself from her chronic illnesses and her grievances of the past." eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations stemming from this article and on that basis, eOne denies such allegations in Paragraph 134. eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 134 and on that basis, denies each and every remaining allegation in Paragraph 134.

135.    eOne respectfully refers this Court to the full text of the August 3, 2022, OK Magazine article titled "Wendy Williams Appears to Nap Next to Filled-to-the-Brim Champaigne Glass at Upscale NYC Store," cited by Plaintiff in footnote 42 and the August 1, 2022, Sanda Rose article titled "Fan Video Shows Wendy Williams In Her Car 'Completely Out of It,'" cited by Plaintiff in footnote 43 for their full content and meaning.  eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations stemming from this article and on that basis, eOne denies such allegations. eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph and on that basis, denies each and every remaining allegation in Paragraph 135.

## M. Response To "Will Selby, The Wendy Experience, Inc., and the August 2022 Development Shoot"

136.    eOne admits that Selby is a jeweler and in 2022 was, to eOne's knowledge, acting in the role of W.W.H.'s manager.  eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 136 and on that basis, denies each and every remaining allegation in Paragraph 136.

137.    eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 137 and on that basis, denies them.

138.    eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 138 and on that basis, denies them.

139.    eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 139 and on that basis, denies them.

140.    eOne denies each and every allegation in Paragraph 140.

141.    eOne admits that it proposed the Documentary to Selby and, during the Summer of 2022, eOne began working in consultation with W.W.H. on the development materials and sizzle

reel for the Documentary. eOne affirmatively alleges that eOne had an established relationship with W.W.H. going back to 2019. eOne lacks knowledge or information sufficient to form a belief as to what Selby told the Plaintiff regarding the Documentary but denies that it represented to anyone that the Documentary would "cast W.W.H. in a positive light" or that Selby "would have full creative control" over the Documentary. eOne otherwise denies each and every allegation in Paragraph 141.

142. eOne admits that as W.W.H.'s manager, Selby facilitated access to W.W.H. for filming the Documentary, including in her apartment, beginning in June 2022. eOne denies that it began filming W.W.H. for the Documentary without a contract in place, and affirmatively alleges that W.W.H. executed a Shopping Agreement dated July 7, 2022 with eOne relating to the creation of development materials on October 17, 2022, and executed a Talent Agreement on January 25, 2023, and that other than the development shoot, all filming of W.W.H. for the Documentary took place after the Talent Agreement was executed. Except as so admitted, eOne denies each and every allegation in Paragraph 142.

143. eOne denies W.W.H. was "in no condition to appear on camera" in August 2022 and denies she "could not consent to the project." Indeed, Plaintiff herself admits that W.W.H. █████ ████████████████ a Court order as late as April 2023. *See* Paragraph 125. eOne further denies either of these alleged conditions were "readily apparent" from the Documentary or news reporting from that time. eOne further affirmatively alleges in November 23, 2021, W.W.H.'s brother Thomas Williams made a public statement to the press that there was nothing that led him to believe W.W.H. suffered from dementia and, specifically, W.W.H. had not been "displaying that type of behavior to the family. . . . We haven't had any alerts like that and I haven't seen anything like that or have had

conversations with her that would lead me to believe that."[4]  eOne respectfully refers this Court to the full text of the August 17, 2022, Hollywood Reporter Article for its full content and meaning. eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations stemming from this article and on that basis, eOne denies each and every allegation related to the article in Paragraph 143.  eOne denies each and every remaining allegation in Paragraph 143.

144.    eOne respectfully refers this Court to the full text of the February 26, 2024, Hollywood Reporter Article titled for its full content and meaning but affirmatively alleges that in the article, Ford addresses W.W.H.'s behavior at the development shoot and explains that "the story that was given to us after that day is that it was a bad day for [W.W.H.] and that alcohol had been involved, and now she was going away [to a treatment facility] and she was going to get that under control, but this should in no way inhibit us from moving forward. And when we did come back, she was better. She was sober and on a better trajectory."  eOne admits W.W.H. was filmed for the Documentary in 2023, and except as so admitted, denies each and every remaining allegation in Paragraph 144.

145.    eOne respectfully refers this Court to the full text of the February 26, 2024, Hollywood Reporter Article for its full content and meaning and further affirmatively alleges it is entirely clear from this report that Bryant's quotation referred to the "first two hours" of the Documentary itself, not of filming for the Documentary.  eOne denies each and every remaining allegation in Paragraph 145.

146.    Paragraph 146 purports to characterize the Documentary. eOne respectfully refers the Court to the Documentary for its content and meaning.  Except as so referred, eOne denies Plaintiff's characterization of the Documentary and further denies that the specific footage referred

---

[4] https://www.the-sun.com/tv/4122668/wendy-williams-dementia-show-hiatus-brother-tommy/

to "shows that W.W.H. was incapable of providing consent for anything." eOne denies each and every remaining allegation in Paragraph 146.

147.    eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 147 and on that basis, denies each and every allegation in Paragraph 147.

**N. Response to "The Contract Between The Wendy Experience, Inc. and EOne"**

148.    Paragraph 148 purports to characterize the Talent Agreement. eOne admits The Wendy Experience Inc. and eOne executed the Talent Agreement, and further affirmatively alleges W.W.H. also executed the Talent Agreement, and otherwise respectfully refers this Court to the Talent Agreement for its content and meaning.

149.    Paragraph 149 purports to characterize the Talent Agreement. eOne respectfully refers this Court to the Talent Agreement for its content and meaning.

150.    Paragraph 150 purports to characterize the Talent Agreement and amendments thereto. eOne respectfully refers this Court to these documents for their content and meaning. Except as so referred, eOne denies Plaintiff's characterization of the Talent Agreement. eOne further affirmatively alleges that the Talent Agreement was reviewed by at least two attorneys for W.W.H.

151.    Paragraph 151 purports to characterize the Talent Agreement and amendments thereto. eOne respectfully refers this Court to these documents for their content and meaning. Except as so referred, eOne denies Plaintiff's characterization of the Talent Agreement and amendments thereto.

152.    eOne affirmatively alleges upon information and belief that Plaintiff was aware of the Talent Agreement before it was executed. eOne affirmatively alleges the guardianship had no authority over W.W.H.'s ability to enter into the Talent Agreement at the time it was signed on

January 25, 2023, or the Addendum at the time it was signed on February 17, 2023.  eOne affirmatively alleges that

to do so.  eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 152 and on that basis, denies each and every remaining allegation in Paragraph 152.

153.    eOne admits the Talent Agreement was executed on January 25, 2023, and that The Wendy Experience, Inc. was a party to the Talent Agreement.  To the extent the allegations of Paragraph 153 purport to characterize a signature on the Talent Agreement, eOne respectfully refers the Court to the Talent Agreement itself.

154.    eOne admits the Talent Agreement purports to bear W.W.H.'s signature and further affirmatively alleges that it does in fact bear W.W.H.'s signature.  eOne denies the signature on the Talent Agreement "looks nothing like W.W.H.'s signature," and affirmatively alleges that Exhibit B to Plaintiff's First Amended Complaint shows a court filing that Plaintiff claims was signed

by W.W.H. two months *after* the Talent Agreement was executed with what appears to be the same signature as the one on the Talent Agreement, as shown below:



Signature from the Talent Agreement



Signature from Exhibit B

155.    eOne denies each and every allegation in Paragraph 155.

## O. Response to "The Guardian's Discovery of the Contract and EOne's False Representations Regarding the Program"

156.    eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 156 and on that basis, denies each and every allegation in Paragraph 156.

157.    Paragraph 157 purports to characterize the Documentary.  eOne respectfully refers the Court to the Documentary for its content and meaning.  Except as so admitted and referred, eOne denies Plaintiff's characterization of the Documentary.

158.    eOne denies, upon information and belief, that Plaintiff demanded eOne return W.W.H. to New York and denies that Plaintiff had any such authority.  eOne lacks knowledge or information sufficient to form a belief as to whether Plaintiff demanded anyone else return W.W.H. to New York and on that basis, denies each and every allegation in Paragraph 158.

159.    eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 159 as to when Plaintiff learned about the Talent Agreement and on that basis, denies the allegation in Paragraph 159 that Plaintiff "only learned about the purported [Talent Agreement] in the aftermath of the California trip."  eOne admits that on March 14, 2023, Linda Redlisky, who represented she was a court-appointed attorney representing W.W.H., communicated with Jada Jones, counsel for eOne.  eOne admits on March 14, 2023, Linda Redlisky sent Jada Jones an email with the following contents: "It was nice to speak to you this evening. I write to confirm our conversation wherein I advised you that I have forwarded the contract (annexed) to [W.W.H.'s] counsel for review. I assure you that either I or counsel will revert back to you relating to the agreement. My client was not at the time in a position to sign for the reasons you and I discussed, but we understand production has moved forward. I appreciate that you gave me your assurance that none of the film, photos, reels, etc. obtained will be used, published, exploited, etc. until we resolve the annexed contract proposal.  I understand from your point of view this is time sensitive, and again assure you we will speak shortly. Thank you for

reaching out to me. Have a good evening." eOne denies each and every remaining allegation in Paragraph 159.

160.    eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 160 about the specific contents of the referenced call and on that basis denies each and every remaining allegation in Paragraph 160.

161.    eOne denies, upon information and belief, that any promises were made that the Documentary would portray W.W.H. in any specific light. eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 161 regarding the specific contents of the referenced call, and on these bases, eOne denies each and every allegation in Paragraph 161.

162.    eOne denies, upon information and belief, that Ms. Lefcourt stated there "seemed to be some issues that had not been present when the team had worked with W.W.H. in the past." eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 162 regarding the specific contents of the referenced call and, on these bases, eOne denies each and every allegation in Paragraph 162.

163.    eOne denies that it made any "misrepresentations that the [Documentary] would present W.W.H. in a positive light." eOne admits additional filming for the Documentary took place in March and April of 2023 in New Jersey and in Florida. eOne affirmatively alleges Plaintiff was included on email correspondence about the production of the Documentary beginning at least as early as April 4, 2023, and was aware of the Documentary's production at this time. eOne denies each and every remaining allegation in Paragraph 163.

164.    eOne lacks information sufficient to form a belief as to what Plaintiff did or did not contemplate and on that basis, denies these allegations. To the extent Paragraph 164 purports to characterize the Documentary, eOne respectfully refers the Court to the Documentary for its

content and meaning. Except as so referred, eOne denies Plaintiff's characterization of the Documentary. eOne denies each and every remaining allegation in Paragraph 164.

165. eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 165 and on that basis, denies each and every allegation in Paragraph 165.

166. eOne admits that on June 12, 2023, Deborah Hrbek, who had been introduced as W.W.H.'s counsel as to "all entertainment issues," sent Jones, counsel for eOne, and Blossom Lefcourt, Executive Vice President, Global Business and Legal Affairs at eOne, a Non-Disclosure Agreement ("NDA") "for sign off by on set crew past and present ([to] the extent attainable), active post crew and, going forward, all participants exposed to confidential information as described in the attached." Paragraph 166 purports to characterize the NDA. eOne respectfully refers this Court to the NDA for its content and meaning. Except as so referred, eOne denies Plaintiff's characterization of the NDA.

167. eOne admits that, to its knowledge, Plaintiff did not sign the Talent Agreement or negotiated amendment. eOne denies each and every remaining allegation in Paragraph 167. eOne further affirmatively alleges neither Plaintiff's nor W.W.H's authorization were required to release the Documentary or any footage of W.W.H. or to use W.W.H.'s name, likeness, image, or voice in the Documentary.

168. eOne admits that, to its knowledge, Plaintiff never signed the Talent Agreement. eOne lacks knowledge or information sufficient to form a belief as to when Plaintiff first saw the Talent Agreement, but affirmatively alleges, upon information and belief, that she was aware of the Talent Agreement by December 2022 and that it was eOne's understanding that she approved it prior to its execution. eOne lacks knowledge or information sufficient to form a belief as to

41

whether Plaintiff communicated with anyone at A&E or Lifetime, and on that basis denies the remaining allegations of Paragraph 168.

169.    eOne denies W.W.H. lacked capacity to enter into the Talent Agreement or any other similar agreements regarding the Documentary when she entered into them.  Paragraph 169 otherwise purports to characterize the pending Guardianship Proceeding pertaining to W.W.H., and eOne respectfully refers the Court to this proceeding for the full context thereof.  To the extent the allegations in Paragraph 169 relate to materials under seal in the Guardianship Proceeding, eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 169 and on that basis, denies such allegations in Paragraph 169.

170.    eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 170 regarding W.W.H.'s medical condition and on that basis, denies each and every corresponding allegation in Paragraph 170.  eOne, does not claim that W.W.H. did not fulfill her obligations under the agreement and, except as so denied and admitted, denies each and every remaining allegation in Paragraph 170.

171.    eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 171 and on that basis, denies each and every allegation in Paragraph 171.

172.    eOne admits that its last filming session with W.W.H. was on April 12, 2023.  eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 172 regarding W.W.H.'s medical condition, the advice of her healthcare providers, and communications between Plaintiff and Selby, and on that basis, denies each and every corresponding allegation in Paragraph 172.  eOne denies each and every remaining allegation in Paragraph 172.

**P. Response to "W.W.H.'s Diagnosis of Frontotemporal Dementia and Primary Progressive Aphasia"**

173.    eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 173 and on that basis, denies each and every allegation in Paragraph 173.

174.    eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 174 and on that basis, denies each and every allegation in Paragraph 174.

175.    eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 175 and on that basis, denies each and every allegation in Paragraph 175.

176.    eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 176 and on that basis, denies each and every allegation in Paragraph 176.

177.    eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 177 and on that basis, denies each and every allegation in Paragraph 177.

178.    eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 178 and on that basis, denies each and every allegation in Paragraph 178.

**Q. Response to "The Release of the Trailer"**

179.    eOne admits that on February 2, 2024, the Trailer was released.  Paragraph 179 purports to characterize the Trailer. eOne respectfully refers the Court to the Trailer for its content and meaning.

180.    eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 180 and on that basis, denies each and every allegation in Paragraph 180.

181.    Paragraph 181 purports to characterize the Trailer. eOne respectfully refers the Court to the Trailer for its content and meaning.  Except as so referred, eOne denies Plaintiff's characterization of the Trailer.  eOne further respectfully refers this Court to the February 2, 2024, L.A. Times article titled "Wendy Williams resurfaces in trailer for her Lifetime documentary debuting this month," cited by Plaintiff in Paragraph 181 for its full content and meaning.  eOne otherwise denies each and every remaining allegation in Paragraph 181.

182.    eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 182 about Plaintiff's communications with Selby or Plaintiff's subjective state of mind and on that basis, denies every allegation related to these communications in Paragraph 182.  eOne denies each and every remaining allegation in Paragraph 182.

183.    eOne admits the Guardianship Proceeding is sealed.  eOne further admits that an article was published in May 2022 reporting W.W.H. had been "placed under a financial guardianship" and included statements by W.W.H.'s reported lawyer that the guardianship was unwarranted and improper.  eOne denies each and every remaining allegation in Paragraph 183.

184.    eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 184 and on that basis, denies each and every allegation in Paragraph 184.  eOne further affirmatively alleges the referenced photographs were taken in the context of scenes that were included in the Documentary.

185.    eOne admits that W.W.H. was capable of making successful public appearances during late 2022, further demonstrating she was not incapacitated at this time.  eOne respectfully

refers this Court to the November 23, 2022, L.A. Times Article titled "How's Wendy Williams Doin'?" cited by Plaintiff in footnote 38 for its full content and meaning. eOne denies each and every remaining allegation in Paragraph 185.

186.    eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations that Plaintiff was not offered an opportunity to view the Documentary before it aired and on that basis, denies this allegation in Paragraph 186. eOne denies each and every remaining allegation in Paragraph 186.

187.    Paragraph 187 purports to characterize the Trailer. eOne respectfully refers the Court to the Trailer for its content and meaning. Except as so referred, eOne denies Plaintiff's characterization of the Trailer. eOne respectfully refers this Court to the November 23, 2022, L.A. Times article titled "How's Wendy Williams Doin'?" cited by Plaintiff in footnote 48 for its full content and meaning. eOne denies each and every remaining allegation in Paragraph 187.

188.    eOne admits Plaintiff did not specifically authorize the release of the Trailer and affirmatively alleges Plaintiff's authorization was not required to release the Trailer. eOne otherwise denies each and every allegation in Paragraph 188.

189.    Paragraph 189 purports to characterize the Trailer. eOne respectfully refers the Court to the Trailer for its content and meaning. Except as so referred, eOne denies Plaintiff's characterization of the Trailer. eOne denies each and every remaining allegation in Paragraph 189.

190.    Paragraph 190 purports to characterize various news articles. eOne respectfully refers the Court to these news articles for their content and meaning. Except as so referred, eOne denies Plaintiff's characterization of the news articles.

191.    eOne denies each and every allegation in Paragraph 191. eOne affirmatively alleges that, pursuant to the Talent Agreement negotiated by her attorneys, W.W.H. served as an executive producer on the Documentary.

45

192.    eOne admits on February 22, 2024, two days before the Documentary was to premiere, Plaintiff obtained an *ex parte* temporary restraining order ("TRO") from the Commercial Division of the New York State Supreme Court, New York County.  eOne respectfully refers the Court to the TRO and Plaintiff's affirmation in support of the TRO for its content and meaning.

193.    eOne admits AETN and eOne filed a motion to vacate the unconstitutional TRO at the Appellate Division, First Department, and on February 23, 2024, less than 24 hours later, Justice Moulton of the First Department issued an order vacating the TRO as an unconstitutional prior restraint.  eOne respectfully refers the Court to the order issued by Justice Moulton for its content and meaning.  eOne denies each and every remaining allegation in Paragraph 193.

194.    Paragraph 194 purports to characterize the Affirmation of Mark Ford (the "Ford Affirmation") filed in the Appellate Division, First Department, in support of Defendants' opposition to Plaintiff's TRO. eOne respectfully refers this Court to the Ford Affirmation for its content and meaning.  Except as so referred, eOne denies Plaintiff's characterization of the Ford Affirmation.  Paragraph 194 purports to characterize the Documentary.  eOne respectfully refers the Court to the Documentary for its content and meaning.  Except as so referred, eOne denies Plaintiff's characterization of the Documentary.  eOne denies each and every remaining allegation in Paragraph 194 and denies specifically that it was made aware of any dementia diagnosis at the onset of filming.

195.    eOne denies that there had been any reliable reporting prior to the Documentary being filmed that W.W.H. was suffering from dementia.  eOne further denies each and every remaining allegation in Paragraph 195.

196.    Paragraph 196 purports to characterize the Ford Affirmation.  eOne respectfully refers this Court to the Ford Affirmation for its content and meaning.  Except as so referred, eOne denies Plaintiff's characterization of the Ford Affirmation.  eOne further affirmatively alleges

46

W.W.H. did consent to the creation of the Documentary and was at all points enthusiastic about the Documentary. eOne denies each and every remaining allegation in Paragraph 196.

197. Paragraph 197 purports to characterize Defendants' motion filed in the Appellate Division, First Department in support of Defendants' opposition to Plaintiff's TRO ("Defendants' First Department Motion"). eOne respectfully refers this Court to Defendants' First Department Motion for its content and meaning. Except as so referred and stated, eOne denies Plaintiff's characterization of Defendants' First Department Motion. Paragraph 197 also purports to characterize the pending Guardianship Proceeding pertaining to W.W.H. eOne respectfully refers the Court to this proceeding for the full context thereof. To the extent the allegations in Paragraph 197 relate to materials under seal in the Guardianship Proceeding, eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 197 and on that basis, denies each and every allegation in Paragraph 197. eOne denies each and every remaining allegation in Paragraph 197 and denies specifically that it would be absurd to suggest that Plaintiff's pursuit of this baseless litigation is not in W.W.H.'s best interests.

198. Paragraph 198 purports to characterize the Documentary. eOne respectfully refers the Court to the Documentary for its content and meaning. Except as so referred, eOne denies Plaintiff's characterization of the Documentary. eOne denies each and every remaining allegation in Paragraph 198.

199. eOne admits that on February 22, 2024, a press release was issued on behalf of W.W.H. publicly announcing her formal diagnosis of FTD and PPA. eOne respectfully refers the Court to this press release, which can be accessed through the following hyperlink: https://prn.to/3TBi1WT, for its content and meaning. Paragraph 199 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H. eOne respectfully refers the Court to this proceeding for the full context thereof. To the extent the allegations in Paragraph 199 relate to

materials under seal in the Guardianship Proceeding, eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 199 and on that basis, denies each and every allegation in Paragraph 199.

### R. Response to "The Release of the Program"

200.    eOne admits that W.W.H.'s FTD diagnosis was not announced until days before the Documentary was scheduled to premiere and the premiere was not rescheduled after this.  Except as so admitted, eOne denies each and every allegation in Paragraph 200.

201.    eOne admits the Documentary aired on February 24 and 25, 2024, on Lifetime. eOne admits the Documentary was made available on various streaming platforms, including Amazon and Apple TV, but denies that it is currently available on Amazon or Apple TV.

202.    eOne admits the Documentary consisted of four episodes originally aired across two nights.  eOne denies the Documentary totaled four and a half hours without commercials, and affirmatively alleges the four episodes totaled approximately four and a half hours with commercials.  eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 202 and on that basis, denies each and every remaining allegation in Paragraph 202.

203.    Paragraph 203 purports to characterize the Documentary.  eOne respectfully refers the Court to the Documentary for its content and meaning.  Except as so referred, eOne denies Plaintiff's characterization of the Documentary.

204.    Paragraph 204 purports to characterize the Documentary.  eOne respectfully refers the Court to the Documentary for its content and meaning.  Except as so referred, eOne denies Plaintiff's characterization of the Documentary.

205.    Paragraph 205 purports to characterize the Documentary.  eOne respectfully refers the Court to the Documentary for its content and meaning.  Except as so referred, eOne denies Plaintiff's characterization of the Documentary.

206.    Paragraph 206 purports to characterize the Documentary.  eOne respectfully refers the Court to the Documentary for its content and meaning.  Except as so referred, eOne denies Plaintiff's characterization of the Documentary.  eOne respectfully refers this Court to the February 24, 2024, Variety article titled "'Where is Wendy Williams?' Docuseries Is Unsettling and Exploitative" cited by Plaintiff in footnote 50 for its full content and meaning.  eOne denies each and every remaining allegation in Paragraph 206.

207.    Paragraph 207 purports to characterize the Documentary.  eOne respectfully refers the Court to the Documentary for its content and meaning.  Except as so referred, eOne denies Plaintiff's characterization of the Documentary.  eOne denies each and every remaining allegation in Paragraph 207.

208.    eOne respectfully refers this Court to the March 1, 2024, article from The Guardian titled "Is the Wendy Williams Docuseries Saving a Vulnerable Person, or Exploiting Her?" cited by Plaintiff in footnote 51, the February 23, 2024, article from The Daily Mail titled "TV's Ghoulish New Low: Dementia-Hit Wendy Williams is Reduced to a Sideshow Freak as Relatives Crawl into her Fading Spotlight?" cited by Plaintiff in footnote 52, the February 26, 2024, Collider article titled "The Wendy Williams Docuseries Is an Invasion of Health Privacy" cited by Plaintiff in footnote 53, the February 29, 2024, Black Entertainment Television article titled "Lifetime's 'Where is Wendy Williams' Documentary Should Raise Concerns Over Ethics and Accountability?" cited by Plaintiff in footnote 54, the February 25, 2024, Today article titled "Fans React to 'Where is Wendy Williams' Lifetime Doc" cited by Plaintiff in footnote 55,; the February 28, 2024, New York Post article titled "None of Us Should Watch the Heartbreaking Wendy

Williams Documentary" cited by Plaintiff in footnote 56 for their full content and meaning. eOne otherwise denies the allegations of Paragraph 208, and affirmatively alleges numerous press outlets described the Documentary in positive terms, including a February 26, 2024, *Rolling Stone* article that stated "stories like Williams' are important to bear witness to, no matter how uncomfortable they make us." The article can be accessed through the following hyperlink: https://bit.ly/4f1v8sL. Except as so stated and referred, eOne denies the allegations of Paragraph 208.

209.    eOne denies each and every allegation in Paragraph 209.

210.    Paragraph 210 purports to characterize the Documentary. eOne respectfully refers the Court to the Documentary for its content and meaning. Except as so referred, eOne denies Plaintiff's characterization of the Documentary. eOne respectfully refers this Court to the February 26, 2024, article from The New York Times titled "'Where Is Wendy Williams?': 5 Takeaways From the Documentary" cited by Plaintiff in footnote 51. eOne denies each and every remaining allegation in Paragraph 210.

211.    eOne denies each and every allegation in Paragraph 211.

212.    eOne admits that on February 22, 2024, a press release was issued on behalf of W.W.H. publicly announcing her formal diagnosis of FTD and PPA, and further affirmatively alleges this announcement came long after the Documentary had been filmed. eOne respectfully refers the Court to the press release, which can be accessed through the following hyperlink: https://prn.to/3TBi1WT, for its content and meaning. eOne otherwise lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 212 about W.W.H.'s formal diagnosis of FTD and PPA and on that basis, denies allegations related to W.W.H.'s diagnosis in Paragraph 212. Paragraph 212 purports to characterize the Documentary. eOne respectfully refers the Court to the Documentary for its content and meaning. Except as so

referred, eOne denies Plaintiff's characterization of the Documentary.  eOne denies each and every remaining allegation in Paragraph 212.

213.    Paragraph 213 purports to characterize the Documentary.  eOne respectfully refers the Court to the Documentary for its content and meaning.  Except as so referred, eOne denies Plaintiff's characterization of the Documentary.  eOne denies each and every remaining allegation in Paragraph 213.

214.    Paragraph 214 purports to characterize the Documentary.  eOne respectfully refers the Court to the Documentary for its content and meaning.  Except as so referred, eOne denies Plaintiff's characterization of the Documentary, and denies specifically the scene described in Paragraph 214 was "manufactured."  eOne denies each and every remaining allegation in Paragraph 214.

215.    Paragraph 215 purports to characterize the Documentary.  eOne respectfully refers the Court to the Documentary for its content and meaning.  Except as so referred, eOne denies Plaintiff's characterization of the Documentary.  eOne denies each and every remaining allegation in Paragraph 215.

216.    eOne denies each and every allegation in Paragraph 216.

217.    eOne denies each and every allegation in Paragraph 217.

218.    eOne admits its last filming session with W.W.H. was on April 12, 2023. eOne respectfully refers this Court to the full text of the February 26, 2024, Hollywood Reporter article for its full content and meaning.  eOne denies Plaintiff's characterization of Mark Ford's statements in the article.  eOne denies each and every remaining allegation in Paragraph 218.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
*Declaratory Judgment*
*(Against EOne and A&E)*

219.    eOne incorporates and repeats as if fully set forth herein their admissions, denials, averrals, and other answers to the allegations set forth in the above Paragraphs.

220.    eOne admits the Guardianship Proceeding was publicized in May of 2022 and at that time, it was reported that it was a "financial guardianship" and that W.W.H. claimed Wells Fargo had engaged in misconduct by initiating it.  Paragraph 220 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  eOne respectfully refers the Court to this proceeding for the full context thereof.  To the extent the allegations in Paragraph 220 relate to materials under seal in the Guardianship Proceeding, eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 220 and on that basis, denies each and every allegation in Paragraph 220.  eOne denies each and every remaining allegation in Paragraph 220.

221.    Paragraph 221 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  eOne respectfully refers the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 221 relate to materials under seal in the Guardianship Proceeding, eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 221 and on that basis, denies each and every allegation in Paragraph 221.

222.    eOne admits on February 22, 2024, a press release was issued on behalf of W.W.H. publicly announcing her formal diagnosis of FTD and PPA.  eOne respectfully refers the Court to this press release, which can be accessed through the following hyperlink: https://prn.to/3TBi1WT, for its content and meaning.  eOne otherwise lacks knowledge or information sufficient to form a

belief as to the truth or falsity of each and every allegation in Paragraph 222 about W.W.H.'s diagnosis of FTD and PPA and on that basis, denies allegations related to W.W.H.'s diagnosis in Paragraph 222.

223.    Paragraph 223 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  eOne respectfully refers the Court to this proceeding for the full context thereof.  To the extent the allegations in Paragraph 223 relate to materials under seal in the Guardianship Proceeding, eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 223 and on that basis, denies each and every allegation in Paragraph 223.

224.    Paragraph 224 purports to characterize the Talent Agreement.  eOne respectfully refers the Court to the Talent Agreement for its content and meaning.  eOne affirmatively alleges W.W.H. assented to and executed the Talent Agreement.

225.    eOne admits the Talent Agreement was dated November 2022 and on January 25, 2023, W.W.H. signed the Talent Agreement with eOne.  eOne admits W.W.H. signed the amendments on February 17, 2023, and an additional amendment was prepared dated March 1, 2023.  eOne denies knowledge or information sufficient to form a belief as to or whether Plaintiff was involved in the creation of the entity The Wendy Experience, Inc., and on that basis denies this allegation.  eOne denies each and every remaining allegation in Paragraph 225.

226.    Paragraph 226 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  eOne respectfully refers the Court to this proceeding for the full context thereof.  To the extent the allegations in Paragraph 226 relate to materials under seal in the Guardianship Proceeding, eOne lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 226 and on that basis, denies each and every allegation in Paragraph 226.  eOne denies Plaintiff's characterization of public reporting when the

Contract was executed, as the relevant reporting at the time only discussed W.W.H.'s financial guardianship. eOne denies each and every remaining allegation in Paragraph 226.

227.    eOne denies each and every allegation in Paragraph 227.

228.    eOne denies each and every allegation in Paragraph 228.

229.    Paragraph 229 purports to characterize the Talent Agreement. eOne respectfully refers the Court to the Talent Agreement for its content and meaning. Except as so referred, eOne denies Plaintiff's characterization of the Talent Agreement. Paragraph 229 also purports to characterize the Trailer and the Documentary. eOne respectfully refers the Court to the Trailer and Documentary for their content and meaning. Except as so referred, eOne denies Plaintiff's characterization of the Trailer and Documentary.

230.    eOne denies each and every allegation in Paragraph 230.

231.    eOne admits that the signatures on the February 17, 2023, amendments to the Contract purport to and do in fact belong to W.W.H. eOne denies each and every remaining allegation in Paragraph 231.

232.    eOne denies each and every allegation in Paragraph 232.

233.    Paragraph 233 contains legal conclusions that require no response. To the extent such allegations are deemed to be allegations of fact, eOne respectfully refers this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

234.    Paragraph 234 contains legal conclusions that require no response. To the extent such allegations are deemed to be allegations of fact, eOne denies each and every allegation in Paragraph 234.

235.    Paragraph 235 contains legal conclusions that require no response. To the extent such allegations are deemed to be allegations of fact, eOne denies each and every allegation in Paragraph 235.

## SECOND CAUSE OF ACTION

*Unjust Enrichment*
*(Against All Defendants)*

236.    eOne incorporates and repeats as if full set forth herein their admissions, denials, averrals, and other answers to the allegations set forth in the above Paragraphs.

237.    eOne denies each and every allegation in Paragraph 237.

238.    Paragraph 238 contains legal conclusions that require no response.  To the extent such allegations are deemed to be allegations of fact, eOne denies each and every allegation in Paragraph 238.

239.    Paragraph 239 contains legal conclusions that require no response.  To the extent such allegations are deemed to be allegations of fact, eOne denies each and every allegation in Paragraph 239.

240.    Paragraph 240 contains legal conclusions that require no response.  To the extent such allegations are deemed to be allegations of fact, eOne denies each and every allegation in Paragraph 240.

241.    eOne denies each and every allegation in Paragraph 241.

242.    Paragraph 242 contains legal conclusions that require no response.  To the extent such allegations are deemed to be allegations of fact, eOne denies each and every allegation in Paragraph 242.

243.    eOne denies each and every allegation in Paragraph 243.

244.    Paragraph 244 contains legal conclusions that require no response.  To the extent such allegations are deemed to be allegations of fact, eOne denies each and every allegation in Paragraph 244.

245.    Paragraph 245 contains legal conclusions that require no response.  To the extent such allegations are deemed to be allegations of fact, eOne denies each and every allegation in Paragraph 245.

### THIRD CAUSE OF ACTION

*False Endorsement - Lanham Act, 15 U.S.C. § 1125(a)*
*(Against All Defendants)*

246.    eOne incorporates and repeats as if fully set forth herein their admissions, denials, averrals, and other answers to the allegations set forth in the above Paragraphs.

247.    Paragraph 247 contains legal conclusions that require no response.  To the extent such allegations are deemed to be allegations of fact, eOne respectfully refers this Court to the full text of the Lanham Act for an accurate description of the contents thereof.

248.    eOne admits that W.W.H. is a widely recognizable celebrity.

249.    Paragraph 249 contains legal conclusions that require no response.  To the extent such allegations are deemed to be allegations of fact, eOne denies each and every allegation in Paragraph 249.

250.    Paragraph 250 contains legal conclusions that require no response.  To the extent such allegations are deemed to be allegations of fact, eOne denies each and every allegation in Paragraph 250.

251.    Paragraph 251 contains legal conclusions that require no response.  To the extent such allegations are deemed to be allegations of fact, eOne denies each and every allegation in Paragraph 251.

252.    eOne denies each and every allegation in Paragraph 252.

253.    eOne denies each and every allegation in Paragraph 253.

254.    eOne denies each and every allegation in Paragraph 254.

255.    Paragraph 255 contains legal conclusions that require no response.  To the extent such allegations are deemed to be allegations of fact, eOne denies each and every allegation in Paragraph 255.

256.    Paragraph 256 contains legal conclusions that require no response.  To the extent such allegations are deemed to be allegations of fact, eOne denies each and every allegation in Paragraph 256.

257.    Paragraph 257 contains legal conclusions that require no response.  To the extent such allegations are deemed to be allegations of fact, eOne denies each and every allegation in Paragraph 257.

## FOURTH CAUSE OF ACTION
### *Fraud*
*(Against All Defendants)*

258.    eOne incorporates and repeats as if fully set forth herein their admissions, denials, averrals, and other answers to the allegations set forth in the above Paragraphs.

259.    eOne denies each and every allegation in Paragraph 259.

260.    eOne denies each and every allegation in Paragraph 260.

261.    Paragraph 261 purports to characterize the Documentary.  eOne respectfully refers the Court to the Documentary for its content and meaning.  Except as so referred, eOne denies Plaintiff's characterization of the Documentary.  eOne denies each and every remaining allegation in Paragraph 261.

262.    eOne denies each and every allegation in Paragraph 262.

263.    eOne denies each and every allegation in Paragraph 263.

264.    eOne denies each and every allegation in Paragraph 264.

265.    eOne denies each and every allegation in Paragraph 265.

266.    Paragraph 266 contains legal conclusions that require no response.  To the extent such allegations are deemed to be allegations of fact, eOne denies each and every allegation in Paragraph 266.

267.    Paragraph 267 contains legal conclusions that require no response.  To the extent such allegations are deemed to be allegations of fact, eOne denies each and every allegation in Paragraph 267.

**RESPONSE TO PRAYER FOR RELIEF**

With respect to the WHEREFORE clauses in the Amended Complaint, eOne denies that Plaintiff is entitled to any relief.

**GENERAL DENIAL**

Each numbered paragraph in this Answer responds to the identically numbered paragraph in the Amended Complaint.  eOne denies all allegations, declarations, claims, or assertions in the Amended Complaint that are not specifically admitted in this Answer.  To the extent the headings contained in the Amended Complaint constitute allegations, such allegations are denied.

**AFFIRMATIVE DEFENSES**

Further responding to the Amended Complaint, eOne asserts the following defenses. eOne does not admit to having the burden of proof and/or the burden of persuasion with respect to any of these defenses.  By designating the following as defenses, eOne does not in any way waive or limit any defenses that are or may be raised by their denials, allegations, and averments set forth herein.  The defenses are pleaded in the alternative, are raised to preserve eOne's right to assert such defenses, and are raised without prejudice to eOne's ability to raise other and further defenses.  eOne reserves the right to amend, supplement, and/or otherwise modify this Answer, including without limitation the right to assert additional defenses that become known to it through discovery or otherwise.

## FIRST DEFENSE

The Amended Complaint, and each of its claims for relief, is barred because it fails to state a claim upon which relief can be granted.

## SECOND DEFENSE

Each of Plaintiff's alleged claims fails in whole or in part because those claims are barred by the valid Talent Agreement signed by W.W.H., including all amendments thereto.

## THIRD DEFENSE

Plaintiff's unjust enrichment claim fails because eOne's conduct was reasonable, justified and in good faith.

## FOURTH DEFENSE

Plaintiff's unjust enrichment claim fails because any benefits conferred were by informed consent.

## FIFTH DEFENSE

Plaintiff's unjust enrichment claims fail because W.W.H. was adequately compensated for the Documentary.

## SIXTH DEFENSE

Plaintiff's false endorsement claim under the Lanham Act, 15 U.S.C. § 1125(a), fails because it is barred by the doctrine of fair use.

## SEVENTH DEFENSE

Plaintiff's fraud claim fails because there was no material misrepresentation or concealment by eOne.

## EIGHTH DEFENSE

Plaintiff's fraud claim fails because to the extent the claim is based upon conduct or representations by Selby or any other third party, such conduct or representations were not within the

scope of any agency relationship between Selby or that third party, on the one hand, and eOne, on the other hand.

### NINTH DEFENSE

Plaintiff's fraud claim fails because there was no justifiable reliance by Plaintiff on any alleged misrepresentation or concealment (and eOne denies any such misrepresentation or concealment occurred).

### TENTH DEFENSE

Plaintiff's fraud claim fails because eOne lacked scienter, or knowledge of falsity, as to any alleged misrepresentation or concealment (and eOne denies any such misrepresentation or concealment occurred).

### ELEVENTH DEFENSE

Plaintiff's fraud claim fails because eOne did not have the requisite intent to defraud.

### TWELFTH DEFENSE

Plaintiff's claims fail because they are barred by the First Amendment.

### THIRTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

### FOURTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel.

### FIFTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

### SIXTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of ratification.

### SEVENTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of acquiescence.

## EIGHTEENTH DEFENSE

Plaintiff's sought injunctive relief would violate the First Amendment.

## NINETEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because any alleged damages or injuries suffered were not legally or proximately caused by any act of omission on the part of eOne.

## TWENTIETH DEFENSE

Plaintiff's claims are barred, in whole or in part, because any alleged damages are too speculative and imprecise.

## COUNTERCLAIM

Defendant and Counterclaimant Entertainment One Reality Productions, LLC ("eOne"), by and through their undersigned attorneys, Davis Wright Tremaine, LLP, hereby join in asserting this anti-SLAPP counterclaim under New York Civil Rights Law §§ 70-a and 76-a against Plaintiff and Counter-Defendant Sabrina Morrissey ("Morrissey").

## INTRODUCTION TO THE COUNTERCLAIM

1.      eOne realleges and incorporates by reference its responses to Paragraphs 1 through 267 of the Amended Complaint in its Answer filed thereto.

2.      On February 20, 2024, Morrissey initiated this action *ex parte*, for the purpose of inhibiting and interfering with the exercise of free speech rights regarding an issue of public concern by eOne. Specifically, Morrissey initially brought this action against AETN and eOne to unconstitutionally enjoin the publication of the four-part documentary *Where is Wendy Williams?* (the "Documentary"), which captures a raw, honest, and unfiltered window into the life of W.W.H., a well-known public figure, after she was placed under guardianship. The Documentary reveals how the guardianship system that was purportedly put in place to guard W.W.H.'s interests had instead isolated her from her family, left her largely alone and unattended in her apartment, exacerbated her self-destructive behavior and mental decline, and failed to prevent her use and/or abuse of alcohol.

3.      Morrissey's original Complaint in this action sought a declaration that the On-Camera Talent Agreement executed by W.W.H. for purposes of the Documentary (the "Talent Agreement") is void, and a permanent injunction preventing AETN and eOne from releasing the Documentary or any associated footage. Morrissey obtained and then served eOne and AETN with

an *ex parte* temporary restraining order ("TRO") enjoining publication of the Documentary, and an *ex parte* order temporarily sealing the entire action from public view.

4.      Counsel for eOne and AETN explained to Morrissey's counsel that they were seeking an unconstitutional prior restraint, provided Morrissey's counsel with case law on point, and requested that Morrissey's counsel "confer with your client and voluntarily withdraw the TRO." Morrissey refused to do.

5.      As expected, and within 24 hours of service, the TRO was vacated by Justice Peter Moulton of the New York Appellate Division First Department as an unconstitutional prior restraint.

6.      Undeterred, six months later, Morrissey resumed her attempts to impose liability upon the producers and distributors of the Documentary. She filed her Amended Complaint asserting claims for false endorsement under the Lanham Act, 15 U.S.C. § 1125(a), as well as state law claims for a declaratory judgment, unjust enrichment, and fraud, adding Creature Films, Inc. and Mark Ford, as well as non-distributor Lifetime Entertainment Services, LLC, as defendants. Morrissey seeks declaratory and monetary relief, as well as an injunction, e.g., "permanently enjoining Defendants from any further airing, sales, or release of the [Documentary]."

7.      Morrissey's claims are without a substantial basis in fact or law. Among other things, the claims are barred by the Talent Agreement W.W.H. executed voluntarily and when she had full legal authority to do so, after it had been reviewed and negotiated by multiple attorneys representing her interests, as well as W.W.H.'s manager. Upon information and belief, Morrissey was also aware of the Talent Agreement at least as of December 2022 and had been given an opportunity to review it before it was executed.

8.      Despite this, and despite also concededly having known of the Talent Agreement since March 2023, Morrissey never tried to stop W.W.H. from participating in the Documentary,

but continued to approve W.W.H.'s participation in it.  Morrissey also did not seek to cancel or rescind the Talent Agreement until instituting this action on the eve of the Documentary's release.

9.      In short, Morrissey has forced eOne to defend itself against meritless litigation arising from the creation and publication of the Documentary—a categorical exercise of First Amendment-protected speech on a matter of public concern.

10.     The First Amendment enshrines this nation's foundational commitment to the protection of a free press.  Many states have put in place additional protections to ensure that citizens' First Amendment freedoms have the breathing space needed to survive.  One of these safeguards that has developed over recent decades is the adoption of anti-SLAPP laws.  SLAPPs—Strategic Lawsuits Against Public Participation—are lawsuits used to inhibit the exercise of free speech and harass publishers by forcing them to spend money to defend against baseless suits.  These damaging suits chill free speech and the robust exchange of ideas and culture by targeting those who communicate about issues of public interest.  Multiple states—including New York—have passed anti-SLAPP laws to offer redress to targets of SLAPP suits.

11.     Specifically, on November 10, 2020, New York's Governor signed Assembly Bill 5991-A into law, substantially expanding New York's existing anti-SLAPP law to provide greater protection to publishers against frivolous litigation intended to silence their exercise of the rights of free speech and petition about matters of public interest (the "Anti-SLAPP Law").  Specifically, defendants in lawsuits "involving public petition and participation" (*i.e.*, SLAPP suits) may now file an action to recover damages, including costs and attorney's fees, from any person who "commenced or continued" such an action "without a substantial basis in fact and law . . . ."  N.Y. Civil Rights Law § 70-a(1).

12.     This cause of action for damages provided for in the Anti-SLAPP law is not a procedural mechanism.  It operates independent of the law's procedure for filing an Anti-SLAPP

motion.  *See* N.Y. CPLR 3211(g).  Thus, the Anti-SLAPP law established a new, *substantive* right under New York law to recover damages incurred in defending SLAPP suits.

13.    Critically, the Anti-SLAPP law applies to lawsuits targeting "[a]ny communication in a place open to the public or a public forum in connection with an issue of public interest" or "any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest . . . ," with the term "public interest" defined "broadly" to "mean any subject other than a purely private matter."  N.Y. Civil Rights Law § 76-a(1)(a) & (d).  The Anti-SLAPP law also provides for compensatory and punitive damages against plaintiffs who, like the ones in this litigation, commence or continue meritless legal claims for the purpose of "harassing . . . or otherwise maliciously inhibiting the free exercise of speech []."  N.Y. Civil Rights Law §§ 70-a(1(b) and (c).

14.    This is a classic SLAPP suit.  Indeed, Morrissey commenced this lawsuit by seeking an unconstitutional prior restraint that was immediately vacated.  Morrissey then continued her meritless claims against eOne with full knowledge that the claims lack any substantial basis in law or fact, for the sole purpose of maliciously inhibiting eOne and its co-parties' speech by preventing publication of the Documentary.  Indeed, Morrissey's actions only demonstrate the meritless of her suit:  By agreeing at all times to W.W.H.'s participation in the Documentary, Morrissey made clear her position that W.W.H. was competent to do so and that she had no problem with eOne creating and producing a documentary about W.W.H.  It was only when Morrissey realized the Documentary would question the quality of her own guardianship of W.W.H. that Morrissey suddenly decided to try to ensure the Documentary would never be released. Thus, it appears that Morrisey is misusing her position as a guardian of W.W.H. to silence criticism of her controversial and failed administration of W.W.H.'s guardianship.

15.    Morrissey has caused, and continues to cause, eOne to expend significant costs and fees to defend its First Amendment-protected rights.

16.    Unless Morrissey is held accountable for her tortious activity, the purpose of the Anti-SLAPP Law will be frustrated.

## PARTIES

17.    Counterclaimant eOne is a California corporation authorized to do business in New York.

18.    Counter-Defendant Sabrina Morrissey alleges she is the court-appointed Guardian for W.W.H. pursuant to Article 81 of the Mental Hygiene Law and alleges W.W.H. is a resident of New York and subject to guardianship in New York.

## JURISDICTION AND VENUE

19.    Insofar as the Court has supplemental subject matter jurisdiction over Morrissey's state law claims, this Court also has supplemental jurisdiction over this Counterclaim pursuant to 28 U.S.C. § 1367.  Both this Counterclaim and Morrissey's state law claims for a declaratory judgment, unjust enrichment, and fraud because arise out of the same common nucleus of operative facts—namely the publication of the Documentary.  *See Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.,* 373 F.3d 296, 308 (2d Cir. 2004).  This Counterclaim further arises from the present litigation itself and the attempts by Morrissey to prevent eOne's exercise of the constitutional right of free speech in connection with an issue of public interest, namely the Documentary.

20.    This Court has personal jurisdiction over the parties because they have each asserted claims in this action in courts of New York County, because the Talent Agreement at issue provides the parties thereto consent to personal jurisdiction in New York, and because Morrissey transacts business within the state of New York in connection with the incidents giving rise to this action.

21.    Venue for this action properly lies in this district court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

22.    The laws of the State of New York apply to the subject matter of this action, because New York has the most significant relationship to this litiagation:  Much of the Documentary was filmed in New York, the original action was removed from the Supreme Court of the State of New York and asserted claims under New York law, and New York law applies to the Talent Agreement at the root of this action.

## FACTUAL BACKGROUND

### The Documentary

23.    W.W.H.'s relationship with Creature Films and eOne goes back to June 2019, when they were selected to produce a documentary on W.W.H.  That project—*Wendy Williams: What a Mess* ("*What a Mess*"), a title W.W.H. herself came up with—focused on how the longtime gossip maven had herself become the subject of tabloid press surround her health and marriage, and how she coped with the role reversal.  W.W.H. served as executive producer on *What a Mess*, sat for numerous interviews, and provided meaningful input on its production.  *What a Mess*, which premiered on January 30, 2021, is a "raw, no holds barred look with never-before heard truths about Wendy's notorious feuds with celebrities, her shocking divorce, her childhood and the private darkness she has endured," as well as a story about "a self-made woman who finds herself at the start of a new life, uncertain of the future, but ready to reclaim her crown."[5]

---

[5] https://www.mylifetime.com/specials/wendy-williams-what-a-mess

24.     Over the next year, W.W.H. continued to be the focus of tabloid gossip and entertainment news.  She was delayed returning to host her long-running talk show, with news reports and official statements citing health issues.  In February 2022, it was announced her talk show would end.

25.     In the early summer of 2022, eOne, Creature Films, W.W.H., and W.W.H.'s manager Will Selby ("Selby") discussed producing a second documentary, intended to be a continuation of *What a Mess*.  Soon afterward, Angela Rogers, an attorney for W.W.H., began negotiating terms for a shopping agreement for the project with an attorney for eOne.

26.     W.W.H. sat for a development shoot in August 2022.  During set up for that shoot, W.W.H.'s "sober coach" told Producers that W.W.H. was having a bad day after having been up drinking the night before, but that she was "getting better now and we can do the interview." W.W.H.'s sober coach remained present for the duration of the development shoot.

27.     After the development shoot, upon information and belief, W.W.H. attended a wellness center to address her substance abuse.  Plans for the Documentary were put on hold.

28.     On October 17, 2022, after discharge from the wellness center, W.W.H. executed the Shopping Agreement negotiated by her attorney.  It bears an effective date of July 7, 2022.

29.     The project was then sold to AETN in November 2022.  Negotiations began for W.W.H.'s Talent Agreement, with two attorneys with apparent authority, if not express authority, to represent W.W.H., Hector Baldonado and Peter Allan, reviewing and negotiating revisions on her behalf.  Upon information and belief, Morrissey was aware of these negotiations no later than December of 2022, with both Selby and W.W.H.'s attorneys indicating that Morrissey needed to review the Talent Agreement before it could be finalized.

30.     W.W.H. executed the Talent Agreement on January 23, 2023.  That Talent Agreement grants eOne the rights to use and authorize others to use W.W.H.'s likeness, it releases

all claims arising from the Documentary as to eOne, AETN, and Creature Films, it explicitly provides that eOne and AETN would retain final creative control over its contents, and it waives any right to injunctive relief.

31.    Filming for the Documentary began after the Talent Agreement was executed.

32.    On March 13, 2023, Linda Redlisky, a purported guardianship-court-appointed attorney for W.W.H., contacted attorneys at eOne to assert she was W.W.H.'s attorney, and any attorneys who had negotiated the Talent Agreement did not have authority—notwithstanding the clear indications of apparent authority upon which eOne had relied.  Yet Redlisky did not purport to cancel or rescind the Talent Agreement.  Instead, Redlisky directed counsel for eOne to speak to W.W.H.'s purported entertainment attorney Deborah Hrbek about the Talent Agreement.

33.    Counsel for eOne thereafter were introduced to Hrbek.  On March 22, 2023, Hrbek responded and provided only two minor concerns about the Talent Agreement:  First, she asked that the crew members for the Documentary be asked to sign an NDA confirming they would not disclose unpublished information learned about W.W.H. during production, and second, she asked about "some formalities and minor substantive issues" which she proposed could be "resolve[d] quickly and incorporate[d] into a short amendment to the contract."  Thus, rather than cancel or rescind the Talent Agreement or claim it was void, Hrbek affirmed the original Talent Agreement by seeking to amend its terms.

34.    The parties then proceeded to negotiate the requested NDA and amendment, with Morrissey herself included on email communications as of April 4, 2023.  On May 10, 2023, pursuant to these discussions, Counsel for eOne sent a draft amendment to Hrbek that: (i) provided more detail regarding the parties' rights and obligations in an event of incapacity, default, or force majeure, and in the event of the Talent Agreement's termination on any of these bases; and (ii) provided for production to pay for Selby's airfare as needed.

35.    As email correspondence establishes, despite eOne's attorneys following up several times about the amendment, they were not able to schedule a call with Hrbek until nearly a month later. Emails show that the attorneys finally spoke in June 2023, and on June 12, 2023, Hrbek sent eOne an NDA "for sign off by on set crew past and present (t[o] the extent attainable)…" eOne agreed to carry this out "to the best of our ability," circulated the NDA to crew, and confirmed on June 16, 2023 that they had done so. eOne's attorney further confirmed on that date there were no further plans to film with W.W.H. The emails establish Hrbek never followed up on the amendment. Because the amendment was largely meant to deal with interruptions to scheduled filming sessions with W.W.H., and there were no more plans to film W.W.H., eOne reasonably assumed that the amendment was no longer needed and all terms of the Talent Agreement remained in effect.

36.    At no point in this email correspondence did Morrissey, Redlisky, or Hrbek ever claim that W.W.H.'s signature on the Talent Agreement was not authentic, question that the Talent Agreement was entered into by The Wendy Experience, Inc. or that payments would be made to that entity, or assert that the Talent Agreement was void, rescinded, or otherwise terminated. Nor did Morrissey, Redlisky, or Hrbek at any point seek to alter the Talent Agreement's grant of rights to use W.W.H.'s likeness, its release of claims arising from the Documentary, its multiple explicit provisions that eOne and AETN would retain final creative control over its contents, or its waiver of injunctive relief.

37.    To the contrary, and as confirmed in Morrissey's pleadings in this action, *after* seeing the Talent Agreement, she continued to approve W.W.H.'s participation in filming sessions for the Documentary in March and April of 2023. Upon information and belief, Morrissey was also provided frequent updates on filming for the Documentary. At no point throughout this filming period did Morrissey ask that filming cease.

70

38.    Moreover, payments continued to be made to W.W.H. under the Talent Agreement from April 2023 onward.  Hrbek, the entertainment attorney purportedly engaged for W.W.H. by Morrissey, was copied on correspondence from Selby transmitting invoices from The Wendy Experience, Inc. for those payments in April 2023 and September 2023, at minimum.  In total, eOne paid over $400,000 to The Wendy Experience, Inc., as provided under the Talent Agreement, and none of these monies were refused or returned by Morrissey, W.W.H., or The Wendy Experience, Inc.

39.    On February 22, 2024, over ten months after W.W.H. had been last filmed for the Documentary, a press release was issued on behalf of W.W.H. publicly announcing her formal diagnosis of FTD and PPA.  This was the first time eOne learned that W.W.H. had been formally diagnosed with this disease.

**Morrissey Seeks to Enjoin Publication of the Documentary on the Eve of Its Release**

40.    Also on February 22, 2024, four days before the Documentary was set to be released, Morrissey initiated this action against AETN and eOne, seeking declaratory relief and a permanent injunction preventing AETN and eOne from releasing the Documentary or any associated footage.

41.    Morrissey sought and obtained an *ex parte* temporary restraining order from the Commercial Division of the New York State Supreme Court, New York County.  Within 24 hours of service, the TRO was vacated by Justice Peter Moulton of the New York Appellate Division First Department as an unconstitutional prior restraint.

**Morrissey Continues Asserting Meritless Claims**

42.    Morrissey did not serve the original Complaint filed in connection with this action until June 13, 2024, eight days before her time for service would run.

43.    The next day, Morrissey's attorneys sent a letter outlining supposed additional claims they would assert.  Counsel for eOne, AETN, and Creature Films sent a response on July 3, 2024, explaining that the asserted claims were without merit.

44.    Morrissey then sought three separate extensions to file an Amended Complaint, to which Defendants consented in each instance.  Finally, on September 16, 2024, Morrissey filed her Amended Complaint, asserting claims for false endorsement under the Lanham Act, 15 U.S.C. § 1125(a), as well as state law claims for a declaratory judgment, unjust enrichment, and fraud.

45.    The Talent Agreement on its face bars each of the claims asserted in Morrissey's Amended Complaint.  Morrissey claims the Talent Agreement is void, either because W.W.H. was purportedly incapacitated at the time it was signed, or did not sign it at all.  On that basis, she seeks, among other things, an injunction against "any further airing, sales, or release of the [Documentary] and any associated footage depicting W.W.H.," and awards of compensatory and punitive damages against the Defendants.

46.    Morrissey's claims are meritless.  W.W.H. was not legally incapacitated at the time she executed the Talent Agreement, and, upon information and belief, she did sign it.

47.    Moreover, Morrissey waived any right to seek recission of the Talent Agreement by consistently assenting to it and W.W.H.'s participation in the Documentary.  Morrissey was aware of the Documentary during its early stages, was, upon information and belief, aware of the Talent Agreement before it was executed, and was admittedly aware of the Talent Agreement after it was executed, yet never sought to rescind the Talent Agreement and continued to approve W.W.H.'s participation in the Documentary notwithstanding.

48.    Further, at the time the Talent Agreement was executed, W.W.H. had authority to enter into contracts on her own.  Morrissey was only W.W.H.'s temporary financial guardian at that time.

██████████████████████████████████████████████

███████████████████████████████, Morrissey still did not seek cancellation of the Talent Agreement. In fact, and with the full knowledge from a lawyer that Morrissey had chosen for W.W.H., W.W.H.'s manager continued to solicit and receive payments due to W.W.H. under the Talent Agreement after Morrisey had been granted authority over W.W.H.'s contracts.

49.    Next, while the Amended Complaint alleges W.W.H.'s signature on the Talent Agreement "does not appear to be genuine," and includes an image of W.W.H.'s "visually distinct" purported "real" signature, it also includes as Exhibit B a document it alleges demonstrates W.W.H.'s ████████████████████████████████████ and W.W.H.'s signature on this document closely matches that on the Talent Agreement. Thus, Morrissey's own allegations indicate W.W.H.'s signature on the Talent Agreement is genuine.

50.    And finally, even assuming *arguendo* there was no Talent Agreement, the claims asserted in the Amended Complaint fail to state a claim or find support for their elements in the facts, and are subject to numerous dispositive defenses. Among other things, there is no law prohibiting the creation, promotion, or publication of a documentary work about a person—even a person suffering from dementia—without written permission from that person (or her guardian), and any such law would violate the First Amendment.

51.    In sum, Morrissey's claims arise out of and target the creation and publication of a Documentary on a public figure, and are without any substantial basis in fact or law.

## COUNT 1

### (VIOLATION OF N.Y. CIVIL RIGHTS LAW §§ 70-a, 76-a)

52.    Pursuant to New York Civil Rights Law § 70-a, eOne is entitled to maintain a counterclaim to recover its costs, attorneys' fees, compensatory damages, and punitive damages in this action.

53.    This action commenced by Morrissey is an "action involving public petition and participation," as defined by N.Y. Civil Rights Law Section 76-a, because it is based upon a communication in a public forum in connection with an issue of public interest, as well as lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest.  N.Y. Civil Rights Law § 76-a(a)(1)-(2).

54.    The Documentary is a matter of public interest.

55.    Morrissey commenced this action against eOne even though her claims lacked any basis in fact and law and could not be supported by any argument for the extension, modification or reversal of existing law.

56.    The claims asserted in the Amended Complaint are without factual basis for the reasons set out above.

57.    The claims asserted in the Amended Complaint are without legal basis because, among other things, they are precluded as a matter of law by the Talent Agreement.  Even assuming *arguendo* that Morrissey had the right to cancel or modify the Talent Agreement during the period of W.W.H.'s participation in it, she did not exercise such a right, but rather assented to the Talent Agreement and to W.W.H.'s acceptance of payments due under the Talent Agreement.

58.    Moreover, Morrissey's Lanham Act claim is barred by the First Amendment because the Documentary is an expressive work and promotional materials for the Documentary were relevant to its content and not misleading.

59. Morrissey has not attempted to offer any arguments for such changes to existing law which would render her claims meritorious.

60. eOne advised Morrissey that her claims were baseless in a letter of July 3, 2024, but Morrissey nevertheless continued to assert them, including by filing the Amended Complaint.

61. Morrissey was fully aware that her claims against eOne have no substantial basis in law or fact, yet she commenced and continued this action for the purpose of harassing, intimidating, punishing, or otherwise maliciously inhibiting eOne's free exercise of speech.

62. Accordingly, pursuant to New York Civil Rights Law § 70-a, eOne is entitled to assert a counterclaim and to recover its costs, attorneys' fees, compensatory damages, and punitive damages in this action.

## **PRAYER FOR RELIEF**

WHEREFORE eOne prays for judgment as follows:

1. That Morrissey be denied the requested relief she seeks in this action;

2. That judgment on Morrissey's claims be entered in favor of eOne and against Morrissey; and

3. That judgment on the Counterclaim be entered in favor of eOne and against Morrissey;

4. That eOne be awarded its reasonable costs, attorneys' fees, and disbursements pursuant to New York Civil Rights Law Section 70-a or otherwise.

5. That, pursuant to New York Civil Rights Law Section 70-a, eOne be awarded punitive damages; and

6. For such other and further relief as the Court may deem just and proper.

Dated:     New York, New York
           November 15, 2024


Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP


By:  */s/ Rachel F. Strom*

Rachel F. Strom
Abigail B. Everdell
Alexandra M. Settelmayer
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone: (212) 489-8230
rachelstrom@dwt.com
abigaileverdell@dwt.com
alexandrasettelmayer@dwt.com

*Attorneys for Defendants A&E Television Networks, LLC*, *Entertainment One Reality Productions, LLC, Lifetime Entertainment Services, LLC, Creature Films, Inc., and Mark Ford*