# EXHIBIT E

Defendants Creature Films, Inc. and Mark Ford's November 15, 2024 Verified Answer and Affirmative Defenses to Plaintiff's Amended Complaint and Counterclaim

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

SABRINA E. MORRISSEY, acting in her
capacity as Guardian of W.W.H.,

                 Plaintiff,

          - against -

A&E TELEVISION NETWORKS, LLC;
ENTERTAINMENT ONE REALITY
PRODUCTIONS, LLC; LIFETIME
ENTERTAINMENT SERVICES, LLC;
CREATURE FILMS, INC.; and MARK FORD,

               Defendants.

------------------------------------------------------------- x

Case No.: 1:24-cv-07856

## DEFENDANTS CREATURE FILMS, INC. AND MARK FORD'S
## VERIFIED ANSWER AND AFFIRMATIVE DEFENSES
## TO PLAINTIFF'S AMENDED COMPLAINT AND COUNTERCLAIM

Defendants Creature Films, Inc. and Mark Ford (collectively the "Creature Films Defendants"), by and through their undersigned counsel, hereby file their Answer and Affirmative Defenses to the Verified Amended Complaint  (the "Amended Complaint") filed by Plaintiff Sabrina E. Morrissey ("Plaintiff").  Purely for purposes of clarity and without admitting any factual allegations therein, the Creature Films Defendants use the same headings and paragraph numbers employed by Plaintiff.

     1.     The Creature Films Defendants deny the allegations in Paragraph 1 characterizing their purported actions or the basis for this lawsuit.  Indeed, the Creature Films Defendants affirmatively allege that this case arises from the misguided and unjustified efforts by Plaintiff to exceed the scope of her judicial authority over her ward W.W.H., attempt to excuse her own failure to protect her ward, supplant W.W.H.'s wishes with her own, and deny W.W.H. perhaps one of her last chances to exercise her autonomy and honestly reach her fans in exactly the frank and unfiltered manner that was the hallmark of her career—all in an effort to prioritize Plaintiff's own reputation, and deflect scrutiny of her own inaction and indifference.  The Creature Films Defendants lack

knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 1 pertaining to pertaining to the status of and judicial determinations in the guardianship over W.W.H. (the "Guardianship Proceeding") and on that basis deny, generally and specifically, the allegations in Paragraph 1.

2.       The Creature Films Defendants admit that they produced a four-part documentary entitled *Where Is Wendy Williams?* (the "Documentary"), that defendant Entertainment One Reality Productions, LLC ("eOne") also produced the Documentary, and that the Documentary was distributed by defendant A&E Television Networks, LLC ("AETN"). The Creature Films Defendants deny that the Documentary was filmed without a valid contract and without the Guardian's consent. Instead, the Creature Films Defendants affirmatively allege that the Documentary was created with W.W.H.'s permission and involvement, pursuant to a long-standing relationship with W.W.H. going back over five years and W.W.H.'s On-Camera Talent Agreement that W.W.H. executed voluntarily on January 25, 2023 (the "Talent Agreement"), that it was W.W.H.'s intention that the Documentary be an honest and unfiltered account consistent with prior documentaries the Creature Films Defendants produced about her life, and that Plaintiff was aware of the creation of the Documentary and assented to it. The Creature Films Defendants deny W.W.H. only received $82,000 for her participation in the Documentary and, instead, affirmatively allege that W.W.H., through her company The Wendy Experience, Inc., was paid approximately $400,000 for her participation pursuant to the Talent Agreement. The Creature Films Defendants admit that two days before the Documentary was scheduled to premiere, when it had become clear that the Documentary would raise questions about W.W.H.'s care and treatment under the guardianship, making Plaintiff's own conduct the subject of scrutiny, Plaintiff served eOne and AETN with an *ex parte* temporary restraining order ("TRO"), which was vacated as unconstitutional within 24 hours by Justice Peter Moulton of the New York Appellate Division, First Department. The Creature Films Defendants deny Plaintiff's characterization of the

Documentary, respectfully refer the Court to the Documentary for its content and meaning, and affirmatively allege that the Documentary captures a raw, honest and unfiltered window into W.W.H.'s life after she was placed under guardianship, showing how her authenticity still shined even as she struggled with her loss of autonomy, and how the guardianship system purportedly put in place to guard her interests instead had isolated her from her family, left her largely alone and unattended in her apartment, exacerbated her self-destructive behavior and mental decline, and failed to prevent W.W.H's use and/or abuse of alcohol. The Creature Films Defendants deny that Plaintiff was not aware of Defendants' true intention, and instead affirmatively allege that Plaintiff was fully aware and on notice of the Documentary and the Talent Agreement at least as of April 2023, if not earlier, and never sought to cancel the Talent Agreement or stop the production of the Documentary. Except as so admitted, the Creature Films Defendants deny each and every allegation in Paragraph 2.

**A. Response to "W.W.H. Tragic and Widely Publicized Cognitive and Physical Decline"**

3.　　The Creature Films Defendants admit that W.W.H is a prominent and accomplished broadcaster with a long-standing career as described in Paragraph 3. The Creature Films Defendants respectfully refer this Court to the full text of the August 18, 2022, *Vice* article "The Misrepresentations of Wendy Williams' Undeniable Legacy" cited by Plaintiff in footnote 1 for its full content and meaning.

4.　　The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 4 and on that basis, deny each and every allegation in Paragraph 4.

5.　　The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 5, including specifically on whether any alleged "difficulties" "captured on camera" were the result of a decline in cognitive functioning or other factors and on that basis, deny each and every allegation in Paragraph 5.

6.      The Creature Films Defendants admit that W.W.H. has been a frequent subject of entertainment and gossip news items speculating on her personal life and health, often citing unnamed sources.  The Creature Films Defendants respectfully refer this Court to the full text of the November 23, 2021, iHeart article titled "Wendy Williams Reportedly Restricted to a Wheelchair" (the "iHeart Article") cited by Plaintiff in footnote 3 and the November 23, 2021, Hot97 article titled "Wendy Williams Is Allegedly Confined To A Wheelchair And Showing Early Signs Of Dementia,;" the November 22, 2021, Ricky Smiley Morning Show article titled "Wendy Williams Allegedly Is Confined To A Wheelchair & Is Showing Early Signs Of Dementia;" and the November 23, 2021, article from The Hollywood Gossip titled "Wendy Williams Unable to Walk, In Early Stages of Dementia" cited by Plaintiff in footnote 4 for their full content and meaning.  The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations stemming from these articles and on that basis, except as expressly admitted, the Creature Films Defendants deny each and every allegation in Paragraph 6.

7.      The Creature Films Defendants admit that in February of 2022, it was announced that W.W.H.'s talk show would end. The Creature Films Defendants respectfully refer this Court to the full text of the August 17, 2022, Hollywood Reporter article titled "Inside the Final Days of 'The Wendy Williams Show'" (the "August 17, 2022 Hollywood Reporter Article") cited by Plaintiff in footnote 5 for its full content and meaning.  The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations stemming from this article and on that basis, the Creature Films Defendants deny each and every remaining allegation based on the article in Paragraph 7.  The Creature Films Defendants deny each and every remaining allegation in Paragraph 7.

8.      The Creature Films Defendants deny each and every allegation in Paragraph 8.

9.      The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 9 and on that basis, deny each and every allegation in Paragraph 9.

10.     The Creature Films Defendants admit that W.W.H. is 60 years old.  The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 10 and on that basis, deny each and every allegation in Paragraph 10.  The Creature Films Defendants further allege that if Plaintiff was aware of W.W.H.'s diagnosis, she never shared that diagnosis with the Defendants, and she continued to allow the production of the Documentary to go forward despite that diagnosis.

**B. Response to "The W.W.H. Guardianship Proceeding"**

11.     Paragraph 11 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  The Creature Films Defendants respectfully refer the Court to this proceeding for the full context thereof. Moreover, to the extent that the allegations in Paragraph 11 relate to materials under seal in the Guardianship Proceeding, the Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 11 and on that basis, deny each and every allegation in Paragraph 11.

12.     Paragraph 12 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  The Creature Films Defendants respectfully refer the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 12 relate to materials under seal in the Guardianship Proceeding, the Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 12 and on that basis, deny each and every allegation in Paragraph 12.

13.     Paragraph 13 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H. The Creature Films Defendants respectfully refer the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 13 relate to materials under

seal in the Guardianship Proceeding, the Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 13 and on that basis, deny each and every allegation in Paragraph 13.

14.    Paragraph 14 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  The Creature Films Defendants respectfully refer the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 14 relate to materials under seal in the Guardianship Proceeding, the Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 14 and on that basis, deny each and every allegation in Paragraph 14.

15.    Paragraph 15 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  The Creature Films Defendants respectfully refer the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 15 relate to materials under seal in the Guardianship Proceeding, the Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 15 and on that basis, deny each and every allegation in Paragraph 15.

16.    Paragraph 16 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  The Creature Films Defendants respectfully refer the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 16 relate to materials under seal in the Guardianship Proceeding, the Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 16 and on that basis, deny each and every allegation in Paragraph 16.  The Creature Films Defendants admit that the Guardianship Proceeding was publicized in May of 2022 and that at that time, W.W.H. claimed that Wells Fargo was engaged in misconduct for initiating the Guardianship Proceeding.  The Creature Films Defendants deny each and every remaining allegation in Paragraph 16.

**C. Response to "Will Selby, The Wendy Experience, Inc., and the August 2022 Development Shoot"**

17.     The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 17 and on that basis, deny each and every remaining allegation in Paragraph 17.

18.     The Creature Films Defendants admit that they understood that Will Selby ("Selby") was W.W.H.'s manager.  The Creature Films Defendants further admit, as is seen on the Documentary, that it was their understanding that W.W.H. wanted to create a podcast and that Selby was helping her to do so.  The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 18 and on that basis, deny each and every remaining allegation in Paragraph 18.

19.     The Creature Films Defendants admit that they began working on the Documentary during the summer of 2022 and initially filmed a development shoot to create a "sizzle" reel in August 2022 that was shopped to several networks and ultimately picked up by AETN for its Lifetime Network.  The Creature Films Defendants affirmatively allege that W.W.H. executed a shopping agreement dated July 7, 2022 with eOne (the "Shopping Agreement") on October 17, 2022.  The Creature Films Defendants affirmatively allege that the Shopping Agreement provided that W.W.H. would have "mutual approval of all key creative elements concerning the Presentation Materials," and pursuant to this provision, W.W.H. and Selby reviewed and approved of the sizzle reel and the creative deck for the Documentary on November 2, 2022.  The Creature Films Defendants further affirmatively allege that the Documentary was initially meant to be a continuation of an earlier feature documentary that was entitled *Wendy Williams: What a Mess*—a title W.W.H. herself came up with—and had been released on January 30, 2021.  The Creature Films Defendants admit that they worked with eOne to produce the Documentary.  The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 19

concerning what Selby did or did not tell Plaintiff regarding the development shoot and/or Documentary or whether the Lifetime Networks is part of Lifetime Entertainment Services, LLC and on that basis, deny each and every remaining allegation in Paragraph 19. The Creature Films Defendants further affirmatively allege that they did not represent to Mr. Selby or anyone else that Mr. Selby would have "full creative control" over the Documentary. To the contrary, the Talent Agreement provides that eOne shall have the "right to edit, cut, rearrange, adapt, dub, revise, modify or otherwise alter the [material created for the Documentary] or any part thereof in its sole discretion" and that "the decision of eOne shall be final in any and all creative, financial, and business matters related to the [Documentary]."

20. The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 20 and on that basis, deny each and every remaining allegation in Paragraph 20.

21. The Creature Films Defendants admit that as W.W.H.'s manager, Selby facilitated access to W.W.H. for filming the Documentary.

22. The Creature Films Defendants admit that they were aware of the August 17, 2022, Hollywood Reporter Article and believed that it did not reflect the full story of the events reported, and notably omitted W.W.H.'s perspective. The Creature Films Defendants respectfully refer this Court to the full text of the August 17, 2022, Hollywood Reporter Article cited by Plaintiff in footnote 7 for its full content and meaning but note that the August 17, 2022, Hollywood Reporter Article also reports that there had been no diagnosis of dementia or mental incapacity, and includes statements from W.W.H.'s publicist that "It has been no secret that Wendy has battled with addiction over the years but at this time Wendy is on the road to recovery and healing herself from her chronic illnesses and her grievances of the past," and "What we do know is that Wendy has a history of chronic illness that she has publicly spoken about." The Creature Films Defendants lack knowledge or information

sufficient to form a belief as to the truth or falsity of the allegations stemming from this article and on that basis, the Creature Films Defendants deny each and every allegation in Paragraph 22.

23.    The Creature Films Defendants admit that W.W.H. had physical impairments at the start of filming the Documentary attributable to her well-publicized struggles with Graves' disease and lymphedema and that W.W.H. also exhibited intermittent signs of what appeared to be alcohol impairment. The Creature Films Defendants further affirmatively allege that they were told in the summer of 2022 that W.W.H. had been struggling with alcohol abuse and that she was treated at a residential wellness facility for substance abuse issues after the development shoot. Otherwise, the Creature Films Defendants deny that it was apparent W.W.H. was suffering from any severe and incapacitating cognitive and physical impairments when they began filming the Documentary.

24.    The Creature Films Defendants admit that they were told that after filming the development shoot for the Documentary W.W.H. was treated at a residential wellness facility for substance abuse issues. Except as so admitted, the Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 24 and on that basis, deny each and every allegation in Paragraph 24.

**D. Response to "The Contract Between The Wendy Experience, Inc. and EOne"**

25.    The Creature Films Defendants admit that eOne presented W.W.H. with a draft Talent Agreement on November 30, 2022, and further affirmatively allege that this agreement was reviewed by at least two attorneys for W.W.H. as well as W.W.H.'s manager, Selby, and that they understood it had received Plaintiff's approval, before it was executed. Except as so admitted, the Creature Films Defendants deny the allegations in Paragraph 25.

26.    The Creature Films Defendants admit that the Talent Agreement was presented to W.W.H.'s representatives and thoroughly reviewed by them after filming the development shoot. Except as so admitted, the Creature Films Defendants deny each and every allegation in Paragraph 26.

27.     The Creature Films Defendants admit that the Talent Agreement was executed on January 25, 2023, and that The Wendy Experience, Inc. was a party to the Talent Agreement.  The Creature Films Defendants further affirmatively allege upon information and belief that the Talent Agreement was signed by W.W.H. and bears her signature.  The Creature Films Defendants deny that the signature on the Talent Agreement "looks nothing like W.W.H.'s signature" and affirmatively allege that Exhibit B to Plaintiff's First Amended Complaint shows a court filing that Plaintiff claims was signed ████████████ by W.W.H. two months *after* the Talent Agreement was executed with what appears to be the same signature as the one on the Talent Agreement, as shown below:



Signature from the Talent Agreement



Signature from Exhibit B

The Creature Films Defendants lack knowledge or information sufficient to form a belief as to what individuals or entities control The Wendy Experience, Inc., but admit that their understanding is that The Wendy Williams Experience, Inc. was controlled by Selby and W.W.H.  Except as so admitted, the Creature Films Defendants deny the allegations in Paragraph 27.

28.     The Creature Films Defendants deny each and every allegation in Paragraph 28 and note that Plaintiff claims that W.W.H. had capacity to ████████████ two months after she executed the Talent Agreement.  *See* Paragraph 125.

29.     Paragraph 29 purports to characterize the Talent Agreement.  The Creature Films Defendants respectfully refer the Court to the Talent Agreement for its content and meaning.  The Creature Films Defendants deny the remaining allegations in Paragraph 29 and affirmatively allege

that they understood based on communications with W.W.H.'s manager and attorneys that Plaintiff had been shown a copy of the Talent Agreement before it was executed.

30.    The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the content of orders issued in the sealed Guardianship Proceedings or the content of conversations between Plaintiff and Mr. Selby and on that basis deny these allegations. The Creature Films Defendants otherwise deny each and every allegation in Paragraph 30.

**E. Response to "The Guardian's Discovery of the Contract and EOne's False Representations Regarding the Program"**

31.    The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 31 and on that basis, deny each and every allegation in Paragraph 31.

32.    The Creature Films Defendants admit that Plaintiff was aware that the Documentary was being created and, upon information and belief, received frequent updates regarding the same. The Creature Films Defendants further affirmatively allege that the images above reflect footage that appears in the Documentary. The Creature Films Defendants otherwise deny each and every allegation in Paragraph 32.

33.     The Creature Films Defendants lack knowledge or information sufficient to form a belief as to what Selby represented to Plaintiff or her reaction thereto and for that reason, deny each and every allegation in Paragraph 33.  The Creature Films Defendants deny each and every allegation in Paragraph 33.

34.     The Creature Films Defendants deny each and every allegation in Paragraph 34.

35.     The Creature Films Defendants admit that the Documentary's crew filmed a scene with W.W.H. and her father in Florida.  The Creature Films Defendants lack knowledge or information sufficient to form a belief as to what Selby did or did not discuss with Plaintiff and for that reason deny each and every allegation in Paragraph 35.

36.     The Creature Films Defendants deny each and every allegation in Paragraph 36 and deny specifically that Plaintiff had any authority over whether they could interview family members of W.W.H. for the Documentary.

37.     The Creature Films Defendants deny that W.W.H. traveled to California "for filming" and affirmatively allege that they did not arrange or know about this trip until they were informed by W.W.H.'s niece that she was in California.  The Creature Films Defendants further affirmatively allege that they were supposed to be filming W.W.H. in New York at the time of the trip and were invited by W.W.H.'s publicist to come film her in California.  The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph 37 and therefore deny them.

**F. Response to "The Release of the Trailer"**

38.     The Creature Films Defendants admit that they inquired about whether W.W.H., after receiving additional care in April and May 2023, had recovered and was healthy enough to film additional footage, and were told no.  The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 38 about the care

W.W.H. received in May of 2023 and on that basis, deny these allegations. The Creature Films Defendants admit that they attempted repeatedly to interview Plaintiff for the Documentary and that she declined, but lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 38 about Plaintiff's refusal to be interviewed by other "media sources" and on that basis, deny these allegations. The Creature Films Defendants deny each and every remaining allegation in Paragraph 38.

39.      The Creature Films Defendants deny that the Talent Agreement was not finalized and deny that they had any obligation to provide notice to Plaintiff regarding the status of the Documentary. The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 39 about Plaintiff's subjective beliefs and on that basis, deny them. The Creature Films Defendants admit that on February 2, 2024, a trailer was released for the Documentary (the "Trailer"), and it was announced that the Documentary would air in two parts on February 24 and 25 2024. The Creature Films Defendants otherwise deny Paragraph 39's characterization of the Trailer and respectfully refer the Court to the Trailer for its content and meaning. Except as so admitted, the Creature Films Defendants deny each and every allegation in Paragraph 39.

40.      Paragraph 40 purports to characterize the Trailer. The Creature Films Defendants respectfully refer the Court to the Trailer for its content and meaning.

41.      Paragraph 41 purports to characterize the Trailer. The Creature Films Defendants respectfully refer the Court to the Trailer for its content and meaning. The Creature Films Defendants further deny the allegations in Paragraph 41 regarding the alleged purpose of the Trailer.

42.      The Creature Films Defendants admit that on April 7, 2023, well into filming the Documentary, they were told for the first time by W.W.H.'s son that W.W.H. had received a preliminary diagnosis of alcohol-induced dementia. Paragraph 42 purports to characterize the Trailer

13

and the Documentary and the public reaction to the Trailer and the Documentary. The Creature Films Defendants respectfully refer the Court to the Trailer and the Documentary for its content and meaning. Except as so referred, the Creature Films Defendants deny Plaintiff's characterization of the Trailer and Documentary and the public reaction to the Trailer and the Documentary. The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 42 concerning Plaintiff's reaction to the Trailer and on that basis deny them.

43.     Paragraph 43 purports to characterize the Trailer and the Documentary. The Creature Films Defendants respectfully refer the Court to the Trailer and the Documentary for its content and meaning. Except as so referred, the Creature Films Defendants deny Plaintiff's characterization of the Trailer and Documentary. The Creature Films Defendants affirmatively allege that they had extensive conversations with W.W.H. during the production process of the Documentary about what W.W.H. wanted to film and what she did not want captured and abided by these wishes. The Creature Films Defendants affirmatively allege that they were not able to contact or meet with W.W.H. after April 12, 2023 and were unable to communicate with her about the Trailer or final Documentary as a consequence of the Guardianship. The Creature Films Defendants deny each and every remaining allegation in Paragraph 43.

44.     Paragraph 44 purports to characterize the Trailer. The Creature Films Defendants respectfully refer the Court to the Trailer for its content and meaning. Except as so referred, the Creature Films Defendants deny Plaintiff's characterization of the Trailer. The Creature Films Defendants further lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 44 about Plaintiff's subjective feelings and on that basis, deny them. The Creature Films Defendants further deny that they provided any assurances to Plaintiff regarding how W.W.H. would be depicted in the Documentary and indeed the Talent Agreement specifically states eOne shall have the "right to edit, cut, rearrange, adapt, dub, revise, modify or otherwise alter

the [material created for the Documentary] or any part thereof in its sole discretion" and that "the decision of eOne shall be final in any and all creative, financial, and business matters related to the [Documentary]." The Creature Films Defendants admit that on February 22, 2024, Plaintiff sought an *ex parte* TRO from the Commercial Division of the New York State Supreme Court, New York County in connection with this action. The Creature Films Defendants respectfully refer the Court to the TRO papers for the full context thereof. To the extent that the allegations in Paragraph 44 relate to materials under seal in the Guardianship Proceeding, the Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 44 and on that basis, deny the allegations about the Guardianship Proceeding orders in Paragraph 44. The Creature Films Defendants lack knowledge or information sufficient to form a belief about the allegations about the TRO motion papers being leaked and on that basis, deny the corresponding allegations in Paragraph 44. The Creature Films Defendants deny each and every remaining allegation in Paragraph 44.

45.     The Creature Films Defendants admit that on February 22, 2024, a press release was issued on behalf of W.W.H. publicly announcing her formal diagnosis of FTD and PPA. The Creature Films Defendants respectfully refer the Court to this press release, which can be accessed through the following hyperlink: https://prn.to/3TBi1WT, for its content and meaning.

46.     The Creature Films Defendants admit that Defendants moved to vacate the TRO as unconstitutional at the Appellate Division, First Department, and that on February 23, 2024, Justice Moulton of the First Department issued an order granting Defendants' motion to vacate the temporary restraining order on the grounds that it constituted an impermissible prior restraint on speech. The Creature Films Defendants respectfully refer the Court to the order issued by Justice Moulton for its content and meaning.

**G. Response to "The Release of the Program"**

47.     The Creature Films Defendants deny that they were aware of any dementia diagnosis until near completion of the Documentary, and respectfully refer the Court to the full text of the February 27, 2024, Fox News article titled "Wendy Williams Documentary Producers Wouldn't Have Filmed Her if They'd Known She Had Dementia," (the "February 27 Fox News Article") cited by Plaintiff in footnote 11 for its full content and meaning.  The Creature Films Defendants further affirmatively allege that in the February 27 Fox News Article, Ford is quoted as saying, truthfully, "of course, if we had known that Wendy had dementia going into it, no one would've rolled a camera."  The Creature Films Defendants further deny the Complaint's characterization of Bryant's statement in the February 27 Fox News Article and further affirmatively allege that it is entirely clear from this report that Bryant's quotation referred to the "first two hours" of the Documentary itself, not of filming for the Documentary.  The Creature Films Defendants deny each and every remaining allegation in Paragraph 47.

48.     The Creature Films Defendants admit that the Documentary was released on February 24 and 25, 2024, on the Lifetime Network.  Paragraph 48 purports to characterize the Documentary.  The Creature Films Defendants respectfully refer the Court to the Documentary for its content and meaning.  The Creature Films Defendants otherwise deny Plaintiff's characterization of the Documentary.

49.     Paragraph 49 purports to characterize the Documentary, in particular by pulling single-frame screenshots out of context.  The Creature Films Defendants respectfully refer the Court to the Documentary for its content and meaning.  Except as so referred, the Creature Films Defendants deny Plaintiff's characterization of the Documentary.

50. The Creature Films Defendants admit that the image in Paragraph 50 appears to show a "Join *Lifetime* in celebrating Black History Month every day" bug appearing on the screen when the Documentary aired. The Creature Films Defendants deny Plaintiff's remaining allegations in Paragraph 50.

51.    The Creature Films Defendants deny each and every allegation in Paragraph 51.

52.    The Creature Films Defendants respectfully refer the Court to the full text of the February 24, 2024, Variety article titled "Where is Wendy Williams?' Docuseries Is Unsettling and Exploitative: TV Review" cited by Plaintiff in footnote 13, the February 26, 2024, Collider article titled "The Wendy Williams Docuseries Is an Invasion of Health Privacy" cited by Plaintiff in footnote 14, the February 26, 2024 Collider article titled "The Wendy Williams Docuseries Is an Invasion of Health Privacy" cited by Plaintiff in footnote 15, the February 29, 2024, Black Entertainment Television article titled "Lifetime's 'Where is Wendy Williams' Documentary Should Raise Concerns Over Ethics and Accountability" cited by Plaintiff in footnote 16, the March 1, 2024, article from The Guardian titled "Is the Wendy Williams Docuseries Saving a Vulnerable Person, or Exploiting Her?" cited by Plaintiff in footnote 17, and the March 1, 2024, article from The Cut titled "What Do We Owe Wendy Williams?" cited by Plaintiff in footnote 18 for their full content and meaning. The Creature Films Defendants further affirmatively allege that Paragraph 52 includes a non-representative sample of press regarding the Documentary. For example, on February 26, 2024, Rolling Stone published an article titled "'Where Is Wendy Williams?' Ends With More Unnerving Questions Left Unanswered," which stated "The series is a devastating watch. Seeing the vibrant, hilarious, and iconic figure no longer be herself is a tough pill to swallow. And while stories like Williams' are important to bear witness to, no matter how uncomfortable they make us, it's hard to shake that sinking feeling that she has fewer people who are actually in her corner than she deserves."

17

The article can be accessed through the following hyperlink: https://bit.ly/4f1v8sL.  The Creature Films Defendants deny each and every remaining allegation in Paragraph 52.

53.    The Creature Films Defendants admit that the Guardian attempted to prevent the Documentary from being released despite having been aware of and having assented to its production. The Creature Films Defendants otherwise deny each and every allegation in Paragraph 53.

54.    The Creature Films Defendants admit that Ford truthfully described the Documentary to *The Hollywood Reporter* as capturing W.W.H.'s family's "point of view and illustrating what can happen when one of your family members is put into a guardianship outside of your control" and that "it got to a point where we were more worried about what would happen to Wendy if we stopped filming then if we continued. Because we ultimately knew that we have the control and we can just not air this if it can't be moved into a positive, redeeming direction for her where we can help W.W.H. and hopefully other people."  The Creature Films Defendants further affirmatively allege that the Documentary showed W.W.H. struggling with both apparent alcohol addiction *and* symptoms consistent with what was later diagnosed as FTD and PPA.  Except as so admitted, the Creature Films Defendants deny each and every allegation in Paragraph 54.

55.    The Creature Films Defendants admit that the Documentary did not include a "disclaimer informing viewers that W.W.H. is suffering from FTD and PPA," admit that this diagnosis was announced after the Documentary was completed and the Trailer had aired, deny that any cited "disclaimer" was required, and deny that "the focus of the Program is alcohol use."  The Creature Films Defendants further affirmatively allege that W.W.H.'s medical condition and the quality of her care are central themes of the Documentary.  The Creature Films Defendants otherwise deny Paragraph 55's characterizations of the Documentary and respectfully refer the Court to the Documentary for its content and meaning.  The Creature Films Defendants also respectfully refer this Court to the full text of the May 2, 2024, ET Online article titled "'Where Is Wendy Williams?'

Producers Say Wendy's Story Is 'Not Over,'" cited by Plaintiff in footnote 22 for its full content and meaning. The Creature Films Defendants deny each and every remaining allegation in Paragraph 55.

56.     The Creature Films Defendants admit that Ford stated in the February 26, 2024, Hollywood Reporter Article titled "If We'd Known She Had Dementia, No One Would've Rolled a Camera, Hollywood Reporter" (the "February 26, 2024 Hollywood Reporter Article") that "[the Documentary] was all signed off on. She [the guardian] was communicating with Will Selby, Wendy's manager. Will was the point of contact with the guardian throughout the process and he would have to go to her to get documents signed, to get location agreements, to book her travel out of state. All of these things were things that had to be signed off on by the guardian throughout. So, it's our understanding that she was very aware of everything throughout the process." The Creature Films Defendants deny that this statement was a lie and affirmatively allege that they understood that Plaintiff was aware that the Documentary was being created and received frequent updates regarding the same. The Creature Film Defendants respectfully refer this Court to the full text of the February 26, 2024, Hollywood Reporter Article cited by Plaintiff in footnote 21 and the May 2, 2024, ET Online article titled "'Where Is Wendy Williams?' Producers Say Wendy's Story Is 'Not Over,'" cited by Plaintiff in footnote 22 for their full content and meaning. The Creature Films Defendants lack knowledge or information sufficient to form a belief as to when Plaintiff learned of W.W.H.'s referenced trip to California, and on that basis deny this allegation. The Creature Films Defendants deny each and every remaining allegation in Paragraph 56.

57.     The Creature Films Defendants deny each and every allegation in Paragraph 57.

58.     The Creature Films Defendants admit that the Documentary is available on various streaming platforms, including Amazon and Apple TV. The Creature Films Defendants admit that they understood that by some measures the Documentary attracted an average of over 1 million viewers per night over the weekend of its debut. The Creature Films Defendants lack knowledge or

information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 58 and on that basis, deny each and every remaining allegation in Paragraph 58.

59.     The Creature Films Defendants deny that they engaged in or profited from any "exploitation of W.W.H.," and deny the characterizations of the Documentary in Paragraph 59.  The Creature Films Defendants admit that W.W.H. participated in filming sessions on numerous occasions.  The Creature Films Defendants deny that W.W.H. only received around $82,000 and, instead, affirmatively allege that W.W.H., through her company The Wendy Experience, Inc., was compensated $400,000 for her participation, which represents a premium on her compensation for *Wendy Williams: What a Mess*, and is a significant fee by any measure.  Except as so denied and admitted, the Creature Films Defendants deny each and every remaining allegation in Paragraph 59, and deny specifically that they earned anywhere near "millions" of dollars from the Documentary.

60.     The Creature Films Defendants admit that W.W.H. was known as the "Queen of All Media" and that as an African-American woman in an industry dominated at the top by white men, her accomplishments were hard-fought against significant odds and institutional hurdles.  To the extent the remaining allegations of Paragraph 60 contain legal conclusions, these require no response.  To the extent that such allegations are deemed to be allegations of fact, the Creature Films Defendants deny each and every allegation in Paragraph 60.

61.     Paragraph 61 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, The Creature Films Defendants deny each and every allegation in Paragraph 61.

## **PARTIES**

62.     The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 62 of the Amended Complaint and on that basis, deny each and every allegation in Paragraph 62.

63.    The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 63 of the Amended Complaint and on that basis, deny each and every allegation in Paragraph 63.

64.    The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 64 of the Amended Complaint and on that basis, deny each and every allegation in Paragraph 64.

65.    The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 65 of the Amended Complaint and on that basis, deny each and every allegation in Paragraph 65.

66.    The Creature Films Defendants admit that Creature Films is a California corporation based in Los Angeles, California.

67.    The Creature Films Defendants denies that Mark Ford is a resident of Los Angeles, California and affirmatively allege that he is a resident of Santa Monica, California.

## JURISDICTION

68.    Paragraph 68 contains legal conclusions that require no response.  To the extent a response is required, the Creature Films Defendants lack knowledge or information sufficient to form a belief as to whether this Court has personal jurisdiction over AETN and on that basis, deny the allegations of personal jurisdiction in Paragraph 68.

69.    Paragraph 69 contains legal conclusions that require no response.  To the extent a response is required, the Creature Films Defendants lack knowledge or information sufficient to form a belief as to whether this Court has personal jurisdiction over Lifetime Entertainment Services, LLC and on that basis, deny the allegations of personal jurisdiction in Paragraph 69.

70.    Paragraph 70 contains legal conclusions that require no response.  To the extent a response is required, the Creature Films Defendants lack knowledge or information sufficient to form a belief as to whether this Court has personal jurisdiction over eOne and on that basis, deny the allegations of personal jurisdiction in Paragraph 70.

71.    Paragraph 71 contains legal conclusions that require no response.  To the extent a response is required, Creature Films does not—at this time and for purposes of this case only— contest that this Court has personal jurisdiction over them.

72.    Paragraph 72 contains legal conclusions that require no response.  To the extent a response is required, Mark Ford does not—at this time and for purposes of this case only—contest that this Court has personal jurisdiction over him.

73.    The Creature Films admit that the Talent Agreement provides that the parties thereto agree to consent to personal jurisdiction in courts of New York State, New York County.  Ex. C to Amended Complaint at 8.  The Creature Films Defendants deny that the Talent Agreement is invalid. The Creature Films Defendants further affirmatively allege that the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), and jurisdiction over state-law claims is appropriate because the claims arise out of the same operative facts as the federal claims such that they form part of the same case and controversy and fall within the scope of this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

## VENUE

74.    Paragraph 74 contains legal conclusions that require no response.  To the extent a response is required, the Creature Films Defendants affirmatively allege that—at this time and for purposes of this case only—venue is proper in the Federal District Court for the Southern District of New York since a substantial part of the events or omissions giving rise to the claim occurred in this District.

75.    The Creature Films Defendants admit that the Talent Agreement provides that the parties thereto agree to consent to personal jurisdiction in courts of New York State, New York County, and that venue in the Federal District Court for the Southern District of New York is therefore proper.

76.    Paragraph 76 contains legal conclusions that require no response.  To the extent a response is required, the Creature Films Defendants admit that Plaintiff's Complaint seeks damages in excess of $500,000, in addition to equitable and declaratory relief, and contains allegations of misrepresentation, fraud, and business dealings between the parties.  The Creature Films Defendants deny Plaintiff is entitled to any relief. To the extent a response is otherwise required, the Creature Films Defendants deny each and every remaining allegation in Paragraph 76.

## BACKGROUND

### H. Response to "W.W.H."

77.    The Creature Films Defendants admit the allegations of Paragraph 77.

78.    The Creature Films Defendants admit that W.W.H appeared on her highly-popular daily talk show in multiple films, numerous television shows, and a Broadway musical.  The Creature Films Defendants admit that W.W.H. has published several books and engaged in other business ventures.  The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 78 and on that basis, deny each and every remaining allegation in Paragraph 78.

79.    The Creature Films Defendants respectfully refer this Court to the full text of the August 18, 2022, Vice article titled "The Misrepresentations of Wendy Williams' Undeniable Legacy" cited by Plaintiff in footnote 23 for its full content and meaning.

### I. Response to "W.W.H.'s Tragic and Widely Publicized Cognitive and Physical Decline"

23

80.     The Creature Films Defendants admit that W.W.H. received significant media attention after apparently fainting live on her show in 2017 and affirmatively allege that at the time this was explained to the press as having been the result of overheating and low electrolytes.  The Creature Films Defendants further affirmatively allege that in 2018, W.W.H. revealed that she had been struggling with Graves' disease, and in 2019, she revealed on her show that she had been struggling with addiction, had a 24-hour sober coach, and was living in a sober house.[1]  Except as so admitted, the Creature Films Defendants deny each and every remaining allegation in Paragraph 80.

81.     The Creature Films Defendants admit the allegations of Paragraph 81.

82.     The Creature Films Defendants admit that in February of 2018, W.W.H. had announced that she would take a three-week break from her show to focus on health struggles caused by Graves' disease and hyperthyroidism, but deny that W.W.H. announced her lymphedema diagnosis before 2019.

83.     The Creature Films Defendants admit that in January 2019 W.W.H. announced that she would be taking an extended break from her show.  The Creature Films Defendants admit that the February 23, 2024, OK Magazine Article cited by Plaintiff in footnote 27 reports that W.W.H. was suffering from alcohol-related brain damage in 2019 when she was at a rehabilitation center in Florida.  The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the reporting in these cited articles and on that basis deny it.  The Creature Films Defendants respectfully refer this Court to the full text of the January 18, 2019, Hollywood Reporter article titled "Wendy Williams Taking an 'Extended Break' From Talk Show to Focus on Health" cited by Plaintiff in footnote 26 and the February 23, 2024, OK Magazine Article cited by Plaintiff in footnote 27 for their full content and meaning.  The Creature Films Defendants lack

---

[1] https://www.youtube.com/watch?v=7jSthVD-Aeg; https://www.nytimes.com/2019/03/19/us/wendy-williams-rehab.html

24

knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 83 and on that basis, deny each and every remaining allegation in Paragraph 83.

84.    The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 84 and on that basis, deny each and every allegation in Paragraph 84.

85.    The Creature Films Defendants admit the allegations of Paragraph 85.

86.    The Creature Films Defendants admit that W.W.H. has been the frequent subject of unverifiable rumors and gossip and entertainment reporting based upon anonymous sources.  The Creature Films Defendants further affirmatively allege that as of November 23, 2021, W.W.H.'s brother, Thomas Williams, made a public statement to the press that there was nothing that led him to believe that W.W.H. suffered from dementia and, specifically, that W.W.H. had not been "displaying that type of behavior to the family. . . . We haven't had any alerts like that and I haven't seen anything like that or have had conversations with her that would lead me to believe that."[2]  The Creature Films Defendants respectfully refer this Court to the full text of the September 16, 2021, *Page Six* article titled "Wendy Williams Reportedly Taken to Hospital for Mental Health Check" cited by Plaintiff in footnote 29, the *iHeart* Article cited by Plaintiff in footnote 30, and the *Hot97* Article cited by Plaintiff in footnote 31 for their full content and meaning.  The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the reporting in these cited articles and on that basis deny it.

87.    The Creature Films Defendants deny the allegations in Paragraph 87.

---

[2] https://www.the-sun.com/tv/4122668/wendy-williams-dementia-show-hiatus-brother-tommy/

88.     The Creature Films Defendants admit that in September 2021, it was announced that W.W.H. would cancel certain public appearances and that the premiere of the thirteenth season of W.W.H.'s show would be pushed back two weeks.

89.      The Creature Films Defendants admit that The Hollywood Reporter published an article on August 17, 2022, which reported on a brief zoom call W.W.H. had participated in with staff for her show, and respectfully refer this Court to the full text of the August 17, 2022, Hollywood Reporter Article cited by Plaintiff in footnotes 32, 33, and 34 for its full content and meaning.  The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the reporting in the cited Article and on that basis, deny it.

90.     The Creature Films Defendants admit that it was reported in October 2021 that W.W.H. would not return for the season premiere of her show and guest hosts would fill in for her. The Creature Films Defendants further affirmatively allege that the Wendy Williams Show's production company issued a statement at the time that W.W.H. was "making progress, but is experiencing serious complications as a direct result of Graves' Disease and her thyroid condition."[3]

**J. Response to "Guardianship Proceedings in New York"**

91.     Paragraph 91 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, the Creature Films Defendants respectfully refer this Court to the full text of Article 81 of the New York Mental Hygiene Law ("Article 81") and its legislative history for an accurate description of the contents thereof.

92.     Paragraph 92 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, the Creature Films Defendants respectfully refer

---

[3] https://pagesix.com/2021/10/12/wendy-williams-will-not-return-to-talk-show-next-week/

this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

93.     Paragraph 93 contains legal conclusions that require no response. To the extent that such allegations are deemed to be allegations of fact, the Creature Films Defendants respectfully refer this Court to the full text of the Article 81 and its legislative history for an accurate description of the contents thereof.

94.     Paragraph 94 contains legal conclusions that require no response. To the extent that such allegations are deemed to be allegations of fact, the Creature Films Defendants respectfully refer this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

95.     Paragraph 95 contains legal conclusions that require no response. To the extent that such allegations are deemed to be allegations of fact, the Creature Films Defendants respectfully refer this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

96.     Paragraph 96 contains legal conclusions that require no response. To the extent that such allegations are deemed to be allegations of fact, the Creature Films Defendants respectfully refer this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

97.     Paragraph 97 contains legal conclusions that require no response. To the extent that such allegations are deemed to be allegations of fact, the Creature Films Defendants respectfully refer this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

98.     Paragraph 98 contains legal conclusions that require no response. To the extent that such allegations are deemed to be allegations of fact, the Creature Films Defendants respectfully refer

this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

99.     Paragraph 99 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, the Creature Films Defendants respectfully refer this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

100.     Paragraph 100 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, the Creature Films Defendants respectfully refer this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

101.     Paragraph 101 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, the Creature Films Defendants respectfully refer this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

102.     Paragraph 102 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, the Creature Films Defendants respectfully refer this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

103.     Paragraph 103 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, the Creature Films Defendants respectfully refer this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

104.     Paragraph 104 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, the Creature Films Defendants respectfully refer

this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

105.    Paragraph 105 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, the Creature Films Defendants respectfully refer this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

106.    Paragraph 106 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, the Creature Films Defendants respectfully refer this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

**K. Response to "The W.W.H. Guardianship Proceeding for W.W.H."**

107.    Paragraph 107 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  The Creature Films Defendants respectfully refer the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 107 relate to materials under seal in the Guardianship Proceeding, the Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 107 and on that basis, deny each and every allegation in Paragraph 107.

108.    Paragraph 108 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  The Creature Films Defendants respectfully refer the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 108 relate to materials under seal in the Guardianship Proceeding, the Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 108 and on that basis, deny each and every allegation in Paragraph 108.

109.    Paragraph 109 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  The Creature Films Defendants respectfully refer the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 109 relate to materials under seal in the Guardianship Proceeding, the Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 109 and on that basis, deny each and every allegation in Paragraph 109.  The Creature Films Defendants admit that W.W.H.'s attorney L'Shawn Thomas reportedly gave statements to the press regarding the Guardianship Proceeding, including that W.W.H. "doesn't agree with a financial guardian being appointed," and had filed an affidavit stating that Wells Fargo had improperly denied her access to her money.  The Creature Films Defendants otherwise respectfully refer the court to the *Hollywood Reporter* story cited in footnote 40 for the full content thereof.

110.    Paragraph 110 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  The Creature Films Defendants respectfully refer the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 110 relate to materials under seal in the Guardianship Proceeding, the Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 110 and on that basis, deny each and every allegation in Paragraph 110.

111.    Paragraph 111 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  The Creature Films Defendants respectfully refer the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 111 relate to materials under seal in the Guardianship Proceeding, the Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 111 and on that basis, deny each and every allegation in Paragraph 111.

112.    Paragraph 112 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  The Creature Films Defendants respectfully refer the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 112 relate to materials under seal in the Guardianship Proceeding, the Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 112 and on that basis, deny each and every allegation in Paragraph 112.

113.    Paragraph 113 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  The Creature Films Defendants respectfully refer the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 113 relate to materials under seal in the Guardianship Proceeding, the Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 113 and on that basis, deny each and every allegation in Paragraph 113.

114.    Paragraph 114 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  The Creature Films Defendants respectfully refer the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 114 relate to materials under seal in the Guardianship Proceeding, the Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 114 and on that basis, deny each and every allegation in Paragraph 114.

115.    Paragraph 115 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  The Creature Films Defendants respectfully refer the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 115 relate to materials under seal in the Guardianship Proceeding, the Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 115 and on that basis, deny each and every allegation in Paragraph 115.

116.    Paragraph 116 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  The Creature Films Defendants respectfully refer the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 116 relate to materials under seal in the Guardianship Proceeding, the Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 116 and on that basis, deny each and every allegation in Paragraph 116.

117.    The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 117 and on that basis, deny each and every allegation in Paragraph 117.

118.    Paragraph 118 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  The Creature Films Defendants respectfully refer the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 118 relate to materials under seal in the Guardianship Proceeding, the Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 118 and on that basis, deny each and every allegation in Paragraph 118.

119.    Paragraph 119 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  The Creature Films Defendants respectfully refer the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 119 relate to materials under seal in the Guardianship Proceeding, the Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 119 and on that basis, deny each and every allegation in Paragraph 119.

120.    Paragraph 120 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  The Creature Films Defendants respectfully refer the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 120 relate to materials

under seal in the Guardianship Proceeding, the Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 120 and on that basis, deny each and every allegation in Paragraph 120.

121.    Paragraph 121 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  The Creature Films Defendants respectfully refer the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 121 relate to materials under seal in the Guardianship Proceeding, the Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 121 and on that basis, deny each and every allegation in Paragraph 121.

122.    Paragraph 122 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  The Creature Films Defendants respectfully refer the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 122 relate to materials under seal in the Guardianship Proceeding, the Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 122 and on that basis, deny each and every allegation in Paragraph 122.

123.    The Creature Films Defendants admit that Exhibit A to the Complaint appears to be an order from the Guardianship Proceeding dated March 15, 2022.  Paragraph 123 otherwise purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  The Creature Films Defendants respectfully refer the Court to this proceeding for the full context thereof.

124.    Paragraph 124 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  The Creature Films Defendants respectfully refer the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 124 relate to materials under seal in the Guardianship Proceeding, the Creature Films Defendants lack knowledge or

information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 124 and on that basis, deny each and every allegation in Paragraph 124.

125.    The Creature Films Defendants affirmatively allege that in April of 2023, W.W.H. had capacity ████████████████████████████████████████████████████████

████████████████████████████ though affirmatively allege that the order is undated and lack knowledge or information sufficient to form a belief as to whether or when this order was issued in the Guardianship Proceeding, which is sealed.  The Creature Films Defendants admit that the order attached as Exhibit B to the Amended Complaint bears W.W.H.'s signature ████████████████

███████████     To the extent Paragraph 125 otherwise purports to characterize this order, the Creature Films Defendants respectfully refer the Court to Exhibit B for the full context thereof.

126.    The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 126 and on that basis, deny each and every allegation in Paragraph 126.

127.    Paragraph 127 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  The Creature Films Defendants respectfully refer the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 127 relate to materials under seal in the Guardianship Proceeding, the Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 127 and on that basis, deny each and every allegation in Paragraph 127.

128.    Paragraph 128 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  The Creature Films Defendants respectfully refer the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 128 relate to materials under seal in the Guardianship Proceeding, the Creature Films Defendants lack knowledge or

information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 128 and on that basis, deny each and every allegation in Paragraph 128.

129.    Paragraph 129 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  The Creature Films Defendants respectfully refer the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 129 relate to materials under seal in the Guardianship Proceeding, the Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 129 and on that basis, each and every allegation in Paragraph 129.

130.    Paragraph 130 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  The Creature Films Defendants respectfully refer the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 130 relate to materials under seal in the Guardianship Proceeding, the Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 130 and on that basis, deny each and every allegation in Paragraph 130.

131.    Paragraph 131 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  The Creature Films Defendants respectfully refer the Court to this proceeding for the full context thereof.

**L. Response to "W.W.H. Continues to Display Troubling Symptoms"**

132.    The Creature Films Defendants admit that in February of 2022, it was announced that W.W.H.'s talk show would end.  The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 132 and on that basis, deny each and every remaining allegation in Paragraph 132.

133.    The Creature Films Defendants respectfully refer this Court to the full text of the August 17, 2022, Entertainment Weekly article titled "Wendy Williams had to be told several times

her show had been canceled, execs say" (the "Entertainment Weekly Article"), cited by Plaintiff in footnote 39 for its full content and meaning.  The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations stemming from this article but affirmatively allege that the Entertainment Weekly Article reports on W.W.H.'s struggle with Graves' Disease and lymphedema and suggests that W.W.H.'s behavior was partially attributable to alcohol consumption as it reports that "staffers would 'find bottles [of alcohol] up in the ceiling tiles and other weird places in the office'" and that it was "alleged that staff members had sent texts questioning Williams' sobriety to higher-ups, who reportedly had to screen episodes of the show prior to air time to make sure the host was fit for air."  The Creature Films Defendants affirmatively allege that W.W.H.'s spokeswoman, Shawn Zanotti, is quoted in the Entertainment Weekly Article as stating "[i]t has been no secret that Wendy has battled with addiction over the years but at this time Wendy is on the road to recovery and healing herself from her chronic illnesses and her grievances of the past."  The Creature Films Defendants otherwise deny each and every allegation in Paragraph 133.

134.    The Creature Films Defendants respectfully refer this Court to the full text of the August 17, 2022, Hollywood Reporter Article cited by Plaintiff in footnote 40 for its full content and meaning but affirmatively allege that August 17, 2022, Hollywood Reporter Article reports on W.W.H.'s struggle with Graves' Disease and lymphedema and suggests that W.W.H.'s behavior was partially attributable to alcohol consumption as it reports that "staffers would 'find bottles [of alcohol] up in the ceiling tiles and other weird places in the office'" and that it was "alleged that staff members had sent texts questioning Williams' sobriety to higher-ups, who reportedly had to screen episodes of the show prior to air time to make sure the host was fit for air."  The Creature Films Defendants affirmatively allege that W.W.H.'s spokeswoman, Shawn Zanotti, is quoted in the August 17, 2022, Hollywood Reporter Article as stating "[i]t has been no secret that Wendy has battled with addiction

over the years but at this time Wendy is on the road to recovery and healing herself from her chronic illnesses and her grievances of the past."  The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations stemming from this article and on that basis, the Creature Films Defendants deny such allegations in Paragraph 134.  The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 134 and on that basis, deny each and every remaining allegation in Paragraph 134.

135.    The Creature Films Defendants respectfully refer this Court to the full text of the August 3, 2022, OK Magazine article titled "Wendy Williams Appears to Nap Next to Filled-to-the-Brim Champaigne Glass at Upscale NYC Store," cited by Plaintiff in footnote 42 and the August 1, 2022, Sanda Rose article titled "Fan Video Shows Wendy Williams In Her Car 'Completely Out of It,'" cited by Plaintiff in footnote 43 for their full content and meaning.  Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations stemming from this article and on that basis, the Creature Films Defendants deny such allegations in Paragraph 135.  The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph and on that basis, deny each and every remaining allegation in Paragraph 135.

## M. Response To "Will Selby, The Wendy Experience, Inc., and the August 2022 Development Shoot"

136.    The Creature Films Defendants admit that Selby is a jeweler and in 2022 was, to the Creature Defendants' knowledge, acting in the role of W.W.H.'s manager.  The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 136 and on that basis, deny each and every remaining allegation in Paragraph 136.

137.    The Creature Films Defendants admit that in 2022, W.W.H. professed her intent to create a podcast called "The Wendy Experience" and that Selby indicated he was helping W.W.H. with this project.  Except as so admitted, the Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding what Selby did or did not tell Plaintiff and on that basis, deny the allegations of Paragraph 137.

138.    The Creature Films Defendants admit that in 2022, W.W.H. professed her intent to create a podcast called "The Wendy Experience" and that Selby indicated he was helping W.W.H. with this project.  The Creature Films Defendants lack knowledge and information sufficient to form a belief as to the truth or falsity of allegations that the company The Wendy Experience, Inc., had been formed for purposes of this venture and on that basis, deny the corresponding allegations of Paragraph 138.  Except as so admitted, the Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding Selby's actions and Plaintiff's knowledge thereof and on that basis, deny the corresponding allegations of Paragraph 138.

139.    The Creature Films Defendants admit that they understood that the Instagram account @thewendyexperiencepodcast and the website www.thewendyexperience.com had been created at W.W.H.'s behest in order to publicize her new venture.  The Creature Films Defendants further admit that to their knowledge, no episodes of the podcast were released.  Except as so admitted, the Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding Selby's actions and on that basis, deny the allegations of Paragraph 139.

140.    The Creature Films Defendants deny each and every allegation in Paragraph 140.

141.    The Creature Films Defendants admit that they and eOne proposed the Documentary to Selby and, during the Summer of 2022, they began working in consultation with W.W.H. on the development materials and sizzle reel for the Documentary, and affirmatively allege that this project

was meant to be a continuation of an earlier feature documentary entitled *Wendy Williams: What a Mess*—a title W.W.H. herself came up with—and released on January 30, 2021. The Creature Films Defendants affirmatively allege that they have an established relationship with W.W.H. going back to 2019. The Creature Films Defendants lack knowledge or information sufficient to form a belief as to what Selby told the Plaintiff regarding the Documentary but deny that they represented to anyone that the Documentary would "cast W.W.H. in a positive light" or that Selby "would have full creative control" over the Documentary. The Creature Films Defendants otherwise deny each and every allegation in Paragraph 141.

142.    The Creature Films Defendants admit that as W.W.H.'s manager, Selby facilitated access to W.W.H. for filming the Documentary, including in her apartment, beginning in June 2022. Defendants deny that that they began filming W.W.H. for the Documentary without a contract in place, and affirmatively allege that W.W.H. executed a shopping agreement dated July 7, 2022 with eOne relating to the creation of development materials (the "Shopping Agreement") on October 17, 2022, and executed a Talent Agreement on January 25, 2023, and that other than the development shoot, all filming of W.W.H. for the Documentary took place after the Talent Agreement was executed. Except as so admitted, the Creature Films Defendants deny each and every allegation in Paragraph 142.

143.    The Creature Films Defendants deny that W.W.H. was "in no condition to appear on camera" in August 2022 and deny that she "could not consent to the project." Indeed, Plaintiff herself admits that W.W.H. ████████████████ to a Court order as late as April 2023. *See* Paragraph 125. The Creature Films Defendants further deny that either of these alleged conditions were "readily apparent" from the Documentary or news reporting from that time. The Creature Films Defendants further affirmatively allege that in November 23, 2021, W.W.H.'s brother Thomas Williams made a public statement to the press that there was nothing that led him to believe that

W.W.H. suffered from dementia and, specifically, that W.W.H. had not been "displaying that type of behavior to the family. . . . We haven't had any alerts like that and I haven't seen anything like that or have had conversations with her that would lead me to believe that."[4]  The Creature Films Defendants respectfully refer this Court to the full text of the August 17, 2022, Hollywood Reporter Article for its full content and meaning.  The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations stemming from this article and on that basis, Creature Films Defendants deny each and every allegation related to the article in Paragraph 143.  The Creature Films Defendants deny each and every remaining allegation in Paragraph 143.

144.    The Creature Films Defendants respectfully refer this Court to the full text of the February 26, 2024, Hollywood Reporter Article titled for its full content and meaning but affirmatively allege that in the article, Ford addresses W.W.H.'s behavior at the development shoot and explains that "the story that was given to us after that day is that it was a bad day for [W.W.H.] and that alcohol had been involved, and now she was going away [to a treatment facility] and she was going to get that under control, but this should in no way inhibit us from moving forward. And when we did come back, she was better. She was sober and on a better trajectory."  The Creature Films Defendants admit that W.W.H. was filmed for the Documentary in 2023, and except as so admitted deny each and every remaining allegation in Paragraph 144.

145.    The Creature Films Defendants respectfully refer this Court to the full text of the February 26, 2024, Hollywood Reporter Article for its full content and meaning and further affirmatively allege that it is entirely clear from this report that Bryant's quotation referred to the

---

[4] https://www.the-sun.com/tv/4122668/wendy-williams-dementia-show-hiatus-brother-tommy/

"first two hours" of the Documentary itself, not of filming for the Documentary.  The Creature Films Defendants deny each and every remaining allegation in Paragraph 145.

146.    Paragraph 146 purports to characterize the Documentary.  The Creature Films Defendants respectfully refer the Court to the Documentary for its content and meaning.  Except as so referred, the Creature Films Defendants deny Plaintiff's characterization of the Documentary and further deny that the specific footage referred to "shows that W.W.H. was incapable of providing consent for anything."  The Creature Films Defendants deny each and every remaining allegation in Paragraph 146.

147.    The Creature Films Defendants admit that it was their understanding that after filming the development shoot for the Documentary in the summer of 2022, W.W.H. was treated at a residential wellness facility for substance abuse issues.  The Creature Films Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 147 and on that basis, deny each and every allegation in Paragraph 147.

**N. Response to "The Contract Between The Wendy Experience, Inc. and EOne"**

148.    Paragraph 148 purports to characterize the Talent Agreement.  The Creature Films Defendants admit that The Wendy Experience Inc. and eOne executed the Talent Agreement, and further affirmatively allege that W.W.H. also executed the Talent Agreement, and otherwise respectfully refer this Court to the Talent Agreement for its content and meaning.

149.     Paragraph 149 purports to characterize the Talent Agreement.  The Creature Films Defendants respectfully refer this Court to the Talent Agreement for its content and meaning.

150.    Paragraph 150 purports to characterize the Talent Agreement and amendments thereto.  The Creature Films Defendants respectfully refer this Court to these documents for their content and meaning.  Except as so referred, the Creature Films Defendants deny Plaintiff's characterization of the Talent Agreement.  The Creature Films Defendants further affirmatively allege that they understood the Talent Agreement was reviewed by at least two attorneys for W.W.H.

41

151.    Paragraph 151 purports to characterize the Talent Agreement and amendments thereto.  The Creature Films Defendants respectfully refer this Court to these documents for their content and meaning.   Except as so referred, the Creature Films Defendants deny Plaintiff's characterization of the Talent Agreement and amendments thereto.

152.    The Creature Films Defendants deny that Plaintiff did not learn of the Talent Agreement until March 2023, and affirmatively allege upon information and belief that Plaintiff was aware of the Talent Agreement by December of 2022.  The Creature Films Defendants further affirmatively allege that the guardianship had no authority over W.W.H.'s ability to enter into the Talent Agreement at the time it was signed on January 25, 2023, or the Addendum at the time it was signed on February 17, 2023.  The Creature Films Defendants affirmatively allege that ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ to do so.  The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 152 and on that basis, deny each and every remaining allegation in Paragraph 152.

153.    The Creature Films Defendants admit that the Talent Agreement was executed on January 25, 2023, and that The Wendy Experience, Inc. was a party to the Talent Agreement.  To the extent the allegations of Paragraph 153 purport to characterize a signature on the Talent Agreement, the Creature Films Defendants respectfully refer the Court to the Talent Agreement itself.

154.    The Creature Films Defendants admit that the Talent Agreement purports to bear W.W.H.'s signature and further affirmatively allege that it does in fact bear W.W.H.'s signature.  The Creature Films Defendants deny that the signature on the Talent Agreement "looks nothing like W.W.H.'s signature," and affirmatively allege that Exhibit B to Plaintiff's First Amended Complaint shows a court filing that Plaintiff claims was signed ▮▮▮▮▮▮▮▮ by W.W.H. two months *after*

the Talent Agreement was executed with what appears to be the same signature as the one on the

Talent Agreement, as shown below:







Signature from the Talent Agreement          Signature from Exhibit B

155.     The Creature Films Defendants deny each and every allegation in Paragraph 155.

## O. Response to "The Guardian's Discovery of the Contract and EOne's False

### Representations Regarding the Program"

156.     The Creature Films Defendants lack knowledge or information sufficient to form a

belief as to the truth or falsity of the allegations in Paragraph 156 and on that basis, deny each and

every allegation in Paragraph 156.

157.     Paragraph 157 purports to characterize the Documentary.  The Creature Films

Defendants admit that it was their understanding that the trip to California referenced in Paragraph

157 was planned by W.W.H. and her publicist Shawn Zanotti, and otherwise respectfully refer the

Court to the Documentary for its content and meaning.  Except as so admitted and referred, the

Creature Films Defendants deny Plaintiff's characterization of the Documentary.

158.     The Creature Films Defendants deny that Plaintiff demanded that the Creature Film

Defendants return W.W.H. to New York and deny that Plaintiff had any such authority.  The Creature

Films Defendants lack knowledge or information sufficient to form a belief as to whether Plaintiff

demanded anyone else return W.W.H. to New York and on that basis, deny each and every allegation

in Paragraph 158.

159.    The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 159 as to when Plaintiff learned about the Talent Agreement and on that basis, deny the allegation in Paragraph 159 that Plaintiff "only learned about the purported [Talent Agreement] in the aftermath of the California trip."  The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the full content of communications between Ms. Jones and Linda Redlisky, the referenced attorney, and on that basis denies the allegations relating thereto.  The Creature Films Defendants deny each and every remaining allegation in Paragraph 159.

160.    The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 160 about the contents of the referenced call and on that basis deny each and every remaining allegation in Paragraph 160.

161.    The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 161 about the contents of the referenced call and on that basis deny each and every remaining allegation in Paragraph 161.

162.    The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 162 about the contents of the referenced call and on that basis deny each and every remaining allegation in Paragraph 162.

163.    The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding any alleged representations made by eOne and on that basis deny the allegations in Paragraph 163.  The Creature Films Defendants admit that additional filming for the Documentary took place in March and April of 2023.

164.    The Creature Films Defendants lack information sufficient to form a belief as to what Plaintiff did or did not contemplate and on that basis, deny these allegations.  To the extent Paragraph 164 purports to characterize the Documentary, the Creature Films Defendants

44

respectfully refer the Court to the Documentary for its content and meaning.  Except as so referred, the Creature Films Defendants deny Plaintiff's characterization of the Documentary.  The Creature Films Defendants deny each and every remaining allegation in Paragraph 164.

165.    The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 165 and on that basis, deny each and every allegation in Paragraph 165.

166.    The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the full content of communications between eOne and Deborah Hrbek, the referenced entertainment attorney, and on that basis denies the allegations relating thereto.  Paragraph 166 purports to characterize the NDA.  The Creature Films Defendants respectfully refer this Court to the NDA for its content and meaning.  Except as so referred, the Creature Films Defendants deny Plaintiff's characterization of the NDA.

167.    The Creature Films Defendants admit that, to their knowledge, Plaintiff did not sign the Talent Agreement.  The Creature Films Defendants lack information sufficient to form a belief as to whether Plaintiff signed the negotiated amendment.  The Creature Films Defendants deny each and every remaining allegation in Paragraph 167.  The Creature Films Defendants further affirmatively allege that neither Plaintiff's nor W.W.H's authorization were required to release the Documentary or any footage of W.W.H. or to use W.W.H.'s name, likeness, image, or voice in the Documentary.

168.    The Creature Films Defendants admit that, to their knowledge, Plaintiff never signed the Talent Agreement.  The Creature Films Defendants lack knowledge or information sufficient to form a belief as to when Plaintiff first saw the Talent Agreement, but affirmatively allege, upon information and belief, that she was aware of the Talent Agreement at by December 2022 and that it was the Creature Films Defendants understanding that she approved it prior to its execution.  The

Creature Films Defendants lack knowledge or information sufficient to form a belief as to whether Plaintiff communicated with anyone at A&E or Lifetime, and on that basis denies these allegations. The Creature Films Defendants deny the remaining allegations of Paragraph 168. .

169.    The Creature Films Defendants deny that W.W.H. lacked capacity to enter into the Talent Agreement or any other similar agreements regarding the Documentary when she entered into them.  Paragraph 169 otherwise purports to characterize the pending Guardianship Proceeding pertaining to W.W.H., and the Creature Films Defendants respectfully refer the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 169 relate to materials under seal in the Guardianship Proceeding, the Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 169 and on that basis, deny such allegations in Paragraph 169.

170.    The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 170 regarding W.W.H.'s medical condition and on that basis, deny each and every corresponding allegation in Paragraph 170.  The Creature Films Defendants do not claim that W.W.H. did not fulfill her obligations under the agreement and, except as so denied and admitted, deny each and every remaining allegation in Paragraph 170.

171.    The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 171 and on that basis, deny each and every allegation in Paragraph 171.

172.    The Creature Films Defendants admit that after their last filming session with W.W.H. on April 12, 2023, producers for the Documentary urged Selby to get W.W.H. further medical care, and that after this date they were denied access to W.W.H.  The Creature Films Defendants further admit that they inquired about whether W.W.H., after receiving additional care in April and May

2023, had recovered and was healthy enough to film additional footage, and were told no. The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 172 regarding W.W.H.'s medical condition, the advice of her healthcare providers, and communications between Plaintiff and Selby, and on that basis, deny each and every corresponding allegation in Paragraph 172. The Creature Films Defendants deny each and every remaining allegation in Paragraph 172.

**P. Response to "W.W.H.'s Diagnosis of Frontotemporal Dementia and Primary Progressive Aphasia"**

173.    The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 173 and on that basis, deny each and every allegation in Paragraph 173.

174.    The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 174 and on that basis, deny each and every allegation in Paragraph 174.

175.    The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 175 and on that basis, deny each and every allegation in Paragraph 175.

176.    The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 176 and on that basis, deny each and every allegation in Paragraph 176.

177.    The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 177 and on that basis, deny each and every allegation in Paragraph 177.

178.    The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 178 and on that basis, deny each and every allegation in Paragraph 178.

**Q. Response to "The Release of the Trailer"**

179.    The Creature Films Defendants admit that on February 2, 2024, the Trailer was released.  Paragraph 179 purports to characterize the Trailer.  The Creature Films Defendants respectfully refer the Court to the Trailer for its content and meaning.

180.    The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 180 and on that basis, deny each and every allegation in Paragraph 180.

181.    Paragraph 181 purports to characterize the Trailer.  The Creature Films Defendants respectfully refer the Court to the Trailer for its content and meaning.  Except as so referred, the Creature Films Defendants deny Plaintiff's characterization of the Trailer.  The Creature Films Defendants further respectfully refer this Court to the February 2, 2024, L.A. Times article titled "Wendy Williams resurfaces in trailer for her Lifetime documentary debuting this month," cited by Plaintiff in Paragraph 181 for its full content and meaning.  The Creature Films Defendants otherwise deny each and every remaining allegation in Paragraph 181.

182.    The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 182 about Plaintiff's communications with Selby or Plaintiff's subjective state of mind and on that basis, deny every allegation related to these communications in Paragraph 182.  The Creature Films Defendants deny each and every remaining allegation in Paragraph 182.

183.    The Creature Films Defendants admit that the Guardianship Proceeding is sealed.  The Creature Films Defendants further admit that an article was published in May 2022 reporting

that W.W.H. had been "placed under a financial guardianship" and included statements by W.W.H.'s reported lawyer that the guardianship was unwarranted and improper. The Creature Films Defendants deny each and every remaining allegation in Paragraph 183.

184. The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 184 and on that basis, deny each and every allegation in Paragraph 184. The Creature Films Defendants further affirmatively allege that the referenced photographs were taken in the context of scenes that were included in the Documentary.

185. The Creature Films Defendants admit that W.W.H. was capable of making successful public appearances during late 2022, further demonstrating that she was not incapacitated at this time. The Creature Films Defendants respectfully refer this Court to the November 23, 2022, L.A. Times Article titled "How's Wendy Williams Doin'?" cited by Plaintiff in footnote 38 for its full content and meaning. The Creature Films Defendants deny each and every remaining allegation in Paragraph 185.

186. The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations that Plaintiff was not offered an opportunity to view the Documentary before it aired and on that basis, deny this allegation in Paragraph 186. The Creature Films Defendants deny each and every remaining allegation in Paragraph 186.

187. Paragraph 187 purports to characterize the Trailer. The Creature Films Defendants respectfully refer the Court to the Trailer for its content and meaning. Except as so referred, the Creature Films Defendants deny Plaintiff's characterization of the Trailer. The Creature Films Defendants respectfully refer this Court to the November 23, 2022, L.A. Times article titled "How's Wendy Williams Doin'?" cited by Plaintiff in footnote 48 for its full content and meaning. The Creature Films Defendants deny each and every remaining allegation in Paragraph 187.

49

188.     The Creature Films Defendants admit that Plaintiff did not specifically authorize the release of the Trailer and affirmatively allege that Plaintiff's authorization was not required to release the Trailer.  The Creature Films Defendants otherwise deny each and every allegation in Paragraph 188.

189.     Paragraph 189 purports to characterize the Trailer.  The Creature Films Defendants respectfully refer the Court to the Trailer for its content and meaning.  Except as so referred, the Creature Films Defendants deny Plaintiff's characterization of the Trailer.  The Creature Films Defendants deny each and every remaining allegation in Paragraph 189.

190.     Paragraph 190 purports to characterize various news articles.  The Creature Films Defendants respectfully refer the Court to these news articles for their content and meaning.  Except as so referred, the Creature Films Defendants deny Plaintiff's characterization of the news articles.

191.     The Creature Films Defendants deny each and every allegation in Paragraph 191.  The Creature Films Defendants affirmatively allege that, pursuant to the Talent Agreement negotiated by her attorneys, W.W.H. served as an executive producer on the Documentary consistent with her involvement in the Documentary's conception as well as her prior involvement in documentaries about her produced by the Creature Films Defendants.  The Creature Films Defendants affirmatively allege that, consistent with her executive producer credit, W.W.H. provided meaningful consultation with respect to the Documentary.

192.     The Creature Films Defendants admit that on February 22, 2024, two days before the Documentary was to premiere, Plaintiff obtained an *ex parte* temporary restraining order ("TRO") from the Commercial Division of the New York State Supreme Court, New York County.  The Creature Films Defendants respectfully refer the Court to the TRO and Plaintiff's affirmation in support of the TRO for its content and meaning.

50

193.    The Creature Films Defendants admit that AETN and eOne filed a motion to vacate the unconstitutional TRO at the Appellate Division, First Department, and on February 23, 2024, less than 24 hours later, Justice Moulton of the First Department issued an order vacating the TRO as an unconstitutional prior restraint. The Creature Films Defendants respectfully refer the Court to the order issued by Justice Moulton for its content and meaning. The Creature Films Defendants deny each and every remaining allegation in Paragraph 193.

194.    Paragraph 194 purports to characterize the Affirmation of Mark Ford (the "Ford Affirmation") filed in the Appellate Division, First Department, in support of Defendants' opposition to Plaintiff's TRO. The Creature Films Defendants respectfully refer this Court to the Ford Affirmation for its content and meaning. Except as so referred, the Creature Films Defendants deny Plaintiff's characterization of the Ford Affirmation. Paragraph 194 purports to characterize the Documentary. The Creature Films Defendants respectfully refer the Court to the Documentary for its content and meaning. Except as so referred, the Creature Films Defendants deny Plaintiff's characterization of the Documentary. The Creature Films Defendants deny each and every remaining allegation in Paragraph 194 and deny specifically that they were made aware of any dementia diagnosis at the onset of filming.

195.    The Creature Films Defendants deny that there had been any reliable reporting prior to the Documentary being filmed that W.W.H. was suffering from dementia. The Creature Films Defendants further deny each and every remaining allegation in Paragraph 195.

196.    Paragraph 196 purports to characterize the Ford Affirmation. The Creature Films Defendants respectfully refer this Court to the Ford Affirmation for its content and meaning. Except as so referred, the Creature Films Defendants deny Plaintiff's characterization of the Ford Affirmation. The Creature Films Defendants further affirmatively allege that W.W.H. did consent to the creation of the Documentary, was at all points enthusiastic about the Documentary, and that these

51

sentiments were consistent with her personality throughout the many years of her relationship with the Creature Films Defendants. The Creature Films Defendants deny each and every remaining allegation in Paragraph 196.

197. Paragraph 197 purports to characterize Defendants' motion filed in the Appellate Division, First Department in support of Defendants' opposition to Plaintiff's TRO ("Defendants' First Department Motion"). The Creature Films Defendants respectfully refer this Court to Defendants' First Department Motion for its content and meaning. Except as so referred and stated, the Creature Films Defendants deny Plaintiff's characterization of Defendants' First Department Motion. Paragraph 197 also purports to characterize the pending Guardianship Proceeding pertaining to W.W.H. The Creature Films Defendants respectfully refer the Court to this proceeding for the full context thereof. To the extent that the allegations in Paragraph 197 relate to materials under seal in the Guardianship Proceeding, the Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 197 and on that basis, deny each and every allegation in Paragraph 197. The Creature Films Defendants deny each and every remaining allegation in Paragraph 197 and deny specifically that it would be absurd to suggest that Plaintiff's pursuit of this baseless litigation is not in W.W.H.'s best interests.

198. Paragraph 198 purports to characterize the Documentary. The Creature Films Defendants respectfully refer the Court to the Documentary for its content and meaning. Except as so referred, the Creature Films Defendants deny Plaintiff's characterization of the Documentary. The Creature Films Defendants deny each and every remaining allegation in Paragraph 198.

199. The Creature Films Defendants admit that on February 22, 2024, a press release was issued on behalf of W.W.H. publicly announcing her formal diagnosis of FTD and PPA. The Creature Films Defendants respectfully refer the Court to this press release, which can be accessed through the following hyperlink: https://prn.to/3TBi1WT, for its content and meaning. Paragraph

199 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.    The Creature Films Defendants respectfully refer the Court to this proceeding for the full context thereof. To the extent that the allegations in Paragraph 199 relate to materials under seal in the Guardianship Proceeding, the Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 199 and on that basis, deny each and every allegation in Paragraph 199.

 **R. Response to "The Release of the Program"**

200.    The Creature Films Defendants admit that W.W.H.'s FTD diagnosis was not announced until days before the Documentary was scheduled to premiere and that the premiere was not rescheduled after this.  Except as so admitted, the Creature Films Defendants deny each and every allegation in Paragraph 200.

201.    The Creature Films Defendants admit that the Documentary aired on February 24 and 25, 2024, on Lifetime.  The Creature Films Defendants further admit that the Documentary was made available on various streaming platforms, including Amazon and Apple TV, but deny that it is currently available on Amazon or Apple TV.

202.    The Creature Films Defendants admit that the Documentary consisted of four episodes originally aired across two nights.  The Creature Films Defendants deny that the Documentary totaled four and a half hours without commercials, and affirmatively allege that the four episodes totaled approximately four and a half hours with commercials.  The Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 202 and on that basis, deny each and every remaining allegation in Paragraph 202.

203.    Paragraph 203 purports to characterize the Documentary.  The Creature Films Defendants respectfully refer the Court to the Documentary for its content and meaning.  Except as so referred, the Creature Films Defendants deny Plaintiff's characterization of the Documentary.

204.    Paragraph 204 purports to characterize the Documentary.  The Creature Films Defendants respectfully refer the Court to the Documentary for its content and meaning.  Except as so referred, the Creature Films Defendants deny Plaintiff's characterization of the Documentary.

205.    Paragraph 205 purports to characterize the Documentary.  The Creature Films Defendants respectfully refer the Court to the Documentary for its content and meaning.  Except as so referred, the Creature Films Defendants deny Plaintiff's characterization of the Documentary.

206.    Paragraph 206 purports to characterize the Documentary.  The Creature Films Defendants respectfully refer the Court to the Documentary for its content and meaning.  Except as so referred, the Creature Films Defendants deny Plaintiff's characterization of the Documentary.  The Creature Films Defendants respectfully refer this Court to the February 24, 2024, Variety article titled "'Where is Wendy Williams?' Docuseries Is Unsettling and Exploitative" cited by Plaintiff in footnote 50 for its full content and meaning.  The Creature Films Defendants deny each and every remaining allegation in Paragraph 206.

207.    Paragraph 207 purports to characterize the Documentary.  The Creature Films Defendants respectfully refer the Court to the Documentary for its content and meaning.  Except as so referred, the Creature Films Defendants deny Plaintiff's characterization of the Documentary.  The Creature Films Defendants deny each and every remaining allegation in Paragraph 207.

208. The Creature Films Defendants respectfully refer this Court to the March 1, 2024, article from The Guardian titled "Is the Wendy Williams Docuseries Saving a Vulnerable Person, or Exploiting Her?" cited by Plaintiff in footnote 51, the February 23, 2024, article from The Daily Mail titled "TV's Ghoulish New Low: Dementia-Hit Wendy Williams is Reduced to a Sideshow Freak as

Relatives Crawl into her Fading Spotlight?" cited by Plaintiff in footnote 52, the February 26, 2024,

Collider article titled "The Wendy Williams Docuseries Is an Invasion of Health Privacy" cited by

Plaintiff in footnote 53, the February 29, 2024, Black Entertainment Television article titled

"Lifetime's 'Where is Wendy Williams' Documentary Should Raise Concerns Over Ethics and

Accountability?" cited by Plaintiff in footnote 54, the February 25, 2024, Today article titled "Fans

React to 'Where is Wendy Williams' Lifetime Doc" cited by Plaintiff in footnote 55,; the February

28, 2024, New York Post article titled "None of Us Should Watch the Heartbreaking Wendy

Williams Documentary" cited by Plaintiff in footnote 56 for their full content and meaning. The

Creature Films Defendants otherwise deny the allegations of Paragraph 208, and affirmatively allege

that numerous press outlets described the Documentary in positive terms, including a February 26,

2024, *Rolling Stone* article that stated "stories like Williams' are important to bear witness to, no

matter how uncomfortable they make us." The article can be accessed through the following

hyperlink: https://bit.ly/4f1v8sL. Except as so stated and referred, the Creature Films Defendants

deny the allegations of Paragraph 208.

209.    The Creature Films Defendants deny each and every allegation in Paragraph 209.

210.    Paragraph 210 purports to characterize the Documentary. The Creature Films

Defendants respectfully refer the Court to the Documentary for its content and meaning. Except as

so referred, the Creature Films Defendants deny Plaintiff's characterization of the Documentary. The

Creature Films Defendants respectfully refer this Court to the February 26, 2024, article from The

New York Times titled "'Where Is Wendy Williams?': 5 Takeaways From the Documentary" cited

by Plaintiff in footnote 51. The Creature Films Defendants deny each and every remaining allegation

in Paragraph 210.

211.    The Creature Films Defendants deny each and every allegation in Paragraph 211.

212.    The Creature Films Defendants admit that on February 22, 2024, a press release was issued on behalf of W.W.H. publicly announcing her formal diagnosis of FTD and PPA, and further affirmatively allege that this announcement came long after the Documentary had been filmed.  The Creature Films Defendants respectfully refer the Court to the press release, which can be accessed through the following hyperlink: https://prn.to/3TBi1WT, for its content and meaning.  The Creature Films Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 212 about W.W.H.'s formal diagnosis of FTD and PPA and on that basis, deny allegations related to W.W.H.'s diagnosis in Paragraph 212.  Paragraph 212 purports to characterize the Documentary.  The Creature Films Defendants respectfully refer the Court to the Documentary for its content and meaning.  Except as so referred, the Creature Films Defendants deny Plaintiff's characterization of the Documentary.  The Creature Films Defendants deny each and every remaining allegation in Paragraph 212.

213.    Paragraph 213 purports to characterize the Documentary.  The Creature Films Defendants respectfully refer the Court to the Documentary for its content and meaning.  Except as so referred, the Creature Films Defendants deny Plaintiff's characterization of the Documentary and specifically deny that Selby's concerns about W.W.H.'s drinking as shown in the Documentary were insincere or staged and that they ever ordered alcohol for W.W.H. while making the Documentary.  The Creature Films Defendants deny each and every remaining allegation in Paragraph 213.

214.    Paragraph 214 purports to characterize the Documentary.  The Creature Films Defendants respectfully refer the Court to the Documentary for its content and meaning.  Except as so referred, the Creature Films Defendants deny Plaintiff's characterization of the Documentary, and deny specifically that the scene described in Paragraph 214 was "manufactured."  The Creature Films Defendants deny each and every remaining allegation in Paragraph 214.

215.    Paragraph 215 purports to characterize the Documentary.  The Creature Films Defendants respectfully refer the Court to the Documentary for its content and meaning.  Except as so referred, the Creature Films Defendants deny Plaintiff's characterization of the Documentary, and deny specifically that they "required[d]" W.W.H. to visit a personal trainer or that the scene described was a "sham scene."  The Creature Films Defendants deny each and every remaining allegation in Paragraph 215.

216.    The Creature Films Defendants deny each and every allegation in Paragraph 216.

217.    The Creature Films Defendants deny each and every allegation in Paragraph 217.

218.    The Creature Films Defendants admit that after their last filming session with W.W.H. on April 12, 2023, producers for the Documentary urged Selby to get W.W.H. further medical care, and that after this date they were denied access to W.W.H.  The Creature Films Defendants further admit that they inquired about whether W.W.H., after receiving additional care in April and May 2023, had recovered and was healthy enough to film additional footage, and were told no.  The Creature Films Defendants respectfully refer this Court to the full text of the February 26, 2024, Hollywood Reporter article for its full content and meaning.  The Creature Films Defendants deny Plaintiff's characterization of Mark Ford's statements in the article.  The Creature Films Defendants deny each and every remaining allegation in Paragraph 218.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
*Declaratory Judgment*
*(Against EOne and A&E)*

219.     The Creature Films Defendants incorporate and repeat as if fully set forth herein their admissions, denials, averrals, and other answers to the allegations set forth in the above Paragraphs.

220.     The Creature Films Defendants admit that the Guardianship Proceeding was publicized in May of 2022 and that at that time, it was reported that it was a "financial guardianship" and that W.W.H. claimed that Wells Fargo had engaged in misconduct by initiating it.  Paragraph 220 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  The Creature Films Defendants respectfully refer the Court to this proceeding for the full context thereof. To the extent that the allegations in Paragraph 220 relate to materials under seal in the Guardianship Proceeding, the Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 220 and on that basis, deny each and every allegation in Paragraph 220.   The Creature Films Defendants deny each and every remaining allegation in Paragraph 220.

221.     Paragraph 221 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  The Creature Films Defendants respectfully refer the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 221 relate to materials under seal in the Guardianship Proceeding, the Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 221 and on that basis, deny each and every allegation in Paragraph 221.

222.     The Creature Films Defendants admit that on February 22, 2024, a press release was issued on behalf of W.W.H. publicly announcing her formal diagnosis of FTD and PPA.  The

Creature Films Defendants respectfully refer the Court to this press release, which can be accessed through the following hyperlink: https://prn.to/3TBi1WT, for its content and meaning.  The Creature Films Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth or falsity of each and every allegation in Paragraph 222 about W.W.H.'s diagnosis of FTD and PPA and on that basis, deny allegations related to W.W.H.'s diagnosis in Paragraph 222.

223.    Paragraph 223 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  The Creature Films Defendants respectfully refer the Court to this proceeding for the full context thereof.  To the extent that the allegations in Paragraph 223 relate to materials under seal in the Guardianship Proceeding, the Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 223 and on that basis, deny each and every allegation in Paragraph 223.

224.    Paragraph 224 purports to characterize the Talent Agreement.  The Creature Films Defendants respectfully refer the Court to the Talent Agreement for its content and meaning.  The Creature Films Defendants affirmatively allege that W.W.H. assented to and executed the Talent Agreement.

225.    The Creature Films Defendants admit that the Talent Agreement was dated November 2022 and that on January 25, 2023, W.W.H. signed the Talent Agreement with eOne.  The Creature Films Defendants admit that W.W.H. signed the amendments on February 17, 2023.  The Creature Films Defendants deny knowledge or information sufficient to form a belief as to when the referenced "additional amendment" was prepared or whether Plaintiff was involved in the creation of the entity The Wendy Experience, Inc., and on that basis deny these allegations.  The Creature Films Defendants deny each and every remaining allegation in Paragraph 225.

226.    Paragraph 226 purports to characterize the pending Guardianship Proceeding pertaining to W.W.H.  The Creature Films Defendants respectfully refer the Court to this proceeding

for the full context thereof.  To the extent that the allegations in Paragraph 226 relate to materials under seal in the Guardianship Proceeding, the Creature Films Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 226 and on that basis, deny each and every allegation in Paragraph 226.  The Creature Films Defendants deny Plaintiff's characterization of public reporting when the Contract was executed, as the relevant reporting at the time only discussed W.W.H.'s financial guardianship.   The Creature Films Defendants deny each and every remaining allegation in Paragraph 226.

227.    The Creature Films Defendants deny each and every allegation in Paragraph 227.

228.    The Creature Films Defendants deny each and every allegation in Paragraph 228.

229.    Paragraph 229 purports to characterize the Talent Agreement.  The Creature Films Defendants respectfully refer the Court to the Talent Agreement for its content and meaning.  Except as so referred, the Creature Films Defendants deny Plaintiff's characterization of the Talent Agreement.  Paragraph 229 also purports to characterize the Trailer and the Documentary.  The Creature Films Defendants respectfully refer the Court to the Trailer and Documentary for their content and meaning.  Except as so referred, the Creature Films Defendants deny Plaintiff's characterization of the Trailer and Documentary.

230.    The Creature Films Defendants deny each and every allegation in Paragraph 230.

231.    The Creature Films Defendants admit that the signatures on the February 17, 2023, amendments to the Contract purport to and do in fact belong to W.W.H.  The Creature Films Defendants deny each and every remaining allegation in Paragraph 231.

232.    The Creature Films Defendants deny each and every allegation in Paragraph 232.

233.    Paragraph 233 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, the Creature Films Defendants respectfully refer

this Court to the full text of Article 81 and its legislative history for an accurate description of the contents thereof.

234.    Paragraph 234 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, the Creature Films Defendants deny each and every allegation in Paragraph 234.

235.    Paragraph 235 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, the Creature Films Defendants deny each and every allegation in Paragraph 235.

## SECOND CAUSE OF ACTION
*Unjust Enrichment*
*(Against All Defendants)*

236.    The Creature Films Defendants incorporate and repeat as if full set forth herein their admissions, denials, averrals, and other answers to the allegations set forth in the above Paragraphs.

237.    The Creature Films Defendants deny each and every allegation in Paragraph 237.

238.    Paragraph 238 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, the Creature Films Defendants deny each and every allegation in Paragraph 238.

239.     Paragraph 239 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, the Creature Films Defendants deny each and every allegation in Paragraph 239.

240.    Paragraph 240 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, the Creature Films Defendants deny each and every allegation in Paragraph 240.

241.    The Creature Films Defendants deny each and every allegation in Paragraph 241.

242.     Paragraph 242 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, the Creature Films Defendants deny each and every allegation in Paragraph 242.

243.     The Creature Films Defendants deny each and every allegation in Paragraph 243.

244.     Paragraph 244 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, the Creature Films Defendants deny each and every allegation in Paragraph 244.

245.     Paragraph 245 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, the Creature Films Defendants deny each and every allegation in Paragraph 245.

## THIRD CAUSE OF ACTION

*False Endorsement - Lanham Act, 15 U.S.C. § 1125(a)*
*(Against All Defendants)*

246.     The Creature Films Defendants incorporate and repeat as if fully set forth herein their admissions, denials, averrals, and other answers to the allegations set forth in the above Paragraphs.

247.     Paragraph 247 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, the Creature Films Defendants respectfully refer this Court to the full text of the Lanham Act for an accurate description of the contents thereof.

248.     The Creature Films Defendants admit that W.W.H. is a widely recognizable celebrity.

249.     Paragraph 249 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, the Creature Films Defendants deny each and every allegation in Paragraph 249.

250.    Paragraph 250 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, the Creature Films Defendants deny each and every allegation in Paragraph 250.

251.    Paragraph 251 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, the Creature Films Defendants deny each and every allegation in Paragraph 251.

252.    The Creature Films Defendants deny each and every allegation in Paragraph 252.

253.    The Creature Films Defendants deny each and every allegation in Paragraph 253.

254.    The Creature Films Defendants deny each and every allegation in Paragraph 254.

255.    Paragraph 255 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, the Creature Films Defendants deny each and every allegation in Paragraph 255.

256.    Paragraph 256 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, the Creature Films Defendants deny each and every allegation in Paragraph 256.

257.    Paragraph 257 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, the Creature Films Defendants deny each and every allegation in Paragraph 257.

## FOURTH CAUSE OF ACTION
*Fraud*
*(Against All Defendants)*

258.    The Creature Films Defendants incorporate and repeat as if fully set forth herein their admissions, denials, averrals, and other answers to the allegations set forth in the above Paragraphs.

259.    The Creature Films Defendants deny each and every allegation in Paragraph 259.

260.    The Creature Films Defendants deny each and every allegation in Paragraph 260.

261.    Paragraph 261 purports to characterize the Documentary.  The Creature Films Defendants respectfully refer the Court to the Documentary for its content and meaning.  Except as so referred, the Creature Films Defendants deny Plaintiff's characterization of the Documentary.  The Creature Films Defendants deny each and every remaining allegation in Paragraph 261.

262.    The Creature Films Defendants deny each and every allegation in Paragraph 262.

263.    The Creature Films Defendants deny each and every allegation in Paragraph 263.

264.    The Creature Films Defendants deny each and every allegation in Paragraph 264.

265.    The Creature Films Defendants deny each and every allegation in Paragraph 265.

266.    Paragraph 266 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, the Creature Films Defendants deny each and every allegation in Paragraph 266.

267.    Paragraph 267 contains legal conclusions that require no response.  To the extent that such allegations are deemed to be allegations of fact, the Creature Films Defendants deny each and every allegation in Paragraph 267.

## RESPONSE TO PRAYER FOR RELIEF

With respect to the WHEREFORE clauses in the Amended Complaint, the Creature Films Defendants deny that Plaintiff is entitled to any relief.

## GENERAL DENIAL

Each numbered paragraph in this Answer responds to the identically numbered paragraph in the Amended Complaint. The Creature Films Defendants deny all allegations, declarations, claims, or assertions in the Amended Complaint that are not specifically admitted in this Answer. To the extent the headings contained in the Amended Complaint constitute allegations, such allegations are denied.

## AFFIRMATIVE DEFENSES

Further responding to the Amended Complaint, the Creature Films Defendants assert the following defenses. The Creature Films Defendants do not admit to having the burden of proof and/or the burden of persuasion with respect to any of these defenses. By designating the following as defenses, the Creature Films Defendants do not in any way waive or limit any defenses that are or may be raised by their denials, allegations, and averments set forth herein. The defenses are pleaded in the alternative, are raised to preserve the Creature Films Defendants' right to assert such defenses, and are raised without prejudice to the Creature Films Defendants' ability to raise other and further defenses. The Creature Films Defendants reserve the right to amend, supplement, and/or otherwise modify this Answer, including without limitation the right to assert additional defenses that become known to it through discovery or otherwise.

## FIRST DEFENSE

The Amended Complaint, and each of its claims for relief, is barred because it fails to state a claim upon which relief can be granted.

## SECOND DEFENSE

Each of Plaintiff's alleged claims fails in whole or in part because those claims are barred by the valid Talent Agreement signed by W.W.H., including all amendments thereto.

## THIRD DEFENSE

Plaintiff's unjust enrichment claim fails because the Creature Films Defendants' conduct was reasonable, justified and in good faith.

### FOURTH DEFENSE

Plaintiff's unjust enrichment claim fails because any benefits conferred were by informed consent.

### FIFTH DEFENSE

Plaintiff's unjust enrichment claims fail because W.W.H. was adequately compensated for the Documentary.

### SIXTH DEFENSE

Plaintiff's false endorsement claim under the Lanham Act, 15 U.S.C. § 1125(a), fails because it is barred by the doctrine of fair use.

### SEVENTH DEFENSE

Plaintiff's fraud claim fails because there was no material misrepresentation or concealment by either of the Creature Films Defendants.

### EIGHTH DEFENSE

Plaintiff's fraud claim fails because to the extent the claim is based upon conduct or representations by Selby or any other third party, such conduct or representations were not within the scope of any agency relationship between Selby or that third party, on the one hand, and either of the Creature Films Defendants, on the other hand.

### NINTH DEFENSE

Plaintiff's fraud claim fails because there was no justifiable reliance by Plaintiff on any alleged misrepresentation or concealment (and the Creature Films Defendants deny any such misrepresentation or concealment occurred).

66

## TENTH DEFENSE

Plaintiff's fraud claim fails because the Creature Films defendants lacked scienter, or knowledge of falsity, as to any alleged misrepresentation or concealment (and the Creature Films Defendants deny any such misrepresentation or concealment occurred).

## ELEVENTH DEFENSE

Plaintiff's fraud claim fails because neither of the Creature Films Defendants had the requisite intent to defraud.

## TWELFTH DEFENSE

Plaintiff's claims fail because they are barred by the First Amendment.

## THIRTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

## FOURTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel.

## FIFTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

## SIXTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of ratification.

## SEVENTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of acquiescence.

## EIGHTEENTH DEFENSE

Plaintiff's sought injunctive relief would violate the First Amendment.

## **NINETEENTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, because any alleged damages or injuries suffered were not legally or proximately caused by any act of omission on the part of either of the Creature Films Defendants.

## **TWENTIETH DEFENSE**

Plaintiff's claims are barred, in whole or in part, because any alleged damages are too speculative and imprecise.

## COUNTERCLAIM

Defendants and Counterclaimants Creature Films, Inc. and Mark Ford (together, "Creature Films"), by and through their undersigned attorneys, Davis Wright Tremaine, LLP, hereby join in asserting this anti-SLAPP counterclaim under New York Civil Rights Law §§ 70-a and 76-a against Plaintiff and Counter-Defendant Sabrina Morrissey ("Morrissey").

## INTRODUCTION TO THE COUNTERCLAIM

1.      Creature Films reallege and incorporate by reference their responses to Paragraphs 1 through 267 of the Amended Complaint in their Answer thereto.

2.      On February 20, 2024, Morrissey initiated this action *ex parte*, for the purpose of inhibiting and interfering with the exercise of free speech rights regarding an issue of public concern by Creature Films. Specifically, Morrissey initially brought this action against AETN and eOne to unconstitutionally enjoin the publication of the four-part documentary *Where is Wendy Williams?* (the "Documentary"), which captures a raw, honest, and unfiltered window into the life of W.W.H., a well-known public figure, after she was placed under guardianship. The Documentary reveals how the guardianship system that was purportedly put in place to guard W.W.H.'s interests instead had isolated her from her family, left her largely alone and unattended in her apartment, exacerbated her self-destructive behavior and mental decline, and failed to prevent her use and/or abuse of alcohol.

3.      Morrissey's original Complaint in this action sought a declaration that the On-Camera Talent Agreement executed by W.W.H. for purposes of the Documentary (the "Talent Agreement") is void, and a permanent injunction preventing AETN and eOne from releasing the Documentary or any associated footage. Morrissey obtained and then served eOne and AETN with an *ex parte* temporary restraining order ("TRO") enjoining publication of the Documentary, and an *ex parte* order temporarily sealing the entire action from public view.

4.     Counsel for eOne, AETN, and Creature Films explained to Morrissey's counsel that they were seeking an unconstitutional prior restraint, provided Morrissey's counsel with case law on point, and requested that Morrissey's counsel "confer with your client and voluntarily withdraw the TRO." Morrissey refused to do.

5.     As expected, and within 24 hours of service, the TRO was vacated by Justice Peter Moulton of the New York Appellate Division First Department as an unconstitutional prior restraint.

6.     Undeterred, six months later, Morrissey resumed her attempts to impose liability upon the producers and distributors of the Documentary.  She filed her Amended Complaint asserting claims for false endorsement under the Lanham Act, 15 U.S.C. § 1125(a), as well as state law claims for a declaratory judgment, unjust enrichment, and fraud, adding Creature Films, Inc. and Mark Ford, as well as non-distributor Lifetime Entertainment Services, LLC as defendants. Morrissey seeks declaratory and monetary relief, as well as an injunction, e.g., "permanently enjoining Defendants from any further airing, sales, or release of the [Documentary]."

7.     Morrissey's claims are without a substantial basis in fact or law.  Among other things, the claims are barred by the Talent Agreement W.W.H. executed voluntarily and when she had full legal authority to do so, after it had been reviewed and negotiated by multiple attorneys representing her interests, as well as W.W.H.'s manager.  Upon information and belief, Morrissey was also aware of the Talent Agreement at least as of December 2022 and had been given an opportunity to review it before it was executed.

8.     Despite this, and despite also concededly having known of the Talent Agreement since March 2023, Morrissey never tried to stop W.W.H. from participating in the Documentary, but continued to approve W.W.H.'s participation in it until April 2023.  Morrissey also did not seek

to cancel or rescind the Talent Agreement until instituting this action on the eve of the Documentary's release.

9.      In short, Morrissey has forced Creature Films to defend themselves against meritless litigation arising from the creation and publication of the Documentary—a categorical exercise of First Amendment-protected speech on a matter of public concern.

10.     The First Amendment enshrines this nation's foundational commitment to the protection of a free press.  Many states have put in place additional protections to ensure that citizens' First Amendment freedoms have the breathing space needed to survive.  One of these safeguards that has developed over recent decades is the adoption of anti-SLAPP laws.  SLAPPs— Strategic Lawsuits Against Public Participation—are lawsuits used to inhibit the exercise of free speech and harass publishers by forcing them to spend money to defend against baseless suits. These damaging suits chill free speech and the robust exchange of ideas and culture by targeting those who communicate about issues of public interest.  Multiple states—including New York— have passed anti-SLAPP laws to offer redress to targets of SLAPP suits.

11.     Specifically, on November 10, 2020, New York's Governor signed Assembly Bill 5991-A into law, substantially expanding New York's existing anti-SLAPP law to provide greater protection to publishers against frivolous litigation intended to silence their exercise of the rights of free speech and petition about matters of public interest (the "Anti-SLAPP Law").  Specifically, defendants in lawsuits "involving public petition and participation" (*i.e.*, SLAPP suits) may now file an action to recover damages, including costs and attorney's fees, from any person who "commenced or continued" such an action "without a substantial basis in fact and law . . . ."  N.Y. Civil Rights Law § 70-a(1).

12.     This cause of action for damages provided for in the Anti-SLAPP law is not a procedural mechanism.  It operates independent of the law's procedure for filing an Anti-SLAPP

motion.  *See* N.Y. CPLR 3211(g).  Thus, the Anti-SLAPP law established a new, *substantive* right under New York law to recover damages incurred in defending SLAPP suits.

13.     Critically, the Anti-SLAPP law applies to lawsuits targeting "[a]ny communication in a place open to the public or a public forum in connection with an issue of public interest" or "any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest . . . ," with the term "public interest" defined "broadly" to "mean any subject other than a purely private matter."  N.Y. Civil Rights Law § 76-a(1)(a) & (d).  The Anti-SLAPP law also provides for compensatory and punitive damages against plaintiffs who, like the ones in this litigation, commence or continue meritless legal claims for the purpose of "harassing . . . or otherwise maliciously inhibiting the free exercise of speech []."  N.Y. Civil Rights Law §§ 70-a(1(b) and (c).

14.     This is a classic SLAPP suit.  Indeed, Morrissey commenced this lawsuit by seeking an unconstitutional prior restraint that was immediately vacated.  Morrissey then continued her meritless claims against Creature Films with full knowledge that the claims lack any substantial basis in law or fact, for the sole purpose of maliciously inhibiting Creature Films' and its co-parties' speech by preventing publication of the Documentary.  Indeed, Morrissey's actions only demonstrate the meritless of her suit:  By agreeing to W.W.H.'s participation in the Documentary, Morrissey made clear her position that W.W.H. was competent to do so.  It was only when Morrissey realized that the Documentary would question the quality of her own guardianship of W.W.H. that Morrissey suddenly decided to try to ensure the Documentary would never be released. Thus, it appears that Morrisey is misusing her position as a guardian of W.W.H. to silence criticism of her controversial and failed administration of W.W.H.'s guardianship.

15.     Morrissey has caused, and continues to cause, Creature Films to expend significant costs and fees to defend their First Amendment-protected rights.

16.     Unless Morrissey is held accountable for her tortious activity, the purpose of the Anti-SLAPP Law will be frustrated.

## PARTIES

17.     Counterclaimant Creature Films, Inc. is a California corporation authorized to do business in New York.

18.     Counterclaimant Mark Ford resides in Santa Monica, California.

19.     Counter-Defendant Sabrina Morrissey alleges that she is the court-appointed Guardian for W.W.H. pursuant to Article 81 of the Mental Hygiene Law and alleges that W.W.H. is a resident of New York and subject to guardianship in New York.

## JURISDICTION AND VENUE

20.     Insofar as the Court has supplemental subject matter jurisdiction over Morrissey's state law claims, this Court also has supplemental jurisdiction over this Counterclaim pursuant to 28 U.S.C. § 1367.  Both this Counterclaim and Morrissey's state law claims for a declaratory judgment, unjust enrichment, and fraud because arise out of the same common nucleus of operative facts—namely the publication of the Documentary.  *See Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.,* 373 F.3d 296, 308 (2d Cir. 2004).  This Counterclaim further arises from the present litigation itself and the attempts by Morrissey to inhibit Creature Films' exercise of the constitutional right of free speech in connection with an issue of public interest, namely the Documentary.

21.     This Court has personal jurisdiction over the parties because they have each asserted claims in this action in courts of New York County, because the Talent Agreement at issue provides that the parties thereto consent to personal jurisdiction in New York, and because Morrissey transacts business within the state of New York in connection with the incidents giving rise to this action.

22.     Venue for this action properly lies in this district court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

23.     The laws of the State of New York apply to the subject matter of this action, because New York has the most significant relationship to this litigation:  Much of the Documentary was filmed in New York, the original action was removed from the Supreme Court of the State of New York and asserted claims under New York law, and New York law applies to the Talent Agreement at the root of this action.

## FACTUAL BACKGROUND

### The Documentary

24.     W.W.H.'s relationship with Creature Films and eOne goes back to June 2019, when they were selected to produce a documentary on W.W.H.  That project—*Wendy Williams: What a Mess* ("*What a Mess*"), a title W.W.H. herself came up with—focused on how the longtime gossip maven had herself become the subject of tabloid press surround her health and marriage, and how she coped with the role reversal.  W.W.H. served as executive producer on *What a Mess,* sat for numerous interviews, and provided meaningful input on its production.  *What a Mess*, which premiered on January 30, 2021, is a "raw, no holds barred look with never-before heard truths about Wendy's notorious feuds with celebrities, her shocking divorce, her childhood and the private darkness she has endured," as well as a story about "a self-made woman who finds herself at the start of a new life, uncertain of the future, but ready to reclaim her crown."[5]

25.     Over the next year, W.W.H. continued to be the focus of tabloid gossip and entertainment news.  She was delayed returning to host her long-running talk show, with news

---

[5] https://www.mylifetime.com/specials/wendy-williams-what-a-mess

reports and official statements citing health issues.  In February 2022, it was announced that her talk show would end.

26.    In the early summer of 2022, eOne, Creature Films, W.W.H., and W.W.H.'s manager Will Selby ("Selby") discussed producing a second documentary, intended to be a continuation of *What a Mess*.  Soon afterward, Angela Rogers, an attorney for W.W.H., began negotiating terms for a shopping agreement for the project with an attorney for eOne.

27.    W.W.H. sat for a development shoot in August 2022.  During set up for that shoot, W.W.H.'s "sober coach" told producers that W.W.H. was having a bad day after having been up drinking the night before, but that she was "getting better now and we can do the interview." W.W.H.'s sober coach remained present for the duration of the development shoot.

28.    After the development shoot, eOne and Creature Films were informed that W.W.H. would be attending a wellness center to address her substance abuse.  Plans for the Documentary were put on hold.

29.    In October, W.W.H. came out of her stay at the wellness facility.  Representatives for W.W.H. indicated the stay had been salutary, and W.W.H. was ready to continue with the project.  W.W.H. executed the Shopping Agreement negotiated by her attorney on October 17, 2022, but effective as of July 7, 2022.

30.    On November 2, 2022, Mark Ford and another employee of Creature Films met with W.W.H. in person, and found W.W.H. much improved as compared to at the development shoot. At that meeting, W.W.H. and Selby watched the sizzle reel that had been edited from the footage taken at the development shoot.  Both reacted positively to the reel, and W.W.H. provided some limited comments.  Notably, some of the very footage that Morrissey alleges establishes that W.W.H. was "incapable of providing consent" because of what Morrissey characterizes as

W.W.H.'s unseemly behavior was included in the sizzle reel and explicitly approved of by W.W.H. at this meeting months after it was filmed and after her stay in a wellness facility.

31.    The project was then sold to AETN in November 2022.  Negotiations began for W.W.H.'s Talent Agreement, with two attorneys with apparent authority, if not express authority, to represent W.W.H., Hector Baldonado and Peter Allan, reviewing and negotiating revisions on her behalf.  Upon information and belief, Morrissey was aware of these negotiations in November of 2022, and in any event no later than December of 2022.

32.    In December 2022, an employee of Creature Films was told by Selby that negotiations on the Talent Agreement were being held up because "Wendy's lawyer need[s] to speak to Wendy's guardian lawyer so that is the delay."  Soon after, an employee of Creature Films was told by Hector Baldonado that the agreement was "[with] Sabrina [Morrissey]."  That Creature Films employee was later told by Selby that Selby had also personally followed up with Morrissey to confirm she had reviewed the Talent Agreement.

33.    When the Talent Agreement still hadn't been finalized by January of 2023, the employee of Creature Films called Morrissey directly to inquire as to its status, but she quickly ended the call.  Upon information and belief, Selby was also communicating with Morrissey regarding the Talent Agreement at this time.

34.    The Talent Agreement was finalized soon after.  W.W.H. executed the Talent Agreement on January 23, 2023.  That Talent Agreement grants eOne the rights to use and authorize others to use W.W.H.'s likeness, it releases all claims arising from the Documentary as to eOne, AETN, and Creature Films, it explicitly provides that eOne and AETN would retain final creative control over its contents, and it waives any right to injunctive relief.

35.    Filming for the Documentary began after the Talent Agreement was executed.

36.     In her Amended Complaint, Morrissey admits that she was aware of the Talent Agreement at least as of mid-March 2023.  To Creature Films' knowledge, neither W.W.H., Morrissey, or any other authorized representative of W.W.H. or Morrissey attempted to stop production of the Documentary.  To Creature Films' knowledge, until the institution of this action, neither W.W.H., Morrissey, or any other authorized representative of W.W.H. or Morrissey purported to rescind or otherwise terminate the Talent Agreement.  Nor, to Creature Films' knowledge, did W.W.H., Morrissey, or any other authorized representative of W.W.H. or Morrissey assert that W.W.H.'s signature on the Talent Agreement was not authentic, question that the Talent Agreement was entered into by The Wendy Experience, Inc. or that payments would be made to that entity under the Talent Agreement, or seek to alter the Talent Agreement's grant of rights to use W.W.H.'s likeness, its release of claims arising from the Documentary, its multiple explicit provisions that eOne and AETN would retain final creative control over its contents, or its waiver of injunctive relief.

37.     Moreover, and as confirmed in Morrissey's pleadings in this action, *after* seeing the Talent Agreement, she continued to approve W.W.H.'s participation in filming sessions for the Documentary in March and April of 2023.  Upon information and belief, Morrissey was also provided frequent updates on filming for the Documentary.  At no point throughout this filming period did Morrissey ask that filming cease.

38.     Moreover, payments continued to be made to W.W.H. under the Talent Agreement from April 2023 onward.  Hrbek, the entertainment attorney purportedly engaged for W.W.H. by Morrissey, was copied on correspondence from Selby transmitting invoices from The Wendy Experience, Inc. for those payments in April 2023 and September 2023, at minimum.  In total, upon information and belief, eOne paid over $400,000 to The Wendy Experience, Inc., as provided under the Talent Agreement.

39.     On April 12, 2023, the film crew for the Documentary arrived to W.W.H.'s apartment for a scheduled interview to find her in bed, apparently inebriated, with signs that she had been in that state without company or care for some time.  Concerned that W.W.H. was not being adequately cared for despite her court-appointed guardianship, the Documentary's producers encouraged Selby to seek medical treatment for W.W.H.  Upon information and belief, Selby contacted Morrissey, and W.W.H. was ultimately taken to an inpatient facility.  Upon information and belief, and notwithstanding her allegations that W.W.H. was incapacitated by dementia as early as 2021, Morrissey was not even aware that W.W.H. had been alone in her apartment drinking alcohol for an extended period before Selby contacted her on the Documentary producers' urging.

40.     Upon information and belief, after the Documentary's producers encouraged Selby to seek medical treatment for W.W.H., W.W.H. began a stay at a medical treatment facility.  After April 12, 2023, the Documentary's producers were not able to contact W.W.H. again.  They inquired with Selby about whether she had recovered after her stay and was well enough to sit for a final interview, but were told she was not.

41.     Because they had no way to contact W.W.H., the Documentary's producers were unable to show W.W.H. the Documentary or its trailer before they aired.  Selby, however, was shown the trailer on December 19, 2023, and was enthusiastic about the trailer and offered no suggested changes.  Selby was also shown the full Documentary on January 31, 2024, several weeks before it aired.  He again expressed a strongly positive reaction and had no suggested changes.  Indeed, upon information and belief, Selby found the Documentary to be an important and honest portrayal of W.W.H.'s struggle with alcohol and the guardianship proceeding and believed W.W.H. would want the public to be able to see the Documentary.  W.W.H.'s family members also saw the Documentary before it aired, in early February 2024.  They, too, approved

its content and supported its release.  Several of W.W.H.'s family members even participated in press interviews to promote the Documentary.

42.     On February 22, 2024, over ten months after W.W.H. had been last filmed for the Documentary, a press release was issued on behalf of W.W.H. publicly announcing her formal diagnosis of FTD and PPA.  This was the first time Creature Films learned that W.W.H. had been formally diagnosed with this disease.

### Morrissey Seeks to Enjoin Publication of the Documentary on the Eve of Its Release

43.     Also on February 22, 2024, four days before the Documentary was set to be released, Morrissey initiated this action against AETN and eOne, seeking declaratory relief and a permanent injunction preventing AETN and eOne from releasing the Documentary or any associated footage.

44.     Morrissey sought and obtained an *ex parte* temporary restraining order from the Commercial Division of the New York State Supreme Court, New York County.  Within 24 hours of service, the TRO was vacated by Justice Peter Moulton of the New York Appellate Division First Department as an unconstitutional prior restraint.

### Morrissey Continues Asserting Meritless Claims

45.     Morrissey did not serve the original Complaint filed in connection with this action until June 13, 2024, eight days before her time for service would run.

46.     The next day, Morrissey's attorneys sent a letter outlining supposed additional claims they would assert.  Attorneys for Creature Films, eOne, and AETN sent a response on July 3, 2024, explaining that the asserted claims were without merit.

47.     Morrissey then sought three separate extensions to file an Amended Complaint, to which Defendants consented in each instance.  Finally, on September 16, 2024, Morrissey filed her Amended Complaint, asserting claims for false endorsement under the Lanham Act, 15 U.S.C. § 1125(a), as well as state law claims for a declaratory judgment, unjust enrichment, and fraud.

48.    The Talent Agreement on its face bars each of the claims asserted in Morrissey's Amended Complaint.  Morrissey thus claims is that Talent Agreement is void, either because W.W.H. was purportedly incapacitated at the time it was signed, or did not sign it at all.  On that basis, she seeks, among other things, an injunction against "any further airing, sales, or release of the [Documentary] and any associated footage depicting W.W.H.," and awards of compensatory and punitive damages against the Defendants.

49.    Morrissey's claims are meritless.  W.W.H. was not legally incapacitated at the time she executed the Talent Agreement, and, upon information and belief, she did sign it.

50.    Moreover, Morrissey waived any right to seek recission of the Talent Agreement by consistently assenting to it and W.W.H.'s participation in the Documentary.  Morrissey was aware of the Documentary during its early stages, was, upon information and belief, aware of the Talent Agreement before it was executed, and was admittedly aware of the Talent Agreement after it was executed, yet never sought to rescind the Talent Agreement and continued to approve W.W.H.'s participation in the Documentary notwithstanding.

51.    Further, at the time the Talent Agreement was executed, W.W.H. had authority to enter into contracts on her own.  Morrissey was only W.W.H.'s temporary financial guardian at that time. █████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████, Morrissey did not seek cancellation of the Talent Agreement.  In fact, and with the full knowledge of a lawyer that Morrissey alleges she had chosen for W.W.H., W.W.H.'s manager continued to solicit—and, upon information and belief, receive—payments due to W.W.H. under the Talent Agreement after Morrisey had been granted authority over W.W.H.'s contracts.

52.     Next, while the Amended Complaint alleges that W.W.H.'s signature on the Talent Agreement "does not appear to be genuine," and includes an image of W.W.H.'s "visually distinct" purported "real" signature, it also includes as Exhibit B a document it alleges demonstrates W.W.H.'s ███████████████████████████████████████████, and W.W.H.'s signature on this document closely matches that on the Talent Agreement. Thus, Morrissey's own allegations indicate W.W.H.'s signature on the Talent Agreement is genuine.

53.     And finally, even assuming *arguendo* there was no Talent Agreement, the claims asserted in the Amended Complaint fail to state a claim or find support for their elements in the facts, and are subject to numerous dispositive defenses. Among other things, there is no law prohibiting the creation and promotion of a documentary work about a person—even a person suffering from dementia—without written permission from that person (or her guardian), and any such law would violate the First Amendment.

54.     In sum, Morrissey's claims arise out of and target the creation and publication of a Documentary on a public figure, and are without any substantial basis of fact or law.

## COUNT 1

### (VIOLATION OF N.Y. CIVIL RIGHTS LAW §§ 70-a, 76-a)

55.     Pursuant to New York Civil Rights Law § 70-a, Creature Films are entitled to maintain a counterclaim to recover their costs, attorneys' fees, compensatory damages, and punitive damages in this action.

56.     This action commenced by Morrissey is an "action involving public petition and participation," as defined by N.Y. Civil Rights Law Section 76-a, because it is based upon a communication in a public forum in connection with an issue of public interest, as well as lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an

issue of public interest.  N.Y. Civil Rights Law § 76-a(a)(1)-(2).

57.    The Documentary is a matter of public interest.

58.    Morrissey commenced this action against Creature Films even though her claims lacked any basis in fact and law and could not be supported by any argument for the extension, modification or reversal of existing law.

59.    The claims asserted in the Amended Complaint are without factual basis for the reasons set out above.

60.    The claims asserted in the Amended Complaint are without legal basis because, among other things, they are precluded as a matter of law by the Talent Agreement.  Even assuming *arguendo* that Morrissey had the right to cancel or modify the Talent Agreement during the period of W.W.H.'s participation in it, she did not exercise such a right, but rather assented to the Talent Agreement and to W.W.H.'s acceptance of payments due under the Talent Agreement.

61.    Moreover, Morrissey's Lanham Act claim is barred by the First Amendment because the Documentary is an expressive work and promotional materials for the Documentary were relevant to its content and not misleading.

62.    Morrissey has not attempted to offer any arguments for such changes to existing law that would render her claims meritorious.

63.    Creature Films advised Morrissey that her claims were baseless in a letter of July 3, 2024, but she nevertheless continued to assert them, including by filing the Amended Complaint.

64.    Morrissey was fully aware that her claims against Creature Films have no substantial basis in law or fact, yet she commenced and continued this action for the purpose of harassing, intimidating, punishing, or otherwise maliciously inhibiting Creature Films' free exercise of speech.

65.    Accordingly, pursuant to New York Civil Rights Law § 70-a, Creature Films are entitled to assert a counterclaim and to recover their costs, attorneys' fees, compensatory damages,

and punitive damages in this action.

## **PRAYER FOR RELIEF**

WHEREFORE Creature Films pray for judgment as follows:

1.      That Morrissey be denied the requested relief she seeks in this action;

2.      That judgment on Morrissey's claims be entered in favor of Creature Films and against Morrissey; and

3.      That judgment on the Counterclaim be entered in favor of Creature Films and against Morrissey;

4.      That Creature Films be awarded their reasonable costs, attorneys' fees, and disbursements pursuant to New York Civil Rights Law Section 70-a or otherwise.

5.      That, pursuant to New York Civil Rights Law Section 70-a, Creature Films be awarded punitive damages; and

6.      For such other and further relief as the Court may deem just and proper.

Dated: New York, New York
    November 15, 2024

         Respectfully submitted,

         DAVIS WRIGHT TREMAINE LLP

         By:  */s/ Rachel F. Strom*

         Rachel F. Strom
         Abigail B. Everdell
         Alexandra M. Settelmayer
         1251 Avenue of the Americas, 21st Floor
         New York, New York 10020
         Telephone: (212) 489-8230
         rachelstrom@dwt.com
         abigaileverdell@dwt.com
         alexandrasettelmayer@dwt.com

         *Attorneys for Defendants A&E Television*
         *Networks, LLC*, *Entertainment One Reality*
         *Productions, LLC, Lifetime Entertainment*
         *Services, LLC, Creature Films, Inc., and*
         *Mark Ford*