UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SABRINA E. MORRISSEY, *acting in her capacity as Guardian of W.W.H.*,<br><br>*Plaintiff,*<br><br>-against-<br><br>A&E TELEVISION NETWORKS, LLC; ENTERTAINMENT ONE REALITY PRODUCTIONS, LLC; LIFETIME ENTERTAINMENT SERVICES, LLC; CREATURE FILMS, INC.; and MARK FORD,<br><br>*Defendants.* | Case No. 1:24 Civ. 7856 (RA) |

# MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF SABRINA E. MORRISSEY'S MOTION TO STAY DISCOVERY

Roberta A. Kaplan
Timothy S. Martin
Christopher R. Le Coney
Tasha N. Thompson
Maximilian T. Crema
KAPLAN MARTIN LLP
1133 Avenue of the Americas, Suite 1500
New York, New York 10036
(212) 316-9500

Ellen V. Holloman
Amanda L. Devereux
CADWALADER, WICKERSHAM &
TAFT LLP
200 Liberty Street
New York, New York 10281
(212) 504-6000

February 14, 2025

**TABLE OF CONTENTS**

*Page*

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ............................................................................................................................ 3

      A.     W.W.H.'s Cognitive Decline and Incapacity............................................................ 3

      B.     Defendants' Exploitation of W.W.H. ..................................................................... 5

      C.     This Litigation and W.W.H.'s Recent Statements in the Press .............................. 7

ARGUMENT .................................................................................................................................. 8

I.     THE COURT SHOULD STAY DISCOVERY PENDING THE RESULTS OF THE SUPPLEMENTAL MEDICAL EXAMINATION OF W.W.H. ............................... 9

      A.     The Interests of W.W.H., as Advanced by the Guardian, Strongly Favor a Stay ....................................................................................................................... 9

      B.     Defendants' Interests Favor a Stay ....................................................................... 11

      C.     The Interests of the Court Favor a Stay ............................................................... 12

      D.     Nonparties' Interests Favor a Stay ....................................................................... 12

      E.     The Public's Interest Favors a Stay ..................................................................... 13

CONCLUSION ............................................................................................................................. 14

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Broccoli v. Ashworth*,
 2023 WL 6795253 (S.D.N.Y. Oct. 11, 2023) ............................................................... 9

*C.F.P.B. v. Credit Acceptance Corp.*,
 2023 WL 5013303 (S.D.N.Y. Aug. 7, 2023) ............................................................... 11

*C.F.P.B. v. MoneyGram Int'l, Inc.*,
 2022 WL 17547438 (S.D.N.Y. Dec. 9, 2022) ....................................................... 11, 12

*C.F.P.B. v. MoneyLion Techs., Inc.*,
 2023 WL 8644377 (S.D.N.Y. Dec. 1, 2023) ......................................................... 9, 11

*CC/Devas (Mauritius) Ltd. v. Air India, Ltd.*,
 2022 WL 355759 (S.D.N.Y. Feb. 4, 2022) ................................................................ 13

*In re MPM Silicones, L.L.C.*,
 2017 WL 4386378 (S.D.N.Y. Oct. 2, 2017) ............................................................... 12

*Kappel v. Comfort*,
 914 F. Supp. 1056 (S.D.N.Y. 1996) ...................................................................... 2, 9

*Landis v. N. Am. Co.*,
 299 U.S. 248 (1936) ................................................................................................... 9

*Loftus v. Signpost Inc.*,
 464 F. Supp. 3d 524 (S.D.N.Y. 2020) ................................................................. 11, 12

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
 676 F.3d 83 (2d Cir. 2012) ..................................................................................... 2, 8

*Readick v. Avis Budget Grp., Inc.*,
 2014 WL 1683799 (S.D.N.Y. Apr. 28, 2014) ............................................................. 13

*TradeWinds Airlines, Inc. v. Soros*,
 2011 WL 309636 (S.D.N.Y. Feb. 1, 2011) ................................................................ 11

**Statutes & Rules**

15 U.S.C. § 1125(a) ............................................................................................................. 7
Fed. R. Civ. P. 26(c) ............................................................................................................ 9

**Other Cited Materials**

Ally Mauch, The Wendy Williams Show: *4 More Guest Hosts Announced as Wendy Williams Navigates Health Issues*, People Magazine (Nov. 3, 2021), https://people.com/tv/wendy-williams-show-4-more-guest-hosts-announced/ .......................... 3

Aramide Tinubu, '*Where is Wendy Williams?' Docuseries Is Unsettling and Exploitative: TV Review*, Variety (Feb. 24, 2024), https://variety.com/2024/tv/reviews/where-is-wendy-williams-review-lifetime-1235920928/ ................................................................ 7

*Everything Is Just Fine: Anosognosia in Frontotemporal Degeneration*, Ass'n for Frontotemporal Degeneration, https://www.theaftd.org/posts/news/everything-is-just-fine-anosognosia-in-frontotemporal-degeneration/ ..................................................... 8

*Fast Facts about FTD*, Ass'n for Frontotemporal Degeneration, https://www.theaftd.org/wp-content/uploads/2018/03/Fast-Facts-about-FTD-for-web.pdf ...... 5

Francesca Bacardi & Carlos Greer, *Wendy Williams Reportedly Taken to Hospital for Mental Health Check*, Page Six (Sept. 16, 2021), https://pagesix.com/2021/09/16/wendy-williams-reportedly-taken-to-hospital-for-mental-health-check/. .................................................................................................. 3

Hot 97, *Wendy Williams Is Allegedly Confined To A Wheelchair And Showing Early Signs Of Dementia*, https://www.hot97.com/news/wendy-williams-is-allegedly-confined-to-a-wheelchair-and-showing-early-signs-of-dementia/ .................................................... 3

Jessica Finn, 'PRISON' PALACE' *Wendy Williams' $40k-a-month NYC senior living facility revealed where she has a salon but is 'not allowed to leave'*, U.S. Sun (Feb. 13, 2025), https://www.the-sun.com/entertainment/13537281/wendy-williams-nyc-senior-living-facility-revealed/ .................................................................................................. 13

Joey Nofli, *Wendy Williams had to be told several times her show had been canceled, execs say*, Entertainment Weekly (Aug. 17, 2022), https://ew.com/tv/wendy-williams-told-show-canceled/ ..................................................................................................................... 5

Keenan Higgins, *Wendy Williams Allegedly Is Confined To A Wheelchair & Is Showing Early Signs Of Dementia* (Nov. 22, 2021), https://rickeysmileymorningshow.com/2706098/wendy-williams-allegedly-confined-wheelchair-showing-signs-dementia/ ........................................................................... 3

Kimberlee Speakman, *Wendy Williams Claims She Was Only Allowed Outside Twice in 30 Days amid Guardianship: 'I Want My Life Back'*, People (Feb. 12, 2025), https://people.com/wendy-williams-claims-only-allowed-outside-twice-in-30-days-guardianship-11678415 ........................................................................................................ 13

Lacey Rose, *Inside the Final Days of 'The Wendy Williams Show'*, The Hollywood Reporter (Aug. 17, 2022), https://www.hollywoodreporter.com/feature/the-wendy-williams-show-inside-final-days-1235199635/ ................................................................. 5

Malia Mendez, *Wendy Williams Resurfaces in Trailer for Her Lifetime Documentary Debuting this Month*, L.A. Times (Feb. 2, 2024), https://www.latimes.com/entertainment-arts/tv/story/2024-02-02/wendy-williams-resurfaces-lifetime-documentary-debuting-this-month ............................................... 6

Maureen Callahan, *TV's Ghoulish New Low: Dementia-Hit Wendy Williams is Reduced to a Sideshow Freak as Relatives Crawl into her Fading Spotlight*, Daily Mail (Feb. 23, 2024), https://www.dailymail.co.uk/tvshowbiz/article-13116139/Wendy-Williams-dementia-documentary.html. ................................................................................ 6

Molly Claire Goddard, *Wendy Williams Has 'Holes in Her Brain' From 'Alcohol-Related' Damage*, OK Magazine (Feb. 23, 2024), https://okmagazine.com/p/wendy-williams-holes-in-brain-from-alcohol-related-damage/ ................................................................ 3

Raquel Harris, Wendy *Williams Accuses Son of 'Inappropriately' Using Her Money 'Without Telling Me Crap'*, Wrap (Feb. 12, 2025), https://www.thewrap.com/wendy-williams-accuses-son-financial-exploitation-tmz-doc/ ............................................................... 4

*Wendy Williams:'Bad Days' Claim a Load of BS … I Never Talked to Attorney!!!*, TMZ (Jan. 17, 2025), https://www.tmz.com/2025/01/17/wendy-williams-slams-guardianship-attorneyover-bad-days-claim/ ........................................................................ 8

*Wendy Williams Says She Can Fire Her Court Appointed Attorney*, Fox5 New York (Jan. 30, 2025), https://www.fox5ny.com/video/1585295 .................................................. 8

*Wendy Williams Speaks on Her Mental Health, A&E Lifetime Lawsuit, Being Alcohol Free, Doechii + More*, The Breakfast Club Power 105.1 FM (Feb. 5, 2025), https://www.youtube.com/watch?v=MymaUSB0g5I .................................................. 8

*Wendy Williams speaks with ABC News amid fight for independence, ABC News (Feb. 14, 2025)*, https://abcnews.go.com/Nightline/video/wendy-williams-speaks-abc-news-amid-fight-independence-118816201 ....................................................................... 13

Whitney Vasquez, *Wendy Williams signs legal document to end guardianship, medical evaluation set next week: report*, N.Y. Post (Feb. 12, 2025), https://nypost.com/2025/02/12/entertainment/wendy-williams-signs-legal-document-to-end-guardianship-report/ ........................................................................ 13

## PRELIMINARY STATEMENT

At the heart of this litigation is whether W.W.H.—a celebrated media personality who has been diagnosed with frontotemporal dementia ("FTD") and primary progressive aphasia ("PPA")—had the capacity to consent to her demeaning and humiliating depiction in Defendants' television program, *Where Is Wendy Williams?*, or whether instead Defendants grossly exploited W.W.H. by provoking and filming her in 2022 and 2023, after her cognitive decline had already been widely reported and was apparent to anyone who interacted with her at the time. W.W.H.'s court-appointed Guardian brought this litigation on W.W.H.'s behalf to hold Defendants accountable for their exploitive misconduct and to recover the damages W.W.H. suffered in the hopes of obtaining a financial recovery for W.W.H. that can help pay for what are projected to be her significant future medical expenses and other long-term care needs.

In recent weeks, most notably during a live radio interview on February 5, 2025, W.W.H. has publicly disputed her dementia diagnosis, declared she is not incapacitated, and expressed her desire not to continue this lawsuit. The Guardian—who acts solely for the benefit of W.W.H. and her estate—takes these statements seriously, but also recognizes that anosognosia (an inability to perceive one's own cognitive impairment) is a common symptom of FTD. Given the questions that have been raised and the misrepresentations that have been made in the press following W.W.H.'s recent statements, the Guardian now seeks a short stay of discovery so that a highly qualified expert can perform a renewed medical evaluation of W.W.H. to supplement the extensive medical evaluations and diagnoses that W.W.H. has already received and to provide professional medical guidance on whether and how W.W.H. can participate in this case (including in discovery).

In the unlikely event the new medical examination concludes that, contrary to her prior formal diagnoses, W.W.H. is presently capable of directing her own legal affairs, the Guardian

would have no reason to continue this action on her behalf. Conversely, if the medical evaluation confirms that W.W.H. remains incapacitated, the Guardian must—and will—fulfill her fiduciary obligation to pursue a substantial financial recovery for W.W.H. that will help pay for her long-term care. But given the unique circumstances presented by W.W.H.'s public statements, proceeding with costly and potentially unnecessary discovery before confirming W.W.H.'s capacity serves no one's interest.

A stay of discovery is warranted under the well-established legal standard in this Circuit, which recognizes that courts have the inherent power to stay proceedings when necessary to serve the interests of justice, promote judicial efficiency, and avoid potentially unnecessary litigation. *See Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012). Here, all five factors set forth in *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996), weigh in favor of a stay. *First*, the Guardian, acting solely in W.W.H.'s best interests, seeks to ensure that her authority to pursue this litigation remains beyond question and that W.W.H. is not being improperly denied the right to direct this case. *Second*, Defendants—who, of course, ordinarily would be the parties requesting a stay—stand to benefit from a pause in discovery that, although unlikely, could ultimately result in the dismissal of this case. *Third*, the Court's interest in judicial efficiency favors a brief stay to avoid unnecessary litigation and potential motion practice over the Guardian's authority and W.W.H.'s ability to fully participate in discovery. *Fourth*, nonparties will not be prejudiced given that discovery is in its early stages, and a stay may eliminate the need for third-party subpoenas. *Finally*, the public has an interest in ensuring that this litigation proceeds fairly and in a manner consistent with W.W.H.'s medical condition and legal rights.

The requested stay will be limited in duration—the Guardian understands that it will likely take only a few months, at most, to complete the medical evaluation—and will not unduly

prejudice any party. To the contrary, it will provide the Court and the parties with a renewed, medically informed basis for determining whether this litigation should proceed and under whose direction, and will provide the public with a greater understanding of the nature of the claims and defenses at issue in this litigation. For these reasons, as set forth more fully below, the Guardian respectfully requests that the Court stay discovery pending the results of W.W.H.'s supplemental medical reevaluation.

## BACKGROUND

### A. W.W.H.'s Cognitive Decline and Incapacity

W.W.H. is a prominent and accomplished media personality who solo-hosted and executive-produced one of the most-watched daily television talk shows in the United States. Amended Complaint, Action, ECF 25-2 ("Am. Compl.") at ¶ 3. Tragically, as early as 2019, W.W.H. began to exhibit increasingly erratic behavior and indicia of cognitive decline, and members of her family were reportedly told by treating healthcare professionals that W.W.H. was suffering from brain damage.[1] By 2021, her decline became undeniable—she was forced to step away from her talk show,[2] was taken to the hospital by police for a psychiatric evaluation,[3] and was rumored to suffer from early-onset dementia. These reports were widely circulated on social media, in the press, and on entertainment talk shows.[4]

---

[1] Molly Claire Goddard, *Wendy Williams Has 'Holes in Her Brain' From 'Alcohol-Related' Damage*, OK Magazine (Feb. 23, 2024), https://okmagazine.com/p/wendy-williams-holes-in-brain-from-alcohol-related-damage/.

[2] Ally Mauch, The Wendy Williams Show: *4 More Guest Hosts Announced as Wendy Williams Navigates Health Issues*, People Magazine (Nov. 3, 2021), https://people.com/tv/wendy-williams-show-4-more-guest-hosts-announced/.

[3] Francesca Bacardi & Carlos Greer, *Wendy Williams Reportedly Taken to Hospital for Mental Health Check*, Page Six (Sept. 16, 2021), https://pagesix.com/2021/09/16/wendy-williams-reportedly-taken-to-hospital-for-mental-health-check/.

[4] *See, e.g.*, Hot 97, *Wendy Williams Is Allegedly Confined To A Wheelchair And Showing Early Signs Of Dementia* (Nov. 23, 2021), https://www.hot97.com/news/wendy-williams-is-allegedly-confined-to-a-wheelchair-and-showing-early-signs-of-dementia/; Keenan Higgins, *Wendy Williams Allegedly Is Confined To A Wheelchair & Is Showing*

In early 2022, W.W.H.'s producers announced that her show would be permanently cancelled. *Id.* ¶ 7. At around the same time, Wells Fargo employees identified a pattern of unusual and disturbing events concerning W.W.H.'s welfare and finances that led them to fear that she was the subject of financial abuse. *Id.* ¶ 11. W.W.H. has since publicly accused her son of taking money from her.[5] Wells Fargo itself then took the extraordinary and highly unusual step of initiating a guardianship proceeding in New York Supreme Court pursuant to Article 81 of the New York Mental Hygiene Law, asking the court to appoint an independent guardian for W.W.H.'s affairs. *Id.*

On March 15, 2022, given the exigent circumstances and the immediate need for W.W.H.'s financial affairs to be protected, the court appointed the Guardian as temporary guardian for W.W.H. *Id.* ¶ 13.

Tragically, W.W.H. continued to display a startling inability to understand her deteriorating condition and its impact on her. On March 17, 2022, W.W.H. gave a Zoom interview to *Good Morning America* in which she asserted that she would be ready to return to hosting daytime television, notwithstanding that her show had been officially cancelled a month earlier. *Id.* ¶ 134. In May 2022, during an appearance on Instagram hosted by Fat Joe, W.W.H. appeared confused and again asserted that she was returning to *The Wendy Williams Show*, which had been permanently cancelled months earlier. *Id.* Indeed, the show's producers reported having to tell W.W.H. that her show had been cancelled several times over a period of four months, even after the decision

---

*Early Signs Of Dementia* (Nov. 22, 2021), https://rickeysmileymorningshow.com/2706098/wendy-williams-allegedly-confined-wheelchair-showing-signs-dementia/.

[5] Raquel Harris, *Wendy Williams Accuses Son of 'Inappropriately' Using Her Money 'Without Telling Me Crap'*, The Wrap (Feb. 12, 2025), https://www.thewrap.com/wendy-williams-accuses-son-financial-exploitation-tmz-doc/.

4

had already been announced publicly, and each time, W.W.H. "appeared to be having the discussion for the first time."[6]

These incidents, and other examples of W.W.H.'s erratic behavior, were widely reported at the time. *See* Am. Compl. ¶¶ 134-35 (detailing additional public reporting on W.W.H.'s erratic and confused behavior during public media appearances throughout the summer of 2022). In August 2022, *The Hollywood Reporter* published a lengthy article saying that insiders from W.W.H.'s long-running talk show had witnessed disturbing episodes months before, during filming in 2021, where W.W.H. was incoherent and production had to be abruptly cut off after mere minutes.[7] The article also indicated that medical professionals were trying to determine what was causing "symptoms like nonlinear speech, brain fog, memory loss and even hallucinations."[8]

In May 2023, physicians at Weill Cornell Medical Center diagnosed W.W.H. with FTD and PPA, which are associated with changes in behavior, personality, language, executive functioning (including decision-making and judgment), and impulse control. *Id.* ¶¶ 10, 173-74. Although W.W.H. received this diagnosis in May 2023, *id.* ¶ 173, the process of reaching a formal FTD diagnosis on average takes more than three years from the disease's onset, *id.* ¶ 175.[9] The disease is progressive, incapacitating, and has no cure. *Id.* ¶ 173.

### B. Defendants' Exploitation of W.W.H.

While W.W.H.'s ongoing erratic behavior and obvious cognitive decline was being widely reported, Defendants began to produce a reality television show about W.W.H. *Id.* ¶¶ 141-43.

---

[6] Joey Nofli, *Wendy Williams Had To Be Told Several Times Her Show Had Been Canceled, Execs Say*, Entertainment Weekly (Aug. 17, 2022), https://ew.com/tv/wendy-williams-told-show-canceled/.

[7] Lacey Rose, *Inside the Final Days of 'The Wendy Williams Show'*, The Hollywood Reporter (Aug. 17, 2022), https://www.hollywoodreporter.com/feature/the-wendy-williams-show-inside-final-days-1235199635/.

[8] *Id.*

[9] *Fast Facts about FTD*, Ass'n for Frontotemporal Degeneration, https://www.theaftd.org/wp-content/uploads/2018/03/Fast-Facts-about-FTD-for-web.pdf.

Filming began in August 2022, and by that point, W.W.H. was in no condition to appear on camera, nor could she consent to the project—a fact that was readily apparent to anyone who later saw the Program. *Id.* ¶ 143-46. The Program's humiliating footage of W.W.H. makes clear how obvious W.W.H.'s decline was during filming. The Program opens with W.W.H. stating "*I love vodka!*" after she is pressed about alleged alcohol abuse by a member of the crew speaking off camera. *Id.* ¶ 203. Shortly thereafter, during the same interview, W.W.H. states she is glad that she can "*show my boobs*" and then pulls down the front of her top, grabs her nipples, and gives the middle finger. *See id.*

On February 2, 2024, without providing any advance notice to W.W.H. or the Guardian, Defendants released a trailer for the Program. *Id.* ¶¶ 179-80. The trailer makes no reference to W.W.H.'s medical conditions and instead depicts W.W.H. in a humiliating and degrading manner. As reported in the *Los Angeles Times*: "[W.W.H.] is shown inebriated, struggling to stand, tearful and seemingly suffering memory loss – all while insisting to friends and family she is of sound mind."[10]

In response to the trailer, W.W.H.'s care team issued a press release informing the public that W.W.H. had been diagnosed with FTD and PPA. *Id.* ¶ 199. Unabashed, and without any shame, Defendants proceeded to release the Program anyway. The negative response was immediate, with many fans of W.W.H., cultural commentators, and media outlets vehemently criticizing Defendants for their unethical exploitation of a woman who is obviously experiencing severe cognitive and physical decline.[11] As *Variety* wrote in its review, this "is not a series about

---

[10] Malia Mendez, *Wendy Williams Resurfaces in Trailer for Her Lifetime Documentary Debuting this Month*, L.A. Times (Feb. 2, 2024), https://www.latimes.com/entertainment-arts/tv/story/2024-02-02/wendy-williams-resurfaces-lifetime-documentary-debuting-this-month.

[11] As Maureen Callahan explained in the *Daily Mail*: "It all feels gross. As anyone who loves someone with dementia knows, their personal dignity is the first thing to go. To have that stripped so very publicly — when it seems [W.W.H.] doesn't have the cognition to assent — is particularly gruesome." Maureen Callahan, *TV's Ghoulish New Low:*

the next chapter of [W.W.H.'s] life but instead an exploitative display of her cognitive decline and emotional well-being."[12] Not surprisingly, most, if not all, of the major streaming platforms have since dropped the Program. ECF 19 at 2.

### C. This Litigation and W.W.H.'s Recent Statements in the Press

The Guardian filed her operative Amended Complaint on September 16, 2024. The Amended Complaint asserts claims for: (1) declaratory judgment that the purported contract W.W.H. allegedly signed authorizing the Program is null, void, and of no effect due to her incapacity; (2) unjust enrichment on the basis that Defendants were unjustly enriched by the Program, which was created by W.W.H. performing labor for which she was not adequately compensated pursuant to an invalid purported contract; (3) false endorsement under the Lanham Act, 15 U.S.C. § 1125(a) on the basis that Defendants falsely represented that W.W.H. sponsored and supported the Program; and (4) fraud on the basis that Defendants made false representations upon which the Guardian relied that the Program would show W.W.H. in a positive light sensitive to her condition and would not be released until the Guardian approved amendments to the purported contract that was legally null, void, and of no effect. *Id.* ¶¶ 219-267.

In response to the Guardian's claims, Defendants have insisted that W.W.H. executed a valid contract with them in January 2023, even though W.W.H. was under the care of a court-appointed guardian at the time and clearly incapacitated. On November 15, 2024, Defendants filed answers and asserted counterclaims under New York's anti-SLAPP statute seeking to recover their attorneys' fees and other damages from W.W.H.'s estate. ECF 28, 30, 32. The Guardian moved

---

*Dementia-Hit Wendy Williams is Reduced to a Sideshow Freak as Relatives Crawl into her Fading Spotlight*, Daily Mail (Feb. 23, 2024), https://www.dailymail.co.uk/tvshowbiz/article-13116139/Wendy-Williams-dementia-documentary.html. Numerous other media outlets agreed. *See* Am. Compl. ¶ 52.

[12] Aramide Tinubu, *'Where is Wendy Williams?' Docuseries Is Unsettling and Exploitative: TV Review*, Variety (Feb. 24, 2024), https://variety.com/2024/tv/reviews/where-is-wendy-williams-review-lifetime-1235920928/; Am. Compl. ¶ 206.

7

to dismiss Defendants' counterclaims on December 20, 2024. ECF 47. Defendants filed their brief in opposition on February 5, 2025, and the Guardian will file her reply on February 26, 2025. ECF 52.

On February 5, 2025, the Guardian submitted a letter alerting the Court to recent statements in the press that W.W.H. had made indicating that, in W.W.H.'s opinion, she is not suffering from dementia, she is not incapacitated, and she does not want to proceed with this action. ECF 55.[13] While it is common for individuals with FTD to not be aware of their disease or the extent of their impairment (a symptom known as anosognosia[14]), the Guardian indicated that she intended to file a motion to stay this proceeding to allow for W.W.H. to undergo a new medical evaluation by a highly qualified and distinguished specialist in the field. ECF 55 at 2. A full stay of the proceeding would include (i) a stay of discovery; and (ii) deferring the deadline for the Guardian's reply in support of her motion to dismiss, which would effectively stay that motion. On February 6, the Court entered an order permitting the Guardian "to file a motion to stay *discovery* in this action pending the results of a medical evaluation," which she now respectfully submits. ECF 56 (emphasis added).

**ARGUMENT**

This Court's power to control its docket and issue a stay of discovery is beyond question. *See Louis Vuitton Malletier S.A*, 676 F.3d at 96 (noting that the "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket

---

[13] *See Wendy Williams Speaks on Her Mental Health, A&E Lifetime Lawsuit, Being Alcohol Free, Doechii + More*, The Breakfast Club Power 105.1 FM (Feb. 5, 2025), https://www.youtube.com/watch?v=MymaUSB0g5I; *Wendy Williams Says She Can Fire Her Court Appointed Attorney*, Fox5 New York (Jan. 30, 2025), https://www.fox5ny.com/video/1585295; *Wendy Williams: 'Bad Days' Claim a Load of BS ... I Never Talked to Attorney!!!*, TMZ (Jan. 17, 2025), https://www.tmz.com/2025/01/17/wendy-williams-slams-guardianship-attorneyover-bad-days-claim/.

[14] *Everything Is Just Fine: Anosognosia in Frontotemporal Degeneration*, Ass'n for Frontotemporal Degeneration, https://www.theaftd.org/posts/news/everything-is-just-fine-anosognosia-in-frontotemporal-degeneration/.

8

with economy of time and effort for itself, for counsel, and for litigants") (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). In deciding whether to issue a stay, courts in this District consider the five *Kappel* factors: (1) the private interests of the plaintiffs in proceeding expeditiously versus any prejudice from delay; (2) the private interests of and burden on the defendants; (3) the Court's interest in judicial efficiency; (4) the interests of nonparties; and (5) the public interest. *See Kappel*, 914 F. Supp. at 1058.

The "principal objective" of the *Kappel* factors is ensuring "the avoidance of unfair prejudice." *C.F.P.B. v. MoneyLion Techs., Inc.*, 2023 WL 8644377, at *2 (S.D.N.Y. Dec. 1, 2023). Here, the *Kappel* factors strongly favor a stay under these unusual circumstances where W.W.H. has publicly questioned her dementia diagnosis and her inability to direct the litigation, despite being formally diagnosed with FTD and PPA and found to be legally incapacitated by the Guardianship Court.[15]

## I. THE COURT SHOULD STAY DISCOVERY PENDING THE RESULTS OF THE SUPPLEMENTAL MEDICAL EXAMINATION OF W.W.H.

### A. The Interests of W.W.H., as Advanced by the Guardian, Strongly Favor a Stay.

It bears reemphasizing that the Guardian, as W.W.H.'s fiduciary, has no personal stake in the outcome of this litigation and is solely focused on protecting the financial and personal well-being of W.W.H. The Guardian must prosecute this lawsuit if doing so is in W.W.H.'s best interests. Here, W.W.H. has publicly questioned her mental incapacity and expressed a desire to discontinue this action. That creates a predicament that, the Guardian submits, is best resolved by

---

[15] While the *Kappel* factors are most typically applied when considering a request to completely stay a proceeding, satisfaction of the factors necessarily establishes "good cause" for a narrower stay of discovery under Fed. R. Civ. P. 26(c). Although the Guardian prefers a stay of only discovery, because the Guardian is not requesting this stay in connection with a pending motion that is *sub judice* or an interlocutory appeal, the standard test for evaluating a proposed stay of discovery, which considers the likelihood of success on the pending motion, *see, e.g.*, *Broccoli v. Ashworth*, 2023 WL 6795253, at *1 (S.D.N.Y. Oct. 11, 2023), is inapplicable here.

taking further steps to clarify W.W.H.'s mental capacity and whether she is competent to direct her own legal affairs.

In the unlikely event the supplemental medical evaluation determines that, despite prior qualified diagnoses and painfully public indicia of dementia, W.W.H. is now capable of managing her own affairs and directing this action, then there would be no basis for the Guardian to continue a lawsuit that W.W.H. no longer wishes to maintain. Although the Guardian would maintain the legal authority to continue with the action unless and until the Guardianship Court rescinds its order appointing her, proceeding against W.W.H.'s wishes (if she is, in fact, mentally competent to assess her interests and the merits of this litigation) would not only be unethical but also an unnecessary expenditure of resources for all parties. The Guardian has zero desire to pursue this litigation under those circumstances.

Conversely, if the supplemental examination confirms, as prior diagnoses and court findings have indicated, that W.W.H. does not have the capacity to direct this action, then the Guardian must follow through with this litigation in an effort to recover the damages W.W.H. suffered, which will help cover the significant medical and other expenses that are expected to be needed to provide for W.W.H. in the years ahead. In that case, however, the parties and the Court will require guidance from medical professionals concerning the circumstances under which W.W.H. can participate in discovery, including a deposition. Either way, resolving the threshold question of who should be directing these claims is essential before the parties—and the Court—expend valuable resources on discovery.

A brief stay of discovery further affords respect to the statements W.W.H. has made publicly (even if it is likely that a further medical examination will show that those statements are consistent with W.W.H.'s incapacity), avoids the risk of harm to W.W.H. if the litigation continues

against her stated wishes if the evaluation demonstrates she has the capacity to direct this litigation, and ensures that any decision about the litigation's future genuinely reflects her capabilities and best interests.

B.     **Defendants' Interests Favor a Stay.**

The Guardian respectfully submits that Defendants' interests here also favor a stay—indeed, normally, it is defendants who move for a stay in circumstances where a question has arisen over the plaintiff's authority to prosecute the litigation. *See, e.g.*, *MoneyLion Techs.*, 2023 WL 8644377, at *1 (staying case for anticipated seven months pending Supreme Court's decision on plaintiff CFPB's constitutional authority); *C.F.P.B. v. Credit Acceptance Corp.*, 2023 WL 5013303, at *1 (S.D.N.Y. Aug. 7, 2023); *C.F.P.B. v. MoneyGram Int'l, Inc.*, 2022 WL 17547438, at *1 (S.D.N.Y. Dec. 9, 2022). If the medical evaluation results in the Guardian withdrawing the claims, that would surely be beneficial to defendants, who have a "substantial interest in avoiding unnecessary litigation." *Loftus v. Signpost Inc.*, 464 F. Supp. 3d 524, 527 (S.D.N.Y. 2020). Perhaps unsurprisingly, Defendants have not clearly identified for Plaintiff's counsel any basis on which they intend to oppose this motion other than vague concerns about the preservation of evidence given the progressive nature of W.W.H.'s diagnosed disease.[16] But the small risk of any unfair prejudice from the brief two- to three-month stay here—during which W.W.H. will be receiving a medical evaluation more quickly than she would during the regular course of discovery—does not outweigh the benefits of a stay to clarify the basis for the Guardian's authority to proceed. *See TradeWinds Airlines, Inc. v. Soros*, 2011 WL 309636, at *4 (S.D.N.Y. Feb. 1,

---

[16] Indeed, following a telephonic meet and confer on February 12, 2025, it was the understanding of counsel for the Guardian that the parties had reached agreement on jointly seeking a stay of proceedings. Counsel for Defendants clarified on February 13, 2025, that Defendants would only consent to a stay if the Guardian agreed to Defendants' positions on certain unripe discovery and evidentiary issues relating to the new examination. Because the Guardian does not believe it is necessary or appropriate to negotiate evidentiary or procedural matters in exchange for Defendants' joining this request for a stay, which will benefit all parties, she has filed the instant motion.

2011) (permitting limited discovery based on concerns about preservation of evidence "due to illness, old age, or lapse of memory" only after matter had already been stayed for two years and would continue to be stayed indefinitely).

        **C.**        **The Interests of the Court Favor a Stay.**

The outcome of the medical evaluation could theoretically result in the Guardian no longer directing the litigation. Therefore, a "stay in the instant case . . . is more likely to promote judicial economy" because failing to do so may "lead to unnecessary litigation that is time-consuming for this court." *In re MPM Silicones, L.L.C.*, 2017 WL 4386378, at *2 (S.D.N.Y. Oct. 2, 2017). Indeed, "judicial efficiency would be served by staying" the case, at least briefly, because the medical evaluation "may resolve or otherwise bear on important issues in this case," as the individual directing the litigation at least theoretically could change. *MoneyGram Int'l, Inc.*, 2022 WL 17547438, at *2. Due to the brief nature of the requested stay, and the medical examination's potentially momentous implications for the nature of the case and whether it would even go forward, the interests of the Court and judicial economy favor a stay.

        **D.**        **Nonparties' Interests Favor a Stay.**

Discovery has only recently begun, so nonparties have not yet been subpoenaed. If the medical evaluation determines that W.W.H. is capable of directing the litigation, and W.W.H. prefers not to go forward with it, no nonparties will ever be subpoenaed. "Third parties thus also have an interest in a stay because the" outcome of the medical evaluation "could moot the need for discovery from third parties." *Loftus*, 464 F. Supp. 3d at 527. In other words, if the medical evaluation concludes that W.W.H. is capable of directing the litigation, and W.W.H. wishes to dismiss the litigation, then no nonparties will be subjected to discovery in connection with the litigation.

### E. The Public's Interest Favors a Stay.

"Considerations of judicial economy are frequently viewed as relevant to the public interest," and thus "weigh against the investment of court resources that may prove to have been unnecessary." *Readick v. Avis Budget Grp., Inc.*, 2014 WL 1683799, at *6 (S.D.N.Y. Apr. 28, 2014); *see also CC/Devas (Mauritius) Ltd. v. Air India, Ltd.*, 2022 WL 355759, at *12 (S.D.N.Y. Feb. 4, 2022) ("while the public has an interest in the prompt adjudication of this and all other cases, the public is also not served by wasting of judicial resources"). For the same reasons that the interests of judicial economy weigh in favor of a stay, so do the public's interests.

Furthermore, W.W.H. has recently been making statements in the media, and they have been widely reported. *See supra* Background § C. This has created somewhat of a media storm and public "debate" about whether W.W.H. is incapacitated and whether she requires the care of a residential long-term care facility, a controversy whose flames are fanned almost daily in the tabloid media.[17] The public thus has an interest in receiving an answer to the questions that have been raised by the media in response to W.W.H.'s statements, and a medical evaluation confirming W.W.H.'s incapacity—or contradicting it—will assist in answering the public's expressed concern about what is best for W.W.H. in connection with this litigation.

---

[17] *See, e.g.*, Whitney Vasquez, *Wendy Williams signs legal document to end guardianship, medical evaluation set next week: report*, N.Y. Post (Feb. 12, 2025), https://nypost.com/2025/02/12/entertainment/wendy-williams-signs-legal-document-to-end-guardianship-report/; Kimberlee Speakman, *Wendy Williams Claims She Was Only Allowed Outside Twice in 30 Days amid Guardianship: 'I Want My Life Back'*, People (Feb. 12, 2025), https://people.com/wendy-williams-claims-only-allowed-outside-twice-in-30-days-guardianship-11678415; Jessica Finn, *'PRISON' PALACE Wendy Williams' $40k-a-month NYC senior living facility revealed where she has a salon but is 'not allowed to leave'*, U.S. Sun (Feb. 13, 2025), https://www.the-sun.com/entertainment/13537281/wendy-williams-nyc-senior-living-facility-revealed/; *Wendy Williams speaks with ABC News amid fight for independence*, ABC News (Feb. 14, 2025), https://abcnews.go.com/Nightline/video/wendy-williams-speaks-abc-news-amid-fight-independence-118816201.

**CONCLUSION**

For the foregoing reasons, the Court should grant the Guardian's motion and stay discovery pending the outcome of the upcoming medical evaluation.

Dated: February 14, 2025
       New York, New York

Respectfully submitted,

 /s/ *Roberta A. Kaplan*
Roberta A. Kaplan
Timothy S. Martin
Christopher R. Le Coney
Tasha N. Thompson
Maximilian T. Crema
KAPLAN MARTIN LLP
156 West 56th Street, Suite 207
New York, New York 10019
(212) 316-9500
rkaplan@kaplanmartin.com
tmartin@kaplanmartin.com
cleconey@kaplanmartin.com
tthompson@kaplanmartin.com
mcrema@kaplanmartin.com

Ellen V. Holloman
Amanda L. Devereux
CADWALADER, WICKERSHAM & TAFT LLP
200 Liberty Street
New York, New York 10281
(212) 504-6000
ellen.holloman@cwt.com
amanda.devereux@cwt.com

*Counsel for Plaintiff Sabrina E. Morrissey, acting in her capacity as Guardian of W.W.H.*