

1133 Avenue of the Americas
Suite 1500
New York, New York 10036

(212) 316-9500
rkaplan@kaplanmartin.com

August 13, 2025

**VIA CM/ECF**

The Honorable Ronnie Abrams
United States District Judge
Southern District of New York
40 Foley Square, Room 2203
New York, New York 10007

      Re:      <u>Morrissey v. A&E Television Networks, LLC, et al.</u>, No. 24 Civ. 7856 (S.D.N.Y.)

Dear Judge Abrams:

      We write on behalf of Plaintiff Sabrina E. Morrissey, in her capacity as court-appointed guardian to W.W.H. (the "Guardian"), pursuant to the Court's August 6, 2025 Order directing the Guardian to state whether she objects to Defendants' request for an early deposition of W.W.H. and the bases for any such objection. ECF 69.

      The Guardian objects to Defendants' request for multiple, independent reasons—each of which would be sufficient to deny the request. As explained below: (1) unresolved threshold issues in the Guardianship Court must be decided before any deposition can occur; (2) W.W.H.'s serious medical condition and the accommodations it require make any deposition at this stage impractical and potentially harmful; (3) Defendants have not articulated the scope or necessity of the testimony they seek, nor explored less burdensome alternatives; and (4) granting Defendants' request at this early juncture would lead to inefficiency, duplication, and prejudice.

      **I.    Threshold Issues in the Guardianship Court Must Be Resolved Before Any Deposition Can Proceed**

      To begin, W.W.H.'s deposition cannot proceed without resolving the very issues that warrant continuing the stay at this time, namely: (1) challenges to the Guardian's authority by certain members of W.W.H.'s family, W.W.H.'s ex-husband, and others; and (2) uncertainty over what information regarding W.W.H.'s medical condition may be disclosed with the authorization of the Guardianship Court. *See* ECF 68 at 1-2. These threshold issues must be resolved before any discovery—let alone W.W.H.'s deposition—can occur.

      Until the Guardianship Court issues rulings on these matters, the Guardian's authority to act on W.W.H.'s behalf in this litigation—including to agree to, arrange for, or defend a deposition—will remain contested. The same parties who have challenged the Guardian's

authority more broadly would presumably argue that she lacks authority to agree to the conditions of W.W.H.'s deposition or to select counsel to defend W.W.H. during the deposition. The parties attempting to intervene in the Guardianship proceeding may also attempt to attend or participate in the deposition, which would create further disputes requiring briefing before one or both Courts.

Such disputes would inevitably and substantially overlap with matters pending in the Guardianship Court. This overlap is not a trivial concern—it creates a real risk of inconsistent rulings. For example, this Court might order the Guardian to produce W.W.H. for a deposition under certain conditions, while the Guardianship Court could prohibit such production or impose different conditions. Under these not unlikely circumstances, the Guardian could potentially be caught between two conflicting directives. Avoiding precisely this type of conflict is one of the central purposes of the Guardian's request for continuing the stay, and the risk underscores why resolution of the threshold guardianship issues is a necessary prerequisite to proceeding with this case at this time, including, of course, any deposition of W.W.H.[1]

## II. W.W.H.'s Condition Requires Significant Accommodations and Creates Heightened Risk of Harm

W.W.H.'s medical condition presents another, independent obstacle to proceeding with a deposition at this stage before questions over the Guardian's authority and the scope of medical disclosure the Guardianship Court will allow are resolved. W.W.H.'s medical condition is such that any deposition would require extensive accommodations to avoid undue harm. Courts have long recognized that deposing individuals with dementia carries inherent risks. *See, e.g.*, *In re McCorhill Pub., Inc.*, 91 B.R. 223, 225 (Bankr. S.D.N.Y. 1988) (protective order granted where deposition could be injurious to the health of a dementia patient).

Designing appropriate accommodations here will not be simple. It will require input from medical professionals, extensive negotiation between the parties, and—given the ongoing disputes—likely the intervention of one or both Courts. Those negotiations will necessarily involve disclosure of sensitive medical information, an issue on which the Guardianship Court's guidance is needed. There is no way to develop, agree upon, and implement appropriate accommodations properly without first resolving who has authority to make those decisions and what information may be shared.

And the risk to W.W.H. is real. Her recent, meaningful improvements in daily functioning have been achieved only because she is currently in a stable living facility that provides enhanced care, structure, and a calm environment tailored to her needs. This stability has reduced stressors, allowed her to maintain a consistent routine, and minimized situations that could exacerbate her

---

[1] Recent challenges to the Guardian's authority have continued to stoke the media firestorm over W.W.H.'s mental capacity. *See, e.g.*, Winston Choo, *Wendy Williams' Guardianship Case: Warring Factions Emerge As Court Battle Gears Up*, HOLLYWOOD REPORTER (Aug. 12, 2025), https://www.hollywoodreporter.com/business/business-news/whats-happening-wendy-williams-guardianship-1236342573; Stephanie Wenger and Danielle Bacher, *Wendy Williams' Medical Exam Complete as Updated Health Diagnosis Upholds Her Guardianship*, PEOPLE (Aug. 12, 2025), https://people.com/wendy-williams-medical-exam-complete-dementia-diagnosis-upholds-her-guardianship-exclusive-11695906; *Wendy Williams Medical Evaluation 'Complete' … Guardian Pushing for Litigation Pause*, TMZ (Aug. 12, 2025), https://www.tmz.com/2025/08/12/wendy-williams-medical-evaluation-complete-her-guardian-says. Proceeding to discovery now would only exacerbate the public chaos surrounding this case, which itself creates a heightened risk of harm to W.W.H.

cognitive symptoms. Subjecting her to the stress, disruption, and cognitive demands of a deposition—particularly one conducted before these threshold issues are resolved—threatens to undo those gains and cause lasting harm to her health and quality of life.

### III. Defendants Have Not Defined the Scope of the Deposition

Even if all those medical and logistical hurdles could somehow be overcome, Defendants' request still falters because they have not articulated what they actually seek from this deposition at this early juncture. The scope of relevant testimony will be the subject of dispute given that the Guardianship Court has not granted Defendants leave to pursue their proposed counterclaims and may never allow those claims. And even if the Guardianship Court did so, the Guardian's motion to dismiss those counterclaims on other grounds remains pending in this Court. Without a clearly identified scope as to what constitutes relevant testimony, Defendants' request is inherently disproportionate.

This is particularly true here, where the exercise of preparing and sitting for an open-ended deposition could impair the deponent's health and well-being. Moreover, Defendants have not engaged in any meaningful discussion with the Guardian regarding alternative, less burdensome means to obtain whatever information they seek. In a case involving a witness with dementia, the proportionality principles in Rule 26(b)(1) require serious consideration of alternatives—such as written interrogatories, requests for admission, third-party depositions, and/or targeted document requests—in order to ensure that the questioning of the witness suffering dementia is as narrow and targeted as possible. Here, there has been no such discussion. Absent a defined purpose and a real consideration of alternatives, Defendants' request risks severe harm to W.W.H. and consumes party and judicial resources without *any* assurance that the information cannot be obtained through other less intrusive means, or that any testimony provided will be admissible or even usable.

### IV. Efficiency and Fairness Strongly Favor Deferring W.W.H.'s Deposition Until Discovery Is Further Along

Even putting the above issues aside, the timing of Defendants' request is yet another, and perhaps the clearest, reason why the deposition should not proceed at this time. Defendants propose to depose W.W.H. before any meaningful document discovery has occurred and before other witnesses have been examined. This is completely contrary to the logical sequencing of discovery—especially for an "apex" witness like W.W.H., whose deposition—even with appropriate accommodations and narrowing to account for her tragic medical condition—is likely to be one of the most significant in the case. Taking her deposition first creates predictable and serious problems:

1. **Wasted effort:** Without documents or prior testimony, the examination will almost surely be incomplete and unfocused.

2. **Duplicative burden:** New evidence will almost certainly emerge later, prompting requests for a second deposition and subjecting W.W.H. to the strain twice. For a witness with dementia, the mental and emotional strain of even a single deposition is significant; repeating it is (and will be) indefensible.

3. **Prejudice:** The Guardian will be hampered in defending the deposition without prior access to all of the facts and documents necessary to prepare.

Courts regularly defer such depositions to the close of discovery for precisely these reasons. *See S. New England Tel. Co. v. Glob. NAPs, Inc.*, 251 F.R.D. 82, 96 (D. Conn. 2008), *aff'd*, 624 F.3d 123 (2d Cir. 2010) (finding prejudice where depositions proceeded without benefit of later-produced documents). The same considerations apply here with even greater force.

### V. Conclusion

For all of the reasons discussed above—including the unresolved threshold issues in the Guardianship Court, the medical realities of W.W.H.'s condition, the absence of a clearly defined scope for the deposition, and the inefficiencies inherent in proceeding before other discovery is complete—the Guardian respectfully submits that an early deposition of W.W.H. in this case at this time would be premature and unduly burdensome. The better course is to allow the stay to remain in place until the guardianship matters are resolved, after which the parties can address whether and under what conditions a deposition may proceed in an orderly and efficient manner in the normal course of discovery.

The Guardian appreciates the Court's consideration of this matter and remains available to provide any additional information or assistance the Court may require.

Respectfully submitted,

Roberta A. Kaplan

cc: Counsel of Record (via ECF)

Defendants may file a reply letter no later than August 21, 2025.

SO ORDERED.

Hon. Ronnie Abrams
August 14, 2025