

21st Floor
1251 Avenue of the Americas
New York, NY 10020-1104

**Rachel Strom**
212-402-4069 tel
212-379-5201 fax

rachelstrom@dwt.com

September 10, 2025

**VIA CM/ECF**

The Honorable Stewart D. Aaron
United States Magistrate Judge
Southern District of New York
500 Pearl St.
New York, NY 10007-1312

Re:   *Morrissey v. A&E Television Networks, LLC, et al.*, No. 24-cv-07856-RA (S.D.N.Y.)

Dear Judge Aaron:

      We are counsel for Defendants-Counterclaimants ("Defendants") in the above-referenced action. Pursuant to the Court's September 5, 2025 Order, we write to provide more detail on the matters on which Defendants seek to preserve W.W.H.'s testimony through an early partial deposition.

      Initially, Defendants would like to be clear that their request for an early partial deposition of W.W.H. is contingent upon discovery in this case being stayed, per Plaintiff's request. If Plaintiff's request to stay all discovery is denied, Defendants will notice W.W.H.'s deposition in the normal course – after the parties have exchanged documents. Indeed, this would be Defendants' preference, as it would avoid piecemeal litigation and limit the burden on W.W.H. But after six months of discovery stays, and Plaintiff's most recent request for an indefinite further stay, the risk of prejudice to Defendants has grown too high. As Plaintiff alleges, W.W.H. suffers from a "progressive" disease that "has no cure" and will "worsen[] over time until [W.W.H.] eventually loses [her] ability to speak and write." Verified Amended Complaint ("VAC") (Dkt. 25-2) ¶¶ 174, 177. Staying discovery without any way to preserve W.W.H.'s testimony risks losing her testimony entirely to this alleged degenerative condition.

      That being said, Defendants are willing to agree to stay this case if they are granted the right to an early deposition of W.W.H. Indeed, absent her alleged dementia, W.W.H. would be the *most* critical witness in this litigation. Her testimony is relevant to the central issues in this case, namely (i) W.W.H.'s conscious desire to participate in the documentary at issue in this litigation (the "Documentary"), (ii) whether the Documentary was produced (and W.W.H. credited) in a manner consistent with W.W.H.'s prior dealings with Defendants, and (iii) whether Plaintiff knowingly misrepresented the facts in her pleadings in claiming that W.W.H.'s signature on her Talent Agreement was forged.

The Honorable Stewart D. Aaron
September 10, 2025
Page 2

Specifically, Defendants propose to examine W.W.H. on the following topics:

1) W.W.H.'s initial decision to participate in the Documentary, her reaffirmation of that decision after an extended stay in a wellness facility in the late summer/early fall of 2022, and her approval of the "Sizzle Reel" footage for the project in October 2022 prior to the Documentary being pitched to networks.

    a. Note:  For purposes of this topic, Defendants propose to share footage of W.W.H. reviewing and providing feedback on the Sizzle Reel footage;

2) The authenticity of W.W.H.'s signature on her Talent Agreement for the Documentary, which Plaintiff has alleged is "visually distinct" from W.W.H.'s real signature and therefore forged.  *See* VAC ¶¶ 27-28.

    a. Note:  For purposes of this topic, Defendants propose to question W.W.H. concerning Exhibit B to the VAC, which bears a strikingly similar signature to that on the Talent Agreement, and which Plaintiff alleges was signed by W.W.H.

3) W.W.H.'s prior relationship with the Defendants, and whether W.W.H.'s role in developing the Documentary was consistent with her credited role as Executive Producer, based on her prior projects with Defendants.

4) W.W.H.'s relationship with Plaintiff in late 2022 and early 2023, including how often Plaintiff contacted or visited W.W.H., and to what extent Plaintiff oversaw W.W.H.'s decisions.

5) Whether, Plaintiff, as W.W.H.'s guardian, was aware of W.W.H.'s participation in the Documentary throughout its conception and production, and whether Plaintiff ever told W.W.H. to stop participating in the Documentary prior to April 2023, when producers affirmatively asked that W.W.H. be given more care and support.

These topics will require W.W.H. to review only a very limited set of documents, which we can provide to her and her counsel before the deposition.  Notably, and to address the concerns raised by W.W.H.'s guardianship court-appointed counsel Allan B. Diamond in his letter of September 9 (Dkt. 77), none of these questions would require W.W.H. to divulge information about her recent health assessments or current health status.  And Defendants would of course be willing to have the entire transcript treated as confidential pending negotiation of a stipulated protective order.

We believe a deposition on these topics can be completed in no more than 3-4 hours on the record. Defendants would be willing to agree to any reasonable accommodation for W.W.H.'s health and comfort, including multiple breaks or even taking the deposition over multiple days.

The Honorable Stewart D. Aaron
September 10, 2025
Page 3

    Essentially, this case should go forward, so Defendants can take W.W.H.'s deposition in the normal course. Or, if Plaintiff's most recent request to stay the litigation is granted, Defendants request the opportunity to try and obtain critical discovery before it is lost to W.W.H.'s alleged progressively incapacitating condition.

    We thank this Court for its attention to this matter.

Respectfully submitted,

By: /s/ *Rachel F. Strom*
Rachel F. Strom
