UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Sabrina E. Morrissey, acting in her capacity as Guardian of W.W.H.,

          Plaintiff,

-against-

A&E Television Networks, LLC, et al.,

          Defendants.

1:24-cv-07856 (RA) (SDA)

**OPINION AND ORDER**

---

**STEWART D. AARON, United States Magistrate Judge:**

Pending before the Court is a motion by plaintiff Sabrina E. Morrissey, in her capacity as court-appointed guardian to W.W.H. ("Plaintiff" or "Guardian") to extend a previously-granted stay of this action until the latter of November 5, 2025, or such time as the Guardianship Court has made a determination as to the status of the Guardianship and the Guardian. (Pl.'s 8/5/25 Ltr. Mot., ECF No. 68, at 2.) For the reasons set forth below, Plaintiff's motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

On February 21, 2024, Plaintiff filed an action in New York state court against defendants A&E Television Networks, LLC ("A&E") and Entertainment One Reality Productions, LLC ("Entertainment One"), seeking declaratory and injunctive relief under New York state law, challenging the release of the documentary titled "Where Is Wendy Williams?" about W.W.H. (the "Documentary"). (*See* Verified Compl., ECF No. 50-1, ¶¶ 4, 65-93.)[1] On September 16, 2024,

---

[1] The Verified Complaint initially was filed under seal at ECF No. 1-1, but a redacted version later was filed at ECF No. 50-1.

Plaintiff filed an Amended Complaint in state court asserting a claim for false endorsement under the Lanham Act, 15 U.S.C. § 1125(a), as well as state law claims for a declaratory judgment, unjust enrichment and fraud.[2] (Verified Am. Compl., ECF No. 50-2, ¶¶ 219-67.) On October 16, 2024, this action timely was removed to this Court based upon federal question jurisdiction. (Not. of Removal, ECF No. 1.)

On November 13, 2024, Plaintiff filed on behalf of the parties a proposed Case Management Plan calling for fact discovery to be completed by May 8, 2025, and expert discovery to be completed by September 5, 2025. (Proposed Case Mgt. Plan, ECF No. 20, at 1-2; *see also* Jt. Ltr., ECF No. 18 (under seal) & 19 (redacted).) On November 19, 2024, District Judge Abrams entered the Case Management Plan approving the deadlines proposed by the parties. (Case Mgt. Plan, ECF No. 38, at 1-2.)

On February 14, 2025, Plaintiff filed a motion to stay discovery pending the results of a medical reevaluation of W.W.H. (Pl.'s 2/14/25 Not. of Mot. to Stay, ECF No. 57.) On February 24, 2025, Defendants filed a response in which they consented to a limited, conditional stay. (*See* Defs.' 2/24/25 Resp., ECF No. 59.) By Order dated March 4, 2025, Judge Abrams granted a three-month stay of the action and, no later than June 4, 2025, required the parties to file a joint letter updating the Court regarding the status of the medical reevaluation of W.W.H., and to advise the Court of their positions as to whether a further stay was warranted. (3/4/25 Order, ECF No. 65, at 1.)

---

[2] The Amended Complaint added as defendants Lifetime Entertainment Services, LLC ("Lifetime"), Creature Films, Inc. ("Creature Films") and Mark Ford ("Ford"). (*See* Verified Am. Compl., ECF Nos. 1-10 & 50-2 (caption).) A&E, Entertainment One, Lifetime, Creature Films and Ford hereinafter are referred to as "Defendants."

On June 4, 2025, Plaintiff filed the required letter. (Pl.'s 6/4/25 Ltr., ECF No. 66.) In the June 4, 2025 letter, Plaintiff requested an extension of the stay until August 4, 2025, "[t]o allow for the completion of the remaining elements of the medical testing and to give the highly qualified physician sufficient time to evaluate and summarize the results, and reach an opinion." (*Id*.) Plaintiff stated in the letter that Defendants consented to Plaintiff's request. (*Id*.) On June 5, 2025, Judge Abrams granted Plaintiff's request and directed the parties to file a joint letter updating the Court regarding the status of the medical evaluation, and proposing next steps in the action, if necessary, no later than August 5, 2025. (6/5/25 Order, ECF No. 67.)

On August 5, 2025, Plaintiff filed a letter motion advising that the medical evaluation of W.W.H. had been completed. (*See* Pl.'s 8/5/25 Ltr. Mot. at 1.) Plaintiffs' letter motion further stated "that various parties, including counsel for certain members of W.W.H.'s family, W.W.H's ex-husband, and others, have indicated their intention to challenge both the Guardianship itself as well as Ms. Morrissey's status as Guardian." (*Id*.) Plaintiff "request[ed] that this Court extend the stay for the later of three months from August 5 (or November 5, 2025), or until such time as the Guardianship Court has made a determination as to the status of the Guardianship and the Guardian." (*Id*. at 2.) Finally, Plaintiff stated Defendants' position that they "would not have any objection to th[e] proposed additional stay of the litigation if Plaintiff's counsel would work with Defendants to set an early deposition of W.W.H.," and that Plaintiff did not consent to an early deposition. (*Id*. (emphasis omitted).)

By Order dated August 6, 2025, Judge Abrams directed Plaintiff to file a letter by August 13, 2025 "stating whether she objects to an early deposition of W.W.H., and, if so, whether she objects on any basis other than 'efficien[cy]' and what 'would best preserve both the Court's and

3

the parties' resources.'" (8/6/25 Mem. End., ECF No. 69.) On August 13, 2025, Plaintiff filed a letter stating that Plaintiff objected to an early deposition of W.W.H. for multiple reasons, which she summarized, as follows:

> (1) unresolved threshold issues in the Guardianship Court must be decided before any deposition can occur; (2) W.W.H.'s serious medical condition and the accommodations it require make any deposition at this stage impractical and potentially harmful; (3) Defendants have not articulated the scope or necessity of the testimony they seek, nor explored less burdensome alternatives; and (4) granting Defendants' request at this early juncture would lead to inefficiency, duplication, and prejudice.

(Pl.'s 8/13/25 Ltr., ECF No. 70, at 1.) On August 21, 2025, Defendants replied to Plaintiff's August 13, 2025 letter. (Defs.' 8/21/25 Ltr., ECF No. 72.) On August 29, 2025, this action was referred to the undersigned for general pretrial purposes. (*See* 8/29/25 Order of Ref., ECF No. 74.)

On September 5, 2025, a telephone conference was held with the parties, during which the Court stated that it would hold an in-person conference on September 11, 2025. (9/5/25 Tr., ECF No. 85, at 7, 14.) During the telephone conference, the Guardian's counsel noted an "inherent conflict of interest for counsel in this case," stating:

> As you can imagine, Your Honor, the amount of funds in [WWH's] estate is finite. One of the purposes of this lawsuit, if not the primary purpose of this lawsuit, is to seek and supplement her estate with additional funds so that she can be taken care for the rest of her life if necessary, and we hope that she lives a long time further.
>
> On the other hand, Your Honor, there are counsel who have been appointed for [WWH] in the guardianship proceeding, and they, although we haven't seen any papers from them, my understanding is they could take the position that Ms. Williams is perfectly competent to decide things for herself, and, as Your Honor, noted, no guardianship is necessary.
>
> What that means, Your Honor, I think is that both of us, both we as counsel for the guardian in this case and personal counsel for Ms. Williams in the guardianship case, have a fundamental conflict. We want to argue that she's not competent now and that wasn't competent when this so-called documentary was

4

filmed. They may potentially, we don't know yet, but they may potentially [want to argue] that she's perfectly fine which [would obviously be disadvantageous to] this case, it's hard to think of anything that would be more disadvantageous to this case.

(*Id*. at 11-12.)[3]

On September 5, 2025, the Court entered an Order requiring the following submissions by September 10: (a) Plaintiff was directed to file a letter setting forth the possible outcomes of the pending proceedings in the Guardianship Court; and (b) Defendants were directed to file a letter regarding the matters as to which they are seeking to preserve W.W.H.'s testimony. (9/5/25 Order, ECF No. 76.) On September 10, the required submissions were filed. Plaintiff stated that there were three possible outcomes in the Guardianship Court:

> First, the guardianship may be continued. Second, the guardianship may be continued but modified in some way, such as by replacing the Guardian or limiting her powers. Third, the guardianship may be ended.

(Pl.'s 9/10/25 Ltr., ECF No. 80.)

Defendants stated in their September 10 letter that they proposed to examine W.W.H. on the following topics:

> 1) W.W.H.'s initial decision to participate in the Documentary, her reaffirmation of that decision after an extended stay in a wellness facility in the late summer/early fall of 2022, and her approval of the "Sizzle Reel" footage for the project in October 2022 prior to the Documentary being pitched to networks.
>
> 2) The authenticity of W.W.H.'s signature on her Talent Agreement for the Documentary, which Plaintiff has alleged is "visually distinct" from W.W.H.'s real signature and therefore forged. . . .

---

[3] The material included in brackets above (other than "[WWH]," which replaces the subject individual's full name) was inserted by the Court after reviewing the audio portions of the recording of the conference that were transcribed as "indiscernible." The Court, having held the conference, believes that the bracketed language above reflects the words that were spoken by Plaintiff's counsel during the conference.

5

3) W.W.H.'s prior relationship with the Defendants, and whether W.W.H.'s role in developing the Documentary was consistent with her credited role as Executive Producer, based on her prior projects with Defendants.

4) W.W.H.'s relationship with Plaintiff in late 2022 and early 2023, including how often Plaintiff contacted or visited W.W.H., and to what extent Plaintiff oversaw W.W.H.'s decisions.

5) Whether, Plaintiff, as W.W.H.'s guardian, was aware of W.W.H.'s participation in the Documentary throughout its conception and production, and whether Plaintiff ever told W.W.H. to stop participating in the Documentary prior to April 2023, when producers affirmatively asked that W.W.H. be given more care and support.

(Defs.' 9/10/25 Ltr., ECF No. 79, at 2.) Defendants further stated that the deposition would encompass a limited set of documents, and that Defendants could provide such documents to W.W.H. and her counsel before the deposition.[4] (*See id.*)

Separately, on September 9, 2025, Allan B. Diamond ("Attorney Diamond"), co-lead counsel for W.W.H. in Guardianship Court, filed a letter stating that "it is premature to require [W.W.H.] to sit for a deposition at this time" and that "[p]remature disclosure of any information [regarding W.W.H.'s healthcare] could be highly prejudicial to [W.W.H.] and the guardianship proceedings." (Diamond 9/9/25 Ltr., ECF No. 77, at 1-2.) On September 10, 2025, the Court entered an Order stating that Attorney Diamond was welcome to attend the September 11 conference. (9/10/25 Order #1, ECF No. 78.) After the Court learned from Plaintiff's September 10 letter that Attorney Diamond was "likely unable to join" the September 11 conference (*see* Pl.'s 9/10/25 Ltr.), the Court entered an Order stating that, if Attorney Diamond was unable to attend the September 11 conference, then Peter J. Strauss ("Attorney Strauss"), his co-lead

---

[4] Defendants' September 10 letter reiterated their position that they were willing to agree to stay this case if they are granted the right to an early deposition of W.W.H. (*See* Defs.' 9/10/25 Ltr. at 1.)

counsel in Guardianship Court was welcome to attend. (9/10/25 Order #2, ECF No. 81.) Later on September 10, Attorney Diamond filed a letter stating that Attorney Strauss would be present at the September 11 conference, and requesting permission for Attorney Diamond to appear telephonically since he was unable to appear in person (Diamond 9/10/25 Ltr., ECF No. 83), which request was granted by the Court. (9/10/25 Mem. End., ECF No. 84.)

The conference then proceeded on September 11, 2025.[5]

## DISCUSSION

**I.  Continuing Stay**

At the outset, the Court hereby grants a continuing stay of this action until November 5, 2025 (with the one exception discussed below). A district court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997).

A stay is warranted for the time being while proceedings in the Guardianship Court play out. As Plaintiff notes, "various parties, including counsel for certain members of W.W.H.'s family, W.W.H's ex-husband, and others, have indicated their intention to challenge both the Guardianship itself as well as [Plaintiff's] status as Guardian." (Pl.'s 8/5/25 Ltr. Mot. at 1.) The end result of the anticipated proceedings will be that the guardianship may be continued, the guardianship may be continued but modified in some way (such as by replacing the Guardian or limiting her powers, or the guardianship may be ended. (*See* Pl.'s 9/10/25 Ltr.) And then this action will proceed or it will not, since W.W.H. reportedly has indicated that she does not want

---

[5] During the September 11 conference, the Court directed the parties to order the transcript of the proceeding. The transcript has not yet been filed to the ECF docket. The Court cites to the transcript herein as "9/11/25 Tr."

7

to continue with the lawsuit. (*See* Defs.' 8/21/25 Ltr. at 1 n.1 (citing https://www.yahoo.com/entertainment/wendy-williams-speaks-again-says-231500934.html [https://perma.cc/PZ89-MUYN]).[6])

No later than November 5, 2025, the parties shall file a joint letter regarding the status of proceedings in the Guardianship Court. At that time, Plaintiff may request a further extension of the stay. The parties are alerted, however, that the Court is disinclined to have the stay continue for many months in the future, due to the Court's obligation to ensure the "just, speedy, and inexpensive determination" of this action. *See* Fed. R. Civ. P. 1.

The Court notes that none of the foregoing possible outcomes in the Guardianship Court affects the short-term need for Defendants to preserve the testimony of W.W.H. in this action, which is addressed in Discussion Section II, *infra*.

## II. Deposition Of W.W.H.

Notwithstanding the continuing stay, a deposition of W.W.H., which is in the nature of a *de bene esse* deposition, shall be held on a date and time convenient to W.W.H., the parties and counsel, within the parameters set forth in Discussion Section III, *infra*, and shall be completed by November 4, 2025.

"A *de bene esse* deposition — sometimes referred to as a 'preservation' deposition — is a deposition taken 'in anticipation of a future need.'" *Broker Genius, Inc. v. Seat Scouts LLC*, No. 17-CV-08627 (SHS) (SN), 2018 WL 6242226, at *3 (S.D.N.Y. Nov. 29, 2018) (quoting Black's Law Dictionary 408 (7th ed. 1999)). Courts have permitted parties "to request the right to take

---

[6] The online article to which the Defendants cite states: "Wendy Williams has distanced herself from the lawsuit her guardian, Sabrina Morrissey, filed against Lifetime and A&E Networks."

depositions *de bene esse* of any witnesses about whom it can demonstrate a good-faith need for expedited discovery in light of age, health, fading memory, or any other sufficiently compelling circumstance." *United States v. Int'l Longshoremen's Ass'n*, No. 05-CV-03212 (ILG) (VVP), 2007 WL 2782761, at *1 (E.D.N.Y. Sept. 24, 2007).

In the present case, the Court finds that Defendants have made a showing that they have a need to take a deposition of W.W.H. now. This action was filed in state court in February 2024 (*see* Verified Compl.), and the deadline initially set by Judge Abrams for the completion of fact discovery, *i.e.*, May 8, 2025 (*see* Case Mgt. Plan at 1), long since has passed. As disclosed in the Amended Complaint (Verified Am. Compl. ¶ 45), it has been publicly reported by her "care team" that W.W.H. has been diagnosed with primary progressive aphasia and frontotemporal dementia. *See* PR Newswire (Feb. 22, 2024), available at https://perma.cc/AZ9U-XMZN ("Aphasia, a condition affecting language and communication abilities, and frontotemporal dementia, a progressive disorder impacting behavior and cognitive functions, have already presented significant hurdles in Wendy's life."). As Defendants note, both of these are progressive conditions, such that W.W.H.'s condition could worsen. (Defs.' 8/21/25 Ltr. at 2-3.)

W.W.H.'s condition does not insulate her from providing testimony in this case. Under the Federal Rules of Evidence, "[e]very person is competent to be a witness unless the[] rules provide otherwise." Fed. R. Evid. 601. The only two groups of persons rendered incompetent as witnesses by the Federal Rules of Evidence are judges (Fed. R. Evid. 605) and jurors (Fed. R. Evid. 606). Rule 601 does not contain any requirement of mental ability and leaves such issues to the jury. The Advisory Committee Notes state in relevant part:

> No mental or moral qualifications for testifying as a witness are specified. Standards of mental capacity have proved elusive in actual application. A leading

9

commentator observes that few witnesses are disqualified on that ground. Weihofen, Testimonial Competence and Credibility, 34 Geo. Wash.L.Rev. 53 (1965). Discretion is regularly exercised in favor of allowing the testimony. A witness wholly without capacity is difficult to imagine. The question is one particularly suited to the jury as one of weight and credibility, subject to judicial authority to review the sufficiency of the evidence. 2 Wigmore §§501, 509.

Fed. R. Evid. 601 Advisory Committee Notes. Accordingly, it will be up to the jury in this case to decide what weight to give to W.W.H.'s deposition testimony.[7]

### III.  Parameters For W.W.H.'s Early Deposition

In her August 13, 2025 letter, Plaintiff's counsel argues that W.W.H.'s condition requires "significant accommodations" in order for her deposition to occur. (*See* Pl.'s 8/13/25 Ltr. at 2.) A court has discretion to set parameters on a deposition in order to protect "a person from annoyance, embarrassment, oppression, or undue burden . . . including . . . specifying terms . . . for the . . . discovery; . . . [and] designating the persons who may be present while the discovery is conducted[.]" Fed. R. Civ. P. 26(c)(1)(B), (E).

The Court, in its discretion, finds that the following parameters for W.W.H.'s early deposition are necessary and sufficient to accommodate W.W.H.'s condition. First, the deposition shall be limited to a period of no more than three hours.[8] This limited duration will not unduly burden W.W.H. If needed, W.W.H.'s early deposition may be held over the course of

---

[7] The Court is cognizant of the fact that W.W.H.'s condition is under review by various medical professionals and that recent testing has been done, the results of which have not been divulged to W.W.H. or made public, as well as additional testing. (*See* 9/11/25 Tr. at 3-4, 6, 13, 28; Diamond 9/9/25 Ltr. at 1.) As the Court noted at the September 11 conference, and as Plaintiff agreed at the conference, if a conclusion was reached that W.W.H. was competent to decide things for herself, there would be no issue with W.W.H.'s deposition going forward at this time. (*See* 9/11/25 Tr. at 4-5.)

[8] Although the Court during the September 5 conference referred to a deposition of one to two hours (*see* 9/5/25 Tr. at 13), based upon the four topics about which Defendants will be permitted to examine W.W.H. at an early deposition (*see infra*), the Court finds that a deposition of no more than three hours is appropriate.

no more than three days with reasonable breaks being accommodated. Second, the documents about which W.W.H. will be examined by Defendants at the early deposition shall be provided to Plaintiff's counsel and W.W.H.'s counsel at least seven days prior to the deposition being held. Third, the deposition will be held remotely so as to avoid the risk of any type of physical discomfort due to the proximity of the examining attorney and/or court reporter. Fourth, the only persons who may be in the room with W.W.H. at the time of the deposition will be no more than two of the counsel of record for Plaintiff as reflected on the ECF docket in this case, as well as her counsel in the Guardianship Court, *i.e.*, Attorney Diamond and/or Attorney Strauss. Fifth, the location where W.W.H. shall sit for the deposition shall be selected by Attorney Diamond and/or Attorney Strauss in consultation with W.W.H. herself, to assure that it is done in a setting that is comfortable for her. Sixth, the period of time during which W.W.H. is examined by Defendants during her early deposition (again, not to exceed three hours) will count against the seven hours permitted to Defendants under the Federal Rules of Civil Procedure for W.W.H.'s entire deposition, and Defendants will not be permitted to re-ask in any later deposition questions that they asked in the early deposition. This will avoid any inefficiency or duplication. Seventh, questions about W.W.H.'s health, including mental health, are strictly off limits.[9]

Finally, based on the arguments made by the parties during the September 11 conference, Defendants may question W.W.H. about Defendants' Topics 1 to 4. However,

---

[9] In addition, the Court expects defense counsel to abide by her other related commitments regarding her questions to W.W.H. (*See* 9/11/25 Tr. at 24 ("I will absolutely confirm to your Honor that we will not ask her about her mental condition. I will not ask her what drugs she is on, or any medications she is on. I will not ask her if she feels competent to testify.").)

Defendants' counsel shall not question W.W.H. about Topic 5[10] at the early deposition, since that question relates to Defendants' counterclaims and the Guardianship Court has not yet decided the motion which seeks approval to assert the counterclaims. (*See* 9/11/25 Tr. at 10-11; *see also id*. at 26 (defense counsel stating: "If you would like me to wait to do that afterwards, I am happy to postpone [Topic] 5.").)[11]

### CONCLUSION

For the foregoing reasons, Plaintiff's motion to extend the stay of this action (ECF No. 68) is GRANTED IN PART and DENIED IN PART. It is hereby ORDERED that the stay in this action shall continue until November 5, 2025, and that no later than November 5, 2025, the parties shall file a joint letter regarding the status of proceedings in the Guardianship Court. It is further ORDERED that an early deposition of W.W.H. shall be held on dates and times convenient to W.W.H., the parties and counsel and shall be completed no later than November 4, 2025, within the parameters set forth above.

**SO ORDERED.**

Dated:   New York, New York
         September 15, 2025

_____
STEWART D. AARON
United States Magistrate Judge

---

[10] Topic 5: "Whether, Plaintiff, as W.W.H.'s guardian, was aware of W.W.H.'s participation in the Documentary throughout its conception and production, and whether Plaintiff ever told W.W.H. to stop participating in the Documentary prior to April 2023, when producers affirmatively asked that W.W.H. be given more care and support." (*See* Defs.' 9/10/25 Ltr. at 2.)

[11] Plaintiff also had objected at the September 11 conference to questioning regarding Topic 4 (*see* 9/11/25 Tr. at 10), but the Court finds that such topic (relating to W.W.H.'s relationship with Plaintiff in late 2022 and early 2023) is relevant to Plaintiff's claims. Thus, Defendants may question W.W.H. regarding Topic 4 at the early deposition.