July 21, 2026

**VIA CM/ECF**

Hon. Ronnie Abrams
United States District Court
Southern District of New York
40 Foley Square, Room 2203
New York, NY 10007

      *Re: Morrissey v. A&E Television Networks, LLC et al.*, No. 24 Civ. 7856 (S.D.N.Y. 2024)

Dear Judge Abrams,

The parties write jointly according to Rule 5(B) of Your Honor's Individual Rules and Practices in Civil Cases and Local Civil Rule 83.2(a), requesting leave to file under seal the parties' Settlement Agreement as well as the declarations and exhibits attached to the Joint Motion to Approve Settlement (the "Approval Motion Papers"), limiting access to Plaintiff's counsel, Defendants' counsel, and the Court and its personnel. Further, we respectfully request that if the Court enters an order, that it not disclose any health information or financial terms of the parties' Settlement Agreement.

As the Court is aware, this action arises from the four-part Lifetime Network television program *Where Is Wendy Williams?* (the "Program"), which aired in February 2024. In her Verified Amended Complaint, Plaintiff, W.W.H.'s court-appointed Guardian, alleges that W.W.H. lacked capacity to enter into a contract in connection with the Program and that she was misled as to the Program's content and purpose. ECF No. 25-2 ("Compl.") ¶¶ 1-61. Plaintiff sought a declaration that the contract was void, and asserted claims for fraud, unjust enrichment, and under the Lanham Act. *Id.* ¶¶ 219-267. Defendants answered and filed counterclaims under New York's anti-SLAPP statute, Civil Rights Law § 70-a, alleging Plaintiff's claims arose from protected speech and lacked a factual and/or legal basis because, among other reasons, Defendants alleged W.W.H.'s contract had been negotiated and approved by multiple attorneys purporting to represent her and her manager, included acknowledgments that the producers of the Program would determine its content, and that Plaintiff was aware of the contract and had ratified it. ECF Nos. 50-3, 50-4, 50-5. Plaintiff moved to dismiss the counterclaims on multiple grounds, including Defendants' failure to obtain leave from the New York State Supreme Court overseeing W.W.H.'s guardianship (the "Guardianship Court") before asserting the counterclaims. Plaintiff's motion remains pending. ECF No. 47.

On February 19, 2026, the parties participated in a mediation. Following further discussion, the parties reached a binding settlement in principle, memorialized in a confidential term sheet, which provides that the terms of the settlement will remain confidential. A formal Settlement Agreement reflecting the parties' agreement has since been executed by all of the parties, but, pursuant to Local Civil Rule 83.2(a), this Court must approve the agreement—and any potential payment—before the case can be dismissed. Accordingly, the parties respectfully request that the Court seal the Settlement Agreement and the accompanying Approval Motion Papers. Sealing will

Page 2

enable the Court to review the information necessary to evaluate the Settlement Agreement while protecting W.W.H.'s sensitive health information and any financial terms of the settlement from misuse by individuals seeking to exploit W.W.H. for financial gain or assert opportunistic claims targeting her estate. These considerations constitute good cause to seal the Settlement Agreement and the Approval Motion Papers.

Although the public holds a presumptive right of access to judicial papers, the Second Circuit has long recognized that courts must balance that interest against countervailing considerations, including the "privacy interests of those resisting disclosure." *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995). In conducting that analysis, courts first assess the weight of the presumption of access by considering the role the documents play in the exercise of Article III judicial power. *Id.* Documents "fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Id*. at 1049. Once the weight of the presumption has been determined, the court balances it against competing considerations, including "privacy interests." *Id*. at 1050; *see also Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006) ("Notwithstanding the presumption of access under both the common law and the First Amendment, the documents may be kept under seal if 'countervailing factors' in the common law framework or 'higher values' in the First Amendment framework so demand.").

Here, the presumption of public access carries less weight because the Settlement Agreement and Approval Motion Papers are not being submitted in connection with an adjudication on the merits. Rather, the parties have agreed to privately resolve their dispute, and the documents are before the Court solely to permit review and approval pursuant to Local Civil Rule 83.2(a). Moreover, the Court's review is one of several safeguards protecting W.W.H.'s interests. The Settlement Agreement was negotiated and approved by W.W.H.'s court-appointed guardian, litigation counsel, and personal counsel, and it remains subject to independent review and approval by the Guardianship Court.

Indeed, even where settlement agreements are filed with a court and thus "classed as a 'judicial document,' the Second Circuit has found, in similar cases, that the presumption of access is weak when settlement confidentiality is concerned." *Schoeps v. Museum of Modern Art*, 603 F. Supp. 2d 673, 676 n.2 (S.D.N.Y. 2009) (collecting cases). The instant filings bear little resemblance to those that carry the strongest presumption of access, such as materials submitted to adjudicate the rights of parties. *See, e.g., Lugosch*, 435 F.3d at 121 (presumption of access is "strong" for documents submitted for a summary judgment motion); *Roberts v. Lederman*, No. 04 Civ. 33, 2004 WL 2238564, at *6 (E.D.N.Y. Oct. 4, 2004) ("Examples of instances in which the presumption is at its weightiest include a report relied on by a court in granting summary judgment or evidence that is introduced at trial.").

Page 3

And here, there are strong "competing considerations" that support sealing.  The Settlement Agreement and Approval Motion Papers include highly sensitive and confidential information regarding W.W.H.'s health, mental capacity, and the measures put in place to address her unique circumstances.  Such information "is traditionally private as it involves illness and private conduct," for which there is "less need for public disclosure."  *Roberts*, 2004 WL 2238564, at *6-7 (finding privacy interests and other factors outweighed even a "strong" "presumption favoring access").

Those privacy interests are especially compelling under the circumstances presented here. W.W.H. was first placed under a financial guardianship by the Guardianship Court because of concerns that she had "been taken advantage of" and was vulnerable to being "the subject of financial abuse" by those in her immediate circle.  Compl. ¶ 11.  The Guardianship Court proceedings were sealed in response to that Court's "concerns about the release of protected medical and financial information"—precisely the categories of information that the parties seek to protect through sealing here.  *Id*.  Since then, it has been reported that W.W.H. has been the target of additional efforts to access her assets.[1]  Public disclosure of the Settlement Agreement, particularly its financial terms, would only heighten the risk of further opportunistic attempts to exploit her. These compelling interests in protecting W.W.H.'s medical and financial privacy outweigh the comparatively weak presumption of public access applicable to these filings.

Should the Court conclude that some degree of public access is nevertheless appropriate, the parties respectfully request leave to file the Settlement Agreement and Approval Motion Papers with targeted redactions limited to information concerning W.W.H.'s health history and diagnoses and the financial terms of the settlement.  *See Schoeps*, 603 F. Supp. 2d at 676 (permitting filing of Settlement Agreement with redactions).

The parties thank the Court for its consideration of this request.

Respectfully submitted,

---

[1] *See* Jacqueline Lindenberg & Kevin Kayhart, *Wendy Williams ex-husband Kevin Hunter demands divorce be overturned - claims she 'hid $48MILLION from him' in settlement*, DAILY MAIL (Oct. 3, 2024), https://www.dailymail.co.uk/tvshowbiz/article-13918133/Wendy-Williams-ex-husband-kevin-hunter-divorce-overturned-settlement-money.html; Liza Esquibias & Danielle Bacher, *Wendy Williams' Ex-Husband Sues Her Guardian, the Judge Presiding Over Her Case and Others for $250 Million on Her Behalf*, PEOPLE (Jun. 18, 2025), https://people.com/wendy-williams-ex-husband-sues-guardian-judge-250-million-implementing-guardianship-11757470; Carson Blackwelder, *Wendy Williams Says She Had 'No Idea' Ex-Husband Filed Lawsuit in Her Name: 'He's a Money-Grubber,'* PEOPLE (Jun. 19, 2025), https://people.com/wendy-williams-says-she-had-no-idea-ex-husband-filed-lawsuit-in-her-name-he-is-a-money-grubber-11758083.

Page 4

/s/ *Roberta A. Kaplan*
Roberta A. Kaplan
KAPLAN MARTIN LLP

*Counsel for Sabrina E. Morrissey, in her capacity as court-appointed Guardian for W.W.H.*

/s/ *Rachel F. Strom*
Rachel F. Strom
DAVIS WRIGHT TREMAINE LLP

*Counsel for Defendants A&E Television Networks, LLC, Entertainment One Reality Productions, LLC, Lifetime Entertainment Services, LLC, Creature Films, Inc., and Mark Ford*

cc:      Counsel of record (via CM/ECF)